UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

PATRICK SCOTT MAJOR             CASE NO.: 00-6070-CIV-FERGUSON
                                Magistrate Judge Snow
    Plaintiff,

v.

AMERIJET INTERNATIONAL, INC.,

    Defendants.
_____/

**DEFENDANT'S REBUTTAL TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
COUNTS I AND V OF PLAINTIFF'S COMPLAINT**

COMES NOW Defendant, AMERIJET INTERNATIONAL INC., (hereinafter "Defendant"), by and through its undersigned, and pursuant to Rule 7.1 of the Local Rules for the United States District Court for the Southern District of Florida, hereby files its Rebuttal to Plaintiff's Response to Defendant's Motion to Dismiss Counts I and V of Plaintiff's Complaint.

As a preliminary matter, the Defendant has attached all four pages of the Federal Register as it relies on all the pages in support of its Motion to Dismiss.

**I.    Whether NASA (ASRS) Is An Agent Of The FAA Is Not The Determinative Issue**

Plaintiff argues that since NASA (ASRS) receives information concerning safety issues and **indirectly** reports to the FAA that it is an agent of the FAA and therefore, is an "appropriate government agency" as defined by the Florida Whistle Blower Act section 448.101(1). However, in Plaintiff's exhibit B, which defines the purpose, background, responsibilities, reporting procedures, processing of reports, and the enforcement policy of NASA (ASRS), it is clear and unequivocal that NASA (ASRS) is not **charged with the enforcement** of laws, rules, or regulations. Under section 9(a) of exhibit B it states in pertinent part, *"the Administration of the*

70609_1

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

*FAA* will perform his/her responsibility under Title 49, United States Code, Subtitle VII, *and enforce the statute and the FAR...,*" it does not state that NASA (ASRS) will *enforce* the statute and the FAR.

Plaintiff also argues that reports to NASA (ASRS) do not fully insulate pilots from **FAA** sanctions. But again, this is not the determinative issue. Whether or not a pilot is insulated as a result of reporting to NASA (ASRS) does not render NASA (ASRS) an enforcement agency. There simply is no correlation. Plaintiff cites to *Copsey v. Nat'l Transportation Safety Board*, 993 F.2d 736 (10th Cir. 1993) and *Jackson v. Nat'l Transportation Safety Board*, 114 F.3d 283 (D.C. Cir. 1997) to buttress this argument.

Plaintiff, however, misses the critical point about these cases and their relationship with the NASA (ASRS) program. In both cases, the FAA became aware of the violations *independently* of NASA (ASRS). In fact, these cases are consistent with the NASA (ASRS) program.

> When violation of the FAR comes to the attention of the *FAA from a source other than a report filed with NASA under the ASRS*, appropriate action will be taken.

Plaintiff's Exhibit B, AC00-46D section 5 (emphasis added).

The purpose of the immunity provision in the NASA (ASRS) program is to induce pilots and others to report safety issues without fear of reprisal or repercussion by the FAA, thus, the "***de-identification***" process.

> The FAA will not seek, and NASA will not release or make available to the FAA, any report filed with NASA under the ASRS or any other information that might reveal the identity of any party involved in an occurrence or incident reported under the ASRS. There has been no breach of confidentiality in more than 20 years of the ASRS under NASA management.

70609_1

2

Plaintiff's Exhibit B, AC00-46D section 5. But, as in the cases cited above, when the FAA obtains information from another source independent of NASA (ASRS) appropriate action will be taken.

## II. Amerijet Is Not An Agent Of The FAA

Plaintiff's third argument, that Amerijet itself is an "appropriate government agency" as defined by section 448.102(1) is without merit. The argument fails for the same reason that NASA (ASRS) is not a government agency, Amerijet is not charged with the power to enforce rules, regulations, or laws governing aviation. Plaintiff's argument would render all private companies "appropriate government agency" if the companies were involved in a business regulated by a State or Federal agency. That simply is not the intent of the Whistle Blower Act.

Plaintiff's reliance on *The Golf Channel v. Jenkins*, 2000 WL 31834 (Fla.) is misplaced. *Jenkins* considered the effect of imposing a writing requirement for all three subparts under section 448.102 when only section 448.102(1), the section at issue in this Motion to Dismiss, explicitly requires written notice. The impracticalities Plaintiff elude to was reserved for 448.102(2) and (3) where the legislature declined to include written notice as a requirement.

## III. Plaintiff Has Failed To State A Claim Upon Which Relief Can Granted

In the instant action, Plaintiff did not submit a report or a claim in regards to the August 17, 1999, flight with the FAA, he submitted it to NASA (ASRS). NASA (ASRS) program was designed to collect **anonymous** information regarding safety, **not to enforce** rules, regulations, or laws. There is nothing Plaintiff can point to that states NASA (ASRS) is mandated, empowered, or sanctioned to enforce the rules, regulations or laws governing aviation. It is merely a repository for collecting safety information. As such, Plaintiff has failed to state a claim upon which relief can be granted.

70609_1

3

WHEREFORE, Defendant respectfully requests this court grant its Motion to Dismiss.

Respectfully submitted,

_____
Susan Potter Norton
Florida Bar No. 0201847
Stephen P. Santiago
Florida Bar No. 0964425

ALLEN, NORTON & BLUE, P.A.
121 Majorca, Suite 300
Coral Gables, FL 33134
Tel: (305) 445-7801
Fax: (305) 442-1578

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail, on this 1st day of March 2000, upon:

Ms. Valerie Shea, Esq.
HEINRICH GORDON HARGROVE
  WEIHE & JAMES
500 East Broward Boulevard
Suite 1000
Ft. Lauderdale, Florida 33394

_____
Attorney

methodologies, policies, and standards necessary to carry out sections 1514, 1533 (a), (b), and (c), 1534, and 1635 of the Public Health Service Act, as amended by P.L. 93-641.

The authorities delegated under Titles XV and XVI of the Public Health Service Act are limited to those functions required for, or involved in, the administration of programs and operations assigned to the Health Resources Administration.

These authorities may be redelegated.

Dated: April 5, 1976.

R. MOVAR,
*Executive Officer,
Public Health Service.*

[FR Doc.76-10828 Filed 4-14-76;8:45 am]

## DEPARTMENT OF TRANSPORTATION

Coast Guard

[76-072]

### NEW YORK HARBOR VESSEL TRAFFIC SERVICE ADVISORY COMMITTEE

**Open Meeting**

The New York Harbor Vessel Traffic Service Advisory Committee will conduct and open meeting on Thursday May 6, 1976, in the Auditorium of Building 108, Governors Island, New York. The meeting is scheduled to begin at 10:30 a.m.

The agenda for this meeting of the New York Harbor Vessel Traffic Service Advisory Committee is as follows:

1. Report from the Executive Committee given by Captain K. C. Torrens, Chairman of the Executive Committee.
2. Presentation of the Annual Report for 1975.
3. Status Report of the New York Vessel Traffic Service by the Traffic Service Staff.
4. Presentation of the Operating Procedures for the New York Harbor Vessel Traffic Service.
5. Comments or questions from the floor.

The New York Harbor Vessel Traffic Service Advisory Committee was established by the Commander, Third Coast Guard District to advise on the need for, and development, installation and operations of a Vessel Traffic Service for the New York Harbor.

Members of the Committee serve voluntarily without compensation from the Federal Government, either travel or per diem.

Interested persons may obtain additional information or the summary of the minutes of the meeting by writing to:

Commander, D.A. SUMI, Project Officer, Vessel Traffic Service, Building 400, Section N, Third Coast Guard District, Governors Island, New York, N.Y. 10004

or by calling (212) 264-0409.

This Notice is issued under section 10 (a) of the Federal Advisory Committee Act (P.L. 92-463, 86 Stat. 770, 5 U.S.C. App. 1).

Dated: April 12, 1976.

S. A. WALLACE,
*Rear Admiral, U.S. Coast Guard
Chief, Office of Public and
International Affairs.*

[FR Doc.76-10911 Filed 4-14-76;8:45 am]

### Federal Aviation Administration

### AVIATION SAFETY REPORTING PROGRAM

**Modification To Reflect Cooperation With the National Aeronautics and Space Administration**

On April 18, 1975, the Federal Aviation Administration (FAA) issued a Notice announcing the establishment of its Aviation Safety Reporting Program (ASRP), a program designed to increase FAA's awareness of deficiencies and discrepancies in the National Aviation System by encouraging the free and unrestricted flow of information that might be instrumental in avoiding accidents or incidents before they occur. That Notice was published in the FEDERAL REGISTER (40 FR 17775) on April 22, 1975.

This notice modifies the FAA ASRP, effective April 15, 1976, by providing for the submission of aviation safety reports directly to the National Aeronautics and Space Administration (NASA) for screening and analysis under that agency's Aviation Safety Reporting System (ASRS). This change is designed to further ensure anonymity under the FAA ASRP and underscore FAA's commitment to waive disciplinary action in cases covered by the program.

Accordingly, with respect to aviation safety reports submitted under the NASA ASRS on and after April 15, 1976, this Notice also announces that, except in case of accidents or criminal offenses, those reports will not be used by, or made available to the FAA for disciplinary purposes, and that, on and after April 15, 1976, the same waiver of disciplinary action will be assured, for reports submitted in accordance with the NASA ASRS, as was previously announced for reports submitted to the FAA under the FAA ASRP. Reports involving accidents or criminal offenses will continue to be completely excluded from the FAA ASRP. Whether such reports come from within, or outside of, the NASA ASRS, no waiver of disciplinary action applies in those two instances.

The FAA continues to encourage the reporting of any information which a person believes discloses any potentially unsafe condition in the National Aviation System. The FAA ASRP, however, continues to apply only to that part of the System involving the safety of aircraft operations, including departure, en route, approach and landing operations and procedures, air traffic control procedures, pilot/controller communications, the aircraft movement area of the airport, and near mid-air collisions. Pilots, air traffic controllers, and all other members of the aviation community and the general public are urged to file written reports of any discrepancy or deficiency noted in these areas.

The FAA ASRP is a voluntary program dependent entirely upon the participation of persons who observe potential or actual safety problems in the National Aviation System. It is a positive program intended to ensure the safest possible system by identifying, preventing, or correcting unsafe conditions before they lead to accidents. The primary objective of the FAA ASRP is to obtain all possible information that might assist the FAA in evaluating and enhancing the safety and efficiency of the National Aviation System. This program is based on the conviction that an unrestricted flow of information from those who use the system on a regular basis is one of the primary means of monitoring its performance.

Since the reporting of incidents may be discouraged because of a fear of FAA disciplinary action against other persons involved in a possible violation, potential FAA disciplinary action will continue to be waived not only with respect to persons who submit timely aviation safety reports, but also with respect to any other person involved in a timely reported incident.

In order to assist the FAA in reaching its goal of eliminating unsafe conditions and preventing avoidable accidents, the NASA ASRS will complement the FAA ASRP by including provisions for the periodic reporting of its findings to the public, the aviation community, and the FAA. This will include quarterly reports containing statistical data concerning submitted aviation safety reports. In addition, under the NASA ASRS, the procedures that are developed to process aviation safety reporters will assure that reports are initially screened for—

(1) Time-critical information which, after deidentification, will be promptly referred to the FAA and other interested parties;

(2) Information concerning criminal offenses, which will be promptly referred to the Department of Justice and the FAA; and

(3) Information concerning accidents, which will be promptly referred to the National Transportation Safety Board and the FAA.

The anonymity of persons involved in a reported incident or event will be assured, in all respects, to the extent permitted by law. All information dealing with the identities of persons filing aviation safety reports and persons involved in those reports will be deleted by NASA (except for reports involving accidents and criminal offenses). This de-identification will be accomplished by NASA, normally within 24–48 hours, if no further information is requested from the reporter by NASA. In addition, except in the case of criminal offenses or accidents, the report, as stated above, will not be made available to or used by the FAA in any way for disciplinary purposes.

To better enable the FAA to assure that all persons involved in a reported incident or event (not only the person making the report) receive the appropriate waiver of disciplinary action under the FAA ASRP, NASA will retain, for a period of 45 days following the incident, a separate record of each report received. After this time period (unless FAA has queried NASA about an incident within the 45 days) it will be presumed by the FAA that the incident was reported under the program and that the persons involved are entitled to a waiver of disciplinary action. Furthermore, during the 45 day period, NASA will not release to the FAA any information that might reveal the identity of any person involved in an aviation safety report except to the extent necessary to respond to FAA inquiries made to determine whether that person is entitled to a waiver of disciplinary action under the FAA ASRP.

If FAA queries NASA about a reported incident within the 45 day period, the waiver provisions continue to apply to all reports covered by the FAA ASRP as follows:

1. For reports involving reckless operation, gross negligence, or willful misconduct, no FAA disciplinary action will be taken based on a submitted aviation safety report or on any information in any way derived from that report. However, FAA disciplinary action may be taken based on information obtained wholly outside of, and apart from, information submitted under the FAA ASRP.

2. For reports not involving reckless operation, gross negligence, or willful misconduct, that are submitted under the FAA ASRP, FAA disciplinary action will not be taken based on information obtained from aviation safety reports submitted in accordance with the NASA ASRS or based on any other information derived from any other source within or outside the FAA ASRP.

Based on information obtained from this program, including the time-critical information from NASA mentioned above, the FAA will take whatever corrective or remedial action is necessary to remedy defects or deficiencies in the National Aviation System. However, as stated above, this action will not include disciplinary action waived under this program.

The modified FAA ASRP, described herein, will become effective on April 15, 1976. All reports submitted on or after that date are subject to the modified program and should be sent to NASA rather than to the FAA. The waiver of disciplinary action will be assured (1) if a written report is completed and delivered or postmarked and forwarded to NASA within 5 days of the incident, or (2) if NASA is notified in writing (within those 5 days) of the date and location of the incident or occurrence, and a complete written report is then filed within 15 days of the incident.

While a written report must be submitted for persons wishing to participate in the program, the program is completely voluntary, and no particular form is required for the report. However, persons are encouraged to use NASA ARC Form 277, Aviation Safety Report, which is pre-addressed and postage free, and which will be available free of charge at FAA offices. This form (or a narrative report) should be mailed to: Aviation Safety Reporting System, P.O. Box 189, Moffett Field, CA 94035. This form will be available approximately April 15, 1976. Federal and State agencies, and organized industry groups may obtain forms in quantity by submitting requests to the Department of Transportation, Federal Aviation Administration, Aeronautical Center, Distribution Section, AAC-45C, P.O. Box 25082, Oklahoma City, OK 73125. Reports submitted prior to April 15, 1976, will continue to be processed in accordance with the terms of the FAA ASRP described in the original notice on April 18, 1975.

As stated in the earlier notice, the FAA ASRP will be constantly monitored to determine its effectiveness and will be clarified, modified, or expanded as necessary. All interested persons are invited to submit comments or suggestions on the program. Submissions should be addressed to the Office of Aviation Safety, Federal Aviation Administration, Washington, D.C. 20591.

This program applies to incidents occurring after April 30, 1975. As modified herein, it applies to incidents which occur on and after April 15, 1976. This program is adopted under the authority of §§ 305, 307(c), 312(c), 313(c), 601(a), 701(a), and 1104 of the Federal Aviation Act of 1958 (49 U.S.C. §§ 1348, 1348(c), 1353(c), 1354(a), 1421(a), 1441(a), and 1504); and Section 6(c) of the Department of Transportation Act (49 U.S.C. § 1655(c)).

Issued in Washington, D.C., on April 12, 1976.

J. W. COCHRAN,
*Acting Administrator.*

[AC No: 00-46A   Date: March 31, 1976]

ADVISORY CIRCULAR

DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION

SUBJECT: AVIATION SAFETY REPORTING PROGRAM

1. *Purpose.* This circular is to advise that the Federal Aviation Administration (FAA) will modify the Aviation Safety Reporting Program (ASRP) effective April 15, 1976, by utilizing the National Aeronautics and Space Administration (NASA) as a third party to receive and analyze Aviation Safety Reports. This study of the National Aviation System invites pilots, controllers, and other users of the airspace or any other person to report to NASA actual or potential discrepancies and deficiencies involving the safety of aircraft operations. The program applies to that part of the system involving the safety of aircraft operations, including departure, enroute, approach and landing operations and procedures, air traffic control deficiencies, pilot/controller communications, the aircraft movement area of the airport, and near mid-air collisions. The success of this program to improve safety depends on the free, unrestricted flow of information from the users of the National Aviation System. The objective of the modification is to increase the flow of information.

2. *Cancellation.* Advisory Circular 00-46 dated May 9, 1975, is cancelled.

3. *Background.* a. The primary mission of the FAA is to promote aviation safety. To further this mission, the FAA instituted a voluntary Aviation Safety Reporting Program on April 30, 1975, designed to encourage the reporting and identification of deficiencies and discrepancies in the system before they cause accidents or incidents.

b. The FAA has determined that the ASRP effectiveness would be greatly enhanced if the receipt, processing, and analysis of the raw data were accomplished by a third party. This would further ensure the anonymity of the reporter and of all persons involved in a reported incident, and, consequently, increase the flow of information necessary for the effective evaluation of the safety and efficiency of the system. Accordingly, the FAA and NASA have agreed that NASA will establish an Aviation Safety Reporting System (ASRS) to perform these functions.

4. *NASA Responsibilities.* a. NASA will establish an Aviation Safety Reporting System to provide for the receipt, analysis, and periodic reporting of findings obtained through the reporting program to the public, the aviation community and FAA.

b. NASA will form an ASRS advisory committee comprised of representatives from the aviation industry, consumers, DOD, NASA, and FAA to advise NASA on the conduct of the ASRS. The committee will conduct periodic meetings to determine and ensure the effectiveness of the reporting system.

5. *Processing of reports.* a. NASA will develop procedures to process Aviation Safety Reports. These procedures will assure that reports are initially screened for:

1. Time-critical information which, after de-identification, will be promptly referred to FAA and other interested parties.

2. Information concerning criminal offenses, which will be promptly referred to the Department of Justice and FAA.

3. Information concerning accidents, which will be promptly referred to the National Transportation Safety Board and the FAA.

b. Information that might assist identification of persons filing reports and persons named in those reports will be deleted, except for reports covered under Paragraphs a.1. and a.2. above. This will be accomplished normally within 24-48 hours if no further information is requested from the reporter.

6. *Waiver of disciplinary action.* a. Provided a timely report has been filed, FAA disciplinary action is waived against all persons involved in the incident, as follows:

1. FAA has a period of forty-five days following an incident to ask NASA whether a timely report has been filed on that incident. Except as provided in paragraphs a.2 and a.3 below, the waiver of disciplinary action applies if FAA does not make this request within the time period specified, or FAA ascertains through NASA that a timely report was filed.

2. FAA disciplinary action is not waived for cases involving accidents or criminal offenses, which are wholly excluded from the program.

3. Reports involving reckless operation, gross negligence or willful misconduct may not be used for FAA disciplinary purposes. Disciplinary action may be taken in such cases, however, on the basis of information obtained independently of the Aviation Safety Report.

b. The following are examples of conduct that has, in the past, been identified as reckless operation, gross negligence, or willful misconduct:

1. Intentional buzzing dangerously close to persons or property.
2. Intentional operation of an aircraft in instrument flight rule weather conditions without proper air traffic control clearances or authorization.
3. Knowingly performing acrobatic flight within a control zone or a Federal airway.
4. Intentional unauthorized descent below published decision height or minimum descent altitudes while conducting an actual instrument approach.
5. Knowingly executing an unauthorized instrument approach in controlled airspace.
6. Intentional operation of an aircraft that is substantially overweight.

c. The waiver of disciplinary action, where applicable, covers all persons involved in a reported incident, not only persons making, or named in, an Aviation Safety Report.

d. Each Aviation Safety Report has a tear-off portion which contains the information that identifies the person submitting the report. This tear-off portion will be removed by NASA, time stamped, and returned to the reporter as his receipt. This will provide the reporter with proof that he filed the report on a specific incident or occurrence.

e. NASA will maintain a separate record of each report received for 45 days following the incident, which will include the date, time, location, and type of incident (but not the identity of the person making the report). Retention of this data is necessary to determine whether an individual is entitled to protection under the ASRP. When the FAA receives information concerning a specific incident, it requests NASA to advise whether or not the incident has been reported. (See paragraph 6.a.).

f. Based on information obtained from this program, including the time critical information from NASA mentioned above, the FAA will take whatever corrective or remedial action is necessary to remedy defects or deficiencies in the National Aviation System. However, as stated above, this action will not include disciplinary action waived under the ASRP.

7. *Reporting procedures.* a. The waiver of disciplinary action, if otherwise applicable, will be assured if a written report is completed and delivered or postmarked and forwarded to NASA within 5 days of the incident, or if NASA is notified in writing within 5 days of the date and location of the incident or occurrence, and a complete written report is filed within 15 days of the incident. Such notification should be directed to: Aviation Safety Reporting System, P.O. Box 189, Moffett Field, CA 94035.

b. NASA ARC Form 277, which is preaddressed and postage free, will be available at FAA offices for persons who wish to participate in the program. This form or narrative report should be completed to describe the discrepancy or deficiency and mailed to: Aviation Safety Reporting System, P.O. Box 189, Moffett Field, CA 94035.

c. This program does not eliminate responsibility for reports, narratives, or forms presently required by existing directives.

8. *Effective date.* The modified Aviation Safety Reporting Program described by this Advisory Circular is effective April 15, 1976. On and after that date, all Aviation Safety Reports should be sent to NASA rather than the FAA.

9. *Availability of Forms.* a. Additional copies of the attached reporting form (NASA ARC Form 277) may be obtained free of charge from FAA offices.

b. Government, State and organized industry groups may obtain forms in quantity by submitting requests to the Department of Transportation, Federal Aviation Administration, Aeronautical Center, Distribution Section, AAC-450, P.O. Box 25082, Oklahoma City, Oklahoma 73125.

c. NASA ARC Form 277, Aviation Safety Report, will be available approximately April 15, 1976. An initial distribution will be made to regions, centers and FAA facilities. Forms will be stocked in the FAA Depot and will be available through normal supply channels, NSN 0052-00-645-6001, unit of issue: sheet.

JOHN L. McLUCAS,
*Administrator.*

MEMORANDUM OF AGREEMENT BETWEEN NATIONAL AERONAUTICS AND SPACE ADMINISTRATION AND DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

AVIATION SAFETY REPORTING SYSTEM

1. *Background.* A. The Administrator of the Federal Aviation Administration (FAA), Department of Transportation is empowered and directed to encourage and foster the safety in air commerce. Pursuant to this authority, the Administrator adopted a voluntary Aviation Safety Reporting Program (ASRP) (40 CFR 17775, April 22, 1975) designed to acquire previously unobtainable information concerning potential deficiencies and discrepancies in the national aviation system.

B. The National Aeronautics and Space Administration (NASA) has a continuing responsibility to engage in aviation research and development programs and is authorized in carrying out this responsibility to enter into appropriate agreements with other government agencies.

II. *Purpose.* The FAA has determined that the effectiveness of the ASRP would be greatly enhanced if the receipt, processing, and analysis of the raw information received were to be accomplished by NASA rather than the FAA. This would further ensure the anonymity of the reporter and consequently increase the flow of information so necessary for the effective evaluation of the safety and efficiency of the aviation system. NASA has determined that undertaking this task would be consistent with its aviation research and development responsibilities and would significantly increase its ability to fulfill those responsibilities.

III. *Authority.* This agreement is entered into under the authority of Section 302(k) and 313 of the Federal Aviation Act of 1958, as amended, Section 601 of the Economy Act, as amended, and the National Aeronautics and Space Act of 1958, as amended.

IV. *Aviation Safety Reporting System.* A. *General.* NASA will design and implement an Aviation Safety Reporting System (ASRS). This system will be designed primarily to provide information to the FAA and the aviation community to assist the FAA in reaching its goal of eliminating unsafe conditions and preventing avoidable accidents. In addition, the system will be designed in a manner that will permit its operation by another party at the expiration of this agreement.

B. *Description.* The ASRS will be designed to perform four primary functions. They are (1) receipt de-identification and initial processing; (2) analysis and interpretation; (3) dissemination of reports and other data; and (4) system evaluation and review.

1. NASA will develop procedures for receiving, de-identifying, and processing ASRS reports including those covered by the FAA's ASRP. This procedure will assure that reports are initially screened by NASA officials for—

(a) time critical information which will be promptly referred to the FAA and other interested parties for appropriate action;

(b) information concerning criminal offenses which will be promptly referred to the Department of Justice and the FAA; and

(c) information concerning accidents which will be promptly referred to the National Transportation Safety Board and the FAA.

Except for reports covered by paragraphs (b) and (c), reports will be de-identified by deleting all information that would reveal identities of persons filing reports and persons named in those reports. De-identification will be accomplished as soon as possible after determining that no additional data is needed, normally within 24–48 hours. The person submitting the report will be mailed a receipt and the anonymous data placed in the NASA data base. The data base will be made available for public inspection except as authorized or required by Federal law to be withheld.

2. NASA will establish procedures to provide for the analysis and interpretation of safety reports.

3. NASA will prepare periodic reports, statistical summaries, and other data necessary to depict the results of the analysis and interpretation of the safety reports. This material will be transmitted to the FAA and other users of the system to facilitate their evaluation and action to eliminate unsafe conditions or practices.

4. NASA will provide for the continuing review and evaluation of the system to ensure that it is operating as efficiently and effectively as practicable.

C. *ASRP Records.* To enable the FAA to assure the protection of individuals other than the reporting party, NASA will retain for a period of 45 days a separate record of each report received. That record will include the data, time, location and type of incident to permit the determination of whether an individual is entitled to protection under the FAA's ASRP.

D. *Confidentiality.* Experience gained by the FAA under its near mid-air collision program and the ASRP has indicated that the willingness of persons to submit a report depends to a large degree on preserving the anonymity of persons filing reports and persons named in those reports. Accordingly, NASA will not release to the FAA any information that might reveal the identity of such persons except to the extent necessary to respond to FAA inquiries made to determine whether they are entitled to protection from disciplinary action under the ASRP.

E. *Staffing and Management.* The ASRS functions will be performed by NASA with assistance of such others as may be necessary. All forms used in the ASRS will be NASA forms. All records will be the records of NASA.

F. *Advisory Committee.* NASA will form an ASRS Advisory Committee within the framework of the NASA Research and Technology Advisory Council. The purpose of the Committee will be to advise NASA on the design and conduct of the ASRS program and to provide an additional means of communication with the aviation community concerning the ASRS. The Committee will also be responsible for advising NASA with respect to the maintenance of the anonymity of persons submitting reports or named therein. The membership of the Committee will be appointed by NASA from all elements involved in the operational aspects of the national aviation system including FAA and DOD.

G. *Schedule.* The ASRS will become operational by April 15, 1976, on which date NASA will begin receiving safety reports. The first report summarizing ASRS operations will be published three months thereafter. A full evaluation of ASRS operations and procedures will be made in June 1977 by the ASRS Advisory Committee and necessary system and procedural changes designed and im-

plemented. The utility and effectiveness of the ASRS will be re-evaluated by the Committee in June 1979. At that time, the Committee will make recommendations to the Administrators of NASA and the FAA concerning the future utilization and continuance of the system.

V. *Responsibilities.* A. NASA will provide the personnel, services, materials, and facilities necessary for the design and implementation of the ASRS until termination of this Agreement or June 1980, whichever first occurs.

B. NASA will formally establish the ASRS and provide for the publication of a description of the system and such other information concerning that system as is necessary to ensure its maximum utilization by the aviation community and other interested persons.

C. FAA will provide the following:
1. The services to NASA of a senior ATC specialist for one month for advice and instruction on the FAA's air traffic control system. The specialist will also be made available for consultation at NASA's request for approximately 20 percent of the following year.
2. Assist NASA in obtaining necessary information about other areas of the national aviation system, including operational incidents and problems relevant to the research studies to be conducted under the ASRS.
3. Make FAA personnel available to assist NASA in the design of the ASRS.
4. Distribute the NASA ASRS forms, designed by NASA and bearing the NASA logo.

D. The FAA will modify its ASRP to provide the same waiver of disciplinary action for persons involved in incidents reported under ASRS as is presently provided persons by the ASRP. In addition, the FAA will expand the waiver to include a prohibition against the use of any information submitted under the ASRS (or derived therefrom) in any disciplinary action except information concerning criminal violations or accidents. The FAA will further provide for the waiver of disciplinary action in cases where the investigation has not been initiated in sufficient time to determine, under Section IV C., whether the person involved has been afforded protection against such action by the filing of the report under the ASRS. Finally, the FAA will delete aspects of its program, such as reporting, which would duplicate NASA's efforts under this agreement.

E. Prior to the time that the ASRS becomes operational, the FAA and NASA will agree on criteria to be used by NASA to determine whether a report contains time critical information within the meaning of Section IV B.1.(a).

F. The FAA and NASA will jointly develop a continuing information program designed to fully acquaint the aviation community and the public with all aspects of the ASRP, ASRS, and their interrelationship. All press releases and other public announcements will be subject to prior consultation between the parties.

G. FAA and NASA will each designate an official for the purpose of ensuring continuing liaison concerning the administration of the ASRS. These officials will meet as required to exchange information and ensure that the system is meeting its objectives.

VI. *Funding.* A. The FAA will reimburse NASA for amounts paid by NASA to any contractor assisting NASA in the performance of its ASRS functions up to a maximum of $500,000 for FY-1976, which maximum amount may be increased or decreased by mutual agreement of the parties. Appropriate maximum levels of obligation on the part of the FAA for subsequent fiscal years shall be periodically mutually agreed to by the parties.

B. NASA will provide all necessary funding for the salary and administrative service costs associated with the design and implementation of the ASRS, costs associated with the operation of the Advisory Committee, and any other costs relating to the ASRS not otherwise specifically provided for herein.

VII. *Other provisions.* A. NASA will publish quarterly reports providing routine statistical ASRS findings. These reports will each contain an appendix identifying time critical reports processed during the reporting period. NASA will also publish from time to time special reports describing the findings of special analyses conducted as a result of requests by the Advisory Committee or by others.

B. NASA will provide the FAA with quarterly reports summarizing project highlights, accomplishments, and resource utilization and annual reports summarizing ASRS findings and results of special studies.

VIII. *Effective Date.* This Agreement shall enter into force and effect when signed by both parties and shall remain in force and effect until June 1980 unless and until sooner terminated. Such termination may be by mutual agreement of the parties or by notice in writing forwarded by one party to the other not less than twelve months in advance of such termination.

Signed in Washington, D.C. on August 15, 1975.

NATIONAL AERONAUTICS AND
SPACE ADMINISTRATION
GEORGE W. LOW,
*Deputy Administrator.*

FEDERAL AVIATION ADMINISTRATION,
JAMES E. DOW,
*Acting Administrator.*

[FR Doc.76-10929 Filed 4-14-76;8:15 am]

Federal Aviation Administration

[Docket No. 15519]

RESTRICTED AREA R-3104—
KAHOOLAWE, HAWAII

Public Hearings

The Federal Aviation Administration (FAA) will hold two public hearings concerning Mayor Cravalho's petition for revocation of Restricted Area R-3104. These hearings will afford interested persons the opportunity to present views, data, and arguments which relate to the petition.

The hearings will be conducted at the following times and locations:

May 11, 1976, 9:00 a.m.-4:00 p.m., Lobby Room of Ilikai Hotel, 1777 Ala Moana Blvd., Oahu, Hawaii.

May 13, 1976, 10:00 a.m.-5:00 p.m., Public Library, Kahului Branch, Kam and School Street, Kahului, Maui, Hawaii.

The hearings will be informal in nature and will be conducted by a designated representative of the Administrator.

Since the hearings will not be evidentiary or judicial in nature, there will be no cross-examination or other adjudicatory procedure applied to the presentations. The Chairman of the meeting is empowered to conduct the meeting in a manner that, in his judgement, will facilitate the orderly conduct of business. Interested persons wishing to make rebuttal statements will be given the opportunity to do so at the conclusion of the presentations in the same order in which initial statements are made.

Those persons wishing to make oral statements at the hearings must notify the FAA before May 10, 1976, that they desire to be heard, and indicate the amount of time requested for their initial statements. Presentations will be scheduled on a first come first serve basis, as time may permit. Attendance is open to the interested public, but limited to the space available.

In addition to material presented for the purpose of the hearings, persons not participating in the hearings are invited to submit relevant written comments. Such written comments should identify the docket number and be submitted in duplicate to: Federal Aviation Administration, Office of the Chief Counsel, Attention: Rules Docket, AGC-24, 800 Independence Avenue, S.W., Washington, D.C. 20591. The closing date for submitting written comments is May 15, 1976. All comments will be available for examination in the FAA Rules Docket both before and after the closing date for comments.

For notification of participation write or call: Chief, Airspace and Procedures Branch, P.O. Box 4009, Honolulu, Hawaii 96813 (808) 955-0401.

(Sec. 306, 307 and 313(a) of the Federal Aviation Act of 1958 (49 U.S.C. 1347, 1348 and 1354(a) and Sec. 6(c) of the Department of Transportation Act (49 U.S.C. 1655(c)).)

Issued in Washington, D.C., on April 13, 1976.

WILLIAM E. BROADWATER,
*Chief, Airspace and Air
Traffic Rules Division.*

[FR Doc.76-11087 Filed 4-14-76;8:45 am]

National Highway Traffic Safety
Administration

JEEP CORP. ET AL.

Denials of Petitions To Commence
Rulemaking

This notice sets forth the reasons for denial of three petitions for rulemaking to initiate or amend Federal motor vehicle safety standards promulgated under authority of § 103 of the National Traffic and Motor Vehicle Safety Act (15 U.S.C. 1391 et seq.). This notice is published in accordance with § 124 of the Act, which provides that the National Highway Traffic Safety Administration must grant or deny such petitions within 120 days, and "If the Secretary denies such petition he shall publish in the FEDERAL REGISTER his reasons for such denial" (§ 124(d)).

*Jeep Corporation.* (October 16, 1975). Petition to amend the present definition of "unloaded vehicle weight" in § 571.3 of Part 571 of Title 49 of the Code of Federal Regulations. Jeep's petition was denied because the NHTSA concluded that the decision to include work-performing accessories in calculation of unloaded