UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

PATRICK SCOTT MAJOR

Plaintiff,

v.

AMERIJET INTERNATIONAL, INC.,

Defendants.

CASE NO.: 00-6070-CIV-FERGUSON
Magistrate Judge Snow

FILED BY ... 00 JUL -5 ... CLARENCE MADDOX CLERK U.S. DIST. CT. S.D. OF FLA.

**DEFENDANT'S MOTION TO DISMISS COUNT I OF PLAINTIFF'S AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

COMES NOW Defendant, AMERIJET INTERNATIONAL INC., (hereinafter "Defendant"), by and through its undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules for the United States District Court for the Southern District of Florida, hereby files this Motion to Dismiss Count I of Plaintiff's Amended Complaint and in support thereof states as follows:

1. On December 22, 1999, Plaintiff filed a four (4) Count Complaint against Defendant in the 17th Judicial Circuit In and For Broward County, Florida.

2. On January 14, 2000, Defendant removed the Plaintiff's State Court action to the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

3. On January 31, 2000, Defendant filed a Motion to Dismiss Counts I and V of Plaintiff's Complaint.

4. On February 1, 2000, Defendant filed an Amendment to its Motion to Dismiss Counts I and V of Plaintiff's Complaint.

28

5. On February 18, 2000, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss Counts I and V of Plaintiff's Complaint.

6. On March 1, 2000, Defendant filed a rebuttal to Plaintiff's Response to Defendant's Motion to Dismiss Counts I and V of Plaintiff's Complaint.

7. On March 20, 2000, the Honorable Judge Wilkie issued an Order referring pending Motions to Magistrate Judge Snow.

8. On April 25, 2000, the Plaintiff filed an Unopposed Motion to Amend his Compliant.

9. On June 22, 2000, the Honorable Magistrate Judge Snow issued an Order denying Defendant's Motion to Dismiss Counts I and IV[1] of Plaintiff's Complaint as moot in light of Plaintiff's filing of the Amended Complaint. The Honorable Magistrate Judge Snow also denied Defendant's Amended Motion to Dismiss Counts I and IV[2] of Plaintiff's Complaint as moot in light of Plaintiff's Amended Complaint filed on April 25, 2000.

10. In light of Honorable Magistrate Judge Snow's decision, Defendant files this Motion to Dismiss Count I of Plaintiff's Amended Complaint.

11. In Count I of Plaintiff's Amended Complaint, he alleges that the Defendant, a private sector employer, violated Fla. Stat. § 448.102(1), Private Whistleblower's Act.

12. Plaintiff alleges that he reported the Defendant to the National Aeronautics and Space Administration (Aviation Safety Reporting System), (hereinafter "NASA (ASRS)"), for alleged violations.

---

[1] The Order should read V, not IV.
[2] *Id.*

73351_1

13. NASA (ASRS) is not an agency charged with the enforcement of laws, rules or regulations, and Count I of Plaintiff's Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

14. In order to sustain an action under Fla. Stat. §448.102(1), Plaintiff must disclose or threaten to disclose the employer's violation to any *appropriate governmental agency*. (Emphasis added).

15. An appropriate government agency is defined in Fla. Stat. §448.102(1) as an agency of government *charged with the enforcement* of laws, rules or regulations governing an activity, policy, or practice of an employer. (Emphasis added).

16. NASA (ASRS) is an agency that was established to collect information on safety in order to assist the Federal Aviation Administration (hereinafter "FAA") in evaluating and enhancing safety throughout the airline industry. It is not charged with the enforcement of any law, rule or regulation.

WHEREFORE, Defendant respectfully requests that this Court grant its Motion to Dismiss Count I of Plaintiff's Amended Complaint.

## MEMORANDUM OF LAW

### I. Since Plaintiff Filed His Disclosure With NASA (ASRS), A Government Agency That Is Not Charged With The Enforcement A Law, Rule, Or Regulation, He Has Failed To State A Claim Under Fla. Stat. § 448.102(1) Upon Which Relief Can Be Granted

There is a paucity of Florida case law interpreting exactly what is an appropriate governmental agency. Nor does a review of the legislative history give any insight into this novel question of an appropriate government agency. In the absence of such, we look to the principles of statutory construction. Under a statutory construction analysis the legislative intent

is determined from the language of the statute. *Haynes v. Shoney's, Inc.*, 803 F.Supp 393 (N.D. Fla. 1992). A cardinal rule of statutory construction is that the language of the statute should be interpreted in accordance with its ordinary and common meaning. *Gonzales v. Garner Food Services, Inc.*, 89 F.3d 1523 (11th Cir. 1996). Furthermore, absent clearly expressed legislative intent to the contrary, the plain language of the statute should be conclusive. *Id.*

In the instant case, Plaintiff has filed a claim under the Private Sector Whistleblower Fla. Stat. § 448.102(1) that states in pertinent part that an employer may not take retaliatory personnel action against an employee if the employee has:

> (1) Disclosed, or threatened to disclose, *to any appropriate governmental agency*, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation...(emphasis added).

In order to state a claim under § 448.102(1) a plaintiff must give written notice to the employer to allow the employer a reasonable opportunity to correct the alleged violation prior to sending a written complaint to "an appropriate government agency." *The Golf Channel v. Martin Jenkins*, 2000 Fla. Lexis 9. Here, Plaintiff admits that he sent a written report alleging numerous violations of the FAA Regulations to Defendant and to NASA (ASRS). (Amended Complaint ¶ 22 and 23). Plaintiff relies solely on his report to NASA (ASRS) to establish his claim under § 448.102(1). (Amended Complaint ¶ 31). However, NASA (ASRS) is not a government agency *charged with the enforcement* a law, rule, or regulation.

The Florida legislature has defined an appropriate government agency as:

> ...any agency of government *charged with the enforcement* of laws, rules, or regulations governing an activity, policy, or practice of an employer. (emphasis added)

Fla. Stat. § 448.101(1). The language of the statute is unambiguous that a government agency is one that is *charged with the enforcement* of a law, rule, or regulation. Black's Law Dictionary

defines enforcement as "the act or process of *compelling compliance* with a law, mandate or command." *Black's Law Dictionary* (7th ed. 1999) (emphasis added).

In the instant case, NASA (ASRS) was established in 1976 to replace the FAA Aviation Safety Reporting System. *Aviation Safety Reporting Program* 41 Fed. Reg. 15903 (attached as exhibit 1); see also *AC 00-46D – Aviation Safety Reporting Program* (attached as exhibit 2).[3] NASA (ASRS) was designed to perform four primary functions: (1) receipt de-identification and initial processing; (2) analysis and interpretation; (3) dissemination of reports and other data; and (4) system evaluation and review. (Exhibit 1, pg. 15905. Conspicuously absent from its listed functions is the enforcement of any law, rule, or regulation.

Furthermore, in exhibit 2, the 1997 circular describing the NASA (ASRS) program, under section 9(a) entitled "Enforcement Policy," it states,

> "The *Administration of the FAA* will perform his/her responsibility under Title 49, United States Code, Subtitle VII, and *enforce the statute and the FAR* in a manner that will reduce or eliminate possibility of, or recurrence of, aircraft accidents."

(emphasis added). It does not state that NASA (ASRS) will *enforce* the statute and the FAR because NASA (ASRS) is not charged with enforcing the law; it is merely a repository to store, sort, and disseminate safety information.

The plain language of Fla. Stat. §448.101(1) is that an appropriate government agency is one that enforces (compels compliance) with a law, rule or regulation. NASA (ASRS) is not an agency *charged with the enforcement* of a law, rule, or regulation as defined by Fla. Stat. §448.101(1) and, therefore, Count I of Plaintiff's Amended Complaint does not state a claim upon which relief can be granted.

[3] Exhibit 2 was submitted as part of Plaintiff's response to Defendant's original Motion to Dismiss.

II. <u>NASA (ASRS) Is Not An Agent Of The FAA For The Purpose Of Enforcing</u>

It is undisputed that the FAA is a government agency charged with the enforcement of a law, rule or regulation. 49 USCS § 46106. The FAA is the arm of the Federal Government charged with regulating the Airline industry, imposing fines/penalties for violations and imposing disciplinary actions against those who violate the Federal Aviation Regulations (hereinafter "FAR"). *Id.*

Prior to NASA being charged with collecting information regarding safety violations, the FAA was responsible for collecting this data. But because the FAA is also the enforcement agency for the Airline industry pilots and others were hesitant to submit information for fear of reprisal or being disciplined by the FAA. Thus, in 1976 the FAA's responsibility for collecting safety information was transferred to NASA. (Exhibit 1, pg. 15903). Even though NASA assists the FAA in assessing safety within the airline industry it is not an agent of the FAA, for it has no authority to enforce the law. In fact, several functions of NASA (ASRS) are to protect individuals from disciplinary action by the FAA.

To effectuate the free flow of information, no reports submitted to NASA (ASRS) on or after April 15, 1976 will be used by, or be made available to the FAA for disciplinary purposes, unless there is a criminal violation or an accident. (Exhibit 1, pg. 15903). This underscores <u>the FAA's commitment to waive disciplinary action in cases covered by the NASA (ASRS) program</u>. *Id.* In other words, NASA (ASRS) was established to encourage the aviation community to report unsafe conditions without fear of reprisal by the FAA, an *enforcement* agency. To further ensure anonymity and prevent against FAA disciplinary action, NASA (ASRS) is required to "de-identify," within twenty-four (24) to forty-eight (48)

hours, all information contained in the reported incident that identifies the person(s) filing the report and any other person mentioned in the report. *Id* at 15903. Moreover, in exhibit 2 under the heading of Prohibition Against the Use of Reports for Enforcement Purposes, it states;

> "*...The FAA will not seek, and NASA will not release or make available to the FAA*, any report filed with NASA under the ASRS or any other information that might reveal the identity of any party involved in an occurrence or incident reported under the ASRS. There has been no breach of confidentiality in more than 20 years of the ASRS under NASA management."

Exhibit 2 section 5(c) (emphasis added).

Although the FAA is clearly prohibited from using information supplied to NASA (ASRS) for the basis of disciplinary action, it can use information that it receives from independent sources outside of NASA (ASRS).

> When violation of the FAR comes to the attention of the *FAA from a source other than a report filed with NASA under the ASRS*, appropriate action will be taken.

Exhibit 2 section 5(b) (emphasis added). For example, in *Copsey v. Nat'l Transportation Safety Board*, 993 F.2d 736 (10th Cir. 1993) and *Jackson v. Nat'l Transportation Safety Board*, 114 F.3d 283 (D.C. Cir. 1997) the pilots in both cases reported safety incidents to NASA (ASRS). Independent of their reports to NASA (ASRS), the FAA received information concerning these safety violations from sources other than NASA (ASRS) and as a result of this *independent* information the FAA disciplined the pilots. These cases are consistent with the purpose and function of the NASA (ASRS) program, that NASA (ASRS) will not insulate an individual if the FAA receives the information from a source outside NASA (ASRS).

Under its current functions NASA (ASRS) is not agent of the FAA for purposes of enforcing a law, rule, or regulation. To the contrary, it is clear that NASA (ASRS) was created to do exactly the opposite of assisting the FAA in enforcing the law; it is *charged with* protecting all parties involved in by "de-identifying" all names, withholding the report from the FAA, and insulating individuals from disciplinary action by the FAA.

III. **Defendant (Amerijet) Is Not An Agent Of The FAA**

Defendant is not an agent of the FAA for the same reason that NASA (ASRS) is not an agent of the FAA, Defendant is not charged with the power to enforce laws, rules, or regulations governing aviation. If Defendant was determined to be an agent of the FAA, then all private companies involved in a business regulated by a State or Federal agency would be agents of the appropriate government agency that is charged with enforcing the law, rules, or regulations of the particular industry. That simply is not the intent of the Whistle Blower Act.

Although there are procedures in place for airline companies to report safety violations to the FAA, these procedures are strictly "voluntary." There is no requirement that a company must or shall report its safety violations to the FAA. *AC-00-58 Voluntary Reporting Program* (attached as exhibit 3).[4] Moreover, this voluntary program is similar to NASA (ASRS) in that a company can limit its potential penalty by providing the information to the FAA. In other words, if the company chooses not to report its safety violations and the FAA subsequently learns of these violations then the company can not escape a penalty.

As with NASA (ASRS), Defendant is not charged with the enforcement of a law, rule, or regulation nor is it an agent of the FAA for the purpose of enforcing a law, rule, or regulation.

[4] Exhibit 3 was submitted as part of Plaintiff's response to Defendant's original Motion to Dismiss.

IV. **Count I Of Plaintiff's Amended Complaint Fails To State A Claim Upon Which Relief Can Granted**

It is undisputed that Plaintiff submitted his report to NASA (ASRS) (Amended Complaint ¶ 23). The NASA (ASRS) program was designed to collect **anonymous** information regarding safety, **not to enforce** laws, rules, or regulations. It is merely a repository for collecting safety information and, furthermore, no disciplinary action can be taken against an individual who reports the incident to NASA (ASRS). There is nothing Plaintiff can point to that states NASA (ASRS) is mandated, empowered, or sanctioned to enforce the laws, rules, or regulations governing aviation. Nor is NASA an agent for the FAA. It does not provide information to the FAA for such purpose, in fact, it is clearly charged with "de-identifying" reports to ensure anonymity. Likewise, Defendant is not an agent of the FAA, as it to is not charged with the enforcement of a law, rule, or regulation. As such, Plaintiff has failed to state a claim upon which relief can be granted.

WHEREFORE, Defendant respectfully requests this court grant its Motion to Dismiss Count I of Plaintiff's Amended Complaint.

Respectfully submitted,

Susan Potter Norton
Florida Bar No. 0201847
Stephen P. Santiago
Florida Bar No. 0964425

ALLEN, NORTON & BLUE, P.A.
121 Majorca, Suite 300
Coral Gables, FL 33134
Tel: (305) 445-7801
Fax: (305) 442-1578

73351_1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail, on this 3 day of July 2000, upon:

Ms. Valerie Shea, Esq.
HEINRICH GORDON HARGROVE
WEIHE & JAMES
500 East Broward Boulevard, Suite 1000
Ft. Lauderdale, Florida 33394

S.P.
Attorney

73351_1

methodologies, policies, and standards necessary to carry out sections 1514, 1533 (a), (b), and (c), 1534, and 1635 of the Public Health Service Act, as amended by P.L. 93-641.

The authorities delegated under Titles XV and XVI of the Public Health Service Act are limited to those functions required for, or involved in, the administration of programs and operations assigned to the Health Resources Administration.

These authorities may be redelegated.

Dated: April 5, 1976.

R. MOUER,
*Executive Officer,*
*Public Health Service.*

[FR Doc.76-10828 Filed 4-14-76;8:45 am]

---

## DEPARTMENT OF TRANSPORTATION

### Coast Guard

[76-072]

## NEW YORK HARBOR VESSEL TRAFFIC SERVICE ADVISORY COMMITTEE

### Open Meeting

The New York Harbor Vessel Traffic Service Advisory Committee will conduct and open meeting on Thursday May 6, 1976, in the Auditorium of Building 108, Governors Island, New York. The meeting is scheduled to begin at 10:30 a.m.

The agenda for this meeting of the New York Harbor Vessel Traffic Service Advisory Committee is as follows:

1. Report from the Executive Committee given by Capitain K. C. Torrens, Chairman of the Executive Committee.
2. Presentation of the Annual Report for 1975.
3. Status Report of the New York Vessel Traffic Service by the Traffic Service Staff.
4. Presentation of the Operating Procedures for the New York Harbor Vessel Traffic Service.
5. Comments or questions from the floor.

The New York Harbor Vessel Traffic Service Advisory Committee was established by the Commander, Third Coast Guard District to advise on the need for, and development, installation and operations of a Vessel Traffic Service for the New York Harbor.

Members of the Committee serve voluntarily without compensation from the Federal Government, either travel or per diem.

Interested persons may obtain additional information or the summary of the minutes of the meeting by writing to:

Commander, D.A. Sukal, Project Officer, Vessel Traffic Service, Building 400, Section N., Third Coast Guard District, Governors Island, New York, N.Y. 10004

or by calling (212) 264-0409.

This Notice is issued under section 10 (a) of the Federal Advisory Committee Act (P.L. 92-463, 86 Stat. 770, 5 U.S.C. App. I).

Dated: April 12, 1976.

S. A. WALLACE,
*Rear Admiral, U.S. Coast Guard*
*Chief, Office of Public and International Affairs.*

[FR Doc.76-10811 Filed 4-14-76;8:45 am]

---

### Federal Aviation Administration

## AVIATION SAFETY REPORTING PROGRAM

### Modification To Reflect Cooperation With the National Aeronautics and Space Administration

On April 18, 1975, the Federal Aviation Administration (FAA) issued a Notice announcing the establishment of its Aviation Safety Reporting Program (ASRP), a program designed to increase FAA's awareness of deficiencies and discrepancies in the National Aviation System by encouraging the free and unrestricted flow of information that might be instrumental in avoiding accidents or incidents before they occur. That Notice was published in the FEDERAL REGISTER (40 FR 17775) on April 22, 1975.

This notice modifies the FAA ASRP, effective April 15, 1976, by providing for the submission of aviation safety reports directly to the National Aeronautics and Space Administration (NASA) for screening and analysis under that agency's Aviation Safety Reporting System (ASRS). This change is designed to further ensure anonymity under the FAA ASRP and underscore FAA's commitment to waive disciplinary action in cases covered by the program.

Accordingly, with respect to aviation safety reports submitted under the NASA ASRS on and after April 15, 1976, this Notice also announces that, except in case of accidents or criminal offenses, those reports will not be used by, or made available to the FAA for disciplinary purposes, and that, on and after April 15, 1976, the same waiver of disciplinary action will be assured, for reports submitted in accordance with the NASA ASRS, as was previously announced for reports submitted to the FAA under the FAA ASRP. Reports involving accidents or criminal offenses will continue to be completely excluded from the FAA ASRP. Whether such reports come from within, or outside of, the NASA ASRS, no waiver of disciplinary action applies in those two instances.

The FAA continues to encourage the reporting of any information which a person believes discloses any potentially unsafe condition in the National Aviation System. The FAA ASRP, however, continues to apply only to that part of the System involving the safety of aircraft operations, including departure, en route, approach and landing operations and procedures, air traffic control procedures, pilot/controller communications, the aircraft movement area of the airport, and near mid-air collisions. Pilots, air traffic controllers, and all other members of the aviation community and the general public are urged to file written reports of any discrepancy or deficiency noted in these areas.

The FAA ASRP is a voluntary program dependent entirely upon the participation of persons who observe potential or actual safety problems in the National Aviation System. It is a positive program intended to ensure the safest possible system by identifying, preventing, or correcting unsafe conditions before they lead to accidents. The primary objective of the FAA ASRP is to obtain all possible information that might assist the FAA in evaluating and enhancing the safety and efficiency of the National Aviation System. This program is based on the conviction that an unrestricted flow of information from those who use the system on a regular basis is one of the primary means of monitoring its performance.

Since the reporting of incidents may be discouraged because of a fear of FAA disciplinary action against other persons involved in a possible violation, potential FAA disciplinary action will continue to be waived not only with respect to persons who submit timely aviation safety reports, but also with respect to any other person involved in a timely reported incident.

In order to assist the FAA in reaching its goal of eliminating unsafe conditions and preventing avoidable accidents, the NASA ASRS will complement the FAA ASRP by including provisions for the periodic reporting of its findings to the public, the aviation community, and the FAA. This will include quarterly reports containing statistical data concerning submitted aviation safety reports. In addition, under the NASA ASRS, the procedures that are developed to process aviation safety reporters will assure that reports are initially screened for—

(1) Time-critical information which, after deidentification, will be promptly referred to the FAA and other interested parties;

(2) Information concerning criminal offenses, which will be promptly referred to the Department of Justice and the FAA; and

(3) Information concerning accidents, which will be promptly referred to the National Transportation Safety Board and the FAA.

The anonymity of persons involved in a reported incident or event will be assured, in all respects, to the extent permitted by law. All information dealing with the identities of persons filing aviation safety reports and persons involved in those reports will be deleted by NASA (except for reports involving accidents and criminal offenses). This de-identification will be accomplished by NASA, normally within 24-48 hours, if no further information is requested from the reporter by NASA. In addition, except in the case of criminal offenses or accidents, the report, as stated above, will not be made available to or used by the FAA in any way for disciplinary purposes.

EXHIBIT
1

cv-06070-WJZ Document 28 Entered on FLSD Docket 07/06/2000 Pa

To better enable the FAA to assure that all persons involved in a reported incident or event (not only the person making the report) receive the appropriate waiver of disciplinary action under the FAA ASRP, NASA will retain, for a period of 45 days following the incident, a separate record of each report received. After this time period (unless FAA has queried NASA about an incident within the 45 days) it will be presumed by the FAA that the incident was reported under the program and that the persons involved are entitled to a waiver of disciplinary action. Furthermore, during the 45 day period, NASA will not release to the FAA any information that might reveal the identity of any person involved in an aviation safety report except to the extent necessary to respond to FAA inquiries made to determine whether that person is entitled to a waiver of disciplinary action under the FAA ASRP.

If FAA queries NASA about a reported incident within the 45 day period, the waiver provisions continue to apply to all reports covered by the FAA ASRP as follows:

1. For reports involving reckless operation, gross negligence, or willful misconduct, no FAA disciplinary action will be taken based on a submitted aviation safety report or on any information in any way derived from that report. However, FAA disciplinary action may be taken based on information obtained wholly outside of, and apart from, information submitted under the FAA ASRP.

2. For reports not involving reckless operation, gross negligence, or willful misconduct, that are submitted under the FAA ASRP, FAA diciplinary action will not be taken based on information obtained from aviation safety reports submitted in accordance with the NASA ASRS or based on any other information derived from any other source within or outside the FAA ASRP.

Based on information obtained from this program, including the time-critical information from NASA mentioned above, the FAA will take whatever corrective or remedial action is necessary to remedy defects or deficiencies in the National Aviation System. However, as stated above, this action will not include disciplinary action waived under this program.

The modified FAA ASRP, described herein, will become effective on April 15, 1976. All reports submitted on or after that date are subject to the modified program and should be sent to NASA rather than to the FAA. The waiver of disciplinary action will be assured (1) if a written report is completed and delivered or postmarked and forwarded to NASA within 5 days of the incident, or (2) if NASA is notified in writing (within those 5 days) of the date and location of the incident or occurrence, and a complete written report is then filed within 15 days of the incident.

While a written report must be submitted for persons wishing to participate in the program, the program is completely voluntary, and no particular form is required for the report. However, persons are encouraged to use NASA ARC Form 277, Aviation Safety Report, which is pre-addressed and postage free, and which will be available free of charge at FAA offices. This form (or a narrative report) should be mailed to: Aviation Safety Reporting System, P.O. Box 189, Moffett Field, CA 94035. This form will be available approximately April 15, 1976. Federal and State agencies, and organized industry groups may obtain forms in quantity by submitting requests to the Department of Transportation, Federal Aviation Administration, Aeronautical Center, Distribution Section, AAC-45C, P.O. Box 25082, Oklahoma City, OK 73125. Reports submitted prior to April 15, 1976, will continue to be processed in accordance with the terms of the FAA ASRP described in the original notice on April 18, 1975.

As stated in the earlier notice, the FAA ASRP will be constantly monitored to determine its effectiveness and will be clarified, modified, or expanded as necessary. All interested persons are invited to submit comments or suggestions on the program. Submissions should be addressed to the Office of Aviation Safety, Federal Aviation Administration, Washington, D.C. 20591.

This program applies to incidents occurring after April 30, 1975. As modified herein, it applies to incidents which occur on and after April 15, 1976. This program is adopted under the authority of §§ 305, 307(c), 312(c), 313(a), 601(a), 701(a), and 1104 of the Federal Aviation Act of 1958 (49 U.S.C. §§ 1346, 1348(c), 1353(c), 1354(a), 1421(a), 1441(a), and 1504); and Section 6(c) of the Department of Transportation Act (49 U.S.C. § 1655(c)).

Issued in Washington, D.C., on April 12, 1976.

J. W. COCHRAN,
*Acting Administrator.*

[AC No: 00-46A Date: March 31, 1976]

ADVISORY CIRCULAR

DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION

SUBJECT: AVIATION SAFETY REPORTING PROGRAM

1. *Purpose.* This circular is to advise that the Federal Aviation Administration (FAA) will modify the Aviation Safety Reporting Program (ASRP) effective April 15, 1976, by utilizing the National Aeronautics and Space Administration (NASA) as a third party to receive and analyze Aviation Safety Reports. This study of the National Aviation System invites pilots, controllers, and other users of the airspace or any other person to report to NASA actual or potential discrepancies and deficiencies involving the safety of aircraft operations. The program applies to that part of the system involving the safety of aircraft operations, including departure, enroute, approach and landing operations and procedures, air traffic control deficiencies, pilot/controller communications, the aircraft movement area of the airport, and near mid-air collisions. The success of this program to improve safety depends on the free, unrestricted flow of information from the users of the National Aviation System. The objective of the modification is to increase the flow o information.

2. *Cancellation.* Advisory Circular 00-4 dated May 9, 1975, is cancelled.

3. *Background.* a. The primary mission o the FAA is to promote aviation safety. T further this mission, the FAA instituted voluntary Aviation Safety Reporting Program on April 30, 1975, designed to encourag the reporting and identification of deficiencies and discrepancies in the system befor they cause accidents or incidents.

b. The FAA has determined that the ASR effectiveness would be greatly enhanced i the receipt, processing, and analysis of th raw data were accomplished by a third party This would further ensure the anonymity o the reporter and of all persons involved in a reported incident, and, consequently, increase the flow of information necessary fo the effective evaluation of the safety and efficiency of the system. Accordingly, the FA and NASA have agreed that NASA will estab lish an Aviation Safety Reporting System (ASRS) to perform these functions.

4. *NASA Responsibilities.* a. NASA will establish an Aviation Safety Reporting System to provide for the receipt, analysis, an periodic reporting of findings obtaine through the reporting program to the public, the aviation community and FAA.

b. NASA will form an ASRS advisory committee comprised of representatives from the aviation industry, consumers, DOD NASA, and FAA to advise NASA on the conduct of the ASRS. The committee will conduct periodic meetings to determine an ensure the effectiveness of the reportin system.

5. *Processing of reports.* a. NASA will develop procedures to process Aviation Safet Reports. These procedures will assure tha reports are initially screened for:

1. Time-critical information which, afte de-identification, will be promptly referre to FAA and other interested parties.

2. Information concerning criminal offenses, which will be promptly referred t the Department of Justice and FAA.

3. Information concerning accidents which will be promptly referred to the National Transportation Safety Board and th FAA.

b. Information that might assist identification of persons filing reports and person named in those reports will be deleted, except for reports covered under Paragraph a.2. and a.3. above. This will be accomplishe normally within 24-48 hours if no furthe information is requested from the reporter.

6. *Waiver of disciplinary action.* a. Provided a timely report has been filed, FA disciplinary action is waived against all persons involved in the incident, as follows:

1. FAA has a period of forty-five days following an incident to ask NASA whether a timely report has been filed on that incident Except as provided in paragraphs a.2 and a. below, the waiver of disciplinary action applies if FAA does not make this reques within the time period specified, or FAA ascertains through NASA that a timely repor was filed.

2. FAA disciplinary action is not waive for cases involving accidents or crimina offenses, which are wholly excluded from th program.

3. Reports involving reckless operatio gross negligence or willful misconduct ma not be used for FAA disciplinary purpose Disciplinary action may be taken in such cases, however, on the basis of informatio obtained independently of the Aviatio Safety Report.

b. The following are examples of conduc that has, in the past, been identified a reckless operation, gross negligence, or willful misconduct:

1. Intentional buzzing dangerously close to persons or property.

2. Intentional operation of an aircraft in instrument flight rule weather conditions without proper air traffic control clearances or authorization.

3. Knowingly performing acrobatic flight within a control zone or a Federal airway.

4. Intentional unauthorized descent below published decision height or minimum descent altitudes while conducting an actual instrument approach.

5. Knowingly executing an unauthorized instrument approach in controlled airspace.

6. Intentional operation of an aircraft that is substantially overweight.

c. The waiver of disciplinary action, where applicable, covers all persons involved in a reported incident, not only persons making, or named in, an Aviation Safety Report.

d. Each Aviation Safety Report has a tear-off portion which contains the information that identifies the person submitting the report. This tear-off portion will be removed by NASA, time stamped, and returned to the reporter as his receipt. This will provide the reporter with proof that he filed the report on a specific incident or occurrence.

e. NASA will maintain a separate record of each report received for 45 days following the incident, which will include the date, time, location, and type of incident (but not the identity of the person making the report). Retention of this data is necessary to determine whether an individual is entitled to protection under the ASRP. When the FAA receives information concerning a specific incident, it requests NASA to advise whether or not the incident has been reported. (See paragraph 6.a.).

f. Based on information obtained from this program, including the time critical information from NASA mentioned above, the FAA will take whatever corrective or remedial action is necessary to remedy defects or deficiencies in the National Aviation System. However, as stated above, this action will not include disciplinary action waived under the ASRP.

7. *Reporting procedures.* a. The waiver of disciplinary action, if otherwise applicable, will be assured if a written report is completed and delivered or postmarked and forwarded to NASA within 5 days of the incident, or if NASA is notified in writing within 5 days of the date and location of the incident or occurrence, and a complete written report is filed within 15 days of the incident. Such notification should be directed to: Aviation Safety Reporting System, P.O. Box 189, Moffett Field, CA 94035.

b. NASA ARC Form 277, which is preaddressed and postage free, will be available at FAA offices for persons who wish to participate in the program. This form or narrative report should be completed to describe the discrepancy or deficiency and mailed to: Aviation Safety Reporting System, P.O. Box 189, Moffett Field, CA 94035.

c. This program does not eliminate responsibility for reports, narratives, or forms presently required by existing directives.

8. *Effective date.* The modified Aviation Safety Reporting Program described by this Advisory Circular is effective April 15, 1976. On and after that date, all Aviation Safety Reports should be sent to NASA rather than the FAA.

9. *Availability of Forms.* a. Additional copies of the attached reporting form (NASA ARC Form 277) may be obtained free of charge from FAA offices.

b. Government, State and organized industry groups may obtain forms in quantity by submitting requests to the Department of Transportation, Federal Aviation Administration, Aeronautical Center, Distribution Section, AAC-450, P.O. Box 25082, Oklahoma City, Oklahoma 73125.

c. NASA ARC Form 277, Aviation Safety Report, will be available approximately April 15, 1976. An initial distribution will be made to regions, centers and FAA facilities. Forms will be stocked in the FAA Depot and will be available through normal supply channels, NSN 0052-00-845-4001, unit of issue: sheet.

JOHN L. MCLUCAS,
*Administrator.*

MEMORANDUM OF AGREEMENT BETWEEN NATIONAL AERONAUTICS AND SPACE ADMINISTRATION AND DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

AVIATION SAFETY REPORTING SYSTEM

I. *Background.* A. The Administrator of the Federal Aviation Administration (FAA), Department of Transportation is empowered and directed to encourage and foster the safety in air commerce. Pursuant to this authority, the Administrator adopted a voluntary Aviation Safety Reporting Program (ASRP) (40 CFR 17775, April 22, 1975) designed to acquire previously unobtainable information concerning potential deficiencies and discrepancies in the national aviation system.

B. The National Aeronautics and Space Administration (NASA) has a continuing responsibility to engage in aviation research and development programs and is authorized in carrying out this responsibility to enter into appropriate agreements with other government agencies.

II. *Purpose.* The FAA has determined that the effectiveness of the ASRP would be greatly enhanced if the receipt, processing, and analysis of the raw information received were to be accomplished by NASA rather than the FAA. This would further ensure the anonymity of the reporter and consequently increase the flow of information so necessary for the effective evaluation of the safety and efficiency of the aviation system. NASA has determined that undertaking this task would be consistent with its aviation research and development responsibilities and would significantly increase its ability to fulfill those responsibilities.

III. *Authority.* This agreement is entered into under the authority of Section 302(k) and 313 of the Federal Aviation Act of 1958, as amended, Section 601 of the Economy Act, as amended, and the National Aeronautics and Space Act of 1958, as amended.

IV. *Aviation Safety Reporting System.* A. *General.* NASA will design and implement an Aviation Safety Reporting System (ASRS). This system will be designed primarily to provide information to the FAA and the aviation community to assist the FAA in reaching its goal of eliminating unsafe conditions and preventing avoidable accidents. In addition, the system will be designed in a manner that will permit its operation by another party at the expiration of this agreement.

B. *Description.* The ASRS will be designed to perform four primary functions. They are (1) receipt de-identification and initial processing; (2) analysis and interpretation; (3) dissemination of reports and other data; and (4) system evaluation and review.

1. NASA will develop procedures for receiving, de-identifying, and processing ASRS reports including those covered by the FAA's ASRP. This procedure will assure that reports are initially screened by NASA officials for—

(a) time critical information which will be promptly referred to the FAA and other interested parties for appropriate action;

(b) information concerning criminal offenses which will be promptly referred to the Department of Justice and the FAA; and

(c) information concerning accident which will be promptly referred to the Na tional Transportation Safety Board and th FAA.

Except for reports covered by paragraph (b) and (c), reports will be de-identified b deleting all information that would reve identities of persons filing reports and per sons named in those reports. De-identifica tion will be accomplished as soon as possibl after determining that no additional data i needed, normally within 24-48 hours. Th person submitting the report will be maile a receipt and the anonymous data place in the NASA data base. The data base will b made available for public inspection excep as authorized or required by Federal law t be withheld.

2. NASA will establish procedures to pro vide for the analysis and interpretation o safety reports.

3. NASA will prepare periodic reports, sta tistical summaries, and other data necessar to depict the results of the analysis an interpretation of the safety reports. Th material will be transmitted to the FAA an other users of the system to facilitate the evaluation and action to eliminate unsa conditions or practices.

4. NASA will provide for the continuin review and evaluation of the system to e sure that it is operating as efficiently an effectively as practicable.

C. *ASRP Records.* To enable the FAA t assure the protection of individuals oth than the reporting party, NASA will retai for a period of 45 days a separate record o each report received. That record will incluc the date, time, location and type of incide to permit the determination of whether a individual is entitled to protection und the FAA's ASRP.

D. *Confidentiality.* Experience gained b the FAA under its near mid-air collision pr gram and the ASRP has indicated that th willingness of persons to submit a repo depends to a large degree on preserving th anonymity of persons filing reports and pe sons named in those reports. According NASA will not release to the FAA any info mation that might reveal the identity such persons except to the extent necessa to respond to FAA inquiries made to dete mine whether they are entitled to protecti from disciplinary action under the ASRP.

E. *Staffing and Management.* The AS functions will be performed by NASA wi assistance of such others as may be nece sary. All forms used in the ASRS will NASA forms. All records will be the recor of NASA.

F. *Advisory Committee.* NASA will form a ASRS Advisory Committee within the fram work of the NASA Research and Technolo Advisory Council. The purpose of the Co mittee will be to advise NASA on the d sign and conduct of the ASRS program a to provide an additional means of co munication with the aviation communi concerning the ASRS. The Committee w also be responsible for advising NASA wi respect to the maintenance of the anonym ity of persons submitting reports or nam therein. The membership of the Commi tee will be appointed by NASA from all e ments involved in the operational aspects the national aviation system including FA and DOD.

G. *Schedule.* The ASRS will become oper tional by April 15, 1976, on which date NA will begin receiving safety reports. The fi report summarizing ASRS operations will published three months thereafter. A f evaluation of ASRS operations and proc dures will be made in June 1977 by the AS Advisory Committee and necessary syste and procedural changes designed and i

plemented. The utility and effectiveness of the ASRS will be re-evaluated by the Committee in June 1979. At that time, the Committee will make recommendations to the Administrators of NASA and the FAA concerning the future utilization and continuance of the system.

V. *Responsibilities.* A. NASA will provide the personnel, services, materials, and facilities necessary for the design and implementation of the ASRS until termination of this Agreement or June 1980, whichever first occurs.

B. NASA will formally establish the ASRS and provide for the publication of a description of the system and such other information concerning that system as is necessary to ensure its maximum utilization by the aviation community and other interested persons.

C. FAA will provide the following:

1. The services to NASA of a senior ATC specialist for one month for advice and instruction on the FAA's air traffic control system. The specialist will also be made available for consultation at NASA's request for approximately 20 percent of the following year.

2. Assist NASA in obtaining necessary information about other areas of the national aviation system, including operational incidents and problems relevant to the research studies to be conducted under the ASRS.

3. Make FAA personnel available to assist NASA in the design of the ASRS.

4. Distribute the NASA ASRS forms, designed by NASA and bearing the NASA logo.

D. The FAA will modify its ASRP to provide the same waiver of disciplinary action for persons involved in incidents reported under ASRS as is presently provided persons by the ASRP. In addition, the FAA will expand the waiver to include a prohibition against the use of any information submitted under the ASRS (or derived therefrom) in any disciplinary action except information concerning criminal violations or accidents. The FAA will further provide for the waiver of disciplinary action in cases where the investigation has not been initiated in sufficient time to determine, under Section IV C., whether the person involved has been afforded protection against such action by the filing of the report under the ASRS. Finally, the FAA will delete aspects of its program, such as reporting, which would duplicate NASA's efforts under this agreement.

E. Prior to the time that the ASRS becomes operational, the FAA and NASA will agree on criteria to be used by NASA to determine whether a report contains time critical information within the meaning of Section IV B.1.(a).

F. The FAA and NASA will jointly develop a continuing information program designed to fully acquaint the aviation community and the public with all aspects of the ASRP, ASRS, and their interrelationship. All press releases and other public announcements will be subject to prior consultation between the parties.

G. FAA and NASA will each designate an official for the purpose of ensuring continuing liaison concerning the administration of the ASRS. These officials will meet as required to exchange information and ensure that the system is meeting its objectives.

VI. *Funding.* A. The FAA will reimburse NASA for amounts paid by NASA to any contractor assisting NASA in the performance of its ASRS functions up to a maximum of $500,000 for FY-1976, which maximum amount may be increased or decreased by mutual agreement of the parties. Appropriate maximum levels of obligation on the part of the FAA for subsequent fiscal years shall be periodically mutually agreed to by the parties.

B. NASA will provide all necessary funding for the salary and administrative service costs associated with the design and implementation of the ASRS, costs associated with the operation of the Advisory Committee, and any other costs relating to the ASRS not otherwise specifically provided for herein.

VII. *Other provisions.* A. NASA will publish quarterly reports providing routine statistical ASRS findings. These reports will each contain an appendix identifying time critical reports processed during the reporting period. NASA will also publish from time to time special reports describing the findings of special analyses conducted as a result of requests by the Advisory Committee or by others.

B. NASA will provide the FAA with quarterly reports summarizing project highlights, accomplishments, and resource utilization and annual reports summarizing ASRS findings and results of special studies.

VIII. *Effective Date.* This Agreement shall enter into force and effect when signed by both parties and shall remain in force and effect until June 1980 unless and until sooner terminated. Such termination may be by mutual agreement of the parties or by notice in writing forwarded by one party to the other not less than twelve months in advance of such termination.

Signed in Washington, D.C. on August 15, 1975.

NATIONAL AERONAUTICS AND SPACE ADMINISTRATION

GEORGE W. LOW,
*Deputy Administrator.*

FEDERAL AVIATION ADMINISTRATION,

JAMES E. DOW,
*Acting Administrator.*

[FR Doc.76-10929 Filed 4-14-76;8:45 am]

## Federal Aviation Administration

[Docket No. 15519]

## RESTRICTED AREA R-3104—KAHOOLAWE, HAWAII

### Public Hearings

The Federal Aviation Administration (FAA) will hold two public hearings concerning Mayor Cravalho's petition for revocation of Restricted Area R-3104. These hearings will afford interested persons the opportunity to present views, data, and arguments which relate to the petition.

The hearings will be conducted at the following times and locations:

May 11, 1976, 9:00 a.m.-4:00 p.m., Lobby Room of Ilikai Hotel, 1777 Ala Moana Blvd., Oahu, Hawaii.

May 13, 1976, 10:00 a.m.-5:00 p.m., Public Library, Kahului Branch, Kam and School Street, Kahului, Maui, Hawaii.

The hearings will be informal in nature and will be conducted by a designated representative of the Administrator.

Since the hearings will not be evidentiary or judicial in nature, there will be no cross-examination or other adjudicatory procedure applied to the presentations. The Chairman of the meeting is empowered to conduct the meeting in a manner that, in his judgement, will facilitate the orderly conduct of bu ness. Interested persons wishing to ma rebuttal statements will be given i opportunity to do so at the conclusion the presentations in the same order which initial statements are made.

Those persons wishing to make o statements at the hearings must noti the FAA before May 10, 1976, that th desire to be heard, and indicate t amount of time requested for their i tial statements. Presentations will scheduled on a first come first ser basis, as time may permit. Attendar is open to the interested public, but li ited to the space available.

In addition to material presented f the purpose of the hearings, persons r participating in the hearings are invit to submit relevant written commen Such written comments should ident the docket number and be submitted duplicate to: Federal Aviation Admin tration, Office of the Chief Counsel, A tention: Rules Docket, AGC-24, 800 I dependence Avenue, S.W., Washingt D.C. 20591. The closing date for subm ting written comments is May 15, 19 All comments will be available for e amination in the FAA Rules Docket bo before and after the closing date f comments.

For notification of participation wr or call: Chief, Airspace and Procedu Branch, P.O. Box 4009, Honolulu, H waii 96813 (808) 955-0401.

(Sec. 306, 307 and 313(a) of the Federal A ation Act of 1958 (49 U.S.C. 1347, 1348 a 1354(a) and Sec. 6(c) of the Departm of Transportation Act (49 U.S.C. 1655(c)

Issued in Washington, D.C., on Ap 13, 1976.

WILLIAM E. BROADWATER,
*Chief, Airspace and Air Traffic Rules Division*

[FR Doc.76-11097 Filed 4-14-76;8:45 am]

## National Highway Traffic Safety Administration

## JEEP CORP. ET AL.

### Denials of Petitions To Commence Rulemaking

This notice sets forth the reasons : denial of three petitions for rulemak to initiate or amend Federal motor v hicle safety standards promulgat under authority of § 103 of the Natio Traffic and Motor Vehicle Safety Act ( U.S.C. 1391 et seq.). This notice is pu lished in accordance with § 124 of t Act, which provides that the Natio Highway Traffic Safety Administrati must grant or deny such petitions wit 120 days, and "If the Secretary den such petition he shall publish in t FEDERAL REGISTER his reasons for su denial" (§ 124(d)).

*Jeep Corporation. (October 16, 197* Petition to amend the present definiti of "unloaded vehicle weight" in § 571.3 Part 571 of Title 49 of the Code of Fe eral Regulations. Jeep's petition was d nied because the NHTSA concluded th the decision to include work-performi accessories in calculation of unload

# AC 00-46D - AVIATION SAFETY REPORTING PROGRAM

Department of Transportation
Federal Aviation Administration

February 26, 1997
Initiated by: ASY-300

1. **PURPOSE.** This circular describes the Federal Aviation Administration (FAA) Aviation Safety Reporting Program (ASRP) which utilizes the National Aeronautics and Space Administration (NASA) as a third party to receive Aviation Safety Reports. This cooperative safety reporting program invites pilots, controllers, flight attendants, maintenance personnel, and other users of the National Airspace System (NAS), or any other person, to report to NASA actual or potential discrepancies and deficiencies involving the safety of aviation operations. The operations covered by the program include departure, en route, approach, and landing operations and procedures, air traffic control procedures and equipment, crew and air traffic control communications, aircraft cabin operations, aircraft movement on the airport, near midair collisions, aircraft maintenance and recordkeeping, and airport conditions or services. The effectiveness of this program in improving safety depends on the free, unrestricted flow of information from the users of the NAS. Based on information obtained from this program, FAA will take corrective action as necessary to remedy defects or deficiencies in the NAS. The reports may also provide data for improving the currant system and planning for a future system.

2. **CANCELLATION.** Advisory Circular 00-46C dated February 4, 1985, is canceled.

3. **BACKGROUND.**
   a. The primary mission of the FAA is to promote aviation safety. To further this mission, the FAA instituted a voluntary ASRP on April 30, 1975, designed to encourage the identification and reporting of deficiencies and discrepancies in the system.
   b. The FAA determined that the ASRP effectiveness would be greatly enhanced if the receipt, processing, and analysis of raw data were accomplished by NASA rather than by the FAA. This would ensure the anonymity of the reporter and of all parties involved in a reported occurrence or incident and, consequently, increase the flow of information necessary for the effective evaluation of the safety and efficiency of the system. Accordingly, NASA designed and administers the Aviation Safety Reporting System (ASRS) to perform these functions in accordance with a Memorandum of Agreement (MOA) executed by the FAA and NASA on August 15, 1975, as modified September 30, 1983, and August 13, 1987. Current ASRS operations are conducted in accordance with an MOA executed by FAA and NASA on January 14, 1994.

4. **NASA RESPONSIBILITIES.**
   a. NASA ASRS provides for the receipt, analysis, and de-identification of aviation safety



reports; in addition, periodic reports of findings obtained through the reporting program are published and distributed to the public, the aviation community, and the FAA.

b. A NASA ASRS Advisory Subcommittee, composed of representatives from the aviation community, including the Department of Defense, NASA, and FAA, advises NASA on the conduct of the ASRS. The subcommittee conducts periodic meetings to evaluate and ensure the effectiveness of the reporting system.

5. **PROHIBITION AGAINST THE USE OF REPORTS FOR ENFORCEMENT PURPOSES.**

a. Section 91.25 of the Federal Aviation Regulations (FAR) (14 CFR 91.25) prohibits the use of any reports submitted to NASA under the ASRS (or information derived therefrom) in any disciplinary action, except information concerning criminal offenses or accidents which are covered under paragraphs 7a(1) and 7a(2).

b. When violation of the FAR comes to the attention of the FAA from a source other than a report filed with NASA under the ASRS, appropriate action will be taken. See paragraph 9.

c. The NASA ASRS security system is designed and operated by NASA to ensure confidentiality and anonymity of the reporter and all other parties involved in a reported occurrence or incident. The FAA will not seek, and NASA will not release or make available to the FAA, any report filed with NASA under the ASRS or any other information that might reveal the identity of any party involved in an occurrence or incident reported under the ASRS. There has been no breach of confidentiality in more than 20 years of the ASRS under NASA management.

6. **REPORTING PROCEDURES.** Forms in the NASA ARC 277 series have been prepared specifically for intended users (including ARC 277 A for air traffic use, 277B for general use including pilots, 277C for flight attendants and 277D for maintenance personnel) and are preaddressed and postage free. Completed forms or a narrative report should be completed and mailed only to ASRS at NASA, Aviation Safety Reporting System, P.O. Box 189, Moffett Field, CA 94035-9800.

7. **PROCESSING OF REPORTS.**

a. NASA procedures for processing Aviation Safety Reports ensure that the reports are initially screened for:

(1) Information concerning criminal offenses, which will be referred promptly to the Department of Justice and the FAA;

(2) information concerning accidents, which will be referred promptly to the National Transportation Safety Board (NTSB) and the FAA; and

Note: Reports discussing criminal activities or accidents are not de-identified prior to their referral to the agencies outlined above.

(3) time-critical information which, after de-identification, will be promptly referred to the FAA and other interested parties.

b. Each Aviation Safety Report has a tear-off portion which contains the information that

identifies the person submitting the report. This tear-off portion will be removed by NASA, timestamped, and returned to the reporter as a receipt. This will provide the reporter with proof that he/she filed a report on a specific incident or occurrence. The identification strip section of the ASRS report form provides NASA program personnel with the means by which the reporter can be contacted, in case additional information is sought in order to understand more completely the report's content. Except in the case of reports describing accidents or criminal activities, no copy of an ASRS form's identification strip is created or retained for ASRS files. Prompt return of identification strips is a primary element of the ASRS program's report de-identification process and ensures the reporter's anonymity.

8. **DE-IDENTIFICATION.** All information that might assist in or establish the identification of persons filing ASRS reports and parties named in those reports will be deleted, except for reports covered under paragraphs 7a(1) and 7a(2). This de-identification will be accomplished normally within 72 hours after NASA's receipt of the reports, if no further information is requested from the reporter.

9. **ENFORCEMENT POLICY.**
   a. The Administrator of the FAA will perform his/her responsibility under Title 49, United States Code, Subtitle VII, and enforce the statute and the FAR in a manner that will reduce or eliminate possibility of, or recurrence of, aircraft accidents. The FAA enforcement procedures are set forth in Part 13 of the FAR (14 CFR Part 13) and FAA enforcement handbooks.
   b. In determining the type and extent of the enforcement action to be taken in a particular case, the following factors are considered:
      (1) nature of the violation;
      (2) whether the violation was inadvertent or deliberate;
      (3) the certificate holder's level of experience and responsibility;
      (4) attitude of the violator;
      (5) the hazard to safety of others which should have been foreseen;
      (6) action taken by employer or other government authority;
      (7) length of time which has elapsed since violation;
      (8) the certificate holder's use of the certificate;
      (9) the need for special deterrent action in a particular regulatory area, or segment of the aviation community; and
      (10) presence of any factors involving national interest, such as the use of aircraft for criminal purposes.
   c. The filing of a report with NASA concerning an incident or occurrence involving a violation of 49 U.S.C. Subtitle VII, or the FAR is considered by FAA to be indicative of a constructive attitude. Such an attitude will tend to prevent future violations. Accordingly, although a finding of violation may be made, neither a civil penalty nor certificate suspension will be imposed if:
      (1) the violation was inadvertent and not deliberate;
      (2) the violation did not involve a criminal offense, or accident, or action under 49

U.S.C. Section 44709 which discloses a lack of qualification or competency, which is wholly excluded from this policy;

(3) the person has not been found in any prior FAA enforcement action to have committed a violation of 49 U.S.C. Subtitle VII, or any regulation promulgated there for a period of 5 years prior to the date of occurrence; and

(4) the person proves that, within 10 days after the violation, he or she completed and delivered or mailed a written report of the incident or occurrence to NASA under ASRS. See paragraphs 5c and 7b.

Note: Paragraph 9 does not apply to air traffic controllers. Provisions concerning air traffic controllers involved in incidents reported under ASRS are addressed in FAA Order 7210.3G, Facility Operations and Administration.

**10. OTHER REPORTS.** This program does not eliminate responsibility for reports, narratives, or forms presently required by existing directives.

**11. EFFECTIVE DATE.** This modified Aviation Safety Reporting Program described by this Advisory Circular was effective October 1, 1996.

**12. AVAILABILITY OF FORMS.**

a. Copies of reporting forms (NASA ARC Form 277, Aviation Safety Report, series) may be obtained free of charge from FAA Flight Standards District Offices or Flight Service Stations, or directly from NASA, ASRS, P.O. Box 189, Moffett Field, CA 94035-9800.

b. The NASA ARC 277 forms will be stocked at the FAA Depot (AML-640) and will be available to FAA organizations and offices through normal supply channels. The form numbers and descriptions are: NSN 0052-00-916-7000 (NASAARC277A, ATC), NSN 0052-00-916-8000 (NASAARC277B, General Use/Pilots), NSA 00-52-00-916-9000 (NASAARC277C, Cabin Crew) and NSN 0052- 00920-2000 (NASAARC277D, Maintenance).

Barry L. Valentine
Acting Administrator

# AC 00-58 - VOLUNTARY DISCLOSURE REPORTING PROGRAM

Department of Transportation
Federal Aviation Administration

05/04/98

Initiated by: AFS-350

1. **PURPOSE.**
   a. This advisory circular (AC) provides information and guidance material that may be used by a certificate holder, an indirect air carrier, a foreign air carrier (regarding compliance with its FAA-approved security program only), or a production approval holder (PAH) operating under Title 14 of the Code of Federal Regulations (14 CFR) when voluntarily disclosing to the Federal Aviation Administration (FAA) apparent violations of those FAA regulations listed in paragraph 3. The procedures and practices outlined in this AC can be applied to the maintenance, flight operations, anti-drug and alcohol misuse prevention programs, and security functions of the certificate holder's organization, the security functions of indirect air carriers and foreign air carriers, and to the manufacturing functions of the production approval holder's organization. The procedures and practices outlined in this AC can **not** be applied to those persons who are required to report failures, malfunctions and defects under 14 CFR part 21.3 and do not make those reports in the time frame required by the regulation. With respect to foreign air carriers, apparent violations of FAA regulations requiring compliance with their FAA-approved security program only are covered by this program; references in this AC to foreign air carriers are to be interpreted in light of this fact.
   b. Certificate holders, indirect air carriers, foreign air carriers, and PAHs are encouraged, but not required, to develop internal evaluation programs that continually monitor company policies and procedures and ensure that the highest level of safety and security compliance is maintained. They may voluntarily disclose apparent violations of 14 CFR covered by this program in accordance with the procedures in this AC even though an internal evaluation program has not been established. Guidance on internal evaluation programs is contained in advisory materials on the subject.

2. **CANCELLATION.** AC 120-56, Air Carrier Voluntary Disclosure Reporting Procedures, dated January 23, 1992, is canceled.

3. **RELATED REGULATIONS.** 14 CFR Parts 21, 107, 108, 109, 121, 125, 129, 133, 135, 137, 141, 142, 145, and 147.

4. **BACKGROUND.** Civil penalties under the FAA's enforcement program have always been

EXHIBIT
3

considered a means to promote compliance with the FAA's regulations, not an end in themselves. In addition to the deterrence achieved by the appropriate use of civil penalties, the public interest is also served by positive incentives to promote and achieve compliance. Indeed, the FAA believes that aviation safety is well served by incentives for certificate holders, indirect air carriers, foreign air carriers (regarding their compliance with their FAA-approved security programs), and PAHs to identify and correct their own instances of noncompliance and to invest more resources in efforts to preclude their recurrence. The FAA's policy of forgoing civil penalty actions when one of these entities detects violations, promptly discloses the violations to the FAA, and takes prompt corrective action to ensure that the same or similar violations do not recur is designed to encourage compliance with the FAA's regulations, foster safe operating practices, and promote the development of internal evaluation programs.

5. **KEY TERMS.** The following key terms and phrases are defined to ensure a standard interpretation and understanding of the FAA's voluntary disclosure policy.
   a. Evidence. For the purpose of voluntary disclosure, evidence generally should be in the form of written documentation or reports that support a certificate holder's, indirect air carrier's, foreign air carrier's, or PAH's analysis of the disclosed apparent violation and the resulting elements of the proposed comprehensive fix. Evidence generally comes from the following four elements:
      (1) Documents or manuals reviewed.
      (2) Equipment examined.
      (3) Activities observed.
      (4) Interview data.
   b. Comprehensive Fix.
      (1) A comprehensive fix is an action, or actions, proposed by the certificate holder, indirect air carrier, foreign air carrier, or PAH and accepted by the principal inspector (see definition in paragraph 5.d.) to preclude recurrence of the apparent violation that has been voluntarily disclosed under this program. (When appropriate, a regulated entity may work with an airport consortium on a comprehensive fix. However, the appropriate regulated entity will remain responsible for implementation of the comprehensive fix.)
      (2) A schedule of the dates and events encompassed by the comprehensive fix must be established and included in a letter of correction.
   c. Satisfactory Fix. A satisfactory fix is a comprehensive fix, in which all corrective measures have been completed on schedule and are satisfactory to the FAA.
   d. Principal Inspector. Under the voluntary disclosure program, principal inspector refers to the appropriate security (domestic or foreign), maintenance, avionics, operations inspector, or other designated FAA official of the program office responsible for oversight of the area of noncompliance involved in the disclosure.
      (1) The designated FAA official for voluntary disclosure concerning anti-drug and alcohol misuse prevention program violations is the Branch Manager, Compliance

and Enforcement Branch, Drug Abatement Division, FAA Headquarters;

(2) The designated FAA officials for disclosures by Category X airports are the Federal Security Managers;

(3) The designated FAA officials for disclosures by Category 1-4 airports are the managers of the Civil Aviation Security Field Offices (CASFO) or the designated representative of the CASFO manager; and,

(4) The designated FAA officials for disclosures by indirect air carriers are the regional Dangerous Goods/Cargo Security (DG/CS) coordinators.

6. **VOLUNTARY DISCLOSURE POLICY.** The FAA believes that the open sharing of apparent violations and a cooperative as well as an advisory approach to solving problems will enhance and promote aviation safety. Certificate holders, indirect air carriers, foreign air carriers, and PAHs will receive a letter of correction in lieu of civil penalty action for covered instances of noncompliance that are voluntarily disclosed to the FAA in accordance with the procedures set forth in this AC. Once the letter of correction is issued, the case will be considered closed unless the agreed-upon comprehensive fix is not satisfactorily completed by the appropriate entity.

a. In evaluating whether an apparent violation is covered by this policy, the FAA will ensure that the following five conditions are met:

(1) The certificate holder, indirect air carrier, foreign air carrier, or PAH has notified the FAA of the apparent violation immediately after detecting it and before the agency has learned of it by other means.

(2) The apparent violation was inadvertent.

(3) The apparent violation does not indicate a lack, or reasonable question, of qualification of the certificate holder or PAH.

(4) Immediate action, satisfactory to the FAA, was taken upon discovery to terminate the conduct that resulted in the apparent violation.

(5) The certificate holder, indirect air carrier, foreign air carrier, or PAH has developed or is developing a comprehensive fix and schedule of implementation satisfactory to the FAA. The comprehensive fix includes a follow-up self-audit to ensure that the action taken corrects the noncompliance. This self-audit is in addition to any audits conducted by the FAA.

b. Ordinarily, the FAA will not forgo legal enforcement action if the certificate holder, indirect air carrier, foreign air carrier, or PAH informs the FAA of the apparent violation during, or in anticipation of, an FAA investigation/inspection or in association with an accident or incident.

c. The procedures to be followed when applying the voluntary disclosure policy are further described in the following paragraphs.

7. **NOTIFICATION TO THE FAA OF AN APPARENT VIOLATION.** The Voluntary Disclosure policy applies only when notification of an apparent violation is made to the FAA by the certificate holder, indirect air carrier, foreign air carrier, or PAH immediately after the apparent violation has been discovered by that regulated entity, and before the FAA learns of

the apparent violation by some other means. The form of notification may be oral, a written hard copy, or a written electronic copy. The FAA believes that it is important for the initial notification to be within 24 hours of the discovery of the apparent violation.

a. *Notification by the certificate holder or the PAH.* When a certificate holder, indirect air carrier, foreign air carrier, or PAH notifies the FAA of an apparent violation, contact must be made with, or directed to, the appropriate principal inspector. The certificate holder, indirect air carrier, foreign air carrier, or PAH should not delay notification for any reason, and should address, to the maximum extent possible, the following items with the principal inspector:
   (1) A brief description of the apparent violation, including an estimate of the duration of time that it remained undetected, as well as how and when it was discovered.
   (2) Verification that noncompliance ceased after it was identified.
   (3) A brief description of the immediate action taken after the apparent violation was identified, the immediate action taken to terminate the conduct that resulted in the apparent violation, and the person responsible for taking the immediate action.
   (4) Verification, that an evaluation is underway to determine if there are any systemic problems and a description of the corrective steps necessary to prevent the apparent violation from recurring.
   (5) Identification of the person responsible for preparing the comprehensive fix.
   (6) Acknowledgment that a detailed written report will be provided to the principal inspector within 10 working days.

b. Disclosure to the FAA in the context of airport consortia. Normally when the FAA becomes aware of an apparent violation by a certificate holder, indirect air carrier, foreign air carrier, or PAH before that entity notifies the FAA of its apparent violation, the Voluntary Disclosure policy will not apply.
   (1) Several airports, however, have created consortia to conduct airport security vulnerability assessments. Membership in each consortium is voluntary and usually includes air carrier and airport certificate holders as well as an FAA representative. Consortium membership also may include persons and entities that do not hold certificates, including, but not limited to, law enforcement personnel, screening company representatives, and airport tenants. The purpose of an airport consortium is to conduct formal airport vulnerability assessments in order to identify actual or potential security weaknesses, and to openly discuss assessment findings with a view toward collaborating on security improvements. Airport consortia also are encouraged to engage in informal ongoing assessments of airport vulnerabilities. During consortium assessment activities, an apparent violation by a certificate holder may be discovered by someone other than the certificate holder, indirect air carrier, or foreign air carrier and brought forward for discussion by the consortium members. Because an FAA representative is a member of the consortium, the FAA may become aware of an apparent violation during this discussion, at the same time, or before, the certificate holder, indirect air carrier, or foreign air carrier, becomes aware of the apparent violation.

(2) Notwithstanding the requirement that an appropriate regulated entity notify the FAA of its apparent violation before the agency has learned of it by other means, (1) if the FAA initially becomes aware of the entity's apparent security violation before or at the same time the responsible entity does, because of information disclosed by a person or entity other than the certificate holder, indirect air carrier, or foreign air carrier during an airport consortium activity or meeting, or (2) if the FAA becomes aware of an apparent security violation at the same time the responsible regulated entity does during consortia assessments that involve both FAA personnel and a certificate holder, indirect air carrier or foreign air carrier, the apparent violation will be covered by this policy provided the other elements of paragraphs 6(a) and (b) are met. Such disclosure will be deemed notification to the FAA of the apparent violation, instead of the initial notification outlined in paragraph 7(a). The appropriate FAA principal inspector will send a written acknowledgment of the notification to the pertinent regulated entity and open an enforcement investigative report (EIR) in accordance with procedures outlined in paragraph 8. The regulated entity will have 10 work days from the date of the written acknowledgment of the apparent violation to follow up with a written report to the principal inspector in accordance with the guidance in paragraph 9. If the regulated entity does not agree that there has been a violation, or otherwise fails to provide information identified in paragraph 9, the FAA thereafter will proceed with its investigation and initiate enforcement action, if appropriate, against the entity. Except when the FAA becomes aware of an apparent violation, at the same time the regulated entity does during consortia assessments that involve both FAA personnel, and the regulated entity, or, at the same time or before the regulated entity does because of information disclosed by another entity during a consortium activity or meeting, a regulated entity self-reporting an apparent violation must follow the procedures outlined in paragraph 7(a).

8. **FAA RESPONSE TO CERTIFICATE HOLDER, INDIRECT AIR CARRIER, FOREIGN AIR CARRIER, OR PAH NOTIFICATION.** The principal inspector responds with a written acknowledgment of the entity's initial notification.

This acknowledgment includes the request for a written report, and is sent in lieu of a letter of investigation provided the written report is completed in accordance with the voluntary disclosure reporting procedures set forth in this AC and Appendix 1. The principal inspector will open an enforcement investigative report that will be closed out with a letter of correction, following satisfactory development of a comprehensive fix and schedule of implementation agreed upon by the FAA and the entity.

9. **WRITTEN REPORT OF CERTIFICATE HOLDER, INDIRECT AIR CARRIER, FOREIGN AIR CARRIER, OR PAH's WRITTEN REPORT.** The written report should be provided to the principal inspector by the entity within 10 working days after the initial notification was made. A sample format for this report is provided as appendix 1. In

summary, the written report should include the following information:

a. A list of the specific FAA regulations that may have been violated.
b. A description of the apparent violation, including the duration of time it remained undetected, as well as how and when it was detected.
c. A description of the immediate action taken to terminate the conduct that resulted in the apparent violation, including when it was taken, and who was responsible for taking the action.
d. An explanation that shows the apparent violation was inadvertent.
e. Evidence that demonstrates the seriousness of the apparent violation and the regulated entity's analysis of that evidence.
f. A detailed description of the proposed comprehensive fix, outlining the planned corrective steps, the responsibilities for implementing those corrective steps, and a time schedule for completion of the fix. If a proposed comprehensive fix is not fully developed within 10 working days, the pertinent regulated entity should provide at least an overview of its comprehensive fix plans.

   In any event, a detailed description of the comprehensive fix should be provided to the principal inspector within 30 calendar days after the certificate holder or PAH initially notified the principal inspector of the apparent violation.
g. Identification of the company official responsible for monitoring the implementation and completion of the comprehensive fix.

**10. REVIEW BY THE FAA.** The FAA works with the certificate holder, indirect air carrier, foreign air carrier, or PAH to ensure that the comprehensive fix is acceptable to the FAA.

a. If the principal inspector determines that the proposed fix is acceptable, he/she will prepare a letter of correction that includes the date by which the comprehensive fix will be implemented and completed.
b. Following issuance of the letter of correction, the case is closed but remains subject to reopening in the event that the agreed-upon actions covered in the comprehensive fix are not completed to the satisfaction of the FAA.
c. The principal inspector has the authority to close the case. Consultation with regional specialists, legal counsel, or other FAA personnel may be accomplished when deemed appropriate by the principal inspector.

**11. IMPLEMENTATION OF A COMPREHENSIVE FIX.**

a. During the implementation period, the FAA and the pertinent regulated entity should continue to work together. The FAA may advise and assist the entity in correcting any identified systemic problems. Changes can be made to the corrective action(s) outlined in the comprehensive fix when the need is identified and when the FAA concurs with the change. When a change to a comprehensive fix has been agreed upon, the principal inspector, or the inspector assigned to the case at the direction of the principal inspector, will prepare an amended letter of correction that reflects this change.
b. The FAA monitors the implementation of the corrective steps. Throughout the

implementation period, the FAA assesses the pertinent regulated entity's corrective efforts and top management's awareness of these efforts. If, during this period, the FAA determines that the steps taken by the entity are not those documented in the comprehensive fix, the letter of correction may be rescinded, the investigative report may be reopened, and appropriate legal enforcement action may be initiated.

c. Following completion of the agreed-upon corrective action(s), the certificate holder, indirect air carrier, foreign air carrier, or PAH conducts a self-audit to ensure that the action taken remedies the problem that gave rise to the apparent violation.

d. At the conclusion of the implementation period, the principal inspector makes a final assessment. If all elements of the comprehensive fix have been adequately accomplished, the principal inspector finds the fix satisfactory. A statement of follow-up investigation, confirming that the comprehensive fix was satisfactorily implemented and completed, shall be prepared to complete the FAA's investigative package.

e. If the same or similar violations are discovered subsequent to the FAA's completion of an investigative package, the FAA does not reopen the case unless it determines that the pertinent regulated entity failed to comply with all the elements of the comprehensive fix agreed upon by the FAA and the entity.

**12. DISPUTE RESOLUTION.** When disputes occur regarding the acceptance of a proposed comprehensive fix, or a modification thereto before the fix is considered satisfactory, the principal inspector and the pertinent regulated entity may request that the issue be resolved at the next level of management within the FAA. This procedure will provide for an independent assessment of the areas in disagreement.

**13. SEPARATE ACTIONS AGAINST AIRMEN OR OTHER INDIVIDUAL AGENTS.**

a. The voluntary disclosure policy applies to individual airmen or other agents of an employing certificate holder, indirect air carrier, foreign air carrier, or PAH when:

(1) The apparent violation involves a deficiency of the employing entity's practices or procedures that causes the employing certificate holder, indirect air carrier, foreign air carrier, or PAH to be in violation of a covered violation of an FAA regulation;

(2) The airman or other agent of the employing entity, while acting on behalf of the employing entity, inadvertently violates the FAA's regulations as a direct result of a deficiency of the employing entity that causes the employing entity to be in violation of the regulations. (The voluntary disclosure policy does not apply to the airman or other agent when his/her apparent violation is the result of actions unrelated to the employing entity's deficiency);

(3) The airman or other agent immediately makes the report of his/her apparent violation to the employing entity; and

(4) The employing certificate holder, indirect air carrier, foreign air carrier, or PAH immediately notifies the FAA of both the airman or other agent's apparent violation and the apparent deficiency in its practice or procedures.

b. When all the above conditions are met, a separate EIR is opened for the individual and closed with an administrative action.

c. If all the above conditions are not met, the principal inspector will review all facts associated with the case and determine what action is appropriate for individual airmen or other agents of the employing entity.

d. This provision does not apply to matters concerning qualifications to hold an airman certificate.

**14. APPLICABILITY OF THE FREEDOM OF INFORMATION ACT (FOIA) TO SELF-DISCLOSURE RECORDS.** Records submitted to the FAA for review pursuant to this voluntary self-disclosure program will be protected to the extent allowed by law.

**15. REPEATED VIOLATIONS.** If a repeated violation occurs, notwithstanding the fact that a comprehensive fix was satisfactorily completed and followed, the procedures outlined in this AC may apply to the disclosure of the repeated violation. The determination whether a repeated violation will be covered under this policy will be made by the FAA on a case-by-case basis, upon consideration of the facts and circumstances surrounding the repeated violation.

**16. CONCLUSION.** Development of internal evaluation programs should help to ensure that any apparent violations are promptly identified, corrected, and reported to the FAA. While not required, the FAA strongly encourages certificate holders, indirect air carriers, foreign air carriers, and PAH's to make internal evaluation programs an integral part of their everyday management process so that the full benefits of voluntary disclosure can be realized. Aviation safety is served by programs that allow certificate holders, indirect air carriers, foreign air carriers, and PAH's to identify and correct their own instances of noncompliance and invest more resources in efforts to preclude their recurrence.

**Guy S. Gardner**
**Associate Administrator for**
**Regulation and Certification, AVR-l**

**Cathal L. Flynn**
**Associate Administrator for**
**Civil Aviation Security, ACS-1**

**APPENDIX 1. SAMPLE FORMAT TO BE FOLLOWED WHEN SUBMITTING THE WRITTEN REPORT**

The following sample is only a suggested format to be followed when preparing the written report that will be submitted to the FAA. While a certificate holder, indirect air carrier, foreign air carrier, or PAH should include at least all the elements specified below, the structure of the written report can be modified by the regulated entity to fit its particular needs.

I. GENERAL.

A. Date.

B. Certificate type or equivalent.

C. Pertinent regulated entity number or equivalent.
D. Company name.
E. Company address.
F. Company official filing report.
1. Name.
2. Position.
3. Telephone number.

II. DESCRIPTION OF APPARENT VIOLATION.
A. Applicable 14 CFR.
B. Date apparent violation was discovered.
C. Location of discovery.
D. Company official who discovered the apparent violation.
1. Name.
2. Position.
3. Telephone number.
E. Date and time of initial notification to the FAA.
F. Name of FAA official notified (principal inspector).
G. Company official making notification.
1. Name.
2. Position.
3. Telephone number.
H. Duration of time apparent violation remained undetected.
1. Hours.
2. Cycles.
3. Days.

III. SUMMARY OF APPARENT VIOLATION.
(The summary should be a brief statement that describes the nature of the apparent violation and identifies the specific aircraft, engines, appliances, facilities, checkpoint, gate, cargo, and/or individuals associated with the apparent violation.)

IV. IMMEDIATE ACTION.
A. When immediate action was taken.
B. Description of immediate action. (This description should outline the immediate steps that were taken to cease the violative action.)
C. Company official responsible for immediate action.
1. Name.
2. Position.
3. Telephone number.

V. ANALYSIS.

A. Summary of evidence. (This summary should describe the scope of the apparent violation and explain how it was detected. In addition, conclusions reached regarding possible or probable systemic deficiencies, i.e., who, what, when, why, and how the noncompliance occurred, should be described.)

B. Reasons why the apparent violation was inadvertent.

C. Supporting documentation. (The evidence associated with the apparent violation should be attached. This evidence should include a statement regarding how the certificate holder, indirect air carrier, foreign air carrier, or PAH determined the extent of the apparent violation.)

VI. COMPREHENSIVE FIX PROPOSAL. The proposed long-term corrective steps to be taken by the certificate holder, indirect air carrier, foreign air carrier, or PAH to preclude recurrence of the apparent violation should be listed in this section. Each corrective step should identify the individual or department responsible for implementing and completing the corrective step as well as the time allotted for completion of each corrective step. Examples of types of questions or issues that a comprehensive fix proposal should address are as follows:

A. Whether the apparent violation involves equipment, facilities, or individuals beyond those addressed in the initial notification and for which immediate action was taken.

B. Whether procedural or organizational changes are necessary.

C. How it will be determined whether any procedural or organizational changes are effective.

D. What procedures will be developed to ensure that the affected area is periodically reviewed in the future so that concerns can be identified before a violation occurs?

E. Who will be responsible for performing periodic reviews?

F. To whom in the certificate holder's, indirect air carrier's, foreign air carrier's, or PAH's organization will the results of those periodic reviews be reported, and how will they be documented?

VII. RESPONSIBILITY FOR MONITORING THE IMPLEMENTATION OF THE COMPREHENSIVE FIX.

A. Name.

B. Position.

C. Telephone number.

D. Signature.

VIII. FAA ACCEPTANCE (TO BE COMPLETED BY THE FAA).

A. Name.

B. Position (principal inspector).

C. Date.

D. Office.

E. Signature.