UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

PATRICK SCOTT MAJOR,

Plaintiff,                                    CASE NO.: 00-6070-CIV-FERGUSON/SNOW

v.

AMERIJET INTERNATIONAL, INC.,

Defendants.

_____/

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

Defendant, AMERIJET INTERNATIONAL INC., (hereinafter "AmeriJet"), by and through its undersigned counsel and pursuant to Rule 56, Federal Rule Civil Procedure, hereby submits its Memorandum of Law in Support of its Motion for Summary Judgment.

### I.   Summary

AmeriJet respectfully submits there are no disputed issues of material fact, which would deny granting it summary judgment on all of Plaintiff's claims in his Amended Complaint. The record is undisputed that Plaintiff was terminated from his employment not in retaliation for filing an EEOC Charge or because of his age, but for his failure to avail himself of numerous safety and corrective actions in what he perceived to be a "dangerous" situation. [1] Plaintiff by his own admission permitted himself and his fellow crewmembers to be placed in a situation that he subjectively believed so dangerous that he considered aborting takeoff of the aircraft by "throwing himself on the throttle." (Plaintiff Depo. Ex. 13)

AmeriJet believed such a risky action was not only dangerous, but would have resulted in injury, if not disaster. Based on this information, and the danger involved in Plaintiff's inaction and the action Plaintiff contemplated, AmeriJet's President, Dave

---

[1]   Notably, Plaintiff is the only individual who has identified these circumstances as "dangerous." Nevertheless, for the purpose of this motion, Defendant will not dispute Plaintiff's perceptions of the circumstances.

77426_1

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION



Bassett, made the business determination to terminate Plaintiff. Accordingly, Plaintiff's termination was not based on any unlawful motivation but on AmeriJet's business judgment that he was a safety risk to himself and other crewmembers. (Ex. 1, Bate stamped 000070).

Likewise, AmeriJet is entitled to summary judgment on Plaintiff's claim of failure to promote based on age discrimination because he has produced no evidence that he was not promoted because of his age. In contrast, the record evidence clearly indicates that all nine (9) new Captains (the position sought by Plaintiff) hired between November 1997 and March 1999 were older than Plaintiff. Clearly, Plaintiff's failure to obtain the promotion was not based on his age in violation of the Age Discrimination in Employment Act.

Moreover, the record evidence also clearly establishes that after each of Plaintiff's complaints that he believed he was being discriminated against because of his age, Plaintiff was either promoted or offered a promotion. (Plaintiff Depo. at 124, 154). Therefore, Plaintiff cannot establish that his failure to receive a promotion to the Captain position was based upon his age and AmeriJet is entitled to summary judgment on Plaintiff's failure to promote claim.

AmeriJet is also entitled to summary judgment as to Plaintiff's claim of violation of the Florida Whistleblower's Act. Plaintiff cannot prevail on this claim because he did not report any alleged violation of a law, rule or regulation to an appropriate governmental agency as is required by Fla. Stats. Section 448.101 et seq. Moreover, Plaintiff has not provided evidence that he objected or refused to participate in a practice or procedure of AmeriJet, which violated the law. As such, AmeriJet is entitled to summary judgment on Plaintiff's Whistleblower claims. The discussion which follows treats these in reverse order.

Based on the foregoing, AmeriJet submits summary judgment is appropriate on all Counts contained in Plaintiff's Amended Complaint.

## II.    Summary Judgment Standard

Summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the

77426_1

2
ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

evidence is viewed in the light most favorable to the non-moving party. *Williams v. Eckerd Family Youth Alt.*, 903 F. Supp. 1515, 1518 (M.D. Fla. 1995); *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983).

In *Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir. 1990), the court stated that "[s]ummary judgments for defendants are not rare in employment discrimination cases" and that if a plaintiff has failed to carry his or her burden of proof by offering evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 1080, 1081.

The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and the absence of a genuine issue of material fact. *Armstrong v. Flowers Hospital, Inc.*, 33 F.3d 1308 (11th Cir. 1994) (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993). If this initial burden is met, the burden shifts to the non-moving party to establish that genuine issues of material fact exist. *Armstrong v. Flowers Hospital, Inc.*, 33 F.3d at 1309. A plaintiff cannot defeat a motion for summary judgment by resting upon conclusory allegations in the pleadings. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be defeated merely on the basis of a metaphysical doubt about material facts or on the basis of conjecture or surmise. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

## III.  The Law Applied To The Facts

### A.  AmeriJet Is Entitled To Summary Judgment Against Plaintiff On Count I Because Plaintiff Did Not Submit His Written Report To An Agency Charged With The Enforcement Of A Law, Rule, Or Regulation As Required By Florida Statute Section 448.102(1)

Plaintiff has filed a claim under the Private Sector Whistleblower Fla. Stat. § 448.102(1), which states in pertinent part that an employer may not take retaliatory personnel action against an employee if the employee has:

(1) Disclosed, or threatened to disclose, *to any appropriate governmental agency*, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation...(emphasis added).

77426_1

3
ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

The Florida legislature has defined an appropriate government agency as:

...any agency of government *charged with the enforcement* of laws, rules, or regulations governing an activity, policy, or practice of an employer. (emphasis added)

Fla. Stat. § 448.101(1).

In order to state a claim under § 448.102(1) a plaintiff must give written notice to the employer to allow the employer a reasonable opportunity to correct the alleged violation prior to sending a written complaint to "an appropriate government agency." *The Golf Channel v. Martin Jenkins*, 752 So.2d 561 (Fla. 2000). In this case, Plaintiff sent a written report recounting his actions during flight 827 to AmeriJet and to the National Aviation Space Administration (Aviation Safety Reporting System) (hereinafter "NASA (ASRS)"). (Amended Complaint ¶ 22 and 23); (Plaintiff Depo. Ex. 13). He also states that it is this written report to NASA (ASRS), which supports his claim under § 448.102(1). (Amended Complaint ¶ 31). However, NASA (ASRS) is not a government agency *charged with the enforcement* a law, rule, or regulation.

The language of sections 448.101(1) and 448.102(1) is unambiguous that a government agency is one that is *charged with the enforcement* of a law, rule, or regulation. Black's Law Dictionary defines enforcement as "the act or process of *compelling compliance* with a law, mandate or command." *Black's Law Dictionary* (7th ed. 1999) (emphasis added). As discussed extensively below, NASA (ASRS) has absolutely no enforcement powers.

In 1976 NASA (ASRS) was established to replace the FAA Aviation Safety Reporting System. *Aviation Safety Reporting Program 41 Fed. Reg. 15903.* NASA (ASRS) was designed to perform four primary functions: (1) receipt de-identification and initial processing; (2) analysis and interpretation; (3) dissemination of reports and other data; and (4) system evaluation and review. *41 Fed. Reg. at 15905.* Conspicuously absent from its listed functions is the enforcement of any law, rule, or regulation.

In order to effectuate the free flow of information, no reports submitted to NASA (ASRS) on or after April 15, 1976 will be used by, or be made available to the FAA for disciplinary purposes, unless there is a criminal violation or an accident. *41 Fed. Reg.*
77426_1

*at 15903.* In other words, NASA (ASRS) was established to encourage the aviation community to report unsafe conditions without fear of reprisal by the FAA, an *enforcement* agency. To further ensure anonymity and prevent against FAA disciplinary action, NASA (ASRS) is required to "de-identify," within twenty-four (24) to forty-eight (48) hours, **all information** contained in the reported incident **that identifies** the person(s) filing the report **and any other person mentioned in the report.** *41 Fed. Reg. at 15903.*

In addition to the clear and unambiguous language of the Statute that NASA (ASRS) is not an agency charged with the enforcement of a law, rule or regulation, the FAA also supports this obvious conclusion. During this case, Plaintiff deposed John Roseborough, who is employed by the FAA as a Principal Operations Inspector. (Roseborough Depo. at 4). As part of his duties, Mr. Roseborough oversees the operations of airlines to ensure that their training programs and their operational procedures are in accord with FAR. (Roseborough Depo. at 5).

Mr. Roseborough testified that NASA (ASRS) only has enforcement powers in the area of the national space program. It does not have enforcement powers in the aviation arena and any information contained in a NASA report could not be used to initiate an enforcement investigation. (Roseborough Depo. at 92, 94, 96).

In the instant case, *Plaintiff* relies solely on his August 17, 1999, written report, which he sent to NASA (ASRS) to form the bases of his claim under section 448.102(1). (Amended Complaint ¶¶ 22, 23, and 31). It is clear that NASA (ASRS) is not an agency charged with the enforcement of a law, rule, or regulation, but rather is an administrative agency with its primary functions to accumulate safety information for the airline industry. *41 Fed. Reg. at 15905k* (Roseborough Depo. at 92, 94, 96). Since NASA (ASRS) is not an agency charged with the enforcement of a law, rule, or regulation, then, as a matter of law, summary judgment must be entered in favor of AmeriJet on Count I of Plaintiff's Amended Complaint.

**B.    AmeriJet Is Entitled To Summary Judgment Against Plaintiff On Count II Because Plaintiff Has Not Alleged That AmeriJet Violated A Law, Rule, Or Regulation As Required By Florida Statute Section 448.102(3)**

In order to state a claim under section 448.102(3) a plaintiff must allege that (1) he objected to or refused to participate, (2) in unlawful activities undertaken by his *employer,* (3) and that as a result of his objection he was retaliated against in his employment. In the instant case, Plaintiff has alleged that he refused or objected to activities and procedures of AmeriJet, which violated federal law. Specifically, Plaintiff has claimed that AmeriJet's practice of having overweight aircraft take off in adverse weather conditions on June 8, 1999, and August 17, 1999, violated federal law. (Amended Complaint ¶ 34). However, this general allegation is not enough to sustain Plaintiff's claim under section 448.102(3).

First, Plaintiff only generally alleges that AmeriJet's policies and practices violate federal law without listing or citing to these policies. Second, Plaintiff's own complaint is incongruous with his claim. He alleges that AmeriJet's protocols did not adequately *address wet runway takeoff performance limits, not that they violated federal law.* (Amended Complaint ¶ 16). And, in fact, they do not violate any FAR. John Roseborough testified that AmeriJet's policy manual for wet runways could have been less restrictive, but he never stated that this violated a FAR. (Roseborough Depo. at 61-63, 93).

Plaintiff has proffered absolutely no evidence to support his claim that AmeriJet's written policies concerning contaminated runways violated the FAR. By the Plaintiff's own pleading and testimony he admits that his reservation or concern was whether NavTech's runway analysis was adequate, not that it violated the FAR. (Plaintiff Depo. at 189, 190). As such, Plaintiff can not establish a claim under section 448.102(3) and AmeriJet is entitled to summary judgment on Count II of Plaintiff's First Amended Complaint.

77426_1

## C. AmeriJet Is Entitled To Summary Judgment Against Plaintiff On Counts III And V Because Plaintiff Has Not Produced Any Evidence That His Age Was A Motivating Factor In His Failure To Be Promoted Or In His Termination From Employment

### 1. Plaintiff Is Unable To Establish A Case Based On Direct Evidence

To recover under the ADEA, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination either through direct evidence[2] of discriminatory intent or by creating an inference of discrimination through circumstantial evidence. *See, e.g., Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Evidence which only "suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence" is circumstantial. *Id.* at 1081-82 (emphasis in original).

In this case, Plaintiff has not made an allegation in his pleadings that he was the subject of what would be considered direct evidence of age discrimination. Moreover, Plaintiff testified that he did not recall anyone at AmeriJet, let alone a decision-maker, ever telling him that he would not be promoted due to his age. (Plaintiff Depo. at 219). In the absence of any direct evidence, Plaintiff is relegated to proving his case through circumstantial evidence.[3] *Earley v. Champion Int'l Corp, supra.*

### 2. AmeriJet Has Articulated Legitimate, Non-Discriminatory Reasons For Not Promoting Plaintiff and For Terminating His Employment

If the plaintiff establishes a prima facie case, an "exceedingly light" burden of production shifts to the defendant to articulate a "legitimate, nondiscriminatory" reason

---

[2] Direct evidence in an employment discrimination case is evidence, which, if believed, "establishes discriminatory intent without inference or presumption." *Earley,* 907 F.2d at 1081; *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir. 1993). "Only the most blatant remarks whose intent could only be to discriminate constitute direct evidence." *Earley,* 907 F.2d at 1081 (*citing Carter v. City of Miami,* 870 F.2d 578, 581-582 (11th Cir. 1989)). A careful reading of the cases in which the eleventh circuit has found that a plaintiff has produced direct evidence of discrimination unequivocally show that the plaintiff produced record evidence that the decision-maker(s) were responsible for making the allegedly discriminatory comments. *See Wright v. Southland Corporation,* 187 F.3d 1287 (11th Cir. 1999); *Lindsey v. American Cast Iron Pipe Co.,* 772 F.2d 799 (11th Cir. 1985); *Buckley v. Hospital Corp. of America,* 758 F.2d 1525 (11th Cir. 1985); *Thompkins v. Morris Brown College,* 752 F.2d 558 (11th Cir. 1985); *Bell v. Birmingham Linen Service,* 715 F.2d 1552 (11th Cir. 1983); and *Lee v. Russell County Board of Education,* 684 F.2d 769 (11th Cir. 1982).

[3] For purposes of this Motion, AmeriJet concedes that Plaintiff can establish a *prima facie* case of age discrimination through circumstantial evidence. The Eleventh Circuit has stated that a plaintiff-employee must show: (1) that he was in a protected age group at the time of his termination; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position from which he was discharged and (4) that [plaintiff] was qualified to do the job from which he was discharged. *Bagle v. Orange County Board of County Commissioners,* 162 F.3d 653, 656-57 (11th Cir. 1998).

for its employment decision. *Maddow v. Procter & Gamble Co. Inc.*, 107 F.3d 846, 851 (11th Cir. 1997); *Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1556 (11th Cir. 1995). The Court's inquiry does not end if a *prima facie* case is established. The burden shifts to defendant to proffer a legitimate, non-discriminatory reason for its decision. The defendant's burden is only one of production and not persuasion. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In order to satisfy this intermediate burden a defendant need only to produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision was not motivated by discriminatory animus. *Id.* If the employer articulates a legitimate, nondiscriminatory reason, the plaintiff, if he is to prevail, must establish that the employer's reason was merely a pretext to "mask unlawful discrimination." *Id.*

## a)    AmeriJet's Legitimate, Non-discriminatory Reasons For Not Promoting Plaintiff

On or about February 5, 1999 Dave Bassett, owner of AmeriJet, issued a letter to Plaintiff indicating the although he believed that Plaintiff was a valuable asset to AmeriJet, he was not going to promote Plaintiff to Captain based upon his discussions with the training department and what he knew he could not in good conscience allow Plaintiff to become a Captain. [4] (Ex. 1, Bate stamped 000070). Mr. Basset believed that Plaintiff would be a safety risk as a Captain and that was not a risk he was willing to take. (Bassett Depo. at 65); (Ex. 1, Bate stamped 0000700). He relied on the input of his training department in making this determination and Plaintiff's age was not a factor. (Bassett Depo. at 38, 39, 65) (Bassett Depo. at 40).

It is undisputed that the training department received information regarding Plaintiff's promotion not only from their own observations but also from their check-airmen. (Jorsey Depo. at 23). Captain Jorsey testified that he had numerous discussions with the Director of Operations that Plaintiff did not have the decision-making skills or the judgment to be a Captain. (Jorsey Depo. at 23, 31). Moreover, Captain Jorsey would not recommend and was opposed to Plaintiff upgrading to

---

[4] AmeriJet has filed a motion in limine to preclude any of Plaintiff's claims for damages for a failure to promote prior to February 5, 1998 as beyond the 300 day and the 365 day time limits for filing a claim under the ADEA and FCRA, *respectively.*

77426_1

Captain. (Jorsey Depo. at 30). Captain Jorsey is certified by the FAA as a check-airman and his primary task is to evaluate flight crews for upgrade and annual proficiency checks to ensure the crew meets the standards promulgated by the FAA. (Jorsey Depo. at 13 to 15, 56). Thus, when you have an individual with Captain Jorsey's experience and certifications who adamantly states that Plaintiff does not have "what it takes" to be a captain that opinion carries an enormous amount of weight. Further, it supports and lends credence to Mr. Basset's decision not to promote Plaintiff.

While there are no objective criterion to evaluate decision-making and judgment, this does not preclude an employer from making a business decision nor does it weaken the employer's legitimate, non-discriminatory reasons. A subjective reason can constitute a legally sufficient, legitimate, non-discriminatory reason under *McDonnell Douglas* and can be just as valid as an objective reason. *Chapman* v. *Al Transp.,* 229 F.3d 1012 (11th Cir. 2000). In the instant case, Plaintiff was not promoted because he did not have the intangible skills to carry out the demanding responsibilities of a captain and was safety risk. (Jorsey Depo. at 13, 15) (Bassett Depo. at 65).

In addition to AmeriJet's decision not to promote Plaintiff, other evidence abounds in this case to support that AmeriJet did not in any way consider Plaintiff's age in not promoting him to Captain.

It is undisputed that AmeriJet hired nine (9) captains from November 1996 to March 1999, all of whom were four (4) to eleven (11) years older than Plaintiff who was born on October 2, 1953. The following is the list of captains hired between November 11, 1996 and March 22, 1999. (Ex. 2, Bate stamped 000316).

| Crewmember Name | Date of Hire as Captain | Date of Birth |
| --- | --- | --- |
| Joseph G. Latorre | 11/11/96 | 01/18/42 |
| Richard Lytle | 03/31/97 | 07/09/42 |
| James Korby | 07/23/97 | 04/06/43 |
| Leonidas Guzman | 07/23/97 | 12/24/49 |
| Bruce McGray | 09/08/97 | 09/14/46 |
| Jose Alvarez, Jr. | 09/10/97 | 09/17/46 |
| John Miller | 12/03/97 | 05/22/48 |
| Albert Rubey | 03/09/98 | 11/28/42 |
| James Replogle | 03/22/99 | 11/26/48 |

77426_1

**9**

The hiring of these captains took place during the exact time periods that Plaintiff alleges AmeriJet discriminated against him. In addition to hiring these older Captains, AmeriJet also offered Mr. Fred Edalatti an upgrade opportunity to Captain. Mr. Edalatti was the only other First Officer who was in the protected age group. (Plaintiff Depo. at 157).

It is simply preposterous that Plaintiff could claim a circumstantial evidence case of age discrimination when AmeriJet hired nine (9) captains older than Plaintiff and offered an upgrade opportunity to the only other First Officer in the protected age group during the exact same time period that Plaintiff is claiming AmeriJet discriminated against him.

Moreover, each time Plaintiff complained about not being promoted, AmeriJet either promoted him or gave him the opportunity to do so. (Plaintiff Depo. at 124, 154). In addition, on or about February 11, 1997, AmeriJet offered Plaintiff a severance package because it had made the determination at that time that Plaintiff did not possess the skills necessary to be a captain. (Plaintiff Depo. at 145, 146). No such offer had been made to any other employee. (Plaintiff's Depo. Ex. 7). However, Plaintiff declined the offer and decided to stay on as First Officer. When Plaintiff again complained on or about February 27, 1997 about not being promoted, AmeriJet awarded him an opportunity to upgrade to Captain one year later, in May 1998. (Plaintiff Depo. at 154). Unfortunately, the FAA examiner discontinued the oral exam after fifteen (15) minutes because Plaintiff missed questions about limitations, wind shear and flight control systems and Plaintiff was not upgraded to Captain. (Plaintiff Depo. Ex. 9).

These undisputed admissible facts clearly establish that AmeriJet had legitimate, non-discriminatory reasons for not promoting Plaintiff to Captain, as such, the burden now shifts to Plaintiff to produce significant probative evidence that AmeriJet's actions were a pretext for age discrimination.

## b) AmeriJet's Legitimate, Non-discriminatory Reasons For Terminating Plaintiff's Employment

It is well established that an employer may terminate an employee for a good reason, a bad reason, or no reason at all without violating federal law. *Damon* 196 F.3d at 1361 (quoting *Elrod v. Sears, Roebuck & Company*, 939 F.2d 1466 (11th Cir. 1991)).

It is undisputed that AmeriJet's reason for terminating Plaintiff's employment was its conclusion that it had lost confidence in his abilities as a safe airman. (Huff Depo. Ex. 6 Bate stamped 000309). Plaintiff's actions and omissions taken from his own account of flight 827 warranted his termination from employment.[5] (Plaintiff Depo. Ex. 13). Specifically, Plaintiff lacked the courage to prevent an unsafe condition he perceived to be so unsafe, he contemplated throwing himself on the throttle to abort the flight. (Plaintiff Depo., Ex. 13, Bate stamped 000056). In allowing it to progress to that point, he exercised extremely poor decision-making and poor judgment by allowing a preventable situation to turn into a dangerous situation, which moved him to consider taking a most drastic and dangerous measure of forcibly aborting a take-off. (Bassett Depo. at 50, 51) (Plaintiff Depo. Ex. 13 Bate stamped 000054, 000056).

As a First Officer with seven years experience Plaintiff had several options available to him during flight 827 which could have prevented or cured any reservations he had about the weight of the aircraft, whether they were founded or unfounded. (Bassett Depo. at 51) (Washington Depo. at 40, 44, 51) (Jorsey Depo. at 74 to 78). As the First Officer Plaintiff was responsible for calculating the weight and balance of the aircraft. (Ex. 3, Bate stamped 000307) (Washington Depo. at 36, 37, 50, 51) (Huff Depo. at 116). This involves inspecting the cargo, its positions within the aircraft, and its proper weight. (Washington Depo. at 36, 37). Based on his inspection Plaintiff is required and expected to make any necessary adjustments to ensure a safe flight. (Jorsey Depo. at 46, 51). On flight 827, Plaintiff was concerned with the amount of rainfall and its affect on the safe operation of the aircraft. In light of his concern, Plaintiff could have unilaterally "bumped," that is remove cargo, from the aircraft to ensure that

---

[5] Flight 827 departed Fort Lauderdale International Airport on August 17, 1999. The crew was Captain Brian Steele, Plaintiff as the First Officer, Flight Engineer Brett Wise, and Captain Al Jorsey, Sr., who is an FAA certified check-airman and was present to conduct an FAA mandated annual evaluation of Captain Steele.

77426_1

**11**

the aircraft was within weight specifications for the current weather conditions or raise concerns about the weight and balance to Captain Steele. He failed to do this. (Washington Depo. at 51) (Huff Depo. at 116, 117, 160).

Second, Plaintiff could have simply refused to fly if he believed that there was an unsafe condition that was not corrected to his satisfaction. (Washington Depo. at 40) (Jorsey Depo. at 46, 51, 76) (Huff Depo. at 100, 101) (Bassett Depo. at 52, 53). Amazingly, Plaintiff testified that he never considered this, even though about one month prior to flight 827, he was told by the Chief Pilot, Derry Huff, that Plaintiff should refuse to fly if believes there is an unsafe condition. (Plaintiff Depo. at 253, 254).

Third, Plaintiff could have refused clearance from the Tower to accept the take-off. (Washington Depo. at 44). The Tower tapes clearly show that Plaintiff was the only crewmember communicating with the Tower and that he was concerned with the weather conditions. (Ex. 4, tape transcript) (Washington Depo. at 41). The tapes also show that Plaintiff had requested from the Tower a standing water report while on the runway, which would not be the opportune time to do so. (Washington Depo. at 13). While waiting for the report, flight 827 was cleared for a "back-taxi" of the runway. During the back-taxi the aircraft proceeds down the runway for a visual inspection of the runway prior to accepting a take-off. (Jorsey Depo. at 35, 59, 72). Once the back-taxi was completed, the Tower again initiated contact with flight 827 and requested if it was ready for take-off. (Washington Depo. at 13, 14). Plaintiff keyed his microphone, said yes and again requested the status of the wet runway report. The Tower replied that the report indicated there was less than a ¼ inch standing water and without hesitation Plaintiff accepted the clearance for take-off without checking with Captain Steele. (Ex.4 tape transcript); (Washington Depo. at 41, 43) (Jorsey Depo. at 75).

This transmission by Plaintiff is astounding and inconsistent in light of his great concern for the amount of rain in the area, which prompted his request for a wet runway report in the first place. (Washington Depo. at 43) (Jorsey Depo. at 75). The whole point in ascertaining a wet runway report is to ensure that the weight of the aircraft is within operational limits for take-off on that wet runway. Plaintiff's entire Whistle Blower claim is based upon his assertion that AmeriJet's runway analysis ignored wet runway

77426_1

**12**
ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

conditions, yet Plaintiff accepts a clearance for take-off after receiving a report from the Tower of a potentially contaminated runway instead of telling the Tower that he can not accept the clearance because the aircraft is too heavy for the current conditions. (Washington Depo. at 19, 20, 42, 43) (Jorsey Depo. at 77). His decision to accept the take-off flies directly in the face of what he was trying to prevent and accentuates his inability to make decisive decisions. (Jorsey Depo. at 75, 77). It was after accepting take-off without hesitation that he considered throwing himself on the throttle and aborting a take-off. By even considering this action, Plaintiff placed himself in the second most dangerous position in an aircraft, aborting a take-off on a roll. (Bassett Depo. at 50). Any airman that puts himself in a situation where he has to even consider aborting a take-off on the roll is incredible. (Bassett Depo. at 50).

Plaintiff's lack of courage, poor decision-making, and poor judgment was unacceptable especially because he had been flying the 727-type aircraft and had been an employee with AmeriJet for seven years. (Basset Depo. at 51). To AmeriJet, Plaintiff's actions and omissions on flight 827 warranted his termination from employment and showed a serious character flaw in Plaintiff, one, which could potentially lead to an aircraft accident or even a fatality. This was not a risk AmeriJet was willing to accept. (Bassett Depo. at 65). These are clearly legitimate non-discriminatory reasons for terminating his employment. *See Kounelis v. Mount Sinai Medical Center*, 987 F.Supp. 1452 (S.D. Fla. 1997).

In *Kounelis*, the plaintiff was a sixty-five year old woman who was discharged for failing to input accurate information regarding the immigration status of employees. The court granted summary judgment in favor of Mount Sinai holding that an employer's good faith belief that an employee's work performance is unsatisfactory establishes a legitimate non-discriminatory reason for termination. The court also held that Mt. Sinai's non-discriminatory reason for plaintiff's termination was a legitimate concern because plaintiff's mistakes could result in a financial penalty against Mt. Sinai.

In this case, AmeriJet has produced admissible evidence that Plaintiff's age was not a factor in denying him promotion and that his termination from employment was due to his actions and omissions with regard to flight 827. Thus, AmeriJet has met its

77426_1

**13**
ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

burden of producing evidence of legitimate, non-discriminatory reasons, and, as such, the burden now shifts to the Plaintiff.

### D.    Plaintiff Has Not Produced Substantial Evidence That AmeriJet's Proffered Legitimate, Non-Discriminatory Reason Were Pretexts For Discrimination

It is well established that conclusory allegations, rumors and general impressions of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions. *Bell v. Desoto Memorial Hospital, Inc.*, 842 F. Supp. 494, 498 (M.D. Fla. 1994); *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 597 (11th Cir. 1987). In addition, "subjective beliefs" of age discrimination will not suffice to satisfy a plaintiff's burden of rebutting an employer's non-discriminatory reasons for termination. *Kounelis v. Mount Sinai Medical Center*, 987 F.Supp. 1452, 1459 (S.D. Fla. 1997). Instead, a plaintiff must offer "significantly probative evidence" that the defendant's reasons for terminating him were pretexts for discrimination. *Id.* at 1458, *Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354 (11th Cir. 1999), *Young v. General Food Corp.*, 840 F.2d 825 (11th Cir. 1988). At this point, the Court must determine whether plaintiff can demonstrate "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in defendant's proffered legitimate reason for its action that a reasonable fact finder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997).

In the instant case Plaintiff has failed to produce significantly probative evidence that AmeriJet's legitimate, non-discriminatory reasons for failing to promote him and for terminating his employment were pretexts for age discrimination.

Dave Bassett did not promote Plaintiff to Captain because he believed Plaintiff was unsafe and it was a risk he was not willing to take. He based his belief on information he received from the training department and his own personal flying experiences with Plaintiff. In addition, Derry Huff recommended against Plaintiff's promotion to Captain as well as the most senior check airman, Captain Al Jorsey, Sr. Plaintiff has not produced any evidence that these opinions were based on age.

77426_1

14
ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

Furthermore, all circumstantial evidence relating to AmeriJet's actions in not promoting Plaintiff to Captain only supports AmeriJet. It is uncontested that AmeriJet hired nine (9) Captains from November 1996 to March 1999, all of whom are older than Plaintiff. These Captains filled the vacant positions for which Plaintiff was seeking and for which he claims he was discriminated against based on age. Based on this evidence alone, Plaintiff's failure to promote claim simply is without merit. In addition though, AmeriJet awarded a Captain upgrade opportunity to the only other First Officer who was in the protected age group, Mr. Fred Edalatti. (Plaintiff Depo. at 157). More importantly, in May 1998, after complaining about not being promoted AmeriJet awarded Plaintiff the opportunity to upgrade to captain, but he was unable to complete his oral exam before the FAA and his chance for promotion was denied. (Plaintiff Depo. Ex. 9).

AmeriJet's legitimate, non-discriminatory reasons for not promoting Plaintiff coupled with the circumstantial evidence overwhelmingly warrants summary judgment in favor of AmeriJet.

Likewise, Plaintiff has failed to produce significantly probative evidence that his termination was retaliatory action for his filing an EEOC complaint in February 1999. The most obvious factor, and one which Plaintiff cannot overcome, is that his termination took place seven (7) months after his EEOC complaint. There is absolutely no basis for the Plaintiff or this Court to presume any animus on the part of AmeriJet with this significant lapse in time. In addition, as detailed above, Plaintiff's lack of decision-making and poor judgment, which also held him back from being promoted, with respect to flight 827 was the motivating factor in terminating Plaintiff's employment.

Captain Jorsey said it best: "if you have a concern, do something about it." (Jorsey Depo. at 46). Plaintiff did not. It is well documented that Plaintiff's actions during flight 827 were inconsistent with his concerns or reservations and his failure to "do something" to prevent the flight by either walking off the flight, telling the Tower that they were overweight, adjusting the weight and balance, or refusing the take-off clearance was simply unacceptable given his experience. (Bassett Depo. at 51).

Plaintiff has offered no evidence whatsoever that AmeriJet's proffered reasons for terminating his employment were pretexts for age discrimination.

77426_1

**15**

The Eleventh Circuit has recently reiterated its long-standing precedent that:

> "federal courts do not sit as a super-personnel department that re-examines an entities business decisions. No matter how medieval a firm's practice, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. **Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.**" (emphasis added).

*Chapman v. Al Transp.,* 229 F.3d 1012 (11th Cir. 2000). In the instant case, AmeriJet has given an honest explanation of its behavior. Based on the undisputed facts in this case, Plaintiff can not establish AmeriJet's proffered reasons are pretextual. AmeriJet's decision not to promote Plaintiff and its decision to terminate his employment were wholly unrelated to his EEOC claim in both time and circumstance. Plaintiff has not and cannot produce significantly probative evidence of a discriminatory intent by AmeriJet. Therefore, as a matter of law, AmeriJet is entitled to summary judgment on Counts III and V of Plaintiff's First Amended Complaint.

## VI. AmeriJet Is Entitled To Summary Judgment Against Plaintiff On Counts IV and VI Because There Is No Causal Link Between the Protected Activity And The Adverse Employment Action and Plaintiff Has Not Produced Any Evidence Of A Pervasive or Hostile Work Environment

### A. Plaintiff Has Failed To Establish A *Prima Facie* Case Of Retaliation

A *prima facie* case of retaliation is established if Plaintiff can prove: 1) that there was a statutorily protected expression made by Plaintiff, 2) that an adverse employment action occurred toward Plaintiff, and 3) that there was a causal link between the protected expression and the adverse employment action. *Simmons v. Camden County Bd. Of Educ.,* 757 F.2d 1187 (11th Cir. 1985) (citing *Whatley v. Metropolitan Atlanta Rapid Transit Authority,* 632 F.2d 1325 (5th Cir. 1980)). The causal link requires that the plaintiff establish that the protected activity and the adverse employment action were not wholly unrelated. *Id.* A defendant will not be held liable if it can show by a preponderance of evidence that it would have made the same decision in the absence of the alleged discrimination. *Lewis v. Young Men's Christian Association,* 208 F.3d 1303 (11th Cir. 2000).

77426_1

**16**
ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

In the instant case, Plaintiff has failed to establish the third prong of the retaliation claim. Plaintiff contends that his termination was the result of filing an EEOC complaint against AmeriJet, but he is unable to produce any evidence that his filing with the EEOC is related in anyway to his termination.

Plaintiff filed his EEOC charge in February 1999 after receiving a letter from Dave Bassett that he was not going to be promoted to the position of Captain. It was precisely due to AmeriJet's adverse employment decision declining to promote him that prompted Plaintiff's EEOC complaint. In other words, the adverse employment action had already been made before Plaintiff filed his EEOC claim.

Moreover, between the time of filing his EEOC complaint in February 1999 and his termination on September 1, 1999, AmeriJet received a complaint from Captain Tim Greene that Plaintiff was harassing him, Captain Brian Steele had written an unsatisfactory performance evaluation on Plaintiff and Plaintiff admitted in his NASA(ASRS) report that he considered forcibly aborting a take-off, when other less drastic measures clearly could have and should have been taken by Plaintiff. In addition, nearly seven (7) months had passed between the filing of his EEOC complaint and his termination.

Furthermore, AmeriJet would have made the same decision with respect to Plaintiff even absent his allegations of age discrimination. Based on Plaintiff's own account of what occurred on flight 827, it was clear that Plaintiff had become unsafe as a First Officer, which necessitated his termination from employment.

Based on these undisputed facts, Plaintiff has failed to establish a causal link between his filing of his EEOC complaint and his termination and this Court should enter summary judgment in favor of AmeriJet on Counts IV and VI of Plaintiff's First Amended Complaint.

## B.    Plaintiff Has Failed To Establish That He Was Subjected To A Hostile Work Environment

The Eleventh Circuit has not yet ruled on the issue of whether a hostile environment claim is actionable in an ADEA context. *EEOC v. Amassey-Yardley Chrysler Plymouth, Inc.,* 117 F.3d 1244 (11th Cir. 1997). In the absence of such,

77426_1

17
ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

summary judgment should be entered in favor of AmeriJet. However, even assuming *arguendo* that a hostile environment claim is actionable in the ADEA context, Plaintiff has failed to establish that AmeriJet subjected him to a hostile work environment.

Utilizing the hostile work environment standard applied in Title VII cases and adopted by the Sixth Circuit in *Crawford v. Medina General Hospital*, 96 F.3d 830 (1996) the Plaintiff would have to show by a preponderance of the evidence that: 1) he was over 40 years of age; 2) he was subjected to harassment, either through words[6] or actions, based on age; 3) the harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and 4) there exists some basis for liability on the part of the employer.

Plaintiff is basing his hostile work environment claim solely on the actions taken by Derry Huff and Juan Morales in response to a complaint made by another employee, Captain Tim Greene, against Plaintiff. (Plaintiff Depo. at 257). Captain Greene made a complaint in April 1999, two months after Plaintiff had filed his EEOC charge against AmeriJet, alleging that Plaintiff was harassing him by informing and discussing with other crewmembers an aircraft accident in which Captain Greene had suffered physical injuries. (Huff Depo. at 80, 81, 209). At the time of the complaint, Tim Greene was a Captain on the flight line and as such, was Plaintiff's superior. Once the complaint was received, Derry Huff and Juan Morales investigated the complaint and held a meeting with Plaintiff. (Huff Depo. at 82). At that meeting, Plaintiff was told to cease the comments regarding Captain Greene's accident and his injuries. No disciplinary action was instituted against Plaintiff and no further actions were taken. (Huff Depo. 83, 84).

Plaintiff admitted that he did make comments about Captain Greene's accident and used the accident as a "training tool." (Plaintiff Depo. at 256). Thus, there is absolutely no dispute that Plaintiff was engaging in the exact behavior that Captain Greene complained of. Secondly, AmeriJet's actions were prudent, warranted, and required. It had received a formal complaint by an employee regarding allegations of a

---

[6]  Plaintiff does not make any allegations in his pleadings that he was subjected to verbal remarks concerning his age. Moreover, Plaintiff admits that no one at AmeriJet made reference to his age as a factor in his employment. (Plaintiff Depo. at 219).

77426_1

**18**

nature that could have had an adverse impact on other crew members, such as, eroding the trust and confidence they had in Captain Greene and which, if left unresolved, could have led to morale problems on the flight line.

Under these circumstances, Plaintiff created his own hostile work environment, not AmeriJet. This is underscored by Plaintiff's admission that he engaged in the behavior complained of by Captain Greene. Based on these undisputed facts this Court must enter summary judgment in favor of AmeriJet on Counts IV and VI of Plaintiff's First Amended Complaint.

AmeriJet has produced admissible evidence of legitimate, non-discriminatory reasons for not promoting Plaintiff and terminating his employment. Plaintiff has failed to produce significantly probative evidence that AmeriJet's actions were a pretext for age discrimination. Likewise, Plaintiff has not established a causal link between his February 1999 EEOC complaint and his termination nor has he proffered any evidence that he was subjected to a hostile work environment. Moreover, under the Florida Whistleblower Statute NASA(ASRS) is not an appropriate government agency and Plaintiff has not established that he objected or refused to participate in a policy that violates the law. As such, summary judgment is warranted in favor of AmeriJet on all Counts contained in Plaintiff's Amended Complaint.

Respectfully submitted,

Susan Potter Norton
Florida Bar No. 0201847
Stephen P. Santiago
Florida Bar No. 0964425

ALLEN, NORTON & BLUE, P.A.
121 Majorca, Suite 300
Coral Gables, FL 33134
Tel: (305) 445-7801
Fax: (305) 442-1578
snorton@anblaw.com
ssantiago@anblaw.com

77426_1

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by World Courier, on this 12th day of March, 2001, upon:

Ms. Valerie Shea, Esq.
Heinrich Gordon Hargrove Weihe & James
500 East Broward Boulevard, Suite 1000
Ft. Lauderdale, Florida 33394

Attorney