UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 00-6070-CIV-FERGUSON/SNOW

PATRICK SCOTT MAJOR,

    Plaintiff,

v.

AMERIJET INTERNATIONAL, INC.,

    Defendants.

_____/

## DEFENDANT'S FILING OF UNDISPUTED FACTS

Defendant, AMERIJET INTERNATIONAL, INC. (hereinafter "AmeriJet"), hereby submits its undisputed facts in support of its Motion for Summary Judgment.

### I. Statement Of Undisputed Facts

1. AmeriJet is in the business of air cargo. The majority of its business is conducted by transporting cargo via its fleet of 727-type aircraft. The 727-type aircraft is flown by a crew consisting of three members, a Captain, the ranking officer; a First Officer, second in command, and a Flight Engineer. AmeriJet hired Plaintiff as a flight engineer in March of 1991. (Plaintiff Depo. at 97). In 1993, Plaintiff complained to AmeriJet that two younger flight engineers had been promoted over him. The two flight engineers were promoted from the Falcon Program, a program, which Plaintiff was offered to attend but declined due to family considerations. (Plaintiff Depo. at 109, 110). The Falcon Program lead to a quicker promotion to First Officer because the pilots would get more hands-on experience flying than they would by remaining a flight engineer in the 727. (Plaintiff's Depo. Ex. 3) (Plaintiff Depo. at 114, 115). In October 1994, Plaintiff again complained about not being promoted to First Officer, but immediately

thereafter, AmeriJet promoted Plaintiff to First Officer on November 5, 1994. (Plaintiff Depo. Ex. 4 at 119, 124).

2. On or about February 11, 1997, Plaintiff met with Wayne Penny, Director of Human Resources, and Ed Cook, Chief Pilot, and was told that Dave Bassett, owner of AmeriJet, would not promote Plaintiff to Captain but that Plaintiff was welcome to remain employed as a First Officer. (Plaintiff Depo. at 145, 146). Approximately one week later, Plaintiff was offered a voluntary severance package, but he declined and remained employed as a First Officer. (Plaintiff Depo. at 146 to 148) (Plaintiff Depo. Ex. 7). After declining the severance package, Plaintiff delivered a letter to AmeriJet on or about February 27, 1997 claiming that he was being discriminated against due to his age. (Plaintiff Depo. Ex. 8).

3. In May of 1998, approximately one year after his February 27, 1997 internal complaint of age discrimination, AmeriJet awarded Plaintiff an opportunity to upgrade to the position of Captain. (Plaintiff Depo. at 154). The upgrade procedure for Captain consists of completing and passing ground school, simulator training, an oral exam before the Federal Aviation Administration and a final "check ride" with a qualified check airman. (Roseborough Depo. at 68).

4. After accepting his bid for upgrade Plaintiff attended and completed his ground school requirement and his simulator training sessions. (Plaintiff Depo. at 160, 164). Upon completing these requirements Plaintiff went for his oral examination in June 1998 before Mr. Barney Sonnen, a representative for the Federal Aviation Administration. (Plaintiff Depo. at 163). Mr. Sonnen discontinued the oral exam after approximately fifteen minutes due to Plaintiff missing questions on limitations, flight controls, and wind shear. (Plaintiff Depo. Ex. 9).

5. On or about February 1999, Dave Bassett wrote a letter to Plaintiff informing Plaintiff that the safety of the crew and the aircraft is his first responsibility and promoting Plaintiff to Captain is a risk he is not willing to take. (Ex. 1, Bate stamped 000070). Mr. Bassett stated that based upon his conversations with the training department and his knowledge he could not in good conscience upgrade Plaintiff to captain. (Ex. 1, Bate stamped 000070) (Bassett Depo. at 16, 17, 18,). Immediately after receiving this letter, Plaintiff filed a charge of discrimination against AmeriJet claiming discrimination in violation of the Age in Discrimination and Employment Act.

6. In April 1999, AmeriJet received a complaint from one of its employees, Mr. Tim Greene, a newly promoted Captain, that Plaintiff was making derogatory comments about him and that the comments had a harassing affect upon him. (Huff Depo. at 80, 81). Based upon this complaint, Juan Morales, the Human Resources Director, and Derry Huff, the Chief Pilot, met with Plaintiff and told him to cease and desist the harassing behavior. Plaintiff agreed to stop and no further action was taken. (Huff Depo. at 82, 83, 84).

7. On June 8, 1999, Captain Brian Steele wrote an unsatisfactory performance evaluation on Plaintiff.[1] (Huff Depo. Exs. 15 and 19). The evaluation indicated that Plaintiff would not accept orders and made erroneous readings of the flight control instruments. Captain Steele recommended that Plaintiff be counseled on these deficiencies. (Huff Depo. Exs. 15 and 19).

8. On August 18, 1999, Plaintiff wrote a letter to the National Aviation Space Administration (Aviation Safety Reporting System) (hereinafter "NASA (ASRS)") recounting

---

[1] Plaintiff also received poor evaluations from Captains Bill Cline, Luis Michaels, Rich Brewer, and Al Jersey, Sr.
77901_1

**3**

his actions regarding flight 827 out of Fort Lauderdale International Airport.[2] (Plaintiff Depo. Ex. 13). Plaintiff's major complaint was that Captain Steele accepted clearance for a departure without reducing the weight of the aircraft as required when standing water is on the runway. Also contained in this letter is Plaintiff's statement that he considered "throwing himself on the throttle" to abort the take off. (Plaintiff Depo. Ex. 13 Bate stamped pg. 000054, 000056). Aborting a take-off while on the roll is probably the second most dangerous position to be in. (Bassett Depo. at 50). After receiving this report Derry Huff, Pete Steele and John Washington listened to the Air Traffic Control tapes. (Huff Depo. at 38, 39, 48, 49) (Washington Depo. at 10, 11). Based on Plaintiff's actions and inactions detailed in his NASA(ASRS) report with regard to flight 827 and comparing it with the Air Traffic Control tapes AmeriJet terminated Plaintiff's employment for lack of courage, poor decision-making, and poor judgment on September 1, 1999. (Bassett Depo. at 51, 52).

9.   From November 11, 1996 to March 22, 1999, the time period that Plaintiff alleges age discrimination, AmeriJet hired nine (9) captains, all of whom were older than Plaintiff and thus, in the protected age group. (Plaintiff Depo. at 156, 159) and (Ex. 2, Bate stamped 000316). In addition, AmeriJet offered Mr. Fred Edalatti an opportunity to upgrade to captain. Mr. Edalatti was the only other First Officer besides Plaintiff who was in the protected age group. (Plaintiff Depo. at 157).

10.   On or about October 4, 1999, approximately five (5) weeks after his termination, Plaintiff made a complaint to the FAA regarding flight 827, which departed Fort Lauderdale on August 17, 1999. (Roseborough Depo. at 9, 10, 80, 81). Based upon this complaint, the FAA

---

[2] Also in the cockpit on this flight were Captain Al Jorsey, Sr., a certified "check-airman" employed by AmeriJet for the sole purpose of conducting "check-rides" on captains of AmeriJet, and flight engineer Brett Wise.
77901_1

was required to conduct an investigation into the allegations proffered by Plaintiff even though his employment had been terminated. (Roseborough Depo. at 10)

Respectfully submitted,

Susan Potter Norton
Florida Bar No. 0201847
snorton@anblaw.com
Stephen P. Santiago
Florida Bar No. 0964425
ssantiago@anblaw.com

ALLEN, NORTON & BLUE, P.A.
121 Majorca, Suite 300
Coral Gables, FL 33134
Tel: (305) 445-7801
Fax: (305) 442-1578

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via World Courier, on this 12th day of March, 2001, upon:

Ms. Valerie Shea, Esq.
Heinrich Gordon Hargrove Weihe & James
500 East Broward Boulevard, Suite 1000
Ft. Lauderdale, Florida 33394

Attorney