cv-06070-WJZ Document 130 Entered on FLSD Docket 03/26/2001 P

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PATRICK SCOTT MAJOR, Plaintiff,

vs.

AMERIJET INTERNATIONAL, INC., Defendant.

CASE NO. 00-6070-Ferguson
Magistrate Judge Lurana S. Snow
L. T. Case No. 99-021746-11

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Patrick Scott Major, submits this response in opposition to defendant's motion for summary judgment. As demonstrated below and by plaintiff's statement of disputed facts, defendant's motion should be denied because plaintiff has demonstrated genuine, material fact issues with respect to each of his claims.

## WHISTLEBLOWER CLAIMS

### A. Introduction

Plaintiff, Patrick Major, is a former Amerijet pilot. In August 1999, he had an eight-year employment history and was in good standing.

The essence of Major's whistleblower claims is that he reported illegal activity by Amerijet, in writing; he was suspended the same day; and was abruptly fired several days later, with Amerijet's officials admitting that they based their decision to fire Major on his report. (Huff D. 114; Bassett D. 50) This is the essence of the retaliatory conduct that is prohibited by the Florida Whistleblower's Act. That Act, which became effective in 1991, prohibits private



sector employees from taking retaliatory personnel action against employees who "blow the whistle" on employers who violate the law and provides employees a civil cause of action for such retaliation. Fla. Stats. 448.101-.105.[1]

Three distinct types of employee activities are protected. Two of them are at issue here. Major's Count I involves retaliatory personnel action on the basis of disclosure of an "activity, policy, or practice of the employer that is in violation of a law, rule, or regulation." Fla. Stats. §448.102(1). Subsection (3) prohibits retaliation on the basis of an employee's objection to "any activity, policy, or practice of the employer which is in violation of a law, rule or regulation." The former are called disclosure claims, and the latter, objection claims. The Golf Channel v. Jenkins, 752 So. 2d 516, 565-66 (Fla. 2000), 752 So. 2d at 564.

B. Count I -- Disclosure Claim

The elements for this claim are that (1) Major submitted written notice to Amerijet of the violation of law he intended to disclose; (2) Major afforded Amerijet a reasonable opportunity to correct the illegality; (3) Major threatened to disclose, and did disclose the illegality to "any appropriate governmental agency;" and (4) Amerijet took adverse employment action against Major, which was causally related to the whistleblowing activity. Fla. Stats. §448.102(1); §448.103(1)(c).

Amerijet's motion turns on the third element. Reviving the argument in its unsuccessful motion to dismiss[2], Amerijet argues that NASA is not an "appropriate" agency because it does

---

[1] The Act is remedial, reflecting an intent that it be liberally construed in favor of granting access to the remedy provided by the Legislature. The Golf Channel v. Jenkins, 752 So. 2d 516, 565-66 (Fla. 2000); Arrow Air, Inc. v. Walsh, 645 So. 2d 422, 424 (Fla. 1994).

not enforce the federal aviation regulations (FARs). Major extensively briefed this issue in its response to defendant's motion to dismiss, which is the Court's docket entry 29. Plaintiff incorporates that response and its many exhibits here. Magistrate Snow considered the parties' exhibits to be evidence **beyond** the four corners of the complaint, which she could not consider at the motion to dismiss stage. Accordingly, plaintiff files herewith the affidavit of Jose Pagan, his FAA expert, which supports plaintiff's position and sponsors the Advisory Circular which fully explains the relationship between the NASA reporting system and the FAA. While there is no Florida case law directly on point, Magistrate Snow aptly compared this case to Robinson v. Jewish Center Towers, Inc., 993 F. Supp. 1475, 1479 (M.D. Fla. 1998), in which an employee's report to a HUD auditor was deemed sufficient. Cf. Tyson v. Viacom, Inc., 760 So. 2d 276, 277 (Fla. 4th DCA 2000) (equating enforcement of laws with the executive branch of government). Given the Act's remedial purposes, plaintiff's disclosure claim should not be foreclosed by Amerijet's hypertechnical and misguided argument.

There is ample evidence with respect to the other elements of a disclosure claim. The record clearly establishes that Major (1) gave Amerijet (Huff and Steele) his NASA report on August 18, 1999, **before** he filed it with NASA, (2) gave Amerijet an opportunity to self-report, which it never did; (3) submitted the report to NASA, the channel set up for his protection, and (4) was promptly suspended and fired.[3] Regarding the retaliation aspect, Amerijet officials claim

---

[2] On December 4, 2000, Magistrate Snow entered a thoughtful, eight page order which **denied** Amerijet's motion to dismiss Count I. This order was adopted by the Court on March 9, 2001.

[3] Further, Major went directly to the FAA in September and gave John Roseborough a written report in early October (Roseborough D. 9). Apropos of the reason why the NASA channel exists, if there is any serious question as to the FAA's hostility towards pilots, and protectiveness of airlines, we would refer the Court to Mr. Roseborough's deposition, pages 11 to 21. Small wonder that, in the interests of aviation safety, Congress had to devise an alternate channel for safety reports by pilots.

to have based their decision to fire Major on his report. (Huff D. 114; Bassett D. 50) This creates a fact question as to whether this eight-and-a-half year employee, a pilot in good standing, was subjected to retaliatory personnel action because he exercised a right – to object to an illegal activity – protected by the Whistleblower Act.[4] Amerijet is not entitled to summary judgment unless the evidence supporting its defense is so compelling as to establish no issue of material fact exists. Molenda v. Hoechst Celanese Corp., 60 F. Supp. 2d 1294, 1301 (S.D. Fla. 1999) (issues of fact prevented summary judgment in claim under Florida Whistleblower Act). When, as in Molenda, reasonable jurors could differ as to the motivation behind plaintiff's termination, summary judgment must be denied. Id. at 1302. See Taylor v. Memorial Health Systems, Inc., 770 So. 2d 752 (Fla. 5th DCA 2000) (finding plaintiff, a nurse complaining of patient fondling by physicians, made prima facie disclosure case requiring resolution by a trier of fact).

C. Count II – Objection Claim

The elements of this claim are that Major (1) objected to an activity or policy of Amerijet which violated a law and (2) was subjected to an adverse employment action which was causally related to the whistleblowing activity. Fla. Stats. §448.102(3). Plainly, Major did so in his August 18, 1999, report which characterized the August 17, 1999, takeoff as illegal. (P.E. 3, p. 4) Amerijet's reaction to this report was to suspend and then fire Major: it **agrees** that the report

---

[4] Retaliation under the whistleblower act can be analyzed under the standard used in Title VII cases. Sierminski v. Transouth Financial Corp., 216 F. 3d 945, 950 (11th Cir. 2000). See Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986) (fact that plaintiff was discharged only one month after filing complaint with EEOC "belies any assertion by the defendant that the plaintiff failed to prove causation"); George v. GTE Directories Corp., 195 F.R.D. 696 (M.D. Fla. 2000) (close temporal proximity between protected activity and adverse employment action may be sufficient to establish a causal nexus for Title VII retaliation claim.

prompted the termination. (Huff D. 114, Bassett D. 50) Its contention on summary judgment, however, is way off base. Ignoring the August 18, 1999, report, Amerijet seeks to characterize Major as a dissident who objected to a **policy** of Amerijet's that was not, in fact, illegal. Some background is necessary to explain why Amerijet's argument is belied by the pleadings and developed record.

Amerijet, as a cargo airline, is regulated by the FAA and subject to a body of regulations known as FARs. Under the FARs, it is illegal to take off when the weight of an airplane exceeds that shown in the Airplane Flight Manual. When a runway is **contaminated**, i.e., there is standing water less than ¼" deep, a B727-200 plane **must** reduce its weight by 17,000 pounds (below the maximum) and reduce its V-1 speed by 28 knots.[5] This is a **safety** issue: a plane taking off overweight and too fast from a wet runway is hazardous.

Patrick Major had, **prior** to August 17, 1999, criticized the fact that Amerijet did not have a policy requiring these reductions (a/k/a decrements) to be made when conditions were **merely obviously** wet, as opposed to when there was a tower report of standing water. (Major D. 242) In his complaint, he alleged that on a June 1999 flight with Captain Steele, he declined a takeoff clearance because he felt it would be unsafe. (Am. Comp., para. 13) He wrote a report for Amerijet, urging it to modify or adopt a safer policy. For his trouble, he was reprimanded by Derry Huff and, of course, nothing changed. As his complaint further alleges, he was again set to fly with Captain Steele on August 17, 1999, under similarly wet conditions. (Am. Comp., para. 17, 18) Despite his concern, he knew that the flight was arguably **legal** in the absence of a

[5] If there is a standing water report of **more** than ¼", takeoff is prohibited.

tower report of standing water. (P.E. 3) As that report came at the moment of the takeoff roll, he complied with the Captain and did not make his report until afterwards. (P.E. 3)

It is a red herring to suggest that his concern for Amerijet's policy is the basis for his objection claim.[6] In fact, it was his report the day after the illegal flight on August 17. He was suspended, and then fired, because he **correctly characterized** as illegal the takeoff on August 17, 1999. It was illegal because, immediately prior to takeoff there **was** an official tower report of standing water. The plane took off 17,000 pounds overweight.[7] Immediately after his return to Fort Lauderdale, Patrick Major prepared a detailed, lengthy report for NASA. (P.E. 3) He gave it to Amerijet on August 18, before submitting it to NASA. It alleged a violation of the FARs in that the plane took off overweight for the conditions. (P.E. 3)[8]

In response, Amerijet took him off the schedule, did a cursory investigation, hired a lawyer and told Mr. Major he was fired because the company "lost confidence" in him. Notably, Amerijet did not make a report to the FAA. Major did, and **the FAA found that the takeoff was illegal**. (Plaintiff's Exhibits 39, 40, 41.)

Major has created a fact question as to both elements of his objection claim.

---

[6] Amerijet cites to paragraph 16 of plaintiff's amended complaint while ignoring paragraph 21, which specifically cites the federal regulations violated on August 17, 1999.

[7] It is fair to say that **before** the tower report came out, Major's objection was to Amerijet's **policy**, which he felt was dangerous but not necessarily illegal. **After** the report came out, the takeoff became illegal. Major had no meaningful way of either objecting to or refusing to participate in the flight, because it was on the verge of its takeoff roll when the report came out. (P.E. 3)

[8] See P.E. 3, p. 4: "Amerijet flight 827 exceeded aircraft performance limitations and violated FAA regulations in disregard for the most basic of air safety principles and CRM (cockpit resource management). It took off from a contaminated runway in an aircraft that weighed fifteen thousand pounds more than the maximum specified for conditions . . . in circumstances ripe for windshear."

## AGE DISCRIMINATION

### A. Counts III and V - Failure To Promote

For purposes of its summary judgment motion, Amerijet concedes that Patrick Major meets the elements for a prima facie case.[9] The focus is, then, on Amerijet's alleged reason for not promoting him and the evidence that this is pretextual.[10]

There are, as Amerijet concedes, no **objective** criteria Patrick Major failed to achieve.[11] Amerijet's decisionmaker was its president, Dave Bassett. Dave Bassett advised Major in February 1999, that it was felt Major could not fill the position of captain safely, and that Bassett had decided Major would never be promoted. Bassett had not flown with Patrick Major in many years and had no firsthand knowledge on which to base his decision. In fact, he had a favorable personal opinion of him. Bassett relied on input from the operations and training department, specifically Pete Steele and Tracey Dickinson. Major does not concede that Amerijet has met its burden of producing a legitimate, nondiscriminatory business reason for the decision not to promote him. The Eleventh Circuit, in Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc), has clarified that when, as here, the decision turns on subjective factors, the defendant must articulate a clear and reasonably specific factual basis. Amerijet's Human Resources Director, Juan Morales, fully appreciated the need for fair, objective grounds. (Morales D. 34) Yet, Bassett simply made an "executive decision" on grounds that are entirely

---

[9] Major agrees that this is a circumstantial case to be analyzed under the McDonnell-Douglas paradigm. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[10] Decisions construing Title VII are applicable when construing claims under the Florida Civil Rights Act. Ranger Ins. Co. v. Bal Harbour Club, Inc., 549 So. 2d 1005, 1009 (Fla. 1989).

[11] Corporate representative Derry Huff testified he is not aware of **any** documents reflecting Major is not qualified to be a captain at Amerijet. (Huff D. 130)

subjective: "he feared Pat would take an airplane down into a neighborhood and kill people." (Morales D. 34) Of course, Major flew for Amerijet every day and continued to do so for a number of months afterwards.

Assuming arguendo that the reason proffered by Amerijet can be characterized as legitimate, there is ample evidence of pretext.

The United States Supreme Court, in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), clarified the proffer that a plaintiff must make to survive judgment as a matter of law once the employer produces evidence of a legitimate, nondiscriminatory business reason for the challenged action. Rejecting the so-called "pretext plus" standard, the Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[12]

Amerijet's own witnesses demonstrate the falsity of the explanation. Bassett claims to have relied on two sources: (1) Operations (which is Pete Steele) and (2) Training (which is Tracy Dickinson). However, Tracy Dickinson **denied** ever speaking with Bassett about Major; and for that matter directly conferring on any topic. (Dickinson D. 86) Standing alone, this provides credible evidence that the grounds in Bassett's letter were false.

The record is replete with other evidence that the decision was pretextual:

1. Bassett **never** reviewed Patrick Major's training records. (Bassett D. 23)

---

[12] In a circumstantial evidence case under the ADEA, the issue is pretext, **not** mixed motives as it is in a direct evidence case. Brooks v. City of Montgomery, 916 F. Supp. 1193, 1202 (M.D. Ala. 1996).

2. Patrick Major **did not receive**, from Amerijet, training to which he was entitled. Specifically, he was the only upgrade candidate not given a comprehensive pre-oral review and his paperwork for the FAA was not completed. (Major 218)

3. Major was therefore not treated evenhandedly in the promotion process.

4. Bassett **was unaware** that Major, **at the cost of $10,000**, and based on Amerijet's assurances that he would then complete the upgrade, obtained training at a private academy and brought back to Amerijet proof that he met **all bona fide, objective** qualifications for captain. (Morales D. 32, Dickinson D. 88) Bassett's only response to this was that those credentials mean nothing to Amerijet -- a candidate still has to meet Amerijet's **own** requirements. Of course, these "requirements" appear **nowhere** in Amerijet's comprehensive, FAA-approved training manual. They are clearly pretextual in themselves.

5. Bassett testified Major failed measurable performance assessments. (Bassett D. 37) He had not. Amerijet emphasizes the fact that Major's oral exam was discontinued. By Amerijet's current version, this shows Patrick Major's deficiencies. At the time, however, Amerijet did **not** deem it to be so. Instead, for months afterwards, it promised Major additional training. It was only after that training was never scheduled that Patrick Major went outside, paid for and received the training, and presented it to Amerijet. Amerijet again made various excuses before ultimately dumping it in Dave Bassett's lap to make an "executive decision" despite the lack of any objective basis. Bassett's decision was eight months after the FAA incident.

6. Seniority and qualifications were Amerijet's **published** criteria for captain. (P.E. 29) Patrick Major was the second most senior first officer, and was equal to or superior in

qualifications to those junior to him. Promoting less qualified people can support an inference of discriminatory motivation for Title VII purposes. Bass v. Board of Co. Comm., 2001 WL 169746 (11th Cir. 2001); Carter v. Three Springs Residential Treatment, 132 F. 3d 635, 644 (11th Cir. 1998) (subjective evaluations provide a ready mechanism for racial discrimination). Cf. Walker v. Mortham, 158 F.3d 1177, 1186 (11th Cir. 1998) (relative qualifications not part of prima facie case, but can relate to pretext).

7. In February 1997, Major was solicited to resign and accept a severance package which included a release of age discrimination claims. This, in itself, is circumstantial evidence of discriminatory intent. Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1342 (9th Cir. 1987).

8. Major was also told at that time, he was not deemed a captain candidate. He continued to apply and Amerijet gave no explanation as to why in May 1998 it awarded him an upgrade bid. In light of what happened later, it is a fair question whether the bid award was sincere, or was made with the intent of once and for all washing Major out on **some** basis.[13]

9. Between 1996 and 1999, Major witnessed the promotion to captain of 9 first officers who were junior to him, and who fell outside the class protected under the ADEA. Captains hired **from the outside**, which is the only class that Amerijet refers to in its memorandum, are not fair comparators. Amerijet could get them in much more cheaply, both in terms of required training and salary. (Major D. 220, 265-266) Juan Morales, then-director of Human Resources, agrees that other **upgraded** first officers are the proper class. He testified –

[13] For example, Amerijet places emphasis on the negative opinion of Al Jorsey Sr., a check airman. He would have been involved in approving upgrade candidates eight months earlier, as would Pete Steele. If they held such "adamant" opinions, why let Major undergo the process?

**FALSELY** – that when Major's EEOC charge came in, he looked at everyone who had been upgraded in the time period that was referenced, and he was one of the youngest ones. (Morales D. 41)

10. Pilot is a highly-regulated, highly tested job category. There are many jobs in which, for **lack** of objective standards, reliance on intangibles may be more reasonable. No so for airplane pilot, in which credentials, qualifications, training and performance are rigidly monitored by the FAA. It is virtually impossible for an unqualified pilot to slip through the net.

11. The lack of foundation for Amerijet's decision not to promote Patrick Major is demonstrated by the fact that, in his subsequent employment at Miami Air, Patrick Major has become a fully qualified captain. (Major D. 11)

B. Counts IV and VI - Retaliation

After receiving Dave Bassett's definitive letter in February 1999, Major filed an EEOC complaint charging age discrimination. His state of mind: i.e., that he had a reasonable, good faith belief that he was discriminated against, is not in dispute. Gupta v. Florida Board of Regents, 212 F.3d 571, 586 (11th Cir. 2000). He was fired 6-1/2 months later. Dave Bassett claims to have made the decision, although Huff testified that it was made by Pete Steele.[14]

Under prevailing case law, there is a jury question as to whether Major's termination was substantially motivated by his EEOC charge. The **only** element in dispute is causal connection, or a demonstration that the EEOC charge and discharge were not wholly unrelated. Simmons v. Camden Co. Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985). A jury can infer causality from

[14] There is a retaliation claim under the FCRA, as well as the ADEA. Harper v. Blockbuster Entertainment Corporation, 139 F.3d 1385, 1389-90 (11th Cir. 1998).

temporal proximity. See Bass v. Bd. of County Commissioners, 2001 WL 169746 (11th Cir. 2001), Mortenson v. City of Oldsmar, 54 F. Supp. 2d 1118, 1124-25 (M.D. Fla. 1999) (no summary judgment for firing ten months after sexual harassment claim when plaintiff's evidence reveals a series of individual events between protected activity and termination).

Moreover, there is evidence that the climate[15] changed towards Major as a result of his EEOC charge.

1. Major was accused of stalking. (Major D. 254-257)[16]

2. Major was reprimanded by Derry Huff in June. (Huff D. 134-135)

3. Major's continued inquiries about promotional opportunities were met with deceitful responses. (Huff D. 20)

4. Amerijet hired counsel to advise it in firing Major. (Huff D. 65, 158-159)

5. Bassett knew of the charge and made the termination decision. (Major Aff., Bassett D. 66)

MAJOR'S FIRING: RETALIATION/AGE AND RETALIATION/WHISTLEBLOWING

There can be a combination of illegal retaliatory actions: a motivation **combining** Title VII retaliation with retaliation for a whistleblowing activity. Gray v. Webco General Partnership, 36 F. Supp. 2d 1331, 1333 (M.D. Fla. 1999) (claim for retaliation under Title VII and state claim for retaliation under Florida Whistleblower Act can be maintained simultaneously). We have discussed above why Major has created a fact question as to

[15] While describing the environment at Amerijet as hostile, Major is not making a hostile environment claim as such.

retaliation for his whistleblowing activities. Likewise, on the retaliation/age assertion, the interim acts by managers and proximity of his termination create fact questions. See Donnellon v. Gruehauf Corp., 794 F. 2d 598, 601 (11th Cir. 1986) (longtime employee fired one month after filing charge). Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999) (causal link construed broadly; temporal proximity can establish inference of retaliation).

CONCLUSION

For all the foregoing reasons, plaintiff respectfully requests the motion for summary judgment be denied.

I hereby certify that a true and correct copy of the foregoing was furnished via U.S. Mail to: **Susan Potter Norton, Esquire** and **Stephen P. Santiago, Esquire**, Attorney for Defendant, Allen, Norton & Blue, P.A., 121 Majorca, Suite 300, Coral Gables, FL 33134, this 23rd day of March, 2001.

HEINRICH GORDON HARGROVE
WEIHE & JAMES, P.A.
Attorneys for Plaintiff
500 East Broward Boulevard, Suite 1000
Fort Lauderdale, Florida 33394
Telephone: 954-527-2800
Facsimile: 954-524-9481

By: [signature]
VALERIE SHEA
Florida Bar No. 436800

---

[10] Amerijet's memorandum of law, pages 18-19, scrupulously refrains from using this inflammatory term as it discusses Major's "comments." The conduct never approached "stalking" to begin with, but that is what Amerijet managers accused Major of in April 1999.