UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| PATRICK SCOTT MAJOR, | : | CASE NO. 00-6070-Ferguson |
| | | Magistrate Judge Lurana S. Snow |
| Plaintiff, | : | L.T. Case No. 99-021746-11 |
| vs. | : | |
| AMERIJET INTERNATIONAL, INC., | : | |
| Defendant. | : | |
| _____/ | | |

### PLAINTIFF'S NOTICE OF FILING AFFIDAVIT OF JOSE PAGAN

Plaintiff, Patrick Scott Major, by and through its undersigned counsel, hereby gives notice of filing the affidavit of Jose Pagan dated March 22, 2001, in opposition of defendant's Motion for Summary Judgment.

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished via U.S. Mail to: **Susan Potter Norton, Esquire** and **Stephen P. Santiago, Esquire**, Attorney for Defendant, Allen, Norton & Blue, P.A., 121 Majorca, Suite 300, Coral Gables, FL 33134, this 23rd day of March, 2001.

HEINRICH GORDON HARGROVE
WEIHE & JAMES, P.A.
Attorneys for Plaintiff
500 East Broward Boulevard, Suite 1000
Fort Lauderdale, Florida 33394
Telephone: 954-527-2800
Facsimile: 954-524-9481

By: _VALERIE SHEA_
VALERIE SHEA
Florida Bar No. 436800



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| PATRICK SCOTT MAJOR, | : | CASE NO. 00-6070-Ferguson |
| | | Magistrate Judge Lurana S. Snow |
| Plaintiff, | : | L. T. Case No. 99-021746-11 |
| vs. | : | |
| AMERIJET INTERNATIONAL, INC., | : | |
| Defendant. | : | |
| _____/ | | |

STATE OF FLORIDA   :
                   ss.
COUNTY OF BROWARD  :

## AFFIDAVIT OF JOSE PAGAN

1. I am a retired FAA official retained by Patrick Major in this case. My written report contains the majority of my opinions in this case, and it is incorporated here as my sworn testimony. (Exhibit A.)

2. Based on my thirteen years with the FAA, I am familiar with the NASA reporting system: its rationale and function. Advisory Circular 0046-D, attached as Exhibit B, describes the workings of the Aviation Safety Reporting System. Specifically, as described in Section 1, Purpose, the FAA relies on information obtained from the NASA Safety Reporting Program (ASRP) to "take corrective action as necessary to remedy defects or deficiencies in the National Airspace System," which is the subject of the FAA's regulation. The FAA started the reporting program and is the only agency to do anything with the reports.

3. As an FAA official, I did, from time to time, see or receive NASA reports with identifying details blanked out on which further action was to be taken: be it training, personnel changes, or other actions.

1

4. In sum, NASA reports do go to the FAA, which is a regulatory and enforcement agency. If there is criminality involved, the FAA may take action against the reporting party. Thus, the information which NASA collects is collected on the FAA's behalf and can be used, and is used, in FAA enforcement activities.

FURTHER AFFIANT SAYETH NAUGHT.

JOSE PAGAN

STATE OF FLORIDA     :
                     : ss.
COUNTY OF BROWARD    :

BEFORE ME, the undersigned authority, personally appeared JOSE PAGAN, who after being duly sworn, states under oath that he signed the foregoing affidavit, and that the statements therein are true and correct to the best of his knowledge and belief.

SWORN TO AND SUBSCRIBED before me this _22nd_ day of March, 2001.

Personally Known [x]
Identification Produced [ ]
Type of Identification Produced _____

NOTARY PUBLIC,
STATE OF FLORIDA - SIGNATURE

VICTORIA JEAN RYDER
Printed Name of Officer taking Acknowledgment



Victoria Jean Ryder
Commission # DD 008560
Expires April 27, 2005
Bonded Thru
Atlantic Bonding Co., Inc.

## REPORT OF JOSE PAGAN

I have been retained by the plaintiff, Patrick Major, in the case of Patrick Major v. Amerijet International, Inc., Case No. 00-6070-Ferguson/Snow, United States District Court, Southern District of Florida, to render my opinion in this matter. I have reviewed the following documents and depositions:

Airplane Performance Limitations for B-272-200 – KFLL
Airplane Performance Limitations for B-727-200 – KMIA
Meteorological records from NCDC
FAA Report Number 2000SO170009 – Amerijet International, Inc.
FAA Report Number 2000SO170011 – Brian A. Steele
FAA Report Number 2000SO170014 – Brett Wise
Notice of Proposed Civil Penalty to Amerijet
Notice of Proposed Certificate Action to Brett Wise
Notice of Proposed Certificate Action to Brian Steele
Deposition of Derry Huff taken 11/8/00 and exhibits thereto
Continuation of deposition of Derry Huff taken January 8, 2001, and exhibits thereto
Deposition of Brian Steele taken January 8, 2001, and exhibits thereto
Deposition of John Washington taken January 8, 2001, and exhibits thereto
Excerpt of the Amerijet training manual that pertains to CRM

Based upon my education, training and experience, and records I have reviewed, I offer the following opinions:

On August 17, 1999, subject Boeing 727 was to depart from Ft. Lauderdale International (FLL) airport. At the time of the takeoff, the runway surface was contaminated as defined by instructions in the aircraft's operating manual, (AOM). Considerations of the existing meteorological conditions and the existing aircraft weight, dictated that downward adjustment be made to the cargo weight as well as the aircraft takeoff speed. Both of these parameters are designed to assure a safe takeoff under the aforementioned conditions.

The Federal Aviation Administration, FAA, enforces specific regulations that assure in part, that all flight crew personnel train to a program referred to as crew resource management or CRM. This program assures that all members of a flight crew actively participate in the safe operation of the aircraft thus availing the pilot in command of all available information for assuring the safety of the aircraft, passengers and crew.

Therefore, in the case of the events of the flight of August 17, 1999, first officer Patrick Major was under regulatory obligation to offer the pilot in command, Captain Steele, his observations that: the aircraft was too heavy for the conditions, the speed parameters as determined by the aircraft manufacturers were not being followed and that other meteorological conditions existed that placed the aircraft and crew in jeopardy.

Those same regulations obligated Captain Steele to act upon the advice of his crew and make the necessary adjustments to assure safe operation of the aircraft.

With respect to observations made by members of the crew regarding the prevailing runway conditions during August 17, I offer the following: FAA regulations allow the pilot in command, PIC, broad discretion, all however, within the bounds of the regulations. When the tower issued its official reports of the runway condition, the pilot was obligated to make the necessary adjustments to comply with the AOM. As subsequently found by the FAA, the plane took off overweight, thus violating federal aviation regulations.

With regards to the B 727 flap setting on June 8, 1999, I offer the following: The subject B 727 was modified in accordance with an FAA approved supplemental type certificate, STC. The STC modified the aircraft to comply with noise restrictions associated with all turbojet aircraft as stipulated in FAA regulation Part 36. Included in the afore mentioned modification was the restriction of the flap movement. Included in all modifications such as the one in question, are changes to the AOM and training of flight crews. It is against FAA regulations to operate the aircraft in violation of the limitations specified in the AOM.

Associated with the issue above was the removal of the bolt that limited the flap movement by creating a stop. FAA rules consider this maintenance of the aircraft and in this case, the modification or alteration of an approved STC. FAA regulations prohibits other maintenance of the aircraft by persons not properly certificated to do so and the unapproved altering of the STC.

These are my opinions, based on the documents that I have received to date. These opinions may change as new information is discovered through deposition testimony in this matter.

REF: Crew Resource Management, CRM, 14CFR Part 121.404
REF: Complying with AOM, 14CFR Part 121. 135(b)(17)
REF: Takeoff Limitations weight and reference to meteorological conditions, 14CFR Part 121.189(a) and (e)
REF: Persons authorized to perform maintenance, 114CFR Part 43.3
REF: Supplemental Type Certificate, 14CFR Part 21.111

Respectfully,

Jose R. Pagan

# AC 00-46D - AVIATION SAFETY REPORTING PROGRAM

Department of Transportation
Federal Aviation Administration

February 26, 1997
Initiated by: ASY-300

1. **PURPOSE.** This circular describes the Federal Aviation Administration (FAA) Aviation Safety Reporting Program (ASRP) which utilizes the National Aeronautics and Space Administration (NASA) as a third party to receive Aviation Safety Reports. This cooperative safety reporting program invites pilots, controllers, flight attendants, maintenance personnel, and other users of the National Airspace System (NAS), or any other person, to report to NASA actual or potential discrepancies and deficiencies involving the safety of aviation operations. The operations covered by the program include departure, en route, approach, and landing operations and procedures, air traffic control procedures and equipment, crew and air traffic control communications, aircraft cabin operations, aircraft movement on the airport, near midair collisions, aircraft maintenance and recordkeeping, and airport conditions or services. The effectiveness of this program in improving safety depends on the free, unrestricted flow of information from the users of the NAS. Based on information obtained from this program, FAA will take corrective action as necessary to remedy defects or deficiencies in the NAS. The reports may also provide data for improving the currant system and planning for a future system.

2. **CANCELLATION.** Advisory Circular 00-46C dated February 4, 1985, is canceled.

3. **BACKGROUND.**
    a. The primary mission of the FAA is to promote aviation safety. To further this mission, the FAA instituted a voluntary ASRP on April 30, 1975, designed to encourage the identification and reporting of deficiencies and discrepancies in the system.
    b. The FAA determined that the ASRP effectiveness would be greatly enhanced if the receipt, processing, and analysis of raw data were accomplished by NASA rather than by the FAA. This would ensure the anonymity of the reporter and of all parties involved in a reported occurrence or incident and, consequently, increase the flow of information necessary for the effective evaluation of the safety and efficiency of the system. Accordingly, NASA designed and administers the Aviation Safety Reporting System (ASRS) to perform these functions in accordance with a Memorandum of Agreement (MOA) executed by the FAA and NASA on August 15, 1975, as modified September 30, 1983, and August 13, 1987. Current ASRS operations are conducted in accordance with an MOA executed by FAA and NASA on January 14, 1994.

4. **NASA RESPONSIBILITIES.**
    a. NASA ASRS provides for the receipt, analysis, and de-identification of aviation safety

reports; in addition, periodic reports of findings obtained through the reporting program are published and distributed to the public, the aviation community, and the FAA.
  b. A NASA ASRS Advisory Subcommittee, composed of representatives from the aviation community, including the Department of Defense, NASA, and FAA, advises NASA on the conduct of the ASRS. The subcommittee conducts periodic meetings to evaluate and ensure the effectiveness of the reporting system.

5. **PROHIBITION AGAINST THE USE OF REPORTS FOR ENFORCEMENT PURPOSES.**
  a. Section 91.25 of the Federal Aviation Regulations (FAR) (14 CFR 91.25) prohibits the use of any reports submitted to NASA under the ASRS (or information derived therefrom) in any disciplinary action, except information concerning criminal offenses or accidents which are covered under paragraphs 7a(1) and 7a(2).
  b. When violation of the FAR comes to the attention of the FAA from a source other than a report filed with NASA under the ASRS, appropriate action will be taken. See paragraph 9.
  c. The NASA ASRS security system is designed and operated by NASA to ensure confidentiality and anonymity of the reporter and all other parties involved in a reported occurrence or incident. The FAA will not seek, and NASA will not release or make available to the FAA, any report filed with NASA under the ASRS or any other information that might reveal the identity of any party involved in an occurrence or incident reported under the ASRS. There has been no breach of confidentiality in more than 20 years of the ASRS under NASA management.

6. **REPORTING PROCEDURES.** Forms in the NASA ARC 277 series have been prepared specifically for intended users (including ARC 277 A for air traffic use, 277B for general use including pilots, 277C for flight attendants and 277D for maintenance personnel) and are preaddressed and postage free. Completed forms or a narrative report should be completed and mailed only to ASRS at NASA, Aviation Safety Reporting System, P.O. Box 189, Moffett Field, CA 94035-9800.

7. **PROCESSING OF REPORTS.**
  a. NASA procedures for processing Aviation Safety Reports ensure that the reports are initially screened for:

   (1) Information concerning criminal offenses, which will be referred promptly to the Department of Justice and the FAA;

   (2) information concerning accidents, which will be referred promptly to the National Transportation Safety Board (NTSB) and the FAA; and

Note:  Reports discussing criminal activities or accidents are not de-identified prior to their referral to the agencies outlined above.

   (3) time-critical information which, after de-identification, will be promptly referred to the FAA and other interested parties.
  b. Each Aviation Safety Report has a tear-off portion which contains the information that

identifies the person submitting the report. This tear-off portion will be removed by NASA, timestamped, and returned to the reporter as a receipt. This will provide the reporter with proof that he/she filed a report on a specific incident or occurrence. The identification strip section of the ASRS report form provides NASA program personnel with the means by which the reporter can be contacted, in case additional information is sought in order to understand more completely the report's content. Except in the case of reports describing accidents or criminal activities, no copy of an ASRS form's identification strip is created or retained for ASRS files. Prompt return of identification strips is a primary element of the ASRS program's report de-identification process and ensures the reporter's anonymity.

8. **DE-IDENTIFICATION.** All information that might assist in or establish the identification of persons filing ASRS reports and parties named in those reports will be deleted, except for reports covered under paragraphs 7a(1) and 7a(2). This de-identification will be accomplished normally within 72 hours after NASA's receipt of the reports, if no further information is requested from the reporter.

9. **ENFORCEMENT POLICY.**
   a. The Administrator of the FAA will perform his/her responsibility under Title 49, United States Code, Subtitle VII, and enforce the statute and the FAR in a manner that will reduce or eliminate possibility of, or recurrence of, aircraft accidents. The FAA enforcement procedures are set forth in Part 13 of the FAR (14 CFR Part 13) and FAA enforcement handbooks.
   b. In determining the type and extent of the enforcement action to be taken in a particular case, the following factors are considered:
      (1) nature of the violation;
      (2) whether the violation was inadvertent or deliberate;
      (3) the certificate holder's level of experience and responsibility;
      (4) attitude of the violator;
      (5) the hazard to safety of others which should have been foreseen;
      (6) action taken by employer or other government authority;
      (7) length of time which has elapsed since violation;
      (8) the certificate holder's use of the certificate;
      (9) the need for special deterrent action in a particular regulatory area, or segment of the aviation community; and
      (10) presence of any factors involving national interest, such as the use of aircraft for criminal purposes.
   c. The filing of a report with NASA concerning an incident or occurrence involving a violation of 49 U.S.C. Subtitle VII, or the FAR is considered by FAA to be indicative of a constructive attitude. Such an attitude will tend to prevent future violations. Accordingly, although a finding of violation may be made, neither a civil penalty nor certificate suspension will be imposed if:
      (1) the violation was inadvertent and not deliberate;
      (2) the violation did not involve a criminal offense, or accident, or action under 49

U.S.C. Section 44709 which discloses a lack of qualification or competency, which is wholly excluded from this policy;

(3) the person has not been found in any prior FAA enforcement action to have committed a violation of 49 U.S.C. Subtitle VII, or any regulation promulgated there for a period of 5 years prior to the date of occurrence; and

(4) the person proves that, within 10 days after the violation, he or she completed and delivered or mailed a written report of the incident or occurrence to NASA under ASRS. See paragraphs 5c and 7b.

Note: Paragraph 9 does not apply to air traffic controllers. Provisions concerning air traffic controllers involved in incidents reported under ASRS are addressed in FAA Order 7210.3G, Facility Operations and Administration.

10. **OTHER REPORTS.** This program does not eliminate responsibility for reports, narratives, or forms presently required by existing directives.

11. **EFFECTIVE DATE.** This modified Aviation Safety Reporting Program described by this Advisory Circular was effective October 1, 1996.

12. **AVAILABILITY OF FORMS.**

   a. Copies of reporting forms (NASA ARC Form 277, Aviation Safety Report, series) may be obtained free of charge from FAA Flight Standards District Offices or Flight Service Stations, or directly from NASA, ASRS, P.O. Box 189, Moffett Field, CA 94035-9800.

   b. The NASA ARC 277 forms will be stocked at the FAA Depot (AML-640) and will be available to FAA organizations and offices through normal supply channels. The form numbers and descriptions are: NSN 0052-00-916-7000 (NASAARC277A, ATC), NSN 0052-00-916-8000 (NASAARC277B, General Use/Pilots), NSA 00-52-00-916-9000 (NASAARC277C, Cabin Crew) and NSN 0052- 00920-2000 (NASAARC277D, Maintenance).

*[signature]*

Barry L. Valentine
Acting Administrator