UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 00-6070-CIV-FERGUSON/ SNOW

PATRICK SCOTT MAJOR,

Plaintiff,

v.

AMERIJET INTERNATIONAL, INC.,

Defendants.

_____/



## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, AMERIJET INTERNATIONAL, INC. (hereinafter "AmeriJet"), hereby files its Reply to Plaintiff's Response to Defendant's Motion For Summary Judgment.

### Summary

AmeriJet is entitled to summary judgment on Plaintiff's Whistleblower claims because the National Aviation Space Administration (Aviation Safety Reporting System) (hereinafter "NASA(ASRS)") is not an enforcement agency as defined in Florida Statute section 448.101 *et al.* Moreover, it is undisputed that Plaintiff was terminated from employment due to his admissions of his action and inaction with respect to flight 827 contained in his NASA(ASRS) report and not for filing the report. In addition, Plaintiff concedes that AmeriJet's runway analysis policy does not violate the law and he has not produced any evidence that AmeriJet's policies or practices violated the law.

AmeriJet is entitled to summary judgment on Plaintiff's Age Discrimination in Employment Act (hereinafter "ADEA") and Florida Civil Rights Act claims because it is undisputed that from November 1996 to March 1999 AmeriJet hired or upgraded ten (10) Captains, all of whom were in the protected age group. In addition, Plaintiff has not produced significantly probative evidence that AmeriJet's decision to terminate his employment was not based on his failure to take corrective action(s) in a situation which he subjectively believed to be

78315_1

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION



dangerous, thereby placing himself and his fellow crew-members in a potentially hazardous position or that this stated reason is unworthy of credence.

Whistleblower Claims: Count I – Disclosure Claim

NASA(ASRS) is not an enforcement agency. The Federal Register sets forth the purpose and mission of NASA (ASRS) as (1) receipt de-identification and initial processing; (2) analysis and infer problem; (3) dissemination of reports and other data; and (4) system evaluation and review. *41 Fed. Reg.* at 15905. Nowhere in the Federal Register does it state, suggest, or even imply that NASA (ASRS) is an enforcement agency. *41 Fed. Reg. 15903*.

Plaintiff's paid expert, Jose Pagan, in his affidavit does not state that NASA(ASRS) is an enforcement agency, rather he merely states that he has seen redacted NASA(ASRS) reports in his capacity as an FAA official. (Pagan Aff. ¶3). This reinforces the purpose of NASA(ASRS) which is charged with de-identifying reports subject to the program, thereby protecting all parties mentioned in the report. Moreover, Mr. Pagan never states that he used NASA(ASRS) reports to enforce FAA regulations. In this regard, Mr. Pagan's affidavit is consistent with the deposition testimony of Mr. John Roseborough, another FAA official, who unequivocally testified that NASA has no enforcement powers. (Roseborough Depo. at 92, 94, 96).

Plaintiff has failed to establish that NASA (ASRS) is an enforcement agency as that term is defined in Section 448.101(1), and thus, has failed to prove the third element required under Section 448.102(1). As such, AmeriJet is entitled to summary judgment on Count I of Plaintiff's Amended Complaint.

Assuming *arguendo* that Plaintiff has met his burden under Section 448.102(1), Plaintiff cannot establish a genuine issue of material fact that his termination was based on the filing of his NASA (ASRS) report.

In the instant case, Plaintiff suggests that AmeriJet admitted it terminated Plaintiff based on his report. (Plaintiff RMSJ, pgs. 1, 4, 5). This statement is completely erroneous and unsupported by the record evidence. Plaintiff cites to page 114 of Mr. Huff's deposition and page 50 of Mr. Bassett's deposition for support.

Q:    Okay. And can you point me to the language in here that you've referenced in your deposition testimony concerning throwing himself on the throttles?

A:   Two references. The first on page 3 that reads, despite the circumstances, I did not forcibly retire the throttles, stand on the brakes or otherwise interfere with the captain's choice to takeoff. And where he says on the page--

Q:   You can refer to the number on the bottom if you want.

A:   On number 56, when he says, would forcibly aborting the takeoff from the right seat have presented a less dangerous scenario than what we encountered? Who can say?

(Huff Depo. at 114).

Q:   ...What, in your opinion warranted termination?

A:   Well, because he allowed this flight to actually continue to the point where he had got to the place where a severe hazard had occurred or what could have occurred. I mean in his NASA report *he mentions* that ultimately. *The ones that particular stick out* in my brain, the most was ultimately I was out of options and all I could do is throw myself on the throttles to stop the engines.

(Bassett Depo. at 50) (emphasis added).

Contrary to Plaintiff's contention, neither witness testified that the termination was based on Plaintiff's report; rather, it was based on Plaintiff's admissions contained within the report. This is a critical distinction that Plaintiff has misconstrued. There is no record evidence and Plaintiff has not pointed us to any evidence which remotely suggests that AmeriJet terminated Plaintiff because he filed a written report with NASA (ASRS). As such, Plaintiff has not established and cannot establish a genuine issue of material fact, therefore, AmeriJet is entitled to summary judgment on Count I of Plaintiff's Amended Complaint.

### Count II – Objection Claim

Plaintiff's argument with respect to Count II is bewildering. On the one hand, he concedes that arguably flight 827 was legal in the absence of a Tower report of standing water (Plaintiff RMSJ at 5) and, that it is fair to say that before the Tower report came out, his objection was to AmeriJet's policy, which he felt was dangerous, not necessarily illegal. (Plaintiff RMSJ, fn 7, at 6). On the other hand, Plaintiff asserts that after the flight departed, he objected to the flight on August 18, 1999, the day after, because the Tower issued a report of standing water prior to the flight actually departing the airport. This, he now claims, is the basis of his whistleblower claim in Count II. (Plaintiff RMSJ at 6)

78315_1

ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

Regardless of Plaintiff's incongruous positions, Plaintiff still fails to create a genuine issue of material fact because under either scenario he has not produced record evidence that AmeriJet's policy or procedures violated the law.

Count II of Plaintiff's Amended Complaint is based on AmeriJet's runway analysis policy and its alleged practice of having aircraft take off overweight. (Plaintiff Am. Comp. ¶ 34). However, Plaintiff readily admits that AmeriJet's runway analysis does not violate the law. (Plaintiff RMSJ, at 6, fn 7) (Plaintiff Depo. at 180, 190). Moreover, Plaintiff has not submitted any evidence that it was AmeriJet's practice to have its pilots ignore or violate runaway conditions. As such, Plaintiff cannot make a *prima facie* case under 448.102(3).

Assuming *arguendo* that Plaintiff has established that his 448.102(3) claim is now based on the fact that flight 827 took off after receiving a report of standing water and, therefore, violated the law, this does not inure to AmeriJet. Plaintiff's claim and assertion is against Captain Brian Steele's actions as the individual captain in control of the aircraft, not AmeriJet. Plaintiff has not produced any evidence whatsoever that AmeriJet required its pilots either through written memoranda, policy, regulations, or verbal communication to ignore its runway analysis procedures. Moreover, he has not produced any evidence to rebut Mr. Bassett's testimony that AmeriJet pilots are not authorized to disregard official runway contamination reports. (Bassett Depo. at 50). In addition, Mr. Roseborough testified that once the aircraft is underway, the responsibility for the aircraft falls directly upon the pilot, in this case, Captain Brian Steele. (Roseborough Depo. at 43).

The elements of Count II, as correctly pointed out by the Plaintiff, are (1) Plaintiff objected to an activity or policy of AmeriJet which violated a law; and (2) he was subjected to an adverse employment action which was causally related to the whistleblowing activity. *Fla. Stat. 448.102(3)* (Plaintiff RMSJ at 4). Since Plaintiff has not produced any record evidence that AmeriJet required its pilots to ignore its runway analysis procedure and due to his failure to rebut Mr. Bassett's testimony that AmeriJet pilots are not authorized to disregard official runway contamination reports, Plaintiff is unable to sustain the first element of Count II. Therefore, AmeriJet is entitled to summary judgment on Count II of Plaintiff's Amended Complaint.

### Age Discrimination: Counts III and V – Failure to Promote

One of the most important facts in this case, which has been conceded by Plaintiff, is that AmeriJet hired nine (9) captains from November 1996 through March 1999, all of whom were older than the Plaintiff. (Plaintiff Depo. at 156) (Plaintiff NOF, Crew Seniority Lists, Bates Nos. 164 and 167). Plaintiff states:

> Captains hired **from the outside**, which is the only class that AmeriJet refers to in its memorandum, are not fair comparators.[1]  AmeriJet could get them in much more cheaply, both in terms of required training and salary. (Major D. 220, 265-266).

(Plaintiff RMSJ, at 10, ¶ 9). These two conculsory sentences are all Plaintiff could muster to distinguish AmeriJet's hiring of nine (9) captains, all of whom were older than Plaintiff.

Plaintiff cites absolutely no legal authority for his proposition that AmeriJet's decision to hire older airmen from outside the company instead of promoting older airmen from within the company violates the ADEA. He appears to make the argument that AmeriJet's decision to hire the nine (9) older Captains because it was cheaper in costs, both in terms of required training and salary, is a pretext for failing to promote him. Again, Plaintiff cites absolutely no case law for this conclusory statement. Moreover, the Supreme Court has held that:

> …an employee who is younger than forty (40), and therefore, outside the class of older workers as defined by the ADEA, see 29 U.S.C. § 631(a), may have worked for a particular employer his entire career, while an older worker may have been newly hired.  Because age and years of service are analytically distinct, an employer can take an account of one while ignoring the other, and thus, it is incorrect to say that a decision based on years of service is necessarily "age based."

> …That law requires the employer to ignore an employee's age (absent a statutory exemption or defense); it does not specify *further* characteristics that an employer must also ignore.

*Hazen Paper Co. v. Biggens*, 507 U.S. at 611, 612 (1993).

The clear implication of the Supreme Court's ruling in *Hazen Paper* is that the ADEA does not prohibit an employer from making an employment decision on the basis of higher

---

[1]    Plaintiff's argument about comparison groups suggests a "disparate impact" claim, which has not been recognized under the ADEA. *Hazen Paper Co. v. Biggens*, 507 U.S. 604 (1993). In addition, Plaintiff's "comparison" argument is without merit because it is undisputed that Doug Benson was promoted to Captain from "within" AmeriJet in November 1998 at the age of forty-two (42). (Plaintiff Disputed Facts at 3, ¶ 18) (Plaintiff Aff. Ex. E).  This undisputed fact totally negates his claim that AmeriJet discriminated against him on the basis of age.
78315_1

salaries, increased benefits, pension status, or claims for medical expenses even though these characteristics are often co-related with an employee's age. *See Broaddus v. Florida Power Corp.*, 145 F.3d 1283 (11th Cir. 1998). *See also Molenda v. Hoechst Celanese Corp.*, 60 F. Supp. 2d 1294 (S.D. Fla. 1999) (the Court held that the ADEA prohibits discrimination on the basis of age; it does not prohibit discharge on the basis of salary or seniority.); *Dilla v. West*, 179 F.3d 1348 (11th Cir. 1999) (The Eleventh Circuit held that the refusal to hire plaintiff because he would be eligible to retire much sooner than the younger applicant and that he had achieved a higher pay grade than the younger applicant and, therefore, would require a higher salary than the younger applicant did not violate the ADEA); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir. 1994) (the Court upheld summary judgment in favor of defendant holding that plaintiff could not prove age discrimination even if he was fired simply because defendant desired to reduce its salary costs by discharging him).

Even if AmeriJet's decision to hire these nine (9) older captains was based on a cost-saving measure, it does not violate the ADEA. Moreover, Plaintiff cannot rely on AmeriJet's cost-saving measure to support his age discrimination claim because under the ADEA higher salaries and seniority are legitimate non-discriminatory business reasons for terminating an employee and, likewise, for not promoting an employee.[2] *See Broaddus, Modena, Dilla and Anderson, supra.*

In addition to the Plaintiff's alleged pretexts discussed above, the Plaintiff lists nine (9) other alleged pretextual reasons that AmeriJet's failure to promote him was based on age.

In paragraphs 1, 4, 5, and 8 of Plaintiff's Response to Motion for Summary Judgment, he alleges several pretextual reasons concerning Mr. Bassett's failure to promote him to Captain. Mr. Bassett candidly admitted in his deposition that he did not review the training records of Plaintiff in making his determination to not promote Plaintiff to Captain. However, Mr. Bassett did testify that he relied upon the training department in reaching his conclusions. (Bassett Depo. at 38, 39, 65). Mr. Bassett is the sole owner of AmeriJet, which is a private company employing approximately four hundred fifty (450) individuals. (Bassett Depo. at 4). While he is

---

[2] Plaintiff's asserts that his seniority as the second most senior First Officer and his qualifications, which he claims were equal to or superior to those junior to him was a pretext for age discrimination. First, he produces no evidence that these airmen were less qualified than him. His own testimony that he had superior qualifications is not enough to raise a genuine issue of material fact. Moreover, his argument that his seniority and his qualifications create a pretext for discrimination fail *Broaddus, Modena, Dilla and Anderson, supra.*

**6**

the designated safety officer for AmeriJet; he does not have operational control of the airline and relies on subordinates and department heads to advise him as to the status of the operations. (Bassett Depo. at 7, 58). Mr. Bassett did what any reasonable CEO and owner would do; he relied on the department that was responsible for hiring and training pilots in making his decision not to promote Plaintiff to Captain. The fact he did not review Plaintiff's records hardly creates a pretext.

Plaintiff alleges as a pretext that his May 1998 upgrade bid, which was approved by Mr. Bassett, may have been done with the intent to wash Major out on some basis. (Plaintiff RMSJ, at 10, ¶ 8). However, Plaintiff submits absolutely no evidence whatsoever to support this "conspiracy" theory. Contrary to Plaintiff's unsupported contention Mr. Bassett testified that he specifically discussed with the training department Plaintiff's situation and that it was time for a reassessment because he wanted everybody to be given an opportunity to be treated properly. (Bassett Depo. at 35). In the absence of any evidence to the contrary, Mr. Bassett's unrebutted testimony establishes that AmeriJet was not making a hollow offer.

With regard to Plaintiff's assertion that he was not treated evenhandedly because he did not receive a pre-oral exam, Plaintiff has produced absolutely no evidence whatsoever that all pilots in the upgrade process received a pre-oral examination prior to their FAA oral examination. (Plaintiff RMSJ, at 9, ¶ 2). (Major 218). Upon reviewing Plaintiff's deposition testimony, he readily admits that he was not present for the review, if any, of other candidates and nor did he give the review for other candidates. (Plaintiff Depo. at 218). This testimony does not create a genuine issue of material fact.

Plaintiff relies on the fact that in February 1997, he was offered a severance package, which included a release for age discrimination claims as circumstantial evidence of a discriminatory intent. (Plaintiff RMSJ at 10, ¶7). He relies on *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir. 1987)[3] to support his position. However, even a cursory reading of *Cassino* supports AmeriJet's position that its proffer of the severance package to Plaintiff is not circumstantial evidence of a discriminatory intent.

---

[3]    In *Cassino*, the court discusses two (2) distinct situations appearing in ADEA cases which give rise to circumstantial evidence of discriminatory intent. The first is in connection with the negotiation and settlement of disputes arising after the termination, and the second occurs when the employment relationship is terminated and the employer offers a contemporaneous severance pay package in exchange for a release of all potential claims, including claims for discriminatory acts that may have occurred at or before the termination. *Id.* at 1342.

In the instant case, neither of the situations discussed in *Cassino* is present. It is undisputed that at the time the severance package was offered, Plaintiff was asked to resign as opposed to being terminated, he was welcome to remain employed as a First Officer, and the option to resign was solely his decision. (Plaintiff Depo. Exhibit 7). In other words, AmeriJet was not forcing Plaintiff to resign or forcing him to sign the severance agreement; rather it merely provided him an option because of AmeriJet's determination that Plaintiff did not have the skills to become a Captain. (Plaintiff Depo. Exhibit 7). Under these circumstances there can be no circumstantial inference of a discriminatory intent.

Plaintiff's assertion that the position of pilot is a highly regulated and highly tested job category that is better assessed by viewing objective credentials, qualifications and training vice the intangible skills does not raise a pretext for failing to promote him. (Plaintiff RMSJ, at 11, ¶10). Moreover, Plaintiff cites no case law to support his position nor has he produced any evidence to rebut the testimony of Mr. Bassett, Mr. Jorsey, or Mr. Cook who testified that Plaintiff was not promoted because he was a safety risk and that he did not have either the intangible skills or the situational awareness to be a Captain. (Bassett Depo. at 65) (Jorsey Depo. at 13, 15) (Cook Depo. at 32, 33). Further, a subjective reason can constitute a legally sufficient, legitimate, non-discriminatory reason under *McDonald Douglas* and can be just as valid as an objective reason. *Chapman v. Al Transp.*, 229 F.3d 1012 (11th Cir. 2000).

AmeriJet has met its burden of producing legitimate, non-discriminatory reasons for not promoting Plaintiff to the position of Captain. Plaintiff has failed to produce significantly probative evidence that AmeriJet's legitimate non-discriminatory reasons were pretexts for age discrimination, as such AmeriJet is entitled to summary judgment.[4]

## Counts IV and VI - Retaliation

In Counts IV and VI of Plaintiff's Complaint he alleges that following the EEOC/FCHR Complaint for age discrimination, he suffered adverse employment action by being harassed, intimidated, subjected to a hostile work environment and eventually being terminated. (Plaintiff

---

[4]    Plaintiff's assertion that his position as a Captain with Miami Air establishes a pretext is absurd. He fails to argue how this is relevant in establishing a pretext, how it is relevant to his previous employment at AmeriJet, and fails to support it with legal authority. At the time of his deposition, February 15, 2001, Plaintiff testified that he had not flown or logged any flight hours in the 727-type aircraft even though he was a Captain at Miami Air. (Plaintiff Depo. at 11, 12).

78315_1

**8**

Am. Comp. ¶¶ 34, and 54).[5]   Plaintiff asserts that he has produced substantial evidence of retaliation for filing his EEOC Complaint because after filing his complaint he was accused of stalking, he was reprimanded in June 1999, his requests for promotions were handled in a "deceitful" manner, AmeriJet hired counsel to advise it in firing him, and Mr. Bassett knew of the charge of discrimination at the time he made the decision to terminate Plaintiff's employment. (Plaintiff's RMSJ at 12). In support of his assertions, Plaintiff relies on the case of *Mortenson v. City of Oldsmar*, 54 F.Supp. 2d 1118 (M.D. Fla. 1999).[6]

AmeriJet directs this Court to the case of *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999) as factually more on point to the instant case. In *Maniccia*, subsequent to her August 1991 sexual harassment complaint plaintiff was issued written reprimands for improper use of employer assets, transporting a passenger without authorization, and subsequently, lying about it. As a result of these actions, plaintiff was terminated from employment a year and a half later in April 1993.   The Court affirmed summary judgment in favor of the defendant holding that plaintiff presented no evidence suggesting her sexual harassment complaint motivated the defendant's actions, and thus, her retaliation claim failed.

In the instant case, Plaintiff's allegations of a "climate change" towards him are more akin to *Manicca* than *Mortenson*. The evidence he presents does not suggest his age complaint motivated AmeriJet to terminate his employment.

With respect to stalking, it is undisputed that another employee, Captain Tim Greene, made a formal complaint to AmeriJet that Plaintiff was harassing him by disclosing and discussing with other crew members Captain Greene's aircraft accident and his subsequent lawsuit in which he recovered damages. (Huff Depo. at 82, 83, 84).   More importantly, Plaintiff admitted that he engaged in the conduct that caused Captain Greene to make the official complaint. (Plaintiff Depo. at 256).   Thus, it is undisputed that AmeriJet took action against Plaintiff only after receiving a legitimate complaint.

---

[5]   Despite the language asserting a hostile work environment, it appears that Plaintiff has withdrawn that portion of his Complaint. (Plaintiff RMSJ, at 12, fn 15). AmeriJet relies on *EEOC v Amassey-Yardley Chrysler Plymouth, Inc.,* 117 F.3d 1244 (11th Cir. 1997), that a hostile work environment claim is not actionable under the ADEA .

[6]   In *Mortenson,* the court held that the twenty-two (22) month time period between the plaintiff filing her charge of sexual harassment and her termination, in and of itself, was not enough to grant summary judgment in favor of defendant when other unrebutted adverse actions had been taken against plaintiff during the same time frame.

78315_1

**9**

Likewise, the June 1999 incident was also initiated by another employee who made a written complaint against the Plaintiff. After completing a flight with Plaintiff, Captain Brian Steele filled out and submitted to Mr. Huff a proficiency report accusing Plaintiff of insubordination. (Huff Depo. at 134, 135). Mr. Huff allowed Plaintiff to respond to it in writing and met with Plaintiff to discuss the incident. (Huff Depo. Exhibit 6, Bate stamped 000058 to 000066). After conducting his investigation, Mr. Huff orally counseled Plaintiff for insubordination and the incident was resolved. Plaintiff was not punished and nothing was inserted into his personnel file about the incident. Like the situation with Captain Greene, AmeriJet was only following up on complaints brought by other employees. Under these circumstances, AmeriJet's actions cannot be characterized as retaliatory.

Plaintiff's assertion that his inquiries about promotional opportunities were met with deceitful responses is inaccurate. Mr. Huff testified that when he told Plaintiff that he would be afforded the same opportunities as all other crew-members he was unaware that the decision was already made that Plaintiff had had his opportunities to be promoted and would not be afforded others. (Huff Depo. at 20). Moreover, even assuming that Mr. Huff was deceitful this one incident is not enough to support Plaintiff's claim of retaliation based on the EEOC Complaint.

In the instant case, the actions taken by AmeriJet were only taken after other employees made written and verbal complaints about Plaintiff. Moreover, Plaintiff has submitted no evidence to rebut AmeriJet's position that it terminated his employment based on his actions and inaction with regard to flight 827. Plaintiff, by his own admission, permitted himself and his fellow crew members to be placed in a situation that he subjectively believed so dangerous that he considered aborting a take-off of the aircraft by "throwing himself on the throttle." (Plaintiff Depo. Exhibit 13). Yet Plaintiff took no action to rectify the situation. Based on this information, and the danger involved in Plaintiff's inaction and the action he contemplated (aborting the take-off), AmeriJet's President, Dave Bassett, made the business determination to terminate Plaintiff's employment. (Bassett Depo. at 50).

Plaintiff has failed to produce significantly probative evidence that AmeriJet's actions taken between the filing of this EEOC Complaint and its legitimate, non-discriminatory reasons for terminating his employment were motivated by age.

78315_1

ACCORDINGLY, based on the foregoing, AmeriJet respectfully requests that this Court grant its Motion For Summary Judgment on all Counts contained in Plaintiff's Amended Complaint.

Respectfully submitted,

Susan Potter Norton
Florida Bar No. 0201847
Stephen P. Santiago
Florida Bar No. 0964425

ALLEN, NORTON & BLUE, P.A.
121 Majorca, Suite 300
Coral Gables, FL 33134
Tel: (305) 445-7801
Fax: (305) 442-1578
snorton@anblaw.com
ssantiago@anblaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail, on this 2nd day of April, 2001 upon:

Valerie Shea, Esq.
HEINRICH GORDON HARGROVE
 WEIHE & JAMES
500 East Broward Boulevard, Suite 1000
Ft. Lauderdale, Florida 33394

Attorney

78315_1

**11**
ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION