UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

PATRICK SCOTT MAJOR,                    :        CASE NO.  00-6070-Zloch
                                                 Magistrate Judge Lurana S. Snow
          Plaintiff,                    :

vs.                                     :

AMERIJET INTERNATIONAL, INC.,           :

          Defendant.                    :
_____/

### PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES AND SUPPORTING MEMORANDUM OF LAW

Plaintiff, Patrick Scott Major, pursuant to Fed.R.Civ.P. 54(d), and section 448.104, Florida Statutes, moves the Court for an award of his attorney's fees, costs, and expenses in the lodestar amount of **$336,726.44**, subject to enhancement at the Court's discretion. Pursuant to Local Rules 7.1 and 7.3, he submits the following memorandum in support of his motion.

### MEMORANDUM OF LAW

A.   Procedural Posture.

In plaintiff's action, which originated in early 2000, he alleged two claims under the Florida Whistleblower Act; an ADEA claim based on failure to promote; and an ADEA retaliation claim. Amerijet moved for summary judgment on all counts. The Court denied the motion as to the whistleblower and retaliation claims, and granted it as to the ADEA claim.

The case proceeded to jury trial, before the Honorable Jose A. Gonzalez, from November 10 to November 14, 2003.



CASE NO.  00-6070-Zloch

The jury returned a verdict in favor of plaintiff on the Whistleblower Act claims and for defendant on the retaliation claim.  The jury awarded damages to plaintiff in the amount of **$522,120**.  The verdict for plaintiff has been reduced to a judgment in which the Court retained jurisdiction to consider all issues relating to attorney's fees, costs and expenses.  By this motion, plaintiff asks the Court to determine his entitlement to an award of attorney's fees, and costs and expenses, pursuant to the Florida Whistleblower Act, and to determine a reasonable amount to be awarded in each category.

B.     The Statute.

The Florida Whistleblower Act, passed in 1991, provides a civil remedy for employees who have been retaliated against for protected whistleblowing activities.  Fla. Stats §448.103.  The Act expressly provides, in section 448.104, that: "A court may award reasonable attorney's fees, court costs, and expenses to a prevailing party."  For the reasons that follow, the Court should exercise this discretion to find that Patrick Major is entitled to an award of attorney's fees and costs.

C.     As a Prevailing Plaintiff, Patrick Major is Entitled to an Award of His Attorneys' Fees and Costs.

The Florida Supreme Court, in Golf Channel v. Jenkins, 752 So. 2d 561, 565 (Fla. 2000), characterized the Whistleblower Act as a remedial statute which should be liberally construed in favor of granting access to the remedy provided by the Legislature.  There are no Whistleblower Act cases specifically discussing how the Court's discretion should be exercised when a prevailing party moves for attorney's fees.  Fortunately, however, this standard is well developed in the context of Title VII and other civil rights statutes.  These statutes, like the Whistleblower

CASE NO.  00-6070-Zloch

Act, exist to remedy unlawful employment practices, and the Whistleblower Act is to be construed accordingly.  Padron v. BellSouth Telecommunications, Inc., 196 F.Supp. 2d 1250, 1255 (11th Cir. 2002).

With respect to Title VII cases, which are governed by a similar fees-shifting provision, "a prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances." Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 417 (1978). Duncan v. Poythress, 777 F.2d 1508, 1510 (11th Cir. 1985) (en banc) ("prevailing plaintiffs' attorneys are presumptively entitled to fees"); Dowdell v. City of Apopka, 698 F.2d 1181, 1189 (11th Cir. 1983) (including for litigating the issues of attorney's fees); Cf. Wesley Home Ministries, Inc. v. City of Hallandale, 670 So. 2d 1046, 1049 (Fla. 4th DCA 1996) (shifting attorney's fees has enabled vigorous enforcement of civil rights policies, and allowed victims of violations, who are not wealthy people, access to court).

The degree of success may also be considered in determining a fee award.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).  Here, Mr. Major's claim for age discrimination, under the ADEA, was resolved in Amerijet's favor on summary judgment.  He had a claim for ADEA/FCRA retaliation through the time of trial.  However, he was not the prevailing party. Accordingly, undersigned counsel has carefully reviewed the extensive time records contemporaneously kept throughout the four-year history of this case.  We have deleted from those records all time entries uniquely associated with the claims on which Major did not prevail. Accordingly, the fees and costs sought in this motion all either uniquely relate to the

CASE NO. 00-6070-Zloch

Whistleblower Act claims, or relate to tasks (as one example, the preparation of a pretrial stipulation) in which the claims were inextricably entwined.

With respect to entitlement, then, in <u>Sayers v. Stewart Sleep Center</u>, 140 F.3d 1351, 1353-54 (11th Cir. 1998), the court amplified as to how a trial court should exercise the discretion granted it under a civil rights fee-shifting provision. It explained that the equitable considerations depend on whether the prevailing party is the defendant or the plaintiff. To avoid discouraging plaintiffs from bringing civil rights suits, successful defendants should not receive an award of fees unless the case was frivolous. On the other hand, "a plaintiff is to be awarded attorney's fees in all but special circumstances." <u>Lee v. American Eagle Airlines, Inc.</u>, 93 F.Supp. 2d 1322, 1328 (S.D. Fla. 2000). This doctrine recognizes that the victims of unlawful retaliation are not likely to have the means to bring a suit in the absence of the likelihood of a recovery of fees. The amount of damages to be recovered may be too slight to make a standard contingency fee recovery viable.

Costs, too, are recoverable for the same purpose: to ensure the effective enforcement of civil rights laws, by making it financially feasible to litigate civil rights violations. <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181.

Florida statutes which embrace goals, and fee-shifting provisions, similar to Title VII and the Whistleblower Act, are routinely construed to give prevailing plaintiff's fees awards consistent with the Title VII standard. For example, the Florida Civil Rights Act, section 760.11, provides for a discretionary award of fees and states:

> It is the intent of the Legislature that this provision for attorney's fees be interpreted in a matter consistent with federal case law involving a Title VII action.

- 4 -

CASE NO.  00-6070-Zloch

All the reasons exist for ruling that plaintiff Major is entitled to an award of attorney's fees and costs:

**First**, he prevailed in two distinct whistleblower claims.

**Second**, the intent of the fee-shifting provision is to make it easier for a plaintiff of limited means to bring a meritorious action.  Lee , 93 F. Supp. 2d at 1329.  Patrick Major, who was unable to maintain steady employment for several years after his termination by Amerijet, would not have been able to pursue this suit in the absence of the fee-shifting provision.

**Third**, as demonstrated by the verification of undersigned counsel below, representation was undertaken on a contingent basis, with the express expectation of an award of court-awarded attorney's fees in the event of success.

D.    Amount Sought and Basis.

The amount sought, prior to any consideration of enhancement is **$294,783.50** in attorney's fees and **$41,942.94** in costs and expenses.  These amounts are supported with particularity by the attached comprehensive time run and cost run (Exhibit A).  Exhibit A reflects contemporaneously-maintained time entries and costs actually incurred.  On Page 42, there appears a detailed recap as to time spent by each individual who participated on the case.[1]  As noted above, the original run has been edited to delete entries uniquely associated with the ADEA claims.  Also deleted were entries associated with a withdrawn expert; and some paralegal entries which were described too vaguely for undersigned counsel to be certain as to how the time was spent.[2]

---

[1] Note that time is detailed through November 25, 2003; a supplement will be made, if necessary.

[2] Undersigned counsel is cognizant of the need to apply billing judgment; i.e., to exclude any hours which appear excessive, redundant, or otherwise unnecessary.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  Here, counsel

CASE NO.  00-6070-Zloch

What remains is time reasonably and indeed necessarily incurred, in the prosecution of this action.  As the Court is aware, the case is four years old.  It was defended very aggressively, both during the discovery phase and by subsequent motion practice.  The claims arise out of the same course of conduct and share a "common core of fact," such that plaintiff should be awarded all fees incurred once the time spent on "discrete, unsuccessful claims" has been removed.  See Hensley, 461 U.S. at 435.  The Eleventh Circuit has taken an expansive view as to whether claims are related by a common core of fact.  Popham v. City of Kennesaw, 820 F.2d 1570, 1579 (11th Cir. 1987) (noting plaintiff's counsel must explore every aspect of case, develop all the evidence, and present it to the court); cited in Lambert v. Fulton Co., Georgia, 151 F.Supp. 2d 1364, 1370 (N.D. Ga. 2000).

Patrick Major and undersigned counsel entered into a contingency fee agreement in September 1999 (Exhibit B).  Pursuant to that agreement, attorney's fees are to be satisfied by the **greater** of forty percent of the verdict amount **or** the amount awarded by the Court.  Four years ago, the parties agreed that reasonable rates would be:  partner - $250 an hour; associates - $150 an hour; and paralegals - $95 an hour.  Those rates, however, are no longer reasonable.  Thus, in the attached statement of attorney's fees, rates up until the two-year anniversary of the agreement are calculated at the above rates.  As of September 14, 2001, however (the two-year anniversary of the retainer agreement), the rates are calculated according to the following schedule:  partner - $300; associates - $175; and paralegals - $110.  The recap by person details the number of hours billed at each of the two rates.

---

trimmed 30 hours she billed on unique ADEA issues and issues relating to an expert who was later dropped; 28.7 hours of paralegal time on the same issues; and 120.1 hours billed by a paralegal whose descriptions did not detail the tasks performed in such a way that they could be fairly presented to opposing counsel.

CASE NO.  00-6070-Zloch

E.    Determining a Lodestar.

The Eleventh Circuit's approved approach to a fee award is for the Court to determine a reasonable hourly rate and the number of hours reasonably expended.  Miller v. Kenworth of Dothan, Inc., 117 F.Supp. 2d 1247, 1253-54 (M.D. Ala. 2000).  This presumptively reasonable fee, or lodestar, may then be adjusted upward or downward based on several factors.

1.    Reasonable Hours.

"Reasonable hours" includes both the work of attorneys and paralegals who engage in work traditionally performed by an attorney.  Lambert v. Fulton Co., 151 F.Supp. 2d at 1370. Here, lead lawyer Valerie Shea expended 696.7 hours in a case that spanned nearly four years, that generated close to 300 pleadings[3], and that was aggressively defended on each and every issue.  Mark Boyd, who became involved for purposes of trial and participated very significantly at trial, expended 121.5 hours.  Bruce Weihe, also a partner, has expertise in bankruptcy and became involved in dealing with the issues relating to Amerijet's Chapter 11 bankruptcy filing, for a total of 26 hours.  Associate lawyers' contributions totaled only 8.4 hours.  Paralegal hours, which total 628.7, correlate to the extensive discovery and depositions, and repeated trial preparation efforts, that were necessarily entailed as the case proceeded for an extended time period.

The Court's guidance as to reasonable hours comes from Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292 (11th Cir. 1988) (en banc):  What would a lawyer bill "a client of means who was seriously intent on vindicating similar rights . . ..?"  Id. at 1301. Here, plaintiff's counsel conscientiously exercised cost benefit analysis and refrained from any

---

[3] Counsel's pleading file, which of course includes discovery filings not part of the Court file, hovers at 280+ pleadings.  PACER reflects the Court docket to stand at 266 entries through verdict.

CASE NO.  00-6070-Zloch

activities that might have unnecessarily boosted the time spent.  (As one example, despite Amerijet's witness list naming 52 trial witnesses, only eleven depositions were taken.)  Here, the number of hours worked over four years is indisputably reasonable.  The entries are devoid of unnecessary duplication of effort or other excesses.

    2.   <u>Reasonable Hourly Rates</u>

"Reasonable hourly rates" are to be derived from "the prevailing market rates in the relevant community."  <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984).  Prevailing market rates are those charged by lawyers of reasonably comparable skill, experience, and reputation for similar services.  <u>Id.</u> at 895 and n.11.  Additionally, the Court's observations of counsel's preparation and skill are material to the determination of a reasonable hourly rate.  <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 718 (5th Cir. 1974).

The hourly rates proposed by plaintiff are extremely conservative in the South Florida market.  Their reasonableness is demonstrated by the following evidence:

**First**, the declaration of Valerie Shea (Exhibit C) that $300 per hour is the fee for which she, Mark Boyd, and Bruce Weihe are willing to work for fee-paying clients, and the fee which fee-paying clients are willing to pay to hire them.  The same declaration is likewise evidence that the rates proposed for associates and paralegals are what Gordon Hargrove & James recently has charged fee-paying clients for the services of its associates and paralegals.

**Second**, the Court can look at the credentials of plaintiff's counsel, as described in Exhibit C and its attachments.  Ms. Shea, Mr. Boyd, and Mr. Weihe are all AV-rated by Martindale Hubbell.  Ms. Shea devotes a substantial portion of her practice to employment law matters.  Among other accomplishments, she is the Immediate Past President of the Florida

CASE NO. 00-6070-Zloch

Defense Lawyer's Association. Mr. Boyd is a 27-year attorney who has been lead trial lawyer in over 200 civil trials. Mr. Weihe possesses substantial experience in the bankruptcy area.

**Third**, the Court can consider opinion testimony as to market rates, as reflected in the materials appended to this motion as Exhibits D and E. Exhibit D reflects the opinion of Henry Latimer, an experienced litigator and employment law attorney, that the hourly rate proposed is on the low end of market rates in today's environment. As for Exhibit E, undersigned counsel, Valerie Shea, represented BellSouth in the D'Aragona case. As of 2000, the "going rate" for experienced employment law attorneys was $350 per hour, as attested to by William Amlong and Neil Chonin. The rate has increased since then. (See Exhibit D)

**Fourth**, the Court can draw on its own experience as to awards made in like cases and the performance of plaintiff's counsel.

Under all of these measures, the proposed rates for 1999-2001, increasing for the 2001-2003 time frame, are eminently reasonable.

If plaintiff's proposed hours and rates are adopted, the lodestar amount for fees is **$294,783.50**. Plainly, this is not excessive for a case litigated for four years, to verdict, to the tune of nearly 300 pleadings. Defendants have not and cannot argue that any measures were taken to resolve the suit or reduce its cost. What defendants do concede is that Amerijet's liability insurance policy, with $1 million limits subject to wasting for costs of defense, was subject to being exhausted by the defense of this case and the resolution of the companion case, Luis Michaels v. Amerijet, Case No. 99-23595 CA 11 in the 11th Judicial Circuit, in and for Dade County, Florida.[4] Following judgment, Amerijet's carrier paid $480,000 to Mr. Michaels.

---

[4] See defendant's Motion to Compel Mediation/Settlement Conference with Magistrate served October 27, 2003.

CASE NO.  00-6070-Zloch

That means that between the two cases, over half a million dollars – and over fifty percent of the available proceeds – was spent in defense costs.  Since <u>Michaels</u> was a much simpler case, and ended long ago, it is a safe assumption that this case consumed a disproportionate share of the funds spent.  Amerijet, therefore, can hardly complain as to the amount submitted to be reasonably owed for the plaintiff's side of the case.

F.    <u>Adjusting the Lodestar.</u>

The Court has discretion to award an enhancement, or multiplier, to the lodestar amount. The Florida Supreme Court, in <u>Standard Guar. Ins. Co. v. Quanstrom</u>, 555 So. 2d 828 (Fla. 1990), held that in cases presenting discrimination issues, with fee-authorizing statutes to encourage private citizens to bring actions, the trial court "**must consider**" a contingency risk factor.  <u>Id.</u> at 833, 830.  <u>Accord Bell v. U.S.B. Acquisition Co., Inc.</u>, 734 So. 2d 403, 410 (Fla. 1999).  In this decision, the court discussed and distinguished what is now the prevailing approach in the federal district courts; i.e., to eliminate use of a multiplier.  <u>Id.</u> at 832.

In applying Florida law, courts are directed to consider the twelve factors appearing in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-719 (5th Cir. 1974), to determine a reasonable fee:

1) the time and labor required;
2) the novelty and difficulty of the questions;
3) the skill requisite to perform the legal service properly;
4) the preclusion of other employment by the attorney due to acceptance of the case;
5) The customary fee;
6) whether the fee is fixed or contingent;
7) time limitations imposed by the client or the circumstances;
8) the amount involved and the results obtained;
9) the experience, reputation and ability of the attorneys;
10) the "undesirability" of the case;

- 10 -

CASE NO.  00-6070-Zloch

11)    the nature and length of the professional relationship with
       the client;
12)    awards in similar cases.

Quanstrom, 555 So. 2d at 834.

The affidavit of lead counsel, attached as Exhibit C, addresses the applicability of the factors in this case. Clearly, they weigh in towards a multiplier to the lodestar amount. This case posed, and continues to pose, a significant risk of nonpayment. It was exceptionally challenging, as tactics such as a motion to bifurcate, **after** trial started, were continually deployed by Amerijet. The litigation was protracted and the merits of the case were disparaged by Amerijet at every turn. The award of a conservative rate at the low end of the market does not adequately account for the risks associated with this case. Based on the Johnson factors, plaintiff proposes a multiplier of 1.5, or a fifty percent increase in attorney's, fees for a total award of **$442,175.25**. This is on the low end of the range approved in Quanstrom. Id. at 834.

If for any reason the Court declines to apply a multiplier, an accommodation should be made to compensate for the delay in payment. As the Court can discern, much of the work in this case dates back to 2000 and 2001. Some enhancement must be made to the lodestar to compensate for the delay. A viable approach would be to recalculate all the fees at the rates effected in September 2001, which results in a fees award of **$323,887**. See Norman, 836 F.2d at 1302 ("in this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and general award compensation at current rates rather than historic rates.")

CASE NO.  00-6070-Zloch

G.    Fees For Preparation Of Fee Application.

It is well-established that fees may be recovered for time spent preparing and litigating a fee request.  Lambert v. Fulton Co., Georgia, 151 F.Supp. 2d 1364, 1370 (N.D. Ga. 2000). Those fees appear on the attached statement and will be supplemented, if necessary, based on defendant's response to this petition.

H.    Costs and Expenses.

Section 448.104, like its counterpart section 1988, allows plaintiff to recover costs beyond what is provided for by 28 U.S.C. § 1920.  "With the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under §1988."  ACLU of Ga. V. Barnes, 168 F.3d 423, 438 (11th Cir. 1999) (quoting Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983)); see Mallory, 923 F.Supp. at 1557 ("[B]ecause the Plaintiff has sought attorney's fees, 42 U.S.C. § 1920 does not restrict the recovery of costs.").

Pursuant to § 1988, a plaintiff may recover all out-of-pocket expenses that "would normally be charged to a fee paying client" and are not "routinely absorbed in office overhead." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994); Cleveland Area Bd. of Realtors v. City of Euclid, 965 F.Supp. 1017, 1023 (N.D. Ohio 1997); Jane L. v. Bangerter, 828 F.Supp. 1544, 1558 (D. Utah 1993); Cherry v. Rockdale County, 601 F.Supp. 78, 81 (N.D. Ga. 1984).  Importantly, the Eleventh Circuit has directed that "the standard of reasonableness is to be given a liberal interpretation."  Dowdell, 698 F.2d at 1192; accord NAACP v. City of Evergreen, 812 F.2d 1332, 1337 (11th Cir. 1987).  In applying this standard, the Eleventh Circuit and district courts in

- 12 -

CASE NO. 00-6070-Zloch

this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research. <u>Cullens v. Georgia Dept. of Transp.</u>, 29 F.3d 1489, 1494 (11th Cir. 1994) ("The [district] court denied telephone and travel expenses on the ground that 28 U.S.C. § 1920 does not provide for their recovery. The government acknowledges that this was error . . . "), <u>Dowdell</u>, 698 F.2d at 1192; <u>Mallory v. Harkness</u>, 923 F.Supp. 1546, 1557 (S.D. Fla. 1996); <u>Cherry</u>, 601 F.Supp at 81.

Plaintiff's costs and expenses, totaling **$41,942.94**, are itemized in Exhibit A. Documentation is available for review on request. As mentioned above, undersigned counsel deleted costs associated with an expert, Joseph Wiley, who was retained and later withdrawn. The balance of the costs is incurred in connection with all the claims in this case, and cannot reasonably be allocated to one or the other. As has been observed by another court, when a case is handled on a contingency basis, counsel has a strong incentive not to engage in wasteful spending. <u>Lambert</u>, 151 F.Supp 2d at 1378. That was certainly the case here.

CONCLUSION

Plaintiff, Patrick Major, respectfully requests that the Court enter an Order that he is entitled to an award of reasonable attorney's fees, costs, and expenses as the prevailing party in this case, in the amount of **$442,175.25** for fees, representing a lodestar amount of **$294,783.50** and a multiplier of 1.5; or alternatively in the amount of **$323,887**, representing current market rates for all time incurred; and **$41,942.94** for costs.

CASE NO.  00-6070-Zloch

## VERIFICATION OF COUNSEL

By my signature below, I, Valerie Shea, do hereby affirm that I have fully reviewed the time records and supporting data.  I have deleted time entries relating to the ADEA claims and have deleted entries relating to an expert selected, but not used (Joseph Wiley).  I have also deleted some paralegal time entries which appeared to inadequately detail the task performed.  As a result of my careful and conscientious review, it is my conclusion that the amount sought is well-grounded in fact and justified.

## CERTIFICATION OF COUNSEL

I, Valerie Shea, do hereby certify that I or my partner, Mark Boyd, shall confer with counsel for defendant, Susan Potter Norton, promptly upon the filing of this motion, and that we shall file within three days of the filing of this motion a statement as to any results of this conference, as well as whether a hearing is requested.

_____
Valerie Shea

CASE NO.  00-6070-Zloch

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished via U.S. Mail

to **Susan Potter Norton, Esquire** and **Dionne Wilson Blake, Esquire** at the address more fully

set forth on the service list attached, this 26th day of November, 2003.

HEINRICH GORDON HARGROVE
WEIHE & JAMES, P.A.
Attorneys for Plaintiff
500 East Broward Boulevard, Suite 1000
Fort Lauderdale, Florida  33394
Telephone:    954-527-2800
Facsimile:    954-524-9481


By: _VALERIE SHEA_____

VALERIE SHEA
Florida Bar No.  436800
VShea@heinrichgordon.com
MARK R. BOYD
Florida Bar No. 217492
MBoyd@heinrichgordon.com

CASE NO.  00-6070-Zloch

ATTACHMENTS:

A    -    Fees and costs printout

B    -    Contingency Fee Agreement

C    -    Declaration of Valerie Shea

D    -    Declaration of Henry Latimer (Fees)

E    -    D'Argona Documents

EXHIBIT A



**GORDON HARGROVE & JAMES**

PROFESSIONAL ASSOCIATION
LAW OFFICES

*Formerly*
*Heinrich Gordon Hargrove Weihe & James, P.A.*

300 East Broward Boulevard, Suite 1000
**Fort Lauderdale, Florida 33394**
**Telephone: (954) 527-2800**
**Facsimile: (954) 524-9481**

**Federal Tax I.D. No.: 65-0541803**

*Internet: www.ghj.com*

Patrick Scott Major
1722 West Las Olas Blvd.
Fort Lauderdale, FL 33312

November 25, 2003
Client:        081975
Matter:       000002
Invoice #:   1024039

Page:         1

RE:  Amerijet International, Inc.

For Professional Services Rendered Through  November 25, 2003

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 09/15/1999 | VS | Confer with client. | 1.0 |
| 09/22/1999 | VS | Legal research re: whistleblower case (Jenkins) and status; letter re: representation. | 1.8 |
| 09/27/1999 | VS | Prepare letter to client re: dual representation. | 0.4 |
| 09/29/1999 | VS | Prepare revised draft complaint. | 1.0 |
| 09/30/1999 | VS | Legal research re: FARS; different theories; confer with client. | 1.3 |
| 10/01/1999 | VS | Legal research re: FAR's and continued draft of complaint. | 2.8 |
| 10/04/1999 | VS | Legal research re: fees provision. | 1.0 |
| 10/12/1999 | VS | Legal research re: various issues; confer re: Norton response to letter; preparation of document request. | 3.0 |
| 10/14/1999 | VS | Drafting discovery. | 1.5 |
| 10/15/1999 | VS | Telephone conference with client; prepare letter to S. Norton. | 0.7 |
| 10/28/1999 | VS | (2) telephone conferences with Pat Major; DOT investigation. | 0.7 |
| 10/29/1999 | VS | Prepare for and attend conference with client; list to tape of exit interview. | 2.0 |
| 11/15/1999 | VS | Telephone conference with P. Major. | 0.2 |
| 11/29/1999 | VS | Telephone conference with P. Major regarding status. | 0.3 |
| 12/08/1999 | VS | Telephone conference with P. Major regarding status. | 0.3 |
| 12/10/1999 | VS | Revise complaint. | 1.0 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:     1024039

Page:          2

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 12/20/1999 | VS | Meeting with client regarding finalizing complaint. | 1.5 |
| 12/23/1999 | VS | Telephone conference with P. Major regarding FAA investigation. | 0.3 |
| 01/10/2000 | VS | Telephone conference with P. Major regarding status. | 0.3 |
| 01/11/2000 | VS | Telephone conference with client regarding status. | 0.3 |
| 01/18/2000 | VS | Letter to S. Norton regarding benefits. | 0.5 |
| 01/24/2000 | VS | Telephone conference with S. Santiago regarding health benefits. | 0.3 |
| 01/31/2000 | VS | Letter to Santiago. | 0.3 |
| 02/03/2000 | VS | Telephone conference with client regarding COBRA problems. | 0.5 |
| 02/03/2000 | VS | Legal research regarding new Supreme Court case. | 0.3 |
| 02/07/2000 | VS | Letter to S. Santiago. | 0.3 |
| 02/08/2000 | VS | Partially prepare reply regarding motion to remand; memo regarding motion to dismiss; legal research. | 2.5 |
| 02/08/2000 | DDK | Prepare trial notebook. | 2.3 |
| 02/09/2000 | VS | Legal research and draft response regarding opposition of motion to dismiss. | 3.0 |
| 02/11/2000 | VS | Legal research regarding federal regulation; telephone conference with client. | 1.0 |
| 02/14/2000 | VS | Legal research and finalize memo of law regarding motion to dismiss. | 2.5 |
| 02/15/2000 | VS | Finalize response. | 0.5 |
| 02/18/2000 | VS | Letter to defendant's counsel regarding rule 16, etc. | 0.6 |
| 02/18/2000 | VS | Forward discovery requests to client; memo to staff. | 1.0 |
| 02/23/2000 | VS | Prepare second interrogatories and requests for admissions to defendant. | 1.0 |
| 02/23/2000 | VS | Prepare draft rule 16 report. | 1.0 |
| 02/23/2000 | DDK | Telephone call with defendant's counsel, re: discovery. | 0.2 |
| 02/24/2000 | VS | Receipt and review letter from S. Santiago, re: discovery extension. | 0.2 |
| 02/25/2000 | VS | Document review and prepare draft discovery responses. | 2.5 |
| 02/28/2000 | VS | Analyze and segregate documents for discovery. | 4.5 |
| 02/29/2000 | DDK | Prepare form for scheduling report. | 0.9 |
| 03/01/2000 | VS | Receipt and review letter and enclosed documents from FAA. | 0.4 |
| 03/01/2000 | VS | Prepare proposed status report; letter to attorney Norton. | 3.0 |
| 03/03/2000 | VS | Analysis of defendant's production. | 4.0 |
| 03/03/2000 | VS | Receipt and review defendant's proposed joint schedule report order. | 0.2 |

November 25, 2003
Client:         081975
Matter:         000002
Invoice #:      1024039

Page:          3

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 03/06/2000 | VS | Prepare joint proposed scheduling report. | 1.0 |
| 03/06/2000 | VS | Revise and forward joint status report. | 1.0 |
| 03/07/2000 | VS | Receipt and review fax and amended draft joint status report from opposing counsel. | 0.2 |
| 03/07/2000 | VS | Telephone conference with S. Santiago regarding scheduling order; revise confidentiality stipulation. | 1.0 |
| 03/07/2000 | VS | Finalize status report. | 0.5 |
| 03/08/2000 | VS | Finalize file status report. | 0.5 |
| 03/10/2000 | VS | Receipt and review 3/8/00 letter from Stephen Santiago. | 0.2 |
| 03/10/2000 | VS | Receipt and review affidavit of Derry Huff of 3/8/00. | 0.2 |
| 03/13/2000 | VS | Preparation for and attend meeting with P. Major regarding discovery; analysis of documents. | 4.0 |
| 03/14/2000 | VS | Receipt and review letter from S. Santiago regarding attached pilot training records. | 0.2 |
| 03/16/2000 | VS | Preparation of discovery responses. | 2.0 |
| 03/20/2000 | VS | Meeting with client regarding discovery responses; prepare for and attend federal court status conference and hearing. | 3.5 |
| 03/28/2000 | VS | Receipt and review of letter from Stephen Santiago re: discovery. | 0.2 |
| 04/03/2000 | VS | Prepare letter to client re: trial order; letter to Santiago re: mediation. | 0.5 |
| 04/03/2000 | VS | Receipt and review of Order Setting Trial Date. | 0.2 |
| 04/03/2000 | VS | Receipt and review of Order of Referral to Mediation. | 0.2 |
| 04/07/2000 | VS | Telephone conference with J. Pagan (FAA); expert search. | 1.5 |
| 04/13/2000 | VS | Document analysis. | 2.5 |
| 04/19/2000 | VS | Document analysis. | 1.5 |
| 04/19/2000 | VS | Receipt and review of Notice of Selection of Mediator. | 0.2 |
| 04/24/2000 | VS | Telephone conference with client re: status. | 0.3 |
| 04/25/2000 | VS | Index defendant's production. | 0.5 |
| 04/27/2000 | VS | Document analysis. | 1.0 |
| 05/01/2000 | VS | Receipt and review of letter from Stephen Santiago re: discovery. | 0.2 |
| 05/10/2000 | VS | Receipt and review of letter from Stephen Santiago re: discovery responses. | 0.2 |
| 05/10/2000 | VS | Receipt and review of Amerijet's Amended Response to Plaintiff's First Request to Produce. | 0.2 |
| 06/27/2000 | VS | Receipt and review of Order on Plaintiff's Motion to Amend and Motion to Dismiss. | 0.2 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:    1024039

Page:            4

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 07/05/2000 | VS | Receipt and review of Defendant's Motion to Dismiss Count 1 of Plaintiff's Amended Complaint and Memorandum of Law. | 0.2 |
| 07/05/2000 | VS | Receipt and review of proposed order on motion to dismiss. | 0.2 |
| 07/18/2000 | VS | Legal research and draft response to motion to dismiss. | 2.0 |
| 07/19/2000 | VS | Prepare response to motion dismiss. | 1.0 |
| 07/27/2000 | VS | Receipt and review of Order of Referral to Magistrate. | 0.2 |
| 08/11/2000 | VS | Receipt and review of Defendant's First Amended Answer and Affirmative Defense to Plaintiff's First Amended Complaint. | 0.2 |
| 08/31/2000 | VS | Prepare of Reply to Answer. | 0.3 |
| 09/11/2000 | VS | Preparation of Motion for Extension of Time and proposed Order. | 0.5 |
| 09/12/2000 | EDK | Review file to ascertain identity and/or information regarding Jose Pagan, potential expert witness. | 0.5 |
| 09/13/2000 | EDK | Prepare retention letter to Mr. Gilbert with documents. | 0.2 |
| 09/13/2000 | EDK | Review entire file; annotate and correlate documents received in preparation for trial. | 3.6 |
| 09/14/2000 | VS | Receipt and review of executed order on motion for enlargement. | 0.2 |
| 09/14/2000 | EDK | Conference with Valerie Shea to discuss retention of expert witnesses. | 0.1 |
| 09/14/2000 | EDK | Review entire file; annotate and correlate documents received in preparation for trial. | 5.0 |
| 09/15/2000 | EDK | Review entire file; annotate and correlate documents received in preparation for trial, continued. | 3.0 |
| 09/18/2000 | EDK | Telephone conference with expert CPA re: retention; review entire file; annotate and corrolate documents received in preparation for trial; telephone conference with Patrick Major re: discovery and trial preparation. | 4.3 |
| 09/19/2000 | EDK | Preparation of letter to FAA re: deposition of Roseborough; prepare FOIA request; review entire file; annotate and correlate documents in preparation for trial; telephone conferences with potential experts. | 3.7 |
| 09/21/2000 | VS | Review file for analysis of discovery. | 1.5 |
| 09/21/2000 | EDK | Telephone conference with Patrick Major to discuss details about discovery/experts and trial preparation; meeting with Valerie Shea to discuss future discovery. | 1.2 |
| 09/22/2000 | VS | Telephone conference with J. Wiley, J. Gilbert; prepare materials for them; letter to them; telephone conference with S. Santiago; prepare motion for enlargement; file review re: depositions to take. | 4.2 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:     1024039

Page:          5

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 09/24/2000 | VS | Prepare letter to S. Santiago; draft 30(b)(6) notice. | 1.0 |
| 09/25/2000 | VS | Receipt and review of letter from James Gilbert, CPA re: retention. | 0.2 |
| 09/25/2000 | EDK | Annotate and correlate documents for review by expert, Mr. Wiley; prepare expert witness disclosure. | 0.8 |
| 09/26/2000 | EDK | Revise/update trial notebook. | 2.5 |
| 09/28/2000 | VS | Prepare witness list. | 0.5 |
| 09/28/2000 | EDK | Prepare witness list. | 1.4 |
| 09/28/2000 | EDK | Telephone call to Larry Budde regarding investigation of Jose Pagan. | 0.2 |
| 09/28/2000 | EDK | Telephone call from Larry Budde regarding the investigation of Jose Pagan. | 0.2 |
| 09/29/2000 | EDK | Telephone call to Pat Major regarding discovery issues and appointment to work on project. | 0.3 |
| 09/29/2000 | EDK | Prepare confirmation letter regarding appointment scheduled. | 0.2 |
| 10/03/2000 | VS | Receipt and review of letter from Stephen Santiago re: interrogatories. | 0.2 |
| 10/03/2000 | EDK | Review file, annotate and correlate documents in preparation for client/expert meeting. | 0.4 |
| 10/04/2000 | VS | Analysis of production. | 2.0 |
| 10/04/2000 | EDK | Telephone call to Mr. Santiago regarding the depositions of past and present Amerijet employees. Necessity for him to provide last know addresses. | 0.2 |
| 10/05/2000 | VS | Telephone call with J. Pagan. | 0.5 |
| 10/05/2000 | EDK | Telephone call Jose Pagan regarding trial and retention as witness. | 0.1 |
| 10/05/2000 | EDK | Telephone call from Jose Pagan to discuss retention as a witness for trial. | 0.2 |
| 10/05/2000 | EDK | Telephone call from Jim Gilbert regarding trial. | 0.3 |
| 10/06/2000 | EDK | Telephone call from Larry Budde RE: location of Jose Pagan. | 0.1 |
| 10/06/2000 | EDK | Prepare supplemental expert witness list. | 0.3 |
| 10/06/2000 | EDK | Telephone call to Mr. Pagan regarding his CV. | 0.1 |
| 10/06/2000 | EDK | Research to locate addresses for witnesses (prior Amerijet employees.). | 1.0 |
| 10/06/2000 | EDK | Telephone call opposing counsel regarding addresses for Amerijet witnesses. | 0.1 |
| 10/11/2000 | EDK | Review file and update/revise trial notebook, in preparation for trial. | 1.6 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:                6

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 10/12/2000 | VS | Receipt and review of Defendant's Motion for Extension to File Witness and Expert Witness List. | 0.2 |
| 10/12/2000 | EDK | Review Defendant's Response to First Request for Production and begin preparation of pilot analysis for trial preparation purposes. | 7.7 |
| 10/13/2000 | VS | Receipt and review of Defendant's Rule 45 Notice of Service of Subpoenas for Production of Documents. | 0.2 |
| 10/13/2000 | VS | Receipt and review of Defendant's Witness and Expert Witness List. | 0.2 |
| 10/13/2000 | EDK | Telephone call from Patrick Major regarding subpoenas recently issued to his accountant. | 0.1 |
| 10/16/2000 | EDK | Review Defendant's Witness and Expert list for trial preparation purposes. | 0.6 |
| 10/16/2000 | EDK | Prepare Plaintiff's Seconf RP to Defendant. | 0.5 |
| 10/16/2000 | EDK | Prepare letter to opposing counsel with CV of our expert, Jose Pagan. | 0.2 |
| 10/17/2000 | VS | Document analysis. | 1.5 |
| 10/17/2000 | EDK | Comprehensive Review of Patrick Major's employment file and prepare a chronological index of the documents, in preparation for trial. | 6.0 |
| 10/17/2000 | EDK | Attend conference with VS to discuss meeting with Mr. Gilbert on 10/18 and meeting with Patrick Major on 10/18 as well as results of employment file evaluation of Patrick Major. | 0.3 |
| 10/17/2000 | EDK | Prepare Expert witness interrogatories to Defedant. | 0.3 |
| 10/18/2000 | VS | Prepare for and attend meeting with Jim Gilbert and client. | 1.5 |
| 10/18/2000 | VS | Prepare documents for depositions; study file. | 2.5 |
| 10/18/2000 | EDK | Attend meeting with Jim Gilbert, our expert. | 1.5 |
| 10/18/2000 | EDK | Review file, annotate and correlate documents necessary for use at meeting with expert, Jim Gilbert. | 0.8 |
| 10/18/2000 | EDK | Review file and annotate and correlate documents for use at numerous depositions scheduled; prepare summary and analysis of witnesses to be taken; prepare summary and analysis of Defendant's witness list as compared to Plaintiff's, in preparation for trial. | 5.4 |
| 10/19/2000 | VS | Prepare for deposition and analysis. | 2.5 |
| 10/19/2000 | EDK | Attend meeting with VS to discuss depositions to be taken in the matter/ prioritize and discuss future necessities in preparation for trial. | 0.8 |
| 10/19/2000 | EDK | Telephone call to Barney Sonnen at FAA regarding Patrick Major and trial. | 0.2 |

November 25, 2003
Client:      081975
Matter:      000002
Invoice #:   1024039

Page:        7

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 10/19/2000 | EDK | Telephone call to Mr. Tim Green's wife regarding this matter and his involvement. | 0.2 |
| 10/19/2000 | EDK | Research regarding locating witnesses noted on Defendant's witness list. | 0.4 |
| 10/19/2000 | EDK | Telephone call to Gayle Fuller at the FAA regarding the deposition of John Roseborough. | 0.3 |
| 10/19/2000 | EDK | Telephone call from Ed  Cook regarding his deposition. | 0.1 |
| 10/19/2000 | EDK | Prepare letter to Mr. Gilbert with subsequent documents for review. | 0.3 |
| 10/19/2000 | EDK | Review file and annotate and correlate documents for use at numerous depositions scheduled; prepare summary and analysis of witnesses to be taken; prepare summary and analysis of Defendant's witness list as compared to Plaintiff's, in preparation for trial, continued. | 5.7 |
| 10/20/2000 | VS | Receipt and review of report from Larry Budde re: Sandra Sosniak. | 0.2 |
| 10/20/2000 | EDK | Review file and annotate and correlate documents for use at numerous depositions scheduled; prepare summary and analysis of witnesses to be taken; prepare summary and analysis of Defendant's witness list as compared to Plaintiff's, in preparation for trial, continued. | 1.2 |
| 10/23/2000 | VS | Prepare for scheduled depositions. | 6.5 |
| 10/23/2000 | VS | Receipt and review of letter from FAA re: FOIA request. | 0.2 |
| 10/23/2000 | EDK | Review Derry Huff's employment file and annotate and correlate documents necessary for use at deposition scheduled for 10/24. | 1.2 |
| 10/23/2000 | EDK | Telephone call to Patrick Major regarding the Derry Huff deposition. | 0.2 |
| 10/23/2000 | EDK | Telephone call (x2) to Patrick Major regarding his future schedule. | 0.2 |
| 10/23/2000 | EDK | Attend meeting with VS to discuss upcoming depositions scheduled and Derry Huff. | 0.4 |
| 10/24/2000 | VS | Prepare letter to FAA. | 0.3 |
| 10/24/2000 | VS | Analysis of documents. | 1.0 |
| 10/24/2000 | EDK | Review file, annotate and correlate documents recently receive and revise/update trial notebook. | 2.2 |
| 10/24/2000 | EDK | Review Defendant' response to request for production and annotate and correlate documents relating to all witnesses as designated, for use at scheduled depositions. | 2.0 |
| 10/25/2000 | VS | Prepare for and attend meeting with Jose Pagan. | 2.5 |
| 10/25/2000 | EDK | Attend meeting with Jose Pagan, our expert, to discuss matter and trial preparation. | 2.2 |

November 25, 2003
Client:          081975
Matter:        000002
Invoice #:    1024039

Page:              8

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 10/26/2000 | VS | Preparation for depositions. | 1.0 |
| 10/26/2000 | EDK | Prepare Motion for Extension of Discovery cut-off. | 1.0 |
| 10/27/2000 | VS | Prepare letter to S. Norton; motion for enlargement. | 1.5 |
| 10/27/2000 | VS | Telephone call with client; memo re: things to do. | 0.5 |
| 10/27/2000 | EDK | Telephone call from Jim Gilbert regarding status. | 0.1 |
| 10/27/2000 | EDK | Telephone call from Susan Norton regarding the deposition of Dean Chapman. | 0.1 |
| 10/30/2000 | VS | Prepare for depositions. | 2.5 |
| 10/30/2000 | VS | Receipt and review of subpoena for deposition to plaintiff. | 0.2 |
| 10/30/2000 | VS | Receipt and review of Notice of Taking Deposition of plaintiff. | 0.2 |
| 10/30/2000 | EDK | Telephone call to Julianne Winters at FAA regarding Roseborough deposition. | 0.1 |
| 10/30/2000 | EDK | Prepare retainer letter to Mr. Pagan and annotate and correlate documents necessary for inclusion. | 1.0 |
| 10/31/2000 | VS | Prepare for depositions. | 2.0 |
| 10/31/2000 | EDK | Telephone call to Jose Pagan, returning his call, regarding review, opinions. | 0.2 |
| 10/31/2000 | EDK | Telephone call from Mr. Santiago regarding depositions, experts and expert reports. | 0.2 |
| 10/31/2000 | EDK | Telephone call from Mr. McCleary, Patrick Major's accountant regarding the subpoena issued by the Defendant and compliance.  Prepare summary. | 0.5 |
| 10/31/2000 | EDK | Prepare letter to Mr. McCleary memorializing our conversation and requesting copies of all documents produced to opposing counsel. | 0.3 |
| 10/31/2000 | EDK | Prepare draft opinion report for Jose Pagan. | 3.5 |
| 10/31/2000 | EDK | Telephone call from Mr. McCleary in follow-up to previous discussion and prepare summary. | 0.4 |
| 10/31/2000 | EDK | Review file, annotate and correlate documents recently received, for future discovery purposes. | 1.5 |
| 11/01/2000 | VS | Receipt and review of Defendant's response to Plaintiff's Second Request to Produce to Defendant. | 0.2 |
| 11/01/2000 | VS | Receipt and review of Defendant's Response to Plaintiff's Request for Admissions. | 0.2 |
| 11/01/2000 | VS | Receipt and review of Defendant's Response to Plaintiff's Second Set of Interrogatories. | 0.2 |
| 11/01/2000 | VS | Prepare for and attend meeting with Patrick Major. | 2.5 |
| 11/01/2000 | VS | Prepare letter to S. Santiago re: discovery responses. | 0.3 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:    1024039

Page:            9

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 11/01/2000 | TEB | Legal research regarding ability to circumvent the rules of discovery for production by documents regarding time by serving deposition duces tecum. | 2.9 |
| 11/01/2000 | EDK | Review file, annotate and correlate documents necessary and attend meeting with Patrick Major to discuss trial preparation. | 3.2 |
| 11/01/2000 | EDK | Telephone call to Mr. Wiley regarding his deposition availablility and opinions, to date. | 0.3 |
| 11/01/2000 | EDK | Telephone call to Jose Pagan regarding his deposition. | 0.2 |
| 11/01/2000 | EDK | Telephone call to Mr. Gilbert regarding his deposition and his meeting with Patrick Major. | 0.2 |
| 11/01/2000 | EDK | Telephone call to Julianna Winters, Esq. at FAA regarding Roseborough deposition. | 0.2 |
| 11/01/2000 | EDK | Review file and prepare proposed DT schedule for John Roseborough's deposition. | 1.4 |
| 11/01/2000 | EDK | Revise proposed DT schedule for John Roseborough's deposition. | 0.6 |
| 11/01/2000 | EDK | Revise draft opinion report for Jose Pagan. | 0.5 |
| 11/02/2000 | EDK | Review Defendant's Answers to 2nd Interrogatories, Response to 2nd Request to Produce and Response to Request for Admissions, for future discovery purposes. | 0.5 |
| 11/02/2000 | EDK | Telephone call to opposing counsel regarding production of the tower tape of 8/17/99. | 0.1 |
| 11/02/2000 | EDK | Revise and update trial notebook, in preparation for trial. | 1.2 |
| 11/02/2000 | EDK | Telephone call from Patrick Major regarding his schedule and the pending depositions. | 0.2 |
| 11/03/2000 | VS | Predeposition preparation and conferences. | 2.0 |
| 11/03/2000 | EDK | Telephone call to Jose Pagan regarding his opinions. | 0.1 |
| 11/06/2000 | EDK | Telephone call to Ms. Norton's office regarding copies of tower tape of 8/17/99. | 0.2 |
| 11/07/2000 | VS | Receipt and review of letter from Jose Pagan re: strategy. | 0.2 |
| 11/07/2000 | VS | Telephone call with Jim Gilbert. | 0.3 |
| 11/07/2000 | VS | Prepare for deposition of corporate representative. | 6.0 |
| 11/07/2000 | EDK | Review file and annotate and correlate documents for use at the deposition of Derry Huff. | 2.0 |
| 11/07/2000 | EDK | Telephone call from Mr. Gilbert, our expert, regarding his analysis and opinions. | 0.2 |
| 11/07/2000 | EDK | Review opinions/report received from Mr. Pagan, for trial preparation purposes. | 0.1 |
| 11/07/2000 | EDK | Attend meeting with VS to discuss further documents necessary for Huff deposition and annotate and correlate documents. | 1.3 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:    1024039

Page:          10

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 11/08/2000 | VS | Prepare for and attend deposition of corporate representative; letter to Attorney Norton re: depositions. | 9.0 |
| 11/08/2000 | VS | Receipt and review of letter from Stephen Santiago re: depositions. | 0.2 |
| 11/08/2000 | VS | Receipt and review of Defendant's Motion to Join Plaintiff's Enlargement of Certain Pretrial Deadlines. | 0.2 |
| 11/08/2000 | EDK | Telephone call to National Climatic Data Center regarding investigation of weather and prepare written request. | 0.5 |
| 11/08/2000 | EDK | Telephone call to Ann at Mr. McCleary's office regarding status on documents to be produced by subpoena. | 0.2 |
| 11/08/2000 | EDK | Attend meeting with Patrick Major to discuss Huff deposition and future discovery necessary. | 0.7 |
| 11/08/2000 | EDK | Prepare Notice of Filing Expert Witness Report for our experts. | 1.0 |
| 11/09/2000 | VS | Prepare letter to to Susan Norton re: schedule. | 0.3 |
| 11/09/2000 | EDK | Review documents received from National Climatic Data Center regarding request. | 0.2 |
| 11/09/2000 | EDK | Prepare motion for continuance. | 1.0 |
| 11/13/2000 | VS | Telephone call with Steve Santiago; direct paralegal re: schedule issues. | 0.4 |
| 11/13/2000 | VS | Receipt and review of letter from Susan Norton re: depositions. | 0.2 |
| 11/13/2000 | VS | Receipt and review of letter from Stephen Santiago re: motion for extension of time. | 0.2 |
| 11/14/2000 | VS | Receipt and review of letter from Stephen Santiago re: continuance. | 0.2 |
| 11/15/2000 | VS | Prepare request for production; letters to experts. | 0.1 |
| 11/15/2000 | VS | Receipt and review of letter from Stephen Santiago re: depositions and continuance. | 0.2 |
| 11/16/2000 | VS | Receipt and review of Defendant's Motion Requesting an Extension to File its Motion for Summary Judgment. | 0.2 |
| 11/21/2000 | VS | Receipt and review of letter from Federal Aviation Administration. | 0.2 |
| 11/22/2000 | VS | Telephone call Jose Pagan. | 0.3 |
| 11/29/2000 | VS | Receipt and review FAA reports. | 0.5 |
| 11/29/2000 | VS | Receipt and review letter from Carolyn Blum. | 0.2 |
| 11/30/2000 | VS | Organized digest FAA documents. | 1.0 |
| 11/30/2000 | DDK | Review investigative reports received from FAA; compare and contrast reports received with reports requested; and prepare chart of investigative reports. | 3.7 |
| 11/30/2000 | DDK | Prepare letter to FAA requesting additional report. | 0.3 |

November 25, 2003
Client:         081975
Matter:        000002
Invoice #:    1024039

Page:          11

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 11/30/2000 | DDK | Telephone call and follow up letter to National Weather Service, re: weather requests. | 0.9 |
| 12/04/2000 | VS | Telephone calls with clerk of court and Steve Santiago. | 0.5 |
| 12/04/2000 | DDK | Update trial notebook. | 1.4 |
| 12/05/2000 | VS | Prepare letter to client re: motion to dismiss; letter to J. Gilbert re: documents. | 0.5 |
| 12/06/2000 | VS | Receipt and review of letter from Stephen Santiago re: request for production. | 0.2 |
| 12/06/2000 | DDK | Telephone call and letter to defendant's attorney, re: performance and operating manuals. | 0.4 |
| 12/08/2000 | VS | Receipt and review of letter from Stephen Santiago re: deposition dates. | 0.2 |
| 12/08/2000 | VS | Receipt and review of Order on Plaintiff's Motion for Extension of Time to Disclose Experts. | 0.2 |
| 12/08/2000 | VS | Receipt and review of Order on Plaintiff's Motion for Extension of Time to Depose Experts. | 0.2 |
| 12/08/2000 | VS | Receipt and review of Order on Defendant's Motion for Extension to File Witness and Exhibit Lists. | 0.2 |
| 12/08/2000 | VS | Receipt and review of Order on Plaintiff's Motion for Extension re: Certain Deadlines. | 0.2 |
| 12/08/2000 | VS | Receipt and review of Order on Defendant's Motion to Join Plaintiff's Motion for Enlargement of Certain Pretrial Deadlines. | 0.2 |
| 12/08/2000 | VS | Receipt and review of Order on Defendant's Motion for Requesting Extension of Time to File Its Motion for Summary Judgment. | 0.2 |
| 12/11/2000 | VS | Prepare for and attend pretrial conference; prepare joint stipulation. | 4.0 |
| 12/11/2000 | VS | Receipt and review of letter from Federal Aviation Administration re: request for ATC tapes. | 0.2 |
| 12/11/2000 | DDK | Review pleadings and judge's recent orders, and prepare timeline of deadlines. | 2.2 |
| 12/11/2000 | DDK | Prepare joint pretrial stipulation. | 1.6 |
| 12/11/2000 | DDK | Prepare proposed list of witnesses to be set for deposition. | 1.8 |
| 12/11/2000 | DDK | Begin index of documents produced by plaintiff. | 1.2 |
| 12/12/2000 | VS | Receipt and review of Weather Information from Department of Commerce. | 0.2 |
| 12/12/2000 | VS | Telephone call with client; confer/direct paralegal re: setting depositions. | 0.7 |
| 12/12/2000 | DDK | Continue index documents produced by plaintiff in response to request for production. | 5.3 |
| 12/13/2000 | DDK | Complete index of documents produced by Plaintiff. | 1.1 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:              12

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 12/13/2000 | DDK | Prepare notebooks for documents produced by plaintiff. | 2.3 |
| 12/13/2000 | DDK | Begin preparation of index of documents produced by Defendant. | 4.5 |
| 12/14/2000 | DDK | Continue preparation of index of documents produced by defendant. | 5.8 |
| 12/14/2000 | DDK | Begin index of file and preparation of additional witness files. | 3.1 |
| 12/15/2000 | VS | Receipt and review of Defendant's Written Objection to Magistrate's Order Recommending that Defendant's Motion to Dismiss Count I of Plaintiff's First Amended Complaint be Denied. | 0.2 |
| 12/15/2000 | VS | Telephone call with client re: runway analysis information. | 0.2 |
| 12/15/2000 | DDK | Continue indexing of file in preparation for trial. | 2.6 |
| 12/18/2000 | VS | Telephone call with P. Majors re: deposition schedule; telephone call to Jim Gilbert re: status. | 0.4 |
| 12/18/2000 | VS | Receipt and review of letter from Stephen Santiago with table of contents for Chapter 4 of Airplane Operation Manual. | 0.2 |
| 12/18/2000 | VS | Receipt and review of Defendant's Response to Plaintiff's Third Request to Produce to Defendant. | 0.2 |
| 12/18/2000 | DDK | Compare and contrast deposition testimony of Derry Huff with subject matters of corporate representative deposition notice, in order to deteetermine the subject areas which new corporate representative will be called to testify. | 2.1 |
| 12/18/2000 | DDK | Telephone call to Defendant's counsel, re: table of contents of manuals. | 0.1 |
| 12/18/2000 | DDK | Prepare list of documents referred to in Derry Huff's deposition but not received. | 0.4 |
| 12/19/2000 | VS | Prepare letter to J. Gilbert re: financial documents. | 0.2 |
| 12/19/2000 | DDK | Telephone call with James Gilbert's office, re: additional documents needed by expert. | 0.2 |
| 12/19/2000 | DDK | Review correspondence and prepare list of documents sent to expert in order to determine additional documents to be sent to experts. | 1.9 |
| 12/19/2000 | DDK | Prepare expert witness files in preparation for experts' depositions and trial. | 1.2 |
| 12/20/2000 | VS | Analyze all FOIA material; letter to FAA to appeal earlier letters; outline reports; outline Huff deposition. | 6.5 |
| 12/20/2000 | RKG | Research US District Court online (PACER); locate and review docket; obtain copy of same. | 0.6 |
| 12/20/2000 | DDK | Research information on appeal for FAA FOIA requests. | 0.7 |
| 12/20/2000 | DDK | Prepare documents for expert meeting. | 1.2 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:    1024039

Page:        13

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 12/20/2000 | DDK | Telephone conference with expert, re: documents and meeting. | 0.3 |
| 12/20/2000 | DDK | Prepare letters and additional documents to be sent to experts. | 0.9 |
| 12/20/2000 | DDK | Travel to expert's office, re: documents for meeting. | 0.6 |
| 12/21/2000 | VS | Prepare for and attend meeting with Jose Pagan. | 2.0 |
| 12/21/2000 | DDK | Update index of file in preparation for depositions and trial. | 0.5 |
| 12/21/2000 | DDK | Telephone conferences and meeting with Jose Pagan, re: FAA and weather reports. | 1.1 |
| 12/21/2000 | DDK | Review FAA reports and Derry Huff's deposition to determine portions of performance and operating manuals we need in order to prepare for continuation deposition of Derry Huff. | 2.7 |
| 12/21/2000 | DDK | Prepare exhibits to FAA appeal. | 1.2 |
| 12/21/2000 | DDK | Compare and contrast list of documents mentioned in Derry Huff's depositon and our prior requests to produce to determine if we previously requested these items. | 2.2 |
| 12/21/2000 | DDK | Prepare letter to Plaintiff's counsel itemizing portions of manuals we are requesting, as well as documents Derry Huff mentions in his deposition but were not produced pursuant to our prior requests to produce. | 1.1 |
| 12/22/2000 | VS | Receipt and review of Notice of Taking Videotape Deposition of Patrick Major. | 0.2 |
| 12/22/2000 | VS | Partial draft of response to objections. | 1.5 |
| 12/22/2000 | VS | Legal research re: authorities in defendant's objections; analysis; prepare response. | 3.0 |
| 12/22/2000 | DDK | Revise letter to Defendant's counsel, re: documents and manuals. | 0.6 |
| 01/02/2001 | VS | Direct paralegal re: documents needed. | 0.3 |
| 01/03/2001 | VS | Extended telephone call with FOIA representative. | 0.5 |
| 01/04/2001 | VS | Receipt and review of Re-Notice of Taking Videotaped Deposition of Patrick Major. | 0.2 |
| 01/04/2001 | VS | Telephone call with FAA representative regarding documents requested. | 0.5 |
| 01/04/2001 | DDK | Multiple conversations with defendant's counsel, re: documents requested. | 0.4 |
| 01/05/2001 | VS | Direct paralegal re: to do. | 0.3 |
| 01/05/2001 | VS | Receipt and review additional documents produced. | 1.0 |
| 01/05/2001 | DDK | Multiple extended telephone conferences with defendant's counsel, re: documents previously requested. | 1.2 |
| 01/05/2001 | DDK | Prepare documents and witness files for depositions scheduled for 1/8/01. | 4.4 |

November 25, 2003
Client:         081975
Matter:         000002
Invoice #:      1024039

Page:           14

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 01/05/2001 | DDK | Telephone call with Juliana Winters, re: John Roseborough's deposition. | 0.2 |
| 01/07/2001 | VS | Prepare for deposition of corporate representative and other witnesses. | 3.0 |
| 01/08/2001 | VS | Receipt and review of letter from FAA re: FOIA request. | 0.2 |
| 01/08/2001 | VS | Receipt and review of letter from Susan Norton with enclosures. | 0.2 |
| 01/08/2001 | VS | Prepare for and attend depositions of Huff, Washington, and Steele. | 8.5 |
| 01/09/2001 | VS | Prepare letter to Susan Norton re: follow up to depositions. | 0.3 |
| 01/09/2001 | VS | Direct paralegal re: document organization and additional depositions. | 0.5 |
| 01/09/2001 | DDK | Conference with Juliana Winters, re: Roseborough's deposition. | 0.3 |
| 01/10/2001 | DDK | Update witness files. | 2.2 |
| 01/11/2001 | VS | Receipt and review of letter from Susan Norton re: plaintiff's request for information. | 0.2 |
| 01/12/2001 | VS | Receipt and review of letter from Stephen Santiago with enclosures. | 0.2 |
| 01/12/2001 | VS | Receipt and review of Air Traffic Control Tapes. | 0.2 |
| 01/12/2001 | VS | Receipt and review of documents responsive to Request #16 of plaintiff's first request to produce. | 0.2 |
| 01/12/2001 | DDK | Prepare depositions and additonal documents to be sent to experts, and prepare letters to experts. | 4.2 |
| 01/16/2001 | VS | Receipt and review of letter from FAA re: FOIA request. | 0.2 |
| 01/16/2001 | VS | Analysis of FAA documents. | 1.2 |
| 01/16/2001 | DDK | Prepare copies of additional documents to be sent to experts; and prepare letters to experts. | 2.8 |
| 01/16/2001 | DDK | Update FAA investigation chart with information from additional documents provided by defendant. | 1.4 |
| 01/17/2001 | VS | Direct paralegal re: depositions to set, etc. | 0.3 |
| 01/17/2001 | DDK | Extended telephone conference with Juliana Winters of FAA, re: FOIA appeal and Roseborough's deposition. | 0.4 |
| 01/18/2001 | VS | Document analysis re: depositions. | 1.5 |
| 01/18/2001 | DDK | Update trial notebook; update index of file; update witness files; update expert files; and update index of documents. | 5.8 |
| 01/19/2001 | VS | Document analysis re: deposition preparation. | 1.0 |
| 01/19/2001 | VS | Receipt and review of Memorandum from Pat Major with enclosure. | 0.2 |
| 01/19/2001 | VS | Receipt and review of letter from Stephen Santiago re: depositions. | 0.2 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:    1024039

Page:        15

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 01/19/2001 | DDK | Telephone call and e-mail to Juliana Winters of FAA, re: Roseborough and FOIA appeal. | 0.3 |
| 01/22/2001 | VS | Prepare for scheduled depositions. | 0.5 |
| 01/22/2001 | VS | Receipt and review of letter from Stephen Santiago re: scheduling depositions. | 0.2 |
| 01/22/2001 | VS | Receipt and review of letter from Stephen Santiago re: depositions set for week of 1/22/01. | 0.2 |
| 01/22/2001 | DDK | Telephone conference with Jose Pagan, re: FAA documents. | 0.2 |
| 01/22/2001 | DDK | Telephone call with Juliana Winters, re: FAA FOIA appeal. | 0.2 |
| 01/23/2001 | VS | Prepare for deposition of Cook, Jorsey and Cline. | 3.5 |
| 01/23/2001 | DDK | Telephone call with Jose Pagan, re: depositions. | 0.2 |
| 01/23/2001 | DDK | Prepare witness files for depositions tomorrow. | 4.2 |
| 01/23/2001 | DDK | Prepare index of deposition exhibits. | 1.3 |
| 01/24/2001 | VS | Prepare for and attend depositions of Jorsey, Cline, and Cook. | 10.0 |
| 01/24/2001 | VS | Receipt and review of New Scheduling Order. | 0.2 |
| 01/24/2001 | DDK | Prepare additional documents for depositions today. | 3.8 |
| 01/24/2001 | DDK | Index additional documents provided by defendant. | 2.4 |
| 01/25/2001 | VS | Digest trial order; research requirements of rules; confer/direct paralegal and secretary re: scheduling; telephone call with Jim Gilbert; file review and dictate To-Do memo re: trial preparation; letter to Susan Norton; letter to experts; letter to G. Fuller of FAA. | 5.0 |
| 01/25/2001 | DDK | Review new ruling on Rule 26 in order to prepare expert list; telephone calls to our experts, re: their reports and previous trial testimoney; and preparation of expert witness list. | 4.8 |
| 01/25/2001 | DDK | Update trial notebook. | 0.9 |
| 01/25/2001 | DDK | Multiple telephone conversations with defendant's counsel, re: fact witness depositions and expert depositions. | 0.8 |
| 01/25/2001 | DDK | Begin index of additional documents provided by defendant and deposition exhibits. | 1.5 |
| 01/26/2001 | VS | Receipt and review of letter from J. D. Gilbert to Patrick Major re: additional information needed. | 0.2 |
| 01/26/2001 | VS | Telephone call with Jose Pagan re: his report. | 0.5 |
| 01/26/2001 | DDK | Prepare index and file of deposition exhibits. | 5.5 |
| 01/26/2001 | DDK | Prepare letter and enclosures to defendant's counsel, re: deposition exhibits. | 0.4 |
| 01/26/2001 | DDK | Multiple telephone conversations with defendant's counsel, re: experts depositions. | 0.6 |

November 25, 2003
Client:        081975
Matter:      000002
Invoice #:  1024039

Page:          16

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 01/26/2001 | DDK | Telephone calls with experts, re: availiblity for deposition and trial. | 0.6 |
| 01/29/2001 | VS | Receipt and review of letter from Stephen Santiago with enclosures. | 0.2 |
| 01/29/2001 | VS | Telephone call with J. Pagan, Jim Gilbert; direct paralegal re: scheduling issues. | 0.6 |
| 01/29/2001 | DDK | Telephone calls with experts, re: depositions and their reports. | 0.6 |
| 01/29/2001 | DDK | Multiple telephone conversations with defendant's counsel, re: depositions of experts and fact witnesses. | 0.9 |
| 01/29/2001 | DDK | Prepare witness list. | 1.9 |
| 01/29/2001 | DDK | Review documents received from defendant, and prepare letter to client enclosing documents. | 0.7 |
| 01/29/2001 | DDK | Telephone call with Jim Gilbert and letter to Jim Gilbert enclosing plaintiff's answers to interrogatories. | 0.4 |
| 01/29/2001 | DDK | Prepare letter to FAA, re: Barney Sonner's deposition. | 0.4 |
| 01/29/2001 | DDK | Update trial notebook. | 1.9 |
| 01/30/2001 | VS | Telephone call with Jim Gilbert re: his analysis. | 0.5 |
| 01/30/2001 | VS | Extended telephone call with B. Sonnen re:  his anticipated testimony. | 0.8 |
| 01/30/2001 | DDK | Multiple telephone conversations with our experts and defense counsel, regarding our experts depositions; and multiple telephone conversations with defense counsel, re: fact witness depositions. | 5.2 |
| 01/30/2001 | DDK | Telephone conference with Barney Sonner, re: deposition. | 0.2 |
| 01/30/2001 | DDK | Prepare draft of letter to defense counsel, re: our experts availibility for deposition, and depositions of fact witness and defendant's experts. | 0.6 |
| 01/30/2001 | DDK | Review court docket, re: service on Amerijet's witnesses. | 0.3 |
| 01/31/2001 | VS | Legal research re:  corporate representative issues. | 1.0 |
| 01/31/2001 | VS | Study training records. | 1.0 |
| 01/31/2001 | DDK | Review our notices of corporate representative depositions, depositions of corporate representatives, and letters regarding these depositions to determine which subject areas are still outstanding, and prepare memo summarizing this review. | 2.6 |
| 02/01/2001 | VS | Study training records re: upcoming depositions. | 4.5 |
| 02/01/2001 | DDK | Review Gilbert's report and prepare letter and fax to client, re: report. | 0.4 |
| 02/01/2001 | DDK | Multiple telephone conferences with defendant's counsel, re: depositions. | 0.9 |
| 02/02/2001 | VS | Study training records. | 4.5 |

**SERVICES**

| Date | Person | Description of Services | Hours |
|---|---|---|---|
| 02/02/2001 | VS | Receipt and review of Notice of Taking Videotaped Deposition of Patrick Major. | 0.2 |
| 02/02/2001 | VS | Receipt and review of letter from Stephen Santiago re: depositions. | 0.2 |
| 02/02/2001 | VS | Receipt and review of letter from Stephen Santiago re: depositions. | 0.2 |
| 02/02/2001 | DDK | Prepare memo on additional witnesses listed on defendant's witness list. | 1.9 |
| 02/02/2001 | DDK | Telephone call with defendant's counsel, re: Tracey Dickinson's deposition. | 0.2 |
| 02/05/2001 | VS | Confer/direct paralegal re: schedule. | 0.3 |
| 02/05/2001 | VS | Review training records; prepare request for admissions; prepare for deposition of Juan Morales. | 3.0 |
| 02/05/2001 | VS | Receipt and review of defendant's witness and expert witness list. | 0.2 |
| 02/05/2001 | DDK | Update memo on corporate representative designations. | 1.3 |
| 02/06/2001 | VS | Receipt and review of letter from Stephen Santiago re: tower tapes. | 0.2 |
| 02/06/2001 | VS | Prepare for scheduled depositions. | 3.0 |
| 02/06/2001 | DDK | Prepare documents for deposition of Juan Morales. | 2.1 |
| 02/06/2001 | DDK | Update trial notebook. | 1.3 |
| 02/06/2001 | DDK | Review Pagan's report. | 1.8 |
| 02/06/2001 | DDK | Revise Wiley's report. | 1.9 |
| 02/06/2001 | DDK | Multiple telephone conferences with defendant's counsel, re: depositions. | 0.8 |
| 02/06/2001 | DDK | Review prior notices of deposition and correspondence to determine which corporate representative categories that Juan Morales has been designated. | 0.9 |
| 02/07/2001 | VS | Receipt and review of Re-Notice of Taking Videotape Deposition of Patrick Major. | 0.2 |
| 02/07/2001 | VS | Prepare for and attend deposition of Juan Morales. | 2.5 |
| 02/07/2001 | VS | Document analysis. | 1.5 |
| 02/07/2001 | DDK | Update index of deposition exhibits. | 1.2 |
| 02/07/2001 | DDK | Prepare deposition exhibits to be given to defendant's counsel. | 0.9 |
| 02/07/2001 | DDK | Multiple telephone conferences with defendant's counsel, re: depositions, experts, and training manual. | 1.1 |
| 02/07/2001 | DDK | Prepare letter to defendant's counsel, re: tower tapes. | 0.3 |
| 02/07/2001 | DDK | Prepare letter to defendant's counsel, re: training manual. | 0.3 |
| 02/07/2001 | DDK | Prepare supplemental witness list. | 0.3 |

November 25, 2003
Client:            081975
Matter:           000002
Invoice #:       1024039

Page:            18

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 02/07/2001 | DDK | Update index of documents. | 3.8 |
| 02/08/2001 | VS | Scheduling issues; follow up  FOIA re: documents. | 0.5 |
| 02/08/2001 | DDK | Multiple telephone conferences with defendant's counsel, re: depositions. | 1.2 |
| 02/09/2001 | VS | Receipt and review of letter from Susan Norton re: plaintiff's deposition. | 0.2 |
| 02/09/2001 | DDK | Prepare motion and proposed order for enlargement of time to take deposition of Paul Repp. | 1.3 |
| 02/09/2001 | DDK | Update index of file in preparation for trial. | 0.9 |
| 02/09/2001 | DDK | Update trial notebook. | 1.3 |
| 02/12/2001 | VS | Prepare for Roseborough and Dickinson depositions. | 2.5 |
| 02/12/2001 | DDK | Multiple telephone conversations with defendant's counsel, re: depositions. | 0.7 |
| 02/12/2001 | DDK | Prepare documents and FAA chronologies in preparation for depositions of Roseborough and Dickinson. | 6.2 |
| 02/13/2001 | VS | Prepare for and attend depositions of John Roseborough and T. Dickinson. | 9.0 |
| 02/13/2001 | VS | Conference with Mark Boyd and client regarding deposition preparation. | 1.0 |
| 02/13/2001 | MRB | Meet with client to discuss facts, evidence and prepare for deposition. | 2.0 |
| 02/13/2001 | DDK | Prepare motion to enlarge time to depose Pete Steele. | 1.2 |
| 02/13/2001 | DDK | Telephone call with Mr. Pagan, re: report and trial. | 0.2 |
| 02/13/2001 | DDK | Multiple telephone conferences with defendant's counsel, re: depositions. | 0.6 |
| 02/14/2001 | VS | Receipt and review of Amerijet's Supplemental Response to Request to Produce. | 0.2 |
| 02/14/2001 | VS | Prepare for plaintiff's deposition. | 3.0 |
| 02/14/2001 | VS | Confer with Jose Pagan. | 0.5 |
| 02/14/2001 | DDK | Prepare documents for Pat Major's deposition. | 1.7 |
| 02/14/2001 | DDK | Prepare letter to S. Norton enclosing deposition exhibits. | 0.2 |
| 02/14/2001 | DDK | Telephone call with S. Santiago, re: depositions. | 0.2 |
| 02/14/2001 | DDK | Update index of documents and exhibits. | 4.9 |
| 02/15/2001 | VS | Prepare for and attend deposition of Patrick Major. | 9.0 |
| 02/15/2001 | MRB | Meet with client to prepare him for deposition. | 1.5 |
| 02/16/2001 | VS | Receipt and review of letter from Stephen Santiago re: Pete Steele's deposition. | 0.2 |
| 02/16/2001 | VS | Prepare letter to Jose Pagan. | 0.2 |
| 02/16/2001 | VS | Prepare various letters re: discovery issues. | 1.8 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:            19

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 02/16/2001 | VS | Prepare and file motion regarding deposition of Peter Steele. | 1.5 |
| 02/16/2001 | VS | Prepare for Dave Bassett. | 3.0 |
| 02/16/2001 | VS | Receipt and review of Notice of Continued Videotape Deposition of Patrick Major. | 0.2 |
| 02/16/2001 | MRB | Motion practice and strategy with Valerie Shea. | 1.2 |
| 02/16/2001 | DDK | Telephone call with Santiago, re: Paul Repp's deposition, and withdrawal of Mitchell Yelen. | 0.2 |
| 02/16/2001 | DDK | Prepare draft of letter to Santiago, re: our experts' deposition, Mitchell Yelen, and trial deadlines. | 0.9 |
| 02/16/2001 | DDK | Letter to Santiago, re: Paul Repp's deposition. | 0.3 |
| 02/16/2001 | DDK | Prepare documents for Dave Bassetts' deposition and continuation of Pat Major's deposition. | 5.8 |
| 02/16/2001 | DDK | Research current local rules on length of depositions. | 0.8 |
| 02/18/2001 | VS | Prepare for deposition of Dave Bassett. | 2.5 |
| 02/19/2001 | VS | Prepare for and attend deposition of Patrick Major and deposition of Dave Bassett. | 6.5 |
| 02/20/2001 | DDK | Telephone calls with Santiago and Florida Mediation, re: upcoming mediation. | 0.4 |
| 02/20/2001 | DDK | Update trial notebook. | 0.4 |
| 02/21/2001 | VS | Receipt and review of Defendant's Motion to Enlarge Discovery Time in Order to Take the Deposition of Plaintiff's Expert Witnesses and for Plaintiff to Produce its Expert's Report. | 0.2 |
| 02/21/2001 | DDK | Telephone call with defendant's counsel, re: mediation. | 0.2 |
| 02/22/2001 | VS | Prepare Motion for Protective Order. | 1.5 |
| 02/22/2001 | DDK | Update trial notebook. | 0.5 |
| 02/22/2001 | DDK | Prepare memos regarding Pagan's video deposition, Paul Repp's report, documents provided to experts, and number of depositions taken. | 1.2 |
| 02/22/2001 | DDK | Review defendants notices of taking plaintiff's experts' depostion; research federal rule on notice; prepare motion for protective order with memo of law. | 1.2 |
| 02/22/2001 | DDK | Update witness files in preparation for trial. | 0.5 |
| 02/23/2001 | VS | Receipt and review of Notice of Taking Deposition of Jim Gilbert. | 0.2 |
| 02/23/2001 | VS | Receipt and review of Notice of Taking Deposition of Jose Pagan. | 0.2 |
| 02/23/2001 | VS | Respond to Motion to Enlarge Time. | 1.0 |
| 02/23/2001 | DDK | Prepare motion to strike expert witness. | 1.2 |
| 02/23/2001 | DDK | Update trial notebook. | 0.6 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:            20

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 02/23/2001 | DDK | Telephone conference with client, re: Paul Repp's deposition. | 0.1 |
| 02/23/2001 | DDK | Review Paul Repp's report and defendant's answer to expert interrogatories. | 0.4 |
| 02/23/2001 | DDK | Prepare witness file for Paul Repp in preparation for upcoming deposition. | 0.6 |
| 02/26/2001 | VS | Prepare for and attend deposition of plaintiff's expert (P. Repps). | 5.5 |
| 02/26/2001 | VS | Prepare letter to client re: costs. | 0.3 |
| 02/26/2001 | VS | Prepare letter to S. Santiago confirming mediation. | 0.2 |
| 02/26/2001 | DDK | Update list of deposition exhibits. | 1.9 |
| 02/26/2001 | DDK | Prepare copies of new deposition exhibits to be sent to defendant's counsel, and letter to defendant's counsel. | 0.7 |
| 02/28/2001 | VS | Receipt and review of Defendant's Response to Plaintiff's motion to Compel the Deposition of Peter Steele or in the Alternative to Preclude his Direct or Indirect Testimony at Trial. | 0.2 |
| 02/28/2001 | DDK | Prepare second motion for protective order. | 0.8 |
| 03/02/2001 | DDK | Update trial notebook. | 0.9 |
| 03/05/2001 | VS | Receipt and review of Defendant's Response to Plaintiff's Motion for Protective Order and Motion to Strike Plaintiff's Expert Witnesses. | 0.2 |
| 03/05/2001 | VS | Draft reply in support of motion for protective order; reply in support of motion to strike Pete Steele. | 2.0 |
| 03/06/2001 | DDK | Update Pagan report. | 1.2 |
| 03/06/2001 | DDK | Multiple telephone calls with Pagan, re: report. | 0.8 |
| 03/08/2001 | VS | Prepare reply to first motion for protective order; prepare second motion for protective order; prepare response to motion to enlarge; prepare reply re: motion to strike. | 3.0 |
| 03/08/2001 | DDK | Finalize Pagan's report and prepare letter to defendant's counsel enclosing Pagan's report and Gilbert's report. | 1.1 |
| 03/12/2001 | VS | Receipt and review of Defendant's Notice of Filing (deposition transcripts). | 0.2 |
| 03/12/2001 | VS | Receipt and review of Defendant's Notice of Filing Exhibits and Deposition Excerpt Pages Referred to in Defendant's Motion for Summary Judgment. | 0.2 |
| 03/12/2001 | VS | Receipt and review of Defendant's Memorandum of Law in Support of Its Dispositive Motion for Summary Judgment. | 0.2 |
| 03/12/2001 | VS | Receipt and review of Defendant's Filing of Undisputed Facts. | 0.2 |
| 03/12/2001 | VS | Receipt and review of Defendant's Motion for Summary Judgment. | 0.2 |

November 25, 2003
Client:          081975
Matter:         000002
Invoice #:     1024039

Page:            21

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 03/12/2001 | VS | Legal research and begin preparing response to motion for summary judgment (whistleblower issues). | 2.5 |
| 03/13/2001 | VS | Receipt and review of Defendant's Motion in Limine to Limit Damages. | 0.2 |
| 03/13/2001 | VS | Receipt and review of Amerijet's Motion in Limine to Exclude any Evidence of the Federal Aviation Administration's Investigation of Flight 827 and Memorandum of Law in Support Thereof. | 0.2 |
| 03/13/2001 | VS | Receipt and review of Order Adopting Report and Recommendation (re: Motion to Dismiss). | 0.2 |
| 03/13/2001 | VS | Receipt and review of Order of Reference to Magistrate (Magistrate Judge Lurana S. Snow). | 0.2 |
| 03/13/2001 | VS | Legal research and partial draft of response to summary judgment motions (whistleblower acts). | 3.0 |
| 03/14/2001 | VS | Receipt and review of Order on Notice of Removal of Complaint - re: Stephen Santiago not being admitted to practice in the Southern District. | 0.2 |
| 03/14/2001 | DDK | Update witness files for trial. | 2.3 |
| 03/14/2001 | DDK | Update deposition notebook. | 2.1 |
| 03/15/2001 | VS | Prepare outlines of Cook, Cline depositions. | 1.0 |
| 03/15/2001 | VS | Legal research and continued preparation of response re: motion for summary judgment. | 1.0 |
| 03/15/2001 | VS | Review of record and partial preparation of fact statement. | 6.5 |
| 03/15/2001 | VS | Prepare draft mediation summary. | 1.0 |
| 03/15/2001 | VS | Prepare deposition outlines of:  Huff, Dickinson, Bassett. | 4.0 |
| 03/15/2001 | VS | Finish mediation summary; legal research regarding damages under various counts. | 3.0 |
| 03/15/2001 | VS | Insurance policy analysis and e-mail. | 0.5 |
| 03/15/2001 | DDK | Telephone conference with Pagan, re: trial and deposition. | 0.4 |
| 03/15/2001 | DDK | Letter to defendant's counsel, re: Pagan's availibility for trial. | 0.4 |
| 03/15/2001 | DDK | E-mail to FAA, re: FAA investigation. | 0.3 |
| 03/16/2001 | VS | Receipt and review of Defendant's Motion to Dismiss Magistrate Judge Snow's Order for Stephen P. Santiago to File an Application for Pro Hac Vice as Moot. | 0.2 |
| 03/16/2001 | VS | Legal research re: continued work on response to motion for summary judgment. | 4.5 |
| 03/16/2001 | VS | Prepare letter to S. Santiago re: Pagan deposition and insurance policy. | 0.3 |
| 03/16/2001 | VS | Deposition outlines of Jorsey, Steele, Washington and Morales. | 4.0 |
| 03/16/2001 | MRB | Review for mediation. | 1.0 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:            22

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 03/16/2001 | DDK | Review court docket for docket number needed for response to motion for summary judgment. | 0.4 |
| 03/19/2001 | VS | Receipt and review of Defendant's Motion for Protective Order or in the Alternative to Strike Jose Pagan as a Witness. | 0.2 |
| 03/19/2001 | VS | Receipt and review of letter from Stephen Santiago re: request for documents. | 0.2 |
| 03/19/2001 | VS | Receipt and review of letter from Stephen Santiago re: dec sheet. | 0.2 |
| 03/19/2001 | VS | Receipt and review of letter from Stephen Santiago re: depo of Jose Pagan. | 0.2 |
| 03/19/2001 | VS | Receipt and review of Defendant's Response to Plaintiff's Second Motion for Protective Order. | 0.2 |
| 03/19/2001 | VS | Receipt and review of Defendant's response to Plaintiff's Motion to Strike Mitch Yelen as an Expert. | 0.2 |
| 03/19/2001 | VS | Receipt and review of Defendant's Reply to Plaintiff's Response in Opposition to Defendant's MOtion to Enlarge Discovery Time in Order to Depose Plaintiff's Expert Witnesses. | 0.2 |
| 03/19/2001 | VS | Prepare response to motion for protective order; telephone conference re: insurance policy. | 1.0 |
| 03/19/2001 | VS | Continued preparation of response to motion for summary judgment and legal research re: plaintiff's cases. | 4.5 |
| 03/19/2001 | VS | Research record re: add record cites; analyze and compare testimony. | 5.0 |
| 03/19/2001 | MRB | Review file for mediation and background. | 2.0 |
| 03/19/2001 | DDK | Prepare reply in support of motion to strike Mitch Yellen. | 2.2 |
| 03/19/2001 | DDK | Telephone call and e-mail with FAA, re: FAA investigations. | 0.4 |
| 03/20/2001 | VS | Continued preparation of summary judgment response and preparation for mediation. | 2.0 |
| 03/20/2001 | VS | Partial prepare for Pagan's deposition. | 0.5 |
| 03/20/2001 | DDK | Prepare reply in support of 2nd motion to protective order. | 1.3 |
| 03/20/2001 | DDK | Prepare affidavit of Victoria Ryder. | 0.9 |
| 03/20/2001 | DDK | Review plaintiff's statement of disputed facts to determine deposition page excerpts to be filed with court. | 2.7 |
| 03/20/2001 | DDK | Review response to motion for summary judgment to determine deposition excerpts to be filed with court. | 2.1 |
| 03/20/2001 | DDK | Compare defendant's depositions filed by defendant with our list of depositions to determine which depositions need to be filed in opposition to motion for summary judgment. | 1.5 |
| 03/20/2001 | DDK | Telephone call with defendant's counsel, re: Pagan's deposition. | 0.3 |

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 03/20/2001 | DDK | Telephone call with Pagan, re: deposition and trial. | 0.2 |
| 03/20/2001 | DDK | Prepare documents and filed for mediation. | 2.2 |
| 03/21/2001 | VS | Receipt and review of letter from Stephen Santiago re: MPO. | 0.2 |
| 03/21/2001 | VS | Prepare for and attend predeposition meeting with Jose Pagan. | 3.5 |
| 03/21/2001 | VS | Prepare for and attend pre-mediation conference with client and mediation. | 5.0 |
| 03/21/2001 | MRB | Prepare for, meet wiht client, and attend mediation with Allene Nicholson. | 4.1 |
| 03/21/2001 | DDK | Prepare witness file and update notebook in preparation for Pagan's deposition. | 0.9 |
| 03/21/2001 | DDK | Telephone call with FAA, re: FAA investigation. | 0.5 |
| 03/21/2001 | DDK | Prepare depositions and notice of filing. | 1.5 |
| 03/21/2001 | DDK | Prepare deposition excerpts and notice of filing. | 4.8 |
| 03/21/2001 | DDK | E-mails and telephone calls with defendant's counsel, re: pretrial stipulation. | 1.1 |
| 03/22/2001 | VS | Receipt and review of Order on Defendant's Motion for Protective Order (as to deposition of Jose Pagan) and Plaintiff's Motion for Protective Order (as to depositions of plaintiff's experts). | 0.2 |
| 03/22/2001 | VS | Prepare for deposition of Jose Pagan (cancelled). | 0.5 |
| 03/22/2001 | VS | Continued preparation of response to summary judgment motion. | 2.5 |
| 03/22/2001 | VS | Prepare demand letter. | 0.4 |
| 03/22/2001 | VS | Prepare (partial) response re: motion in limine (FAA). | 1.5 |
| 03/22/2001 | VS | Prepare pretrial stipulation; direct paralegal re: exhibits. | 1.5 |
| 03/22/2001 | DDK | Review file to determine documents for trial. | 3.1 |
| 03/22/2001 | DDK | Telephone calls and emails to defendant, re: pretrial stipulation. | 1.2 |
| 03/23/2001 | VS | Prepare exhibits for trial. | 2.0 |
| 03/23/2001 | VS | Finish response in opposition to motion for summary judgment, prepare responses to two motions in limine and two other replies. | 6.0 |
| 03/23/2001 | DDK | Prepare exhibits for motion in limine. | 0.9 |
| 03/23/2001 | DDK | Telephone calls and emails to defendant's counsel, re: pretrial stipulation. | 1.1 |
| 03/23/2001 | DDK | Review, index and foldarize all documents produced by either party in order to determine which documents are to be listed as trial exhibits. | 7.9 |
| 03/24/2001 | DDK | Organize and prepare exhibits for trial. | 6.1 |

November 25, 2003
Client:         081975
Matter:         000002
Invoice #:      1024039

Page:            24

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 03/25/2001 | DDK | Prepare exhibit list. | 2.9 |
| 03/26/2001 | VS | Receipt and review of letter from Stephen Santiago re: request for admissions. | 0.2 |
| 03/26/2001 | VS | Receipt and review of Defendant's Motion to Continue the Pre-trial Conference or in the Alternative to Approve Associate Counsel's Appearance at the Pre-Trial Conference. | 0.2 |
| 03/26/2001 | VS | Receipt and review of letter from Susan Potter Norton re: MPO. | 0.2 |
| 03/26/2001 | VS | Legal research re: request for admissions; letter to Steve Santiago. | 1.2 |
| 03/26/2001 | VS | Finalize pretrial stipulation, objections to exhibits, etc. | 0.5 |
| 03/26/2001 | DDK | Prepare request for admissions. | 0.6 |
| 03/26/2001 | DDK | Review captain charts. | 1.6 |
| 03/26/2001 | DDK | Complete preparation of pretrial stipulation and exhibits. | 1.7 |
| 03/26/2001 | DDK | Cross reference defendant's exhibit list with plaintiff's exhbit list. | 2.1 |
| 03/26/2001 | DDK | Cross reference exhibit list and deposition list and prepare index. | 2.1 |
| 03/27/2001 | VS | Receipt and review of letter from Stephen Santiago re: Motion to Continue Pre-Trial Conference. | 0.2 |
| 03/27/2001 | VS | Receipt and review of Defendant's Motion to Continue the Pre-Trial Conference or in the Alternative to Approve Associate Counsel's Appearance at the Pre-Trial Conference. | 0.2 |
| 03/27/2001 | VS | Legal research and preparation of letter to Steve Santiago re: request for admissions, preparation of motion for leave to serve request for admissions. | 3.0 |
| 03/28/2001 | VS | Telephone call with John Roseborough; letter to him with deposition transcript. | 0.4 |
| 03/29/2001 | VS | Receipt and review of letter from Stephen Santiago re: requests for admission. | 0.2 |
| 03/29/2001 | VS | Prepare for pretrial conference (organize motions, review). | 1.5 |
| 03/29/2001 | DDK | Prepare copies of pending motions and index for upcoming pretrial conference. | 3.8 |
| 03/29/2001 | DDK | Review documents received from FAA and prepare letter returning them because they are duplicates. | 1.1 |
| 03/30/2001 | VS | Receipt and review of Mediator's Report. | 0.2 |
| 04/02/2001 | VS | Receipt and initial review of Defendant's Response to Plaintiff's Motion for Leave to Deem Requests for Admissions Served and to Compel Response. | 0.2 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:    1024039

Page:              25

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 04/03/2001 | VS | Receipt and review of Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment. | 0.2 |
| 04/03/2001 | VS | Receipt and review of Reply in Support of Amerijet's Motion in Limine to Exclude any Evidence of the Federal Aviation Administration's Investigation of Flight 827 and Memorandum of Law in Support Thereof. | 0.2 |
| 04/03/2001 | VS | Receipt and review of Order on Defendant's Motion to Continue the Pretrial-Conference. | 0.2 |
| 04/04/2001 | VS | Review re: trial deadlines. | 0.3 |
| 04/05/2001 | VS | Receipt and review of letter from Stephen Santiago w/exhibits. | 0.2 |
| 04/05/2001 | JCD | Prepare Notice of Conflict. | 0.2 |
| 04/06/2001 | VS | Receipt and review of Errata Sheet for deposition of John Roseborough. | 0.2 |
| 04/06/2001 | VS | Prepare reply re: motion on Request for Admissions. | 1.0 |
| 04/06/2001 | DDK | Review file and obtain information needed for Reply to motion for leave to serve affirmative defenses. | 1.3 |
| 04/06/2001 | DDK | Review exhibits provided by defendant. | 0.4 |
| 04/12/2001 | VS | Legal research re: reply brief issues. | 1.0 |
| 04/13/2001 | DDK | Legal research for cases sited in motion for summary judgment. | 1.0 |
| 04/16/2001 | MRB | Prepare for pretrial conference motions reviewed; conference with Valerie Shea; attend pretrial conference -- Judge Ferguson. | 2.0 |
| 04/16/2001 | DDK | Prepare chart and file fo pending motions in preparation for pretrial conference. | 1.9 |
| 04/17/2001 | VS | Prepare for and attend pretrial conference (prepare for hearing on various motions). | 5.5 |
| 04/17/2001 | VS | Direct paralegal re: subpoenas, other pretrial preparation. | 0.5 |
| 04/17/2001 | VS | Receipt and review of Notice of Filing Unopposed Amendment to the Joint Pre-Trial Stipulation. | 0.2 |
| 04/17/2001 | VS | Receipt and review of Notice of Conflict by Susan Potter Norton. | 0.2 |
| 04/17/2001 | VS | File analysis re: decisions as to trial subpoenas; confer with Mark Boyd. | 2.0 |
| 04/17/2001 | DDK | Prepare "dummy" files of defendant's trial exhibits. | 6.2 |
| 04/18/2001 | VS | Prepare letter to Susan Norton; prepare letter to court. | 0.6 |
| 04/18/2001 | DDK | Prepare trial subpoenas. | 1.2 |
| 04/18/2001 | DDK | Prepare trial witness chart and trial file. | 1.1 |
| 04/19/2001 | VS | Receipt and review of letter from Susan Norton re: orders. | 0.2 |
| 04/19/2001 | VS | Legal research re: jury instructions. | 2.0 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:            26

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 04/20/2001 | DDK | Legal research for cases sited in reply in support of motion for summary judgment. | 0.8 |
| 04/23/2001 | VS | Legal research re: prepare draft of jury instructions. | 4.0 |
| 04/23/2001 | DDK | Update index of pending motion and motion file. | 1.1 |
| 04/23/2001 | DDK | Telephone with process server, re: trial subpoenas. | 0.2 |
| 04/24/2001 | VS | Prepare jury instructions; telephone conference with client re: status. | 1.5 |
| 04/24/2001 | DDK | Telephone call with Trial Graphix, re: meeting to discuss trial exhibits. | 0.2 |
| 04/24/2001 | DDK | Telephone call with process server, re: trial subpoenas. | 0.2 |
| 04/24/2001 | DDK | Extended telephone conference with FAA, re: FOIA request. | 0.6 |
| 04/25/2001 | VS | Continued preparation on jury instructions. | 0.2 |
| 04/25/2001 | DDK | Telephone call with process server, re: trial subpoenas. | 0.2 |
| 04/26/2001 | VS | Prepare jury instructions and verdict form. | 4.0 |
| 04/26/2001 | DDK | Telephone call and email to defendant's counsel, re: Pete Steele's deposition. | 0.4 |
| 04/26/2001 | DDK | Telephone call with John Washington's wife, re: trial subpoena. | 0.2 |
| 04/27/2001 | VS | Telephone call with paralegal re: various issues (Steele deposition, calendar call). | 0.5 |
| 04/27/2001 | DDK | Telephone call with process server, re: trial subpoenas. | 0.2 |
| 04/27/2001 | DDK | Prepare documents and witness file for Pete Steele's deposition. | 3.4 |
| 04/27/2001 | DDK | E-mail to John Washington attaching his deposition transcript. | 0.4 |
| 04/28/2001 | VS | Telephone call with paralegal; Steve Santiago. | 0.5 |
| 04/30/2001 | MRB | Conference with Valerie Shea regarding calendar call and trial subpoenas. | 0.8 |
| 04/30/2001 | VS | Prepare for and attend deposition of Pete Steel in Boca - no appearance. | 4.5 |
| 04/30/2001 | VS | Prepare draft motion to strike and for sanctions. | 1.0 |
| 05/01/2001 | VS | Revise/finalize motion/exhibits. | 1.0 |
| 05/01/2001 | MRB | Review motion for protective order filed late and our motion for sanctions. | 0.5 |
| 05/04/2001 | MRB | Review jury instructions. | 0.7 |
| 05/09/2001 | VS | Receipt and review of Defendant's Response to Plaintiff's Motion to Strike Witness and for Sanctions. | 0.2 |
| 05/10/2001 | VS | Telephone call with client re: trial status. | 0.2 |
| 05/11/2001 | VS | Prepare Reply in Support of Motion to Strike. | 1.0 |
| 05/11/2001 | VS | Prepare Response to Motion for Protective Order. | 0.8 |

November 25, 2003
Client:          081975
Matter:        000002
Invoice #:    1024039

Page:            27

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 05/11/2001 | VS | Prepare Notice of Filing and Revised Fee Request per Amended Local Rule. | 0.7 |
| 05/14/2001 | VS | Review pretrial conference transcript; prepare notice of filing. | 0.5 |
| 05/14/2001 | MRB | Receipt and review response regarding Steele deposition. | 0.2 |
| 05/14/2001 | DDK | E-mail to Jose Pagan, re: update on trial calendar. | 0.3 |
| 05/15/2001 | VS | Review and finalize various pleadings re: Pete Steele. | 1.2 |
| 05/18/2001 | VS | Receipt and review of Order on Amerijet's Motion to Enlarge Discovery. | 0.2 |
| 05/18/2001 | VS | Receipt and review of Order denying Plaintiff's Motion for Protective Order (as to depositions of Jim Gilbert, Jose Pagan and Joseph Wiley). | 0.2 |
| 05/18/2001 | VS | Receipt and review of order denying Plaintiff's Motion to Strike Mitchell Yelen as Expert. | 0.2 |
| 05/18/2001 | VS | Receipt and review of Order on Joint Motion for Continuance of Trial (Dismissed as Moot). | 0.2 |
| 05/18/2001 | VS | Receipt and review of Order granting Plaintiff's Motion for Enlargement of Discovery Deadline (as to Paul Repp). | 0.2 |
| 05/18/2001 | VS | Receipt and review of Order Granting Plaintiff's Motion to Compel Deposition. | 0.2 |
| 05/18/2001 | VS | Receipt and review of Order granting Plaintiff's Motion for Leave to Deem Requests for Admissions Served. | 0.2 |
| 05/18/2001 | VS | Direct paralegal re: setting depositions. | 0.3 |
| 05/18/2001 | DDK | Update pending motions file and memo. | 1.3 |
| 05/22/2001 | VS | Receipt and review of Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Protective Order and Plaintiff's Cross-Motion for Fees and Costs. | 0.2 |
| 05/22/2001 | VS | Confer with Matt Adler (Trial Graphix) re: potential exhibits. | 0.5 |
| 05/22/2001 | DDK | Letter to Steve Santiago, re: deposition of Mitch Yelen and requesting Mitch Yelen's report. | 0.3 |
| 05/29/2001 | VS | Receipt and review of letter from Stephen Santiago regarding medical expenses. | 0.2 |
| 05/29/2001 | VS | Receipt and review of letter from Stephen Santiago re: withdrawal of Mitch Yellen. | 0.2 |
| 05/31/2001 | VS | Receipt and review of Defendant's Response to Plaintiff's Second Requests for Admission. | 0.2 |
| 05/31/2001 | VS | Receipt and review of Defendant's Response to Plaintiff's Third Requests for Admission. | 0.2 |
| 06/11/2001 | VS | Prepare letter to client re: status. | 0.3 |
| 06/11/2001 | VS | Legal research re: new Supreme Court case - re:  front pay. | 0.5 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:     1024039

Page:          28

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 06/12/2001 | DDK | Letter to Santiago, re: unpaid medical bill. | 0.3 |
| 07/02/2001 | VS | Prepare notice to clerk of court; letter to client. | 0.6 |
| 07/19/2001 | VS | Receipt and review of Notification of 90 Days Expiring and Ripeness for Hearing. | 0.2 |
| 08/15/2001 | VS | E-mail to Patrick Major regarding his questions on status. | 0.2 |
| 08/23/2001 | VS | Confer with Bruce Weihe regarding motion to lift stay. | 0.3 |
| 08/27/2001 | DDK | Research bankruptcy. | 1.5 |
| 08/29/2001 | BAW | Research and draft stipulation to provide relief from stay to pursue claim. | 0.5 |
| 08/30/2001 | BAW | Revise stipulation for relief from stay. | 0.5 |
| 09/06/2001 | BAW | Analyze bankruptcy case of AmeriJet. | 0.2 |
| 09/06/2001 | VS | Confer with Bruce Weihe regarding bankruptcy. | 0.5 |
| 09/07/2001 | VS | Receipt and review of order on Defendant's Motion to Dismiss Magistrate Judge Snow's Order for Stephen P. Santiago to File an Application for Pro Hac Vice as Moot (motion granted). | 0.2 |
| 09/12/2001 | BAW | Research Bankruptcy Code Section 362 and related cases involving claims of competing creditors for insurance proceeds. | 1.2 |
| 09/13/2001 | BAW | Study Collier's on Bankruptcy to verify procedures in obtaining relief from stay; review motion for relief from stay; call to Michael Seese, bankruptcy attorney for Amerijet. | 1.6 |
| 09/14/2001 | BAW | Revise and file motion for relief from stay and form for notice of hearing; letter to Attorney Seese. | 1.3 |
| 09/18/2001 | BAW | Perfect filing of motion for relief from stay; research insurance cases under Bankruptcy Code. | 1.7 |
| 10/01/2001 | BAW | Study motion for relief from stay to prepare for 10/3 hearing; telephone conference with Debtor's attorney, Michael Seese, to discuss basis of Debtor's objections. | 1.2 |
| 10/02/2001 | BAW | Research case law and Code for 10/3 hearing before Judge Cristol; telephone conference with Attorney Seese; draft proposed Order; prepare argument for hearing. | 1.6 |
| 10/03/2001 | BAW | Review response filed by Debtor to Motion for Stay Relief; analyze docket entries in civil case; prepare for and attend hearing before Judge Cristol. | 3.5 |
| 10/03/2001 | VS | Assist Bruce Weihe in preparation for hearing. | 0.5 |
| 10/04/2001 | BAW | Revise draft of proposed order granting relief from stay; letter to Michael Seese. | 0.4 |
| 10/08/2001 | VS | Advise client regarding effect of bankruptcy on case. | 1.0 |
| 10/08/2001 | VS | Confer with Bruce Weihe and attorney for Amerijet regarding stay. | 0.5 |

November 25, 2003
Client:         081975
Matter:         000002
Invoice #:      1024039

Page:           29

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 10/23/2001 | BAW | Call to Attorney Seese to check on status of stay relief order. | 0.2 |
| 10/25/2001 | BAW | Telephone call to Attorney Seese; letter to Attorney Seese requesting order. | 0.2 |
| 11/06/2001 | BAW | Telephone call to Attorney Seese to demand preparation and submission of Order. | 0.2 |
| 11/07/2001 | BAW | Calls to Attorney Seese to insure Order; review and revise Order; prepare Proof of Claim; advised by Attorney Seese that Judge Cristol entered Order granting stay relief. | 0.8 |
| 11/07/2001 | VS | Office conference - confer with B. Weihe re: Status - bankruptcy. | 0.3 |
| 11/20/2001 | BAW | Review bankruptcy file to verify confirmation of Plan and deadline to file proof of claim (1/1/02); letter to Michael Seese. | 1.1 |
| 11/27/2001 | VS | Receipt and review of Notice of Filing the Federal Aviation Administration's Withdrawal of Investigation and Closing of the Case Against Amerijet International, Inc. and Captain Brian Steele in Support of Defendant's Motion for Summary Judgment. | 0.2 |
| 11/27/2001 | VS | Prepare letter to client; memo to paralegal regarding information from Amerijet. | 0.3 |
| 12/05/2001 | VS | Prepare letter to J. Wiley regarding status; his issues. | 0.5 |
| 12/26/2001 | BAW | Review and prepare proof of bankruptcy claim; study bankruptcy code. | 0.4 |
| 12/30/2001 | BAW | Arrange for timely filing of proof of claim in Miami. | 0.2 |
| 01/07/2002 | VS | Review correspondence from other Amerijet pilots; review pleadings status and call federal court. | 1.8 |
| 01/07/2002 | DDK | FOIA request to FAA; prepare letter to Major and Pagan enclosing order from FAA. | 0.9 |
| 01/29/2002 | VS | Telephone call with Patrick Major regarding status. | 0.3 |
| 02/26/2002 | VS | Telephone call with court clerk; telephone conference with Patrick Major regarding status. | 0.5 |
| 03/14/2002 | VS | Receipt and review of District Court Order. | 0.2 |
| 03/15/2002 | VS | Prepare letter to client regarding order of Magistrate Snow. | 0.3 |
| 03/15/2002 | VS | Telephone call Attorney Santiago. | 0.3 |
| 03/18/2002 | VS | Receipt and review of Notice of Hearing on Defendant's Motion for Summary Judgment. | 0.2 |
| 03/20/2002 | VS | Receipt and review of Defendant's Emergency Motion to Continue Hearing on defendant's Motion for Summary Judgment. | 0.2 |
| 03/28/2002 | VS | Receipt and review of Order granting Defendant's Motion to Continue Hearing. | 0.2 |

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 03/28/2002 | VS | Receipt and review of Notice Changing Scheduled Hearing. | 0.2 |
| 03/28/2002 | VS | Letter to client regarding hearing. | 0.3 |
| 04/22/2002 | VS | Telephone call with Jose Pagan regarding status. | 0.3 |
| 04/22/2002 | VS | Telephone call with Susan Norton; review file regarding status; letter to Susan Norton; prepare for hearing on motion for summary judgment, including reviewing testimony, exhibits, case law, pleadings, etc. | 9.0 |
| 04/22/2002 | MRB | Review for motion for summary judgment arguments. | 1.0 |
| 04/23/2002 | VS | Receipt and review of Notice of Hearing on Defendant's Motion for New Trial or for Remittutur. | 0.2 |
| 04/23/2002 | VS | Prepare for and attend hearing in federal court on motion for summary judgment. | 6.0 |
| 04/23/2002 | VS | Conference with Mark Boyd regarding strategy. | 1.0 |
| 04/23/2002 | MRB | Prepare for and attend motion for summary judgment. | 5.0 |
| 04/24/2002 | MRB | Conference with Valerie Shea regarding trial strategy. | 0.7 |
| 04/24/2002 | VS | Extensive file review, memo regarding to-do, conference with Mark Boyd. | 5.0 |
| 04/25/2002 | VS | Continued file review, especially regarding damages issues. | 3.0 |
| 04/25/2002 | DDK | E-mail to J. Pagan to contact V. Shea. re: status of case. | 0.2 |
| 04/26/2002 | VS | File analysis regarding damages and other issues; confer with Mark Boyd. | 2.3 |
| 04/26/2002 | VS | E-mail with client regarding trial issues. | 1.0 |
| 04/29/2002 | MRB | Conference with Valerie Shea regarding our client's correspondence. | 0.5 |
| 04/29/2002 | VS | Correspondence with client regarding issues for trial. | 1.1 |
| 05/01/2002 | DDK | Compile documents for meeting with Pagan. | 0.5 |
| 05/02/2002 | VS | Prepare for and attend meeting with Jose Pagan regarding his issues; follow up record. | 2.0 |
| 05/02/2002 | MRB | Meet with Jose Pagan. | 1.0 |
| 05/03/2002 | VS | Direct paralegal regarding items to do. | 3.0 |
| 05/06/2002 | VS | Telephone call with Sonja Reposa (accountant); direct paralegal regarding "to-do". | 0.6 |
| 05/06/2002 | DDK | Prepare subpoena to Miami Air for employment records. | 0.4 |
| 05/07/2002 | DDK | Telephone call and faxed letter to FAA re: follow up on FOIA request. | 0.8 |
| 05/10/2002 | DDK | Review documents we have regarding damages and e-mail client asking for additional documents in order to provide to Jim Gilbert for updated report. | 2.4 |
| 05/16/2002 | VS | Receipt and review of Miami Air's response to our subpoena duces tecum. | 0.2 |

November 25, 2003
Client:           081975
Matter:           000002
Invoice #:        1024039

Page:             31

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 05/17/2002 | DDK | Prepare documents to be sent to Jose Pagan. | 1.0 |
| 05/20/2002 | VS | Confer/direct paralegal regarding follow-up with FAA; etc. | 0.5 |
| 05/20/2002 | DDK | Prepare memo on documents received and documents needed for Gilbert. | 1.1 |
| 05/20/2002 | DDK | Review documents received from Miami Air and telephone conference with Human Resources from Miami Air regarding missing documents. | 1.3 |
| 05/21/2002 | BAW | Review bankruptcy court files regarding confirmation of Plan of Reorganization and prospects of payment of claim. | 2.5 |
| 05/21/2002 | DDK | Review web for bankruptcy information and review bankruptcy docket. | 1.2 |
| 05/22/2002 | BAW | Review letter to Attorney Gold regarding his interpretation of plan of reorganization; order copy of plan as adopted. | 0.3 |
| 05/22/2002 | VS | Receipt and review of employment records from Miami Air International, Inc. | 0.2 |
| 05/22/2002 | VS | Prepare letter to Patrick Major updating information on bankruptcy status. | 0.6 |
| 05/23/2002 | VS | Telephone call with court clerk regarding status. | 0.3 |
| 05/23/2002 | MRB | Review wasting policy case law. | 1.4 |
| 05/24/2002 | VS | Receipt and review of letter from James Gilbert regarding records needed. | 0.2 |
| 05/28/2002 | VS | Receipt and review of Amerijet bankruptcy pleadings. | 0.2 |
| 05/28/2002 | DDK | E-mail client requesting additional documents to be sent for Gilbert's updated report. | 0.5 |
| 06/12/2002 | DDK | Receipt and review of e-mail from Pat Major. | 0.2 |
| 06/13/2002 | DDK | Conference with Pat Major, re: documents requested by Jim Gilbert. | 1.1 |
| 06/18/2002 | DDK | Compile and prepare documents to be sent to J. Gilbert; prepare letter to J. Gilbert; prepare letter to P. Major returning original documents. | 2.2 |
| 07/19/2002 | DDK | Follow-up letter to FAA. | 0.3 |
| 08/26/2002 | DDK | Letter to FAA, re: FOIA request; preparation of enclosures to letter. | 0.7 |
| 08/29/2002 | VS | Telephone call with Patrick Major regarding new job status. | 0.3 |
| 02/17/2003 | VS | Research local rules; prepare 90-day letter. | 0.6 |
| 03/15/2003 | VS | Prepare letter to Patrick Major regarding status. | 0.3 |
| 04/29/2003 | DDK | Pacer reserach and download docket from Amerijet Bankruptcy; compile documents for B. Weihe. | 1.2 |
| 05/23/2003 | VS | Prepare letter to client regarding reassignment of judge. | 0.3 |
| 05/29/2003 | VS | Analysis of bankruptcy issues. | 1.0 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:     1024039

Page:          32

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 05/30/2003 | BAW | Study confirmation order in bankruptcy proceeding and related pleadings leading to confirmation of Plan; identify balance of claim of Major as unsecured non-priority claim; review Judge Cristol's Order granting motion for stay relief. | 2.3 |
| 06/02/2003 | BAW | Call to Chad Pugatch to determine status of payments to unsecured creditors; letter to Chad Pugatch. | 0.3 |
| 06/02/2003 | VS | Receipt and review of Order (vacating previous order - assignment to Magistrate Snow). | 0.2 |
| 06/02/2003 | VS | Receipt and review of Order for Pre-Trial Conference. | 0.2 |
| 06/02/2003 | VS | Receipt and review of Order on Trial Instructions. | 0.2 |
| 06/02/2003 | VS | File review and prepare timeline in preparation to reactive (pretrial conference set by court). | 4.5 |
| 06/02/2003 | MRB | Conference regarding status. | 0.3 |
| 06/03/2003 | BAW | Telephone conference with Chad Pugatch regarding determination of amounts to be paid to unsecured creditors -- advised that 2002 payment was not made; discuss payment status with Robin Spalter; letter to Spalter. | 0.9 |
| 06/03/2003 | VS | Bankruptcy analysis/review. | 2.5 |
| 06/03/2003 | MRB | Meet with counsel here for strategy. | 0.3 |
| 06/09/2003 | VS | Prepare for client meeting. | 1.0 |
| 06/10/2003 | BAW | Meet with Mr. Major to discuss bankruptcy issues. | 0.3 |
| 06/10/2003 | VS | Prepare for and attend client meeting regarding status and strategy. | 3.5 |
| 06/10/2003 | MRB | Meet with Mr. Major, Valerie Shea and Bruce Weihe to discuss strategy going forward for trial. | 1.0 |
| 06/11/2003 | VS | Analysis of trial issues. | 2.5 |
| 06/16/2003 | DDK | Review file to determine status of discovery and motions. | 7.6 |
| 06/17/2003 | DDK | Review file to determine status of discovery. | 6.3 |
| 07/07/2003 | VS | Begin review of file regarding issues in light of summary judgment order; legal research regarding caps, limitations on damages. | 5.0 |
| 07/08/2003 | VS | Review exhibits (pretrial) regarding need to prepare revised list. | 2.0 |
| 07/08/2003 | DDK | Prepare exhibits for trial. | 6.2 |
| 07/10/2003 | DDK | Prepare exhibits for trial. | 5.8 |
| 07/11/2003 | VS | Telephone conference with Attorney Abado regarding trial matters. | 0.3 |
| 07/14/2003 | VS | Bankruptcy research. | 1.0 |
| 07/14/2003 | JVB | Reviewed memo, complaint, order and applicable bankruptcy code sections. | 1.0 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:     1024039

Page:          33

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 07/14/2003 | JVB | Legal research - Willful and Malicious act nondischargeable in bankruptcy and necessary burden of proof. | 4.0 |
| 07/14/2003 | DDK | Trial preparation re: work with exhibits. | 4.2 |
| 07/15/2003 | VS | Outline deposition of Paul Repp; other trial preparation. | 2.0 |
| 07/15/2003 | VS | Telephone conference with S. Norton. | 0.2 |
| 07/15/2003 | JVB | Legal research - Exceptions to Discharge, injuries within scope of section 523(a)(6) and timing for exclusion. | 6.0 |
| 07/16/2003 | JVB | Legal research - Prepetition claims not within the ambit of the bankruptcy court. | 3.8 |
| 07/18/2003 | VS | Receipt and review of letter from Attorney Norton regarding possible settlement. | 0.2 |
| 07/18/2003 | VS | Legal research regarding preemption issues. | 2.5 |
| 07/21/2003 | VS | Receipt and review of letter from Attorney Norton regarding Federal Rule 26. | 0.2 |
| 07/21/2003 | JVB | Review and analyze case law and statute re: jurisdiction of bankruptcy court in a section 523(a)(6) case and effects of failure to timely file under section 523 (c). | 2.7 |
| 07/21/2003 | DDK | Trial preparation re: preparation of pretrial stipulation. | 6.5 |
| 07/22/2003 | JVB | Legal research - Defenses to 4007(c) - Waiver, Estoppel; Relation Back; Excusable Neglect; Jurisdictional Time Limit; Applicability of rule 9006; Notice or Actual Knowledge of case and Cause for extension. | 8.2 |
| 07/22/2003 | DDK | Trial preparation re: exchange drafts of stipulation. | 6.2 |
| 07/23/2003 | JVB | Draft - Memorandum re: Nondischargeable claim under section 523 (a)(6). | 2.5 |
| 07/23/2003 | JVB | Legal research - Section 523 (a)(6) and its applicability to a Chapter 11 corporate reorganization. | 1.1 |
| 07/23/2003 | JVB | Legal research - Revocation of Confirmation order; Time to appeal confirmation order; Defenses to failure to appeal confirmation order. | 2.5 |
| 07/23/2003 | JVB | Legal research - Notice requirement; Due Process argument when notice was not received; Due Process requirement in a Chapter 11 corporate reorganization. | 2.4 |
| 07/24/2003 | VS | Receipt and review of supplement to defendant's motion for judgment on the pleadings on plaintiff's claim under the Florida Whistleblowers Act. | 0.2 |
| 07/24/2003 | VS | Receipt and review of defendant's motion for judgment on the pleadings on plaintiff's claim under the Florida Whistleblowers Act. | 0.2 |
| 07/24/2003 | VS | Receipt and review of defendant's motion for leave to update plaintiff's deposition. | 0.2 |

November 25, 2003
Client:         081975
Matter:        000002
Invoice #:     1024039

Page:          34

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 07/24/2003 | VS | Respond to judgment pleadings, conference with J. Gilbert. direct paralegal. | 4.5 |
| 07/24/2003 | MRB | Review series of letters and case law. | 0.4 |
| 07/24/2003 | JVB | Draft - memorandum re: Defenses to dischargeability, conversion or dismissal of Title VII claim, and circumstances when collections may be made outside the plan of reorganization. | 2.7 |
| 07/24/2003 | JVB | Legal research  re: Default under section 1112 (b); cause for dismissal and conversion. | 2.1 |
| 07/24/2003 | JVB | Legal research - Conversion and Dismissal; What constitute material default under section 1112 (b) and effects of conversion and dismissal on a prior order of discharge. | 3.3 |
| 07/25/2003 | VS | Trial preparation, including conferring with Mark Boyd regarding evidence issues and continued response to pre-emption motion. | 5.0 |
| 07/25/2003 | JVB | Revised memo re: The effects of bankruptcy on plaintiff's Title VII claim. | 6.4 |
| 07/25/2003 | JVB | Conference with Valerie - research findings. | 0.1 |
| 07/25/2003 | DDK | Trial preparation re: address subpoena issues. | 2.9 |
| 07/28/2003 | VS | Prepare for and attend conference call regarding pretrial stipulation and direct paralegal regarding exhibits; finalize stipulation. | 1.0 |
| 07/28/2003 | VS | Prepare response to preemption motion (continued). | 3.5 |
| 07/28/2003 | VS | Prepare response to motion for deposition. | 0.5 |
| 07/28/2003 | DDK | Trial preparation re: provide material to experts. | 6.9 |
| 07/29/2003 | VS | Telephone call with Jim Gilbert regarding report. | 0.4 |
| 07/29/2003 | VS | Analysis/designate Dickensen and Washington depositions. | 3.0 |
| 07/29/2003 | VS | Legal research regarding trial issues. | 1.5 |
| 07/29/2003 | DDK | Trial preparation re: interview client for employment chrono. | 6.2 |
| 07/30/2003 | DDK | Trial preparation re: prepare supplemental disclosures. | 5.2 |
| 07/31/2003 | VS | Receipt and review of Order on Amerijet's Motion for Judgment on the Pleadings (denied). | 0.2 |
| 07/31/2003 | VS | Trial preparation, including preparation of direct examination of Patrick Major. | 5.5 |
| 07/31/2003 | DDK | Trial preparation re: prepare response to Request to Produce. | 5.2 |
| 08/01/2003 | DDK | Trial Prepration re: prepare response to Interrogatories. | 7.9 |
| 08/04/2003 | VS | Prepare materials regarding supplemental discovery. | 2.0 |
| 08/05/2003 | VS | Trial preparation regarding damages information. | 1.5 |
| 08/05/2003 | DDK | Trial Prepration re: continued gathering damages info. | 6.0 |
| 08/06/2003 | VS | Trial preparation re: assess damages issues. | 2.5 |

November 25, 2003
Client:            081975
Matter:            000002
Invoice #:         1024039

Page:              35

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 08/07/2003 | VS | Receipt and review of letter from Susan Potter Norton regarding witness list. | 0.2 |
| 08/07/2003 | MRB | Prepare supplemental interrogatory answers for miscellaneous damages; emails to Pat Major explaining issue for damages. | 1.0 |
| 08/08/2003 | VS | Receipt and review of letter from Susan Potter Norton regarding witnesses. | 0.2 |
| 08/08/2003 | DDK | Trial Prepration re: investigate for other additional records. | 5.2 |
| 08/11/2003 | BAW | Bankruptcy research on ability to seek dismissal or reconsideration of bankruptcy claim to obtain damages in excess of coverage limits. | 2.4 |
| 08/11/2003 | VS | Receipt and review of Omnibus Order (on outstanding motions). | 0.2 |
| 08/11/2003 | VS | Receipt and review of Defendant's Reply in Support of Its Motion for Leave to Update Plaintiff's Deposition. | 0.2 |
| 08/11/2003 | VS | Receipt and review of Defendant's Motion for Leave to Update its Witness and Exhibit List. | 0.2 |
| 08/11/2003 | VS | Receipt and review of Amerjiet's Motion for Leave to Depose Plaintiff's Experts Pagan and Gilbert or in the Alternative Motion to Strike Gilbert and Pagan from Testifying in this Action. | 0.2 |
| 08/11/2003 | VS | Various trial issues based on court order. | 1.0 |
| 08/11/2003 | MRB | Review deposition of Mr. Major regarding claims -- out of pocket/consequential damages elements. | 1.0 |
| 08/12/2003 | VS | Various trial preparation regarding direct scheduling and preparation regarding expert witnesses. | 1.8 |
| 08/13/2003 | BAW | Receive and review cash flow analysis from Kluger, Peretz; letter to Mr. Major. | 0.2 |
| 08/18/2003 | VS | Receipt and review of Amerijet's Designation of Deposition of John Washington. | 0.2 |
| 08/19/2003 | VS | Confer/direct paralegal regarding trial to do. | 0.4 |
| 08/21/2003 | VS | Receipt and review of Defendant's Emergency Motion for Leave to Update Plaintiff's Employment Records. | 0.2 |
| 08/22/2003 | VS | Receipt and review of letter from Dionne Wilson Blake regarding deposition of Jim Gilbert. | 0.2 |
| 08/22/2003 | VS | Receipt and review of Corrected Subpoena for Deposition Duces Tecum of James Gilbert. | 0.2 |
| 08/26/2003 | VS | Receipt and review of Order denying Amerijet's Emergency Motion for Leave to Update Plaintiff's Employment Records. | 0.2 |
| 08/27/2003 | VS | Receipt and review of Defendant's Motion to Compel Plaintiff's Production of Documents Duces Tecum. | 0.2 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:            36

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 08/28/2003 | VS | Receipt and review of letter from Dionne Wilson Blake regarding deposition of Patrick Major. | 0.2 |
| 08/28/2003 | VS | Receipt and review of Re-Notice of Taking Deposition Duces Tecum of Patrick Major. | 0.2 |
| 08/28/2003 | MRB | Conference with Pat Major. | 0.4 |
| 08/28/2003 | VS | Various conferences regarding scheduling. | 0.5 |
| 08/29/2003 | VS | Prepare response in opposition to motion to compel; work on various scheduling issues. | 0.5 |
| 08/29/2003 | MRB | Review damage assessment for predeposition of Mr. Major. | 0.9 |
| 09/02/2003 | VS | Receipt and review of Defendant's Motion for Personnel Records. | 0.2 |
| 09/02/2003 | VS | Prepare for and attend meeting with Jose Pagan. | 2.0 |
| 09/02/2003 | MRB | Review with Jose Pagan, our expert. | 1.0 |
| 09/02/2003 | DDK | Trial prepration re: assist Pagan with materials needed. | 3.1 |
| 09/03/2003 | MRB | Review Gilbert's report for predeposition conference. | 1.2 |
| 09/04/2003 | MRB | Meet with client for predeposition conference regarding update deposition scheduled for next week; review of prior deposition; review of interrogatory answers. | 2.2 |
| 09/04/2003 | DDK | Trial preparation re: determine AJ witness' identities. | 2.1 |
| 09/05/2003 | VS | Prepare for and attend deposition of Jose Pagan. | 5.0 |
| 09/05/2003 | MRB | Review plaintiff deposition for update. | 1.6 |
| 09/08/2003 | VS | Confer with Mark Boyd regarding status and strategy. | 1.0 |
| 09/08/2003 | MRB | Predeposition conference with Mr. Major; attend updated deposition; post deposition conference with client. | 4.0 |
| 09/09/2003 | VS | Prepare for and attend deposition of Jim Gilbert. | 2.5 |
| 09/09/2003 | MRB | Conference regarding expert testimony and Mr. Major's deposition. | 0.8 |
| 09/09/2003 | HBB | Research basis for a response to plaintiff's memorandum to obtain Majors subsequent employment records. | 2.5 |
| 09/09/2003 | HBB | Prepare draft response to defendant's memorandum to obtain major's subsequent employment records. | 2.5 |
| 09/09/2003 | DDK | Trial prepration re: try to update FOIA files (FTA). | 1.9 |
| 09/10/2003 | VS | Prepare Response to motion regarding personnel records; other preparation regarding pretrial conference and issues raised by Amerijet motions. | 4.0 |
| 09/10/2003 | DDK | Trial preparation re: create subfiles for issues for trial. | 5.3 |
| 09/11/2003 | VS | Prepare for pretrial conference. | 2.0 |
| 09/11/2003 | MRB | Review motion for continuance and memorandum of law (1.0); review series of documents in response to motions pending (.6). | 1.6 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:            37

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 09/12/2003 | MRB | Prepare for and attend pretrial conference. | 2.6 |
| 09/12/2003 | VS | Prepare for and attend pretrial conference. | 2.5 |
| 09/12/2003 | VS | Prepare (partial) responses to various motions. | 1.8 |
| 09/15/2003 | VS | Receipt and review of Notice of Filing Defendant's Witness and Expert List and First Amended Exhibit List. | 0.2 |
| 09/15/2003 | VS | Receipt and review of Defendant's Motion for Continuance to Avoid Extreme Prejudice. | 0.2 |
| 09/15/2003 | VS | Confer with Mark Boyd regarding strategy. | 0.7 |
| 09/16/2003 | VS | Receipt and review of Amerijet's Motion in Limine to Exclude Evidence of FAA's Interim Findings. | 0.2 |
| 09/16/2003 | VS | Receipt and review of Order of Referral to United States Magistrate Judge Lurana S. Snow. | 0.2 |
| 09/16/2003 | VS | Prepare response in opposition to new objections to exhibit list. | 1.0 |
| 09/16/2003 | VS | Prepare motion for case management conference and to strike new witnesses and exhibits. | 2.0 |
| 09/16/2003 | MRB | Review pending issues. | 0.6 |
| 09/17/2003 | VS | Prepare motion for pretrial conference and related materials. | 2.5 |
| 09/18/2003 | DDK | Trial preparation re: speak with various prospective witnesses. | 3.5 |
| 09/22/2003 | VS | Receipt and review of documents responsive to exhibits 197, 198 and 204. | 0.2 |
| 09/22/2003 | VS | Receipt and review of defendant's response to plaintiff's motion to strike defendant's objections. | 0.2 |
| 09/25/2003 | MRB | Review orders from court. | 0.2 |
| 09/26/2003 | VS | Receipt and review defendant's response to plaintiff's motion for pretrial conference. | 0.2 |
| 09/26/2003 | VS | Receipt and review defendant's reply to plaintiff's response in opposition to defendant's motion in limine to exclude evidence of the FAA's interim findings/reports of flight 827. | 0.2 |
| 09/29/2003 | VS | Prepare letter to D. Blake regarding witness and exhibit lists. | 0.3 |
| 10/02/2003 | VS | Confer/direct paralegal regarding exhibits. | 1.5 |
| 10/10/2003 | VS | Receipt and review of Defendant's Objections to magistrate's Order Denying Defendant's Motions to Compel. | 0.2 |
| 10/13/2003 | VS | Prepare response in opposition to objections to magistrate. | 0.5 |
| 10/16/2003 | VS | Receipt and review of Order on Motion to Strike Late-Filed Objections (denied). | 0.2 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:            38

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 10/17/2003 | VS | Receipt and review of Order on motion for pretrial conference. | 0.2 |
| 10/20/2003 | VS | Direct paralegal regarding things to do. | 0.5 |
| 10/20/2003 | VS | Prepare e-mails to Pat Major and experts regarding trial date. | 0.3 |
| 10/21/2003 | SEP | Attempt to locate Defendant Bassett for service ot trial subpoena. | 0.4 |
| 10/24/2003 | SEP | Letters to witnesses regarding new trial date. | 1.1 |
| 10/27/2003 | VS | Receipt and review of defendant's Motion for Clarification of Court's Order Sustaining Defendant's Objections to Magistrate's Order. | 0.2 |
| 10/27/2003 | VS | Trial preparation regarding status of subpoenas, witnesses, prepare letter to Susan Norton; confer with Mark Boyd regarding strategy; prepare draft voir dire. | 4.5 |
| 10/27/2003 | MRB | Trial preparation for upcoming trial in federal court. | 2.0 |
| 10/27/2003 | SEP | Trial preparation - File review; call to clerk at U.S. District Court; review trial exhibits; update witness files; call to opposing counsel regarding contacting witnisses;  research 49 C.F.R.; draft Motion to Revalidate all Trial Subpoenas with Order; calls to and from process server; fax copy of subpoena to process server; review exhibit lists and update objections. | 6.8 |
| 10/28/2003 | VS | Telephone call with judge's clerk; prepare response to motion to mediate; file research regarding Roseborough issue. | 1.8 |
| 10/28/2003 | MRB | Begin trial review and preparation. | 1.4 |
| 10/28/2003 | SEP | Preparation for Trial. | 5.5 |
| 10/29/2003 | VS | Receipt and review of Defendant's Motion to Compel Mediation/Settlement Conference with a Magistrate. | 0.2 |
| 10/29/2003 | VS | Various pretrial preparation including work on expert testimony and exhibit review. | 1.5 |
| 10/29/2003 | MRB | Prepare for trial (opening statement); direct testimony of Mr. Major. | 2.3 |
| 10/29/2003 | SEP | Review wintess and exhibit lists; letter to oppositn counsel regarding payment of expert witness; trial preparation; prepare notice of filing objections to Defendant's Exhibit List ; call s to client, expert witnesses regarding postponement of trial. | 4.1 |
| 10/30/2003 | VS | Receipt and review of letter from Susan Potter Norton regarding availability of witnesses. | 0.2 |
| 10/30/2003 | VS | Trial preparation regarding check status of exhibits, witnesses. | 1.0 |
| 10/30/2003 | MRB | Review for opening statement. | 1.0 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:            39

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|-------------------------|-------|
| 10/30/2003 | SEP | Prepare letter to opposing counsel regarding missing defendant's exhibits. | 0.6 |
| 10/31/2003 | SEP | Review Defendant's exhibits; draft letter to opposing counsel. | 0.5 |
| 11/03/2003 | VS | Receipt and review of Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion to Compel Mediation. | 0.2 |
| 11/03/2003 | VS | Legal research regarding jury instructions and trial law issues; draft trial brief. | 8.5 |
| 11/03/2003 | SEP | Trial preparation: reorganize files; locate bankruptcy documents; update trial witness status list. | 5.8 |
| 11/04/2003 | VS | Legal research, extensive, regarding jury instructions and trial brief. | 10.0 |
| 11/04/2003 | MRB | Prepare for trial. | 1.3 |
| 11/04/2003 | SEP | Autotrack search to locate new address for Juan Morales; telephone calls to process server; prepare trial subpoena for Juan Morales; update trial witness status list; Pacer search of Bankruptcy docket; telephone call-leave message for Robin Spalter; letter to Robin Spalter; continue to re-organize files for trial. | 6.3 |
| 11/05/2003 | VS | Trial preparation, including study of FAA documents and preparation regarding Dave Bassett. | 8.0 |
| 11/05/2003 | MRB | Trial preparation. | 1.7 |
| 11/05/2003 | SEP | Call to Judge Zloch's clerk; e-mail to client; telephone calls to FAA regarding FOIA requests; call to opposing counsel regarding exhibits; draft Motion to Strike Exhibits; trial preparation. | 6.3 |
| 11/06/2003 | VS | Trial preparation, including preparation for D. Huff, finalize trial brief and jury instructions. | 8.5 |
| 11/06/2003 | MRB | Pre-trial meeting with Valerie Shea; trial preparation. | 2.7 |
| 11/06/2003 | ASC | Review and analyze jury instructions. | 0.5 |
| 11/06/2003 | SEP | Locate all documents received from Defendant torough course of litigation; update document index; contact expert witnesses; trial proparation. | 7.2 |
| 11/07/2003 | VS | Receipt and review of Order on Amerijet's Motion to Compel. | 0.2 |
| 11/07/2003 | VS | Receipt and review of Order transferring case to Judge Gonzalez. | 0.2 |
| 11/07/2003 | VS | Receipt and review of Order on Amerijet's Motion for Clarification. | 0.2 |
| 11/07/2003 | VS | Trial preparation, including meeting with Jose Pagan, preparation regarding other Amerijet witnesses; legal issues for trial. | 9.0 |

November 25, 2003
Client:            081975
Matter:          000002
Invoice #:      1024039

Page:              40

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 11/07/2003 | MRB | Meet with Valerie Shea and Jose Pagan regarding trial, strategy, and testimony; trial preparation; exhibit review. | 4.4 |
| 11/07/2003 | SEP | Trial preparation - file organization; review documents produced to and from defendants; locate witnesses, contact experts. | 4.5 |
| 11/09/2003 | VS | Prepare for trial; extensive file review and meeting with Patrick Major. | 9.0 |
| 11/09/2003 | MRB | Trial preparatoin -- meet with Mr. Major for his trial. | 8.0 |
| 11/10/2003 | VS | Receipt and review of Defendant's Motion to Strike Plaintiff's Claim for Damages and Back Pay and Motion to Hold Plaintiff in Contempt of Court. | 0.2 |
| 11/10/2003 | VS | Prepare for and attend voir dire at court. | 4.0 |
| 11/10/2003 | VS | Trial preparation, including continued meeting with client and preparation regarding other witnesses. | 5.5 |
| 11/10/2003 | MRB | Attend trial; meet with Mr. Major for testimony. | 9.0 |
| 11/10/2003 | SEP | Prepare, copy, tag exhibits for trial; prepare Motion for Leave to Bring Audio/Visual Equipment into Courtroom with Proposed Order. | 6.2 |
| 11/11/2003 | VS | Trial preparation regarding testimony of Jim Gilbert; meeting with client; review exhibits. | 8.0 |
| 11/11/2003 | MRB | Trial preparation; meet with Mr. Major. | 7.0 |
| 11/11/2003 | SEP | Pull exhibits; order Trial Boards; organize exhibits. | 3.2 |
| 11/12/2003 | VS | Receipt and review of Defendant's Motion to use Audio Tape Recorder at Trial. | 0.2 |
| 11/12/2003 | MRB | Prepare for and attend trial before Judge Gonzalez, U.S. District Court; prepare for next day. | 12.0 |
| 11/12/2003 | VS | Attendance at trial and preparation for next day. | 11.0 |
| 11/12/2003 | SEP | Organize documents, exhibits for  use at trial. | 3.6 |
| 11/13/2003 | MRB | Prepare for and attend trial before Judge Gonzalez, U.S. District Court; prepare for next day. | 12.0 |
| 11/13/2003 | VS | Prepare Notice of Filing (documents re: admissibility of documents). | 0.2 |
| 11/13/2003 | VS | Prepare for and attend trial. | 11.0 |
| 11/13/2003 | SEP | Preparation for and attendance at trial before Judge Gonzalez, U.S. District Court. | 2.5 |
| 11/13/2003 | SEP | Prepare trial board for use at trial; deliver to Courthouse. | 0.6 |
| 11/14/2003 | MRB | Prepare for and attend trial before Judge Gonzalez, U.S. District Court. | 10.0 |
| 11/14/2003 | VS | Receipt and review of Amerijet's Motion to Bifurcate the Liability and Damages Phases of This Trial and Memorandum of Law in Support Thereof. | 0.2 |

November 25, 2003
Client:          081975
Matter:         000002
Invoice #:     1024039

Page:           41

**SERVICES**

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 11/14/2003 | VS | Receipt and review of Amerijet's Motion in Limine to Preclude Evidence of Plaintiff's Claim for Back Pay. | 0.2 |
| 11/14/2003 | VS | Receipt and review of Amerijet's Motion to Use Audio Tape Recorder at Trial. | 0.2 |
| 11/14/2003 | VS | Receipt and review of Order on Plaintiff's Motion for Leave to Bring Audio Visual Equipment into the Courtroom (granted). | 0.2 |
| 11/14/2003 | VS | Receipt and review of Order on Motion for Leave to Bring Audio-Visual Equipment into Courtroom (granted). | 0.2 |
| 11/14/2003 | VS | Receipt and review of Order on Defendant's Motion to Strike Plaintiff's Claim for Damages and Back Pay and Motion to Hold Plaintiff in Contempt of Court (denied). | 0.2 |
| 11/14/2003 | VS | Receipt and review of Order on Defendant's Motion to Strike plaintiff's Claim for Damages and Back Pay and Motion to Hold Plaintiff in Contempt of Court (denied). | 0.2 |
| 11/14/2003 | VS | Receipt and review of Order on Motion for Leave to Bring Audio-Visual Equipment into Courtroom (granted). | 0.2 |
| 11/14/2003 | VS | Receipt and review of Order on Plaintiff's Motion for Leave to Bring Audio Visual Equipment into the Courtroom (granted). | 0.2 |
| 11/14/2003 | VS | Receipt and review of Defendant's Motion to Use Audio Tape Recorder at Trial. | 0.2 |
| 11/14/2003 | VS | Receipt and review of Defendant's Motion in Limine to Preclude Evidence of Plaintiff's Claim for Back Pay. | 0.2 |
| 11/14/2003 | VS | Receipt and review of Defendant's Motion to Bifurcate the Liability and Damages Phases of this Trial and Memorandum of Law in Support Thereof. | 0.2 |
| 11/14/2003 | VS | Receipt and review of Order on Defendant's Motion to Bifurcate the Liability and Damages Phases of this Trial (denied). | 0.2 |
| 11/14/2003 | VS | Receipt and review of Order on Defendants' Motion in Limine to Preclude Evidence of Plaintiff's Claim for Back Pay (denied). | 0.2 |
| 11/14/2003 | VS | Prepare for and attend trial and closing arguments; verdict returned. | 10.5 |
| 11/14/2003 | SEP | Preparation for and attendance at trial before Judge Gonzalez, US. District Court. | 8.6 |
| 11/14/2003 | SEP | Telephone calls to Jose Pagen regarding exhibits. | 0.4 |
| 11/17/2003 | VS | Prepare final judgment; telephone conference with experts; strategize re: post trial motions. | 2.0 |
| 11/17/2003 | SEP | Reorganize documents and exhibits after trial. | 4.2 |
| 11/18/2003 | VS | Prepare initial draft of motion for fees. | 1.5 |
| 11/18/2003 | VS | Review fees and omit ADEA fees. | 1.5 |

## SERVICES

| Date | Person | Description of Services | Hours |
|------|--------|------------------------|-------|
| 11/18/2003 | VS | Calculate interest rates, etc. | 0.5 |
| 11/19/2003 | VS | Legal research and continue drafting of motion regarding attorney's fees. | 6.0 |
| 11/20/2003 | VS | Continued legal research and preparation of fee petition and documentation. | 8.0 |
| 11/24/2003 | VS | Receipt and review of executed Judgment. | 0.2 |
| 11/24/2003 | VS | Continued work on fee petition; contact H. Latimer and prepare materials for his review. | 5.5 |
| | | Total Professional Services | 1481.3 |

## SUMMARY

| Person | | Level | Hours | Rate | Amount |
|--------|--|-------|-------|------|--------|
| BAW | Bruce A. Weihe | SENIOR PARTNER | 4.0 | $250.00 | $1,000.00 |
| BAW | Bruce A. Weihe | SENIOR PARTNER | 22.0 | $300.00 | $6,600.00 |
| VS | Valerie Shea | PARTNER | 408.7 | $250.00 | $102,175.00 |
| VS | Valerie Shea | PARTNER | 288.0 | $300.00 | $86,400.00 |
| MRB | Mark R. Boyd | PARTNER | 16.0 | $250.00 | $4,000.00 |
| MRB | Mark R. Boyd | PARTNER | 105.5 | $300.00 | $31,650.00 |
| ASC | Adam S. Chotiner | ASSOCIATE | 0.5 | $175.00 | $87.50 |
| HBB | Heather B. Bush | ASSOCIATE | 5.0 | $175.00 | $875.00 |
| DDK | Darlyn D. Kreitman | PARALEGAL | 281.4 | $90.00 | $25,326.00 |
| DDK | Darlyn D. Kreitman | PARALEGAL | 121.7 | $110.00 | $13,387.00 |
| JCD | Janette Cress Dondi | PARALEGAL | 0.2 | $90.00 | $18.00 |
| JVB | Janet V. Buchanan | PARALEGAL | 48.8 | $110.00 | $5,368.00 |
| SEP | Suzan E. Prince | PARALEGAL | 78.4 | $110.00 | $8,624.00 |
| EDK | Erica D. Kahn | INACTIVE TIMEKEEPER | 97.6 | $90.00 | $8,784.00 |
| RKG | Regina Gonzalez | PARALEGAL | 0.6 | $90.00 | $54.00 |
| TEB | Todd E. Brant | ASSOCIATE | 2.9 | $150.00 | $435.00 |

## DISBURSEMENTS

| Date | Description of Disbursements | Amount |
|------|----------------------------|--------|
| 11/30/1999 | Copies; Global/#71438-92/Copies | $88.91 |
| 12/22/1999 | Filing Fee; Filing Fee-Broward County Clk of Ct | $200.00 |
| 01/31/2000 | Process Service; Burke/#1230-0899/Amerijet Int'l | $25.00 |

November 25, 2003
Client:         081975
Matter:         000002
Invoice #:      1024039

Page:           43

## DISBURSEMENTS

| Date | Description of Disbursements | Amount |
|------|-----------------------------|--------|
| 03/02/2000 | Copies; Allen, Norton & Blue/Copies/Major 316 | $47.40 |
| 03/13/2000 | Copies; Allen, Norton & Blue/Copies/Major 280 | $42.00 |
| 03/31/2000 | Legal Research; Westlaw/32114/January research | $16.25 |
| 04/05/2000 | Parking Expense; VS 3/22 at Court house | $3.00 |
| 04/30/2000 | Copies; Global/#72036-920 | $44.84 |
| 04/30/2000 | Copies; Global/#72036-920 | $133.24 |
| 04/30/2000 | Copies; Global/#72067A-920 | $32.01 |
| 04/30/2000 | Copies; Global/#72067A-920 | $360.40 |
| 04/30/2000 | Copies; Global/#71997-920 | $43.09 |
| 04/30/2000 | Copies; Global/#71997-920 | $36.09 |
| 05/31/2000 | Copies; Global/#72037-920 | $114.16 |
| 05/31/2000 | Copies; Judicial Copy/#JC200554/Automatic Feed | $415.26 |
| 05/31/2000 | Courier/Messengers Charge; Esquire Express/#59572/Broward Federal | $13.00 |
| 05/31/2000 | Legal Research; Westlaw/6741/02/00 | $162.85 |
| 05/31/2000 | Legal Research; Westlaw/83367/3/00 | $2.34 |
| 06/30/2000 | Legal Research; Westlaw/April research | $8.47 |
| 08/01/2000 | Esquire Express, Inc/63209 - from Recording Agency on 7/18 | $7.00 |
| 09/30/2000 | Copies; Judicial Research/F992329/07/18 | $25.71 |
| 09/30/2000 | JD Gilbert & Co., C.P.A. - Services Rendered  #27564 | $3,000.00 |
| 10/01/2000 | Esquire Express, Inc/65016 - to Broward Federal on 9/28 | $13.00 |
| 10/01/2000 | Esquire Express, Inc/65016 - to Broward Federal on 9/29 | $15.95 |
| 10/03/2000 | Bassett Press - Copies  #50053 | $28.62 |
| 10/06/2000 | Federal Express Corporation - Courier/Messengers Charge #5-604-77917 Joseph Wiley | $18.82 |
| 10/06/2000 | Federal Express Corporation - Courier/Messengers Charge #5-604-77917 James D. Gilbert | $18.82 |
| 10/10/2000 | Lawrence A. Budde Claim Service - Investigator Fee/4826/Locate J. Pagan | $175.00 |
| 10/18/2000 | Lawrence A. Budde Claim Service - Investigator Fee  #4837 | $75.00 |
| 10/18/2000 | Burke Investigative, Inc. - Investigator Fee  #1018-18-2000 Dean Chapman | $35.00 |
| 10/23/2000 | Burke Investigative, Inc. - Investigator Fee  #1024-11-2000 Pete Steele, W. Penny, J. Morales, E. Cook | $165.00 |
| 10/31/2000 | Jose Pagan - Witness fee | $1,200.00 |
| 11/10/2000 | McCleary & McCleary, P.A. - Services Rendered   11/10/00 | $462.50 |
| 11/15/2000 | Commerce/NOAA/NNDC - Misc Expense  For Weather Info. | $69.00 |
| 11/15/2000 | Downtown Reporting - Court Reporter Charge  #2002195 Derry Huff | $790.00 |
| 11/16/2000 | Burke Investigative, Inc. - Investigator Fee  #1116-10-2000 Sandy Sosniak | $35.00 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:     1024039

Page:            44

## DISBURSEMENTS

| Date | Description of Disbursements | Amount |
|------|------------------------------|--------|
| 11/30/2000 | Bassett Press - Copies  #50281 | $51.20 |
| 11/30/2000 | Bassett Press - Copies  #50281 | $26.55 |
| 11/30/2000 | JD Gilbert & Co., C.P.A. - Services Rendered  #28140 | $6,824.25 |
| 12/01/2000 | Dept. of Transportation- Tape Recording of Air Traffic Communications | $60.00 |
| 12/02/2000 | WEST GROUP PAYMENT CENTER - Legal Research   11/00 | $143.83 |
| 12/16/2000 | Esquire Express, Inc. - Courier/Messengers Charge  #67299 JD Gilbert | $18.25 |
| 01/03/2001 | Westlaw #59903 - 12/00 | $90.16 |
| 01/11/2001 | Bassett Press - Copies  #50409 | $101.12 |
| 01/12/2001 | Downtown Reporting - Court Reporter Charge  #2010050  Derry Huff, Brian Steele, John Washing | $862.00 |
| 01/17/2001 | Bassett Press - Copies  #50465 | $47.70 |
| 01/31/2001 | JD Gilbert & Co., C.P.A. - Services Rendered  #105128 Client # 7634L | $4,943.50 |
| 01/31/2001 | Downtown Reporting - Court Reporter Charge  #2010179  Al Jorsey/Bill Cline/Ed Cook | $962.50 |
| 02/03/2001 | Westlaw #41515 - 01/01 | $29.03 |
| 02/06/2001 | Bassett Press - Copies  #50609 | $17.98 |
| 02/12/2001 | 01/24 lunch @ Depo | $43.00 |
| 02/19/2001 | Downtown Reporting - Court Reporter Charge  #2010338  Juan Morales | $333.00 |
| 02/19/2001 | Burke Investigative, Inc. - Process Service  #0219-19-2001 J. Roseborough | $15.00 |
| 02/20/2001 | Bassett Press - Copies  #50731 | $59.02 |
| 02/23/2001 | Friedman, Lombardi & Olson - Services Rendered  #92415/2632 Photostats Patrick Major | $795.15 |
| 02/26/2001 | Pagan Aviation Consulting - Expert Witness Fee | $1,437.50 |
| 02/26/2001 | Friedman, Lombardi & Olson - Services Rendered  #92420/2632 Attendance David Bassett | $315.60 |
| 02/26/2001 | Downtown Reporting - Court Reporter Charge  #2010363  J. Roseborough and T. Dickenson | $1,127.00 |
| 02/28/2001 | Campbell Auto Park - Parking Expense 02/28/01 | $21.00 |
| 02/28/2001 | Burke Investigative, Inc. - Process Service  #0228-20-2001 Pete Steele | $15.00 |
| 03/03/2001 | Westlaw/31703 - 02/01 | $26.92 |
| 03/03/2001 | VS/03/01-Exps - meals on 02/15/01 | $20.23 |
| 03/09/2001 | JRH/03/01-Amex - 02/01 | $20.00 |
| 03/10/2001 | VS/03/01-Exps - 02/15 & 02/19 parking for Depos | $5.00 |
| 03/12/2001 | Downtown Reporting - Court Reporter Charge  #2010516  Paul Repp | $560.00 |
| 03/16/2001 | Florida Mediation Group - Mediation Service | $262.50 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:     1024039

Page:          45

## DISBURSEMENTS

| Date | Description of Disbursements | Amount |
|---|---|---|
| 03/27/2001 | Downtown Reporting - Court Reporter Charge  #2010617  Jose Pagan | $50.00 |
| 03/30/2001 | Florida Mediation Group - Mediation Service  #79173  Allene D. Nicholson | $187.50 |
| 03/31/2001 | Trial Graphix - Copies  #27511 | $508.80 |
| 04/02/2001 | Bassett Press - Copies  #50921 | $151.62 |
| 04/02/2001 | West Group Payment Center - Legal Research   3/01 | $275.56 |
| 04/06/2001 | Federal Express Corporation - Courier/Messengers Charge #5-749-97978 Juliana Wintias | $20.72 |
| 04/10/2001 | Pacer Service Center - Online research on 03/19/01 | $20.10 |
| 04/23/2001 | Burke Investigative, Inc. - Process Service  #0423-16-2001 D.Bassett; P. Steele; D. Huff; J. Morales; E. Cook | $325.00 |
| 04/25/2001 | Bassett Press - Copies  #51019 | $25.12 |
| 04/30/2001 | Burke Investigative, Inc. - Process Service  #0430-16-2001 C. Williams; T. Dickenson; B. Steele | $285.00 |
| 05/02/2001 | West Group Payment Center - Legal Research - april 2001 | $169.94 |
| 05/04/2001 | Downtown Reporting - Court Reporter Charge  #2010919 Pete Steele | $90.90 |
| 05/04/2001 | Burke Investigative, Inc. - Process Service  #0504-12-2001 J. Washington | $155.00 |
| 05/10/2001 | Valerie Shea - mileage to/from Depo on 04/30/01 | $17.25 |
| 05/11/2001 | Jerald J. Reeves Transcript of Pre-Trial Conference - Court Reporter Charge | $75.00 |
| 07/12/2001 | Pacer Service Center - Legal Research 2001 Second Qtr | $1.05 |
| 09/01/2001 | Esquire Express, Inc. - Courier/Messengers Charge  #1187 US Bankruptcy Ct | $59.30 |
| 09/17/2001 | United States District Court - Filing Fee | $37.50 |
| 11/09/2001 | Bruce A. Weihe - Parking Expense  on 09/18/01 to attend Hearing | $3.60 |
| 12/10/2001 | Bruce A. Weihe - Facsimilies at Library on 11/07/01 | $10.00 |
| 05/01/2002 | West Group Payment Center - Legal Research  04/02 | $86.48 |
| 05/14/2002 | Burke Investigative, Inc. - Process Service  #0514-05-2002 Miami Air International, Inc. | $15.00 |
| 05/24/2002 | Magic Graphics, Inc. - Copies | $24.33 |
| 06/01/2002 | American Express - Meals on 05/02/02 | $61.25 |
| 07/23/2003 | Charles Williams - Witness fee | $56.79 |
| 07/23/2003 | Juan Morales - Witness fee | $43.29 |
| 07/23/2003 | Ed Cook - Witness fee | $45.84 |
| 07/23/2003 | Brian Steele - Witness fee | $62.63 |
| 07/23/2003 | Dave Bassett - Witness fee | $45.11 |
| 07/23/2003 | Derry Huff - Witness fee | $47.30 |

November 25, 2003
Client:        081975
Matter:        000002
Invoice #:     1024039

Page:          46

## DISBURSEMENTS

| Date | Description of Disbursements | Amount |
|------|------------------------------|--------|
| 07/24/2003 | Esquire Express, Inc. - Courier/Messengers Charge  #25793 To/From Broward District Court | $16.00 |
| 07/31/2003 | LexisNexis - Legal Research   July | $833.83 |
| 07/31/2003 | West Group Payment Center - Legal Research   July 03 | $47.91 |
| 07/31/2003 | JD Gilbert & Co., C.P.A. - Services Rendered  #00117166 7/3-7/30/03 | $2,482.50 |
| 08/04/2003 | Burke Investigative, Inc. - Process Service  #2003005513 Charles Williams | $15.00 |
| 08/08/2003 | Choice Point - Legal Research July | $121.00 |
| 08/08/2003 | Amerijet International Inc. - Records Subpoena Fee | $41.00 |
| 08/08/2003 | Burke Investigative, Inc. - Process Service  #2003005512 Ed Cook | $15.00 |
| 08/12/2003 | Burke Investigative, Inc. - Process Service  #2003005890 Brian Steele | $45.00 |
| 08/12/2003 | Burke Investigative, Inc. - Process Service  #2003005932 Amerijet International | $40.00 |
| 08/14/2003 | Burke Investigative, Inc. - Process Service  #2003005891 Derry Huff | $45.00 |
| 08/20/2003 | Burke Investigative, Inc. - Process Service  #2003005511 Juan Morales | $15.00 |
| 08/22/2003 | Esquire Express, Inc. - Courier/Messengers Charge  #26724 Broward Federal | $26.00 |
| 08/22/2003 | Esquire Express, Inc. - Courier/Messengers Charge  #26724 Broward Federal | $11.00 |
| 09/09/2003 | JD Gilbert & Co., C.P.A. - Services Rendered   for 7/30/03 Inv. #00117657 | $620.52 |
| 09/11/2003 | Pagan Aviation Consulting - Services Rendered  #M1 Pre-Deposition Preparation Meeting | $250.00 |
| 09/12/2003 | Video Court Reporting, Inc. - Court Reporter Charge  #7226 Depo of Patrick Scott Major | $110.00 |
| 09/12/2003 | Friedman, Lombardi & Olson - Court Reporter Charge  #107223 Jose Pagan | $339.20 |
| 09/12/2003 | Friedman, Lombardi & Olson - Court Reporter Charge   #107226 Patrick Major | $286.00 |
| 09/18/2003 | Friedman, Lombardi & Olson - Litigation Copies #107280 | $128.40 |
| 09/29/2003 | Postage Charge | $114.52 |
| 09/30/2003 | Valerie Shea - Parking Expense   9/5/03 | $20.00 |
| 10/01/2003 | West Group Payment Center - Legal Research   Sept. 03 | $317.15 |
| 10/06/2003 | Esquire Express, Inc. - Courier/Messengers Charge  #28172 US District Court | $65.00 |
| 10/08/2003 | Pacer Service Center - Legal Research 09/03 | $2.73 |
| 10/16/2003 | Burke Investigative, Inc. - Process Service  #2003005889 Dave Bassett | $40.00 |
| 10/17/2003 | VS  American Express - Meals w/ Jose Pagan 9/6/03 | $29.23 |

November 25, 2003
Client:          081975
Matter:          000002
Invoice #:       1024039

Page:            47

## DISBURSEMENTS

| Date | Description of Disbursements | Amount |
|------|----------------------------|--------|
| 10/22/2003 | ChoicePoint - Legal Research | $23.00 |
| 10/27/2003 | Corp. Rep of Amerijet International, Inc. - Witness fee | $60.00 |
| 10/30/2003 | Burke Investigative, Inc. - Process Service   #2003008047 Corp Rep | $40.00 |
| 11/04/2003 | Juan Morales - Issue Subpoena for witness fee | $35.00 |
| 11/06/2003 | Federal Express Corporation - Courier/Messengers Charge #4-948-67577 Jose Pagan | $10.56 |
| 11/06/2003 | Federal Express Corporation - Courier/Messengers Charge #4-948-67577 James Gilbert | $9.16 |
| 11/07/2003 | Burke Investigative, Inc. - Process Service   #2003008326 Juan Morales | $45.00 |
| 11/07/2003 | Long Distance Telephone Charge | $56.21 |
| 11/13/2003 | IKON Document Services - Litigation Copies   #FTL041291 | $68.90 |
| 11/19/2003 | MRB  American Express - Meals   9/9/03 | $31.94 |
| 11/19/2003 | MRB  American Express - Meals   10/02/03 | $31.39 |
| 11/19/2003 | MRB  American Express - Meals   9/25/03 | $28.34 |
| 11/20/2003 | Telecopy Charge (435 @   $1.255) | $547.00 |
| 11/24/2003 | Photocopy Charge (19063 @ $0.25) | $4,765.75 |
| | Total Disbursements | $41,942.94 |

Total Services          $294,783.50
Total Disbursements     $41,942.94



EXHIBIT B

# CONTINGENT FEE EMPLOYMENT AGREEMENT

The undersigned, PATRICK SCOTT MAJOR ("the client") hereby retains and employs HEINRICH GORDON HARGROVE WEIHE & JAMES ("Heinrich Gordon") as his attorney to represent him in his claim for damages against AMERIJET INTERNATIONAL, INC., and various individuals resulting from his termination and various acts committed in the course of his employment with AMERIJET.

     1.     The undersigned client has, before signing this Agreement, received and read the "STATEMENT OF CLIENT'S RIGHTS" and understands each of the rights set forth therein. The client has signed the Statement and will maintain a signed copy to refer to while being represented by Heinrich Gordon.

     2.     This Agreement may be cancelled by written notification to Heinrich Gordon at any time within three business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to Heinrich Gordon for the work performed during that time. If Heinrich Gordon has advanced funds to others in representation of the undersigned, Heinrich Gordon is entitled to be reimbursed for such amounts as it has reasonably advanced on behalf of the client.

     3.     The client agrees to pay costs of investigation, costs attendant upon filing suit and litigation, and other related expenses incurred during the course of representation. Costs will include copying charges, long distance calls, facsimile charges, and express mail charges. Heinrich Gordon will provide the client with a monthly costs itemization. Any objections to stated costs must be made within fifteen days of receipt of a statement.

4.    As compensation for Heinrich Gordon's services, the undersigned agrees to pay from the gross proceeds of any recovery, whether by settlement, verdict or judgment, the following fees:

a.    through the time of filing an answer or the demand for appointment of arbitrators:

1.    33-1/3% of any recovery, up to $1 million;
2.    25% of any recovery, between $1 million and $2 million;
3.    17% of any recovery, in excess of $2 million;

b.    from the date of filing an answer or the demand for appointment of arbitrators through the entry of judgment:

1.    40% of any recovery, up to $1 million;
2.    30% of any recovery, between $1 million and $2 million;
3.    20% of any recovery, in excess of $2 million;

c.    If all defendants admit liability at the time of filing their initial answers and request a trial only on damages:

1.    33-1/3% of any recovery, up to $1 million;
2.    20% of any recovery, between $1 and $2 million;
3.    15% of any recovery, in excess of $2 million;

d.    An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment, should Heinrich Gordon agree to pursue same;

e.    If Heinrich Gordon are engaged to pursue a fee and/or cost award from another party, the client will also be indebted to Heinrich Gordon for work to obtain such an award, both as to entitlement and amount, and such work is expressly agreed between us to be in the client's best interest and benefit.

5.    The parties understand that some claims may be made pursuant to statutes that provide for a reasonable attorneys' fees shall be paid by the losing party to the prevailing party.

The parties acknowledge that, if this matter were being billed on an hourly basis, the following structure would be reasonable: partners $250 per hour; associates $150 per hour; paralegals $90 per hour. The parties agree that, in the event of any judicial award of fees in an amount in excess of the percentages set forth in paragraph 4, the client shall be relieved of any obligation to pay fees as the judicial award shall supersede paragraph 4. In the event fees are judicially awarded in an amount less than the percentages provided for in paragraph 4, the fees awarded by the court shall be treated as a set-off and the client shall be obligated to pay the difference. In sum, the agreement is that Heinrich Gordon shall be compensated by the _greater_ of the percentages in paragraph 4 or any judicial award of fees.

6.      It is understood and agreed that this employment is upon a contingent fee basis and if no recovery is made, the client will not be indebted to Heinrich Gordon for any sum whatsoever as attorneys' fees. If, after reasonable investigation of such claim(s), it is determined that it is not feasible to prosecute them, upon notification to the client of such fact, Heinrich Gordon may withdraw from representation under this Agreement.

This Contingent Fee Employment Agreement is further amplified and based upon the Statement of Client's Rights attached hereto, which provisions are incorporated herein and become and are a part of this Contingent Fee Employment Agreement.

DATED this ___/ 7___ day of ___Sept___, 1999.

_____
PATRICK SCOTT MAJOR

The above employment is hereby accepted upon the terms stated herein.

DATE this ___13ᵗʰ___ day of ___September___, 1999.

HEINRICH GORDON HARGROVE WEIHE & JAMES

By ___Valerie Shea___

VALERIE SHEA, ESQ.

## STATEMENT OF CLIENT'S RIGHTS

Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:

1.      There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.

2.      Any contingent fee contract must be in writing and you have three (3) business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within three (3) business days of signing the contract. If you withdraw from the contract within the first three (3) business days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the three-day period, you may have to pay a fee for work the lawyer has done.

3.      Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about his or her actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.

4.      Before signing a contingent fee contract with you, a lawyer must advise you whether he or she intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers he or she should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least one lawyer from each law firm must sign the contingent fee contract.

5.      If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract which includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.

6.    You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case.   If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent.  Your lawyer should give a reasonable estimate about future necessary costs.  If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf.  You also have the right to decide after consulting with your lawyer, how much money is to be spent to prepare a case.  If you pay the expenses, you have the right to decide how much to spend.  Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.

7.    You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case.   Those adverse consequences might include money which you might have to pay to your lawyer for costs and liability you might have for attorney's fees to the other side.

8.    You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money.  The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee.  Until you approve the closing statement you need not pay any money to anyone, including your lawyer.  You also have the right to have every lawyer or law firm working on your case sign this closing statement.

9.    You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of you lawyer's ability.

10.    You, the client, have the right to make the final decision regarding settlement of a case.  Your lawyer must notify you of all offers of settlement before and after the trial.  Offers during the trial must be immediately communicated and you should consult with our lawyer regarding whether to accept a settlement.  However, you must make the final decision to accept or reject a settlement.

11.    If at any time, you, the client, believe that your lawyer has charged an excessive or illegal fee, you, the client, have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida.  For information on how to reach The Florida Bar, call (904) 561-5600, or contact the local bar association.  Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement.  Usually fee disputes must be handled in a separate lawsuit.

Dated:_____ 0 9/13/95 _____          _____

F:\LAW\VS\werthfee.agm

CONTINGENT FEE EMPLOYMENT AGREEMENT                                    PAGE 6 OF 6

EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

PATRICK SCOTT MAJOR,                    :          CASE NO.  00-6070-Zloch
                                                   Magistrate Judge Lurana S. Snow
          Plaintiff,                    :

vs.                                     :

AMERIJET INTERNATIONAL, INC.,           :

          Defendant.                    :

_____/

## DECLARATION OF VALERIE SHEA

1.       I am an attorney, licensed to practice law in the State of Florida since 1984.  I am

a shareholder in the firm of Gordon Hargrove & James, P.A. (formerly known as Heinrich

Gordon Hargrove Weihe & James, P.A.) and have been since 1995.  Previously, I was a partner

at Conrad, Scherer & James.  Prior to that, I was an associate at Conrad, Scherer & James and a

Miami firm then known as Greer, Homer, Cope & Bonner.

2.       Attached to this declaration as tabs 1, 2, and 3 are very abbreviated professional

resumes of the shareholders who provided professional services in this case:  Mark Boyd, Bruce

Weihe, and me.  Each of us are AV-rated and experienced litigators.  I specialize in employment

law and have for ten years.  Mr. Boyd has vast trial experience on the entire range of civil

matters, including employment law, while Mr. Weihe's expertise in bankruptcy involved him in

this matter.

3.       The associates who worked on this matter made only modest contributions.  There

was little about this case that could be delegated, for several reasons.  There was technical

subject matter involved that involved a steep learning curve.  As the case was removed to federal

court, it became very writing-intensive. Since I was an appellate lawyer for the first four years of my career I could most efficiently produce the extensive memoranda which became necessary over the life of the case. The extent of my involvement was also dictated by the litigation style employed by Amerijet, which involved ongoing motion practice. As the time records reflect, there were personnel changes over the four years relating to the assigned paralegal and associates who participated. I accepted the case; I was the responsible attorney; and I personally handled it in every significant respect. Mr. Boyd became involved for purposes of trial. With few exceptions, however, only one lawyer handled each pretrial matter. When Amerijet filed under Chapter 11 in 2001, Mr. Weihe became involved to protect our client's interest in the proceeding.

4.     The number of hours spent on this matter was necessary to properly litigate it. As the time passed with no prospect of imminent resolution, I was very motivated to be certain that my efforts were justifiable on a cost-benefits analysis.

5.     With respect to the Johnson factors, I can attest that this case was uniquely difficult, challenging, and financially risky. Mr. Major and another pilot, Mr. Luis Michaels, were fired by Amerijet, under similar circumstances, within two weeks of each other. I undertook representation of each and filed suits within several months of each other. In the Michaels case, Amerijet was represented by different counsel and the issue was more straightforward. The case proceeded smoothly, was tried to verdict, fees were resolved by stipulation, and it was closed long ago. By contrast, this case underwent removal, motions to dismiss, extensive discovery and aggressive motion practice that continued even after the jury was empanelled. It suffered an unfortunate two-year hiatus due to Judge Wilkie Ferguson's personal circumstances. It was extremely labor-intensive and unquestionably inhibited my

ability to accept other cases. As time passed, Amerijet filed under Chapter 11, jeopardizing any future recovery. Even more frustrating was knowing that expenditures on defense were eroding available insurance proceeds. Despite concerns as to collectibility, I continued representing Mr. Major without compromising my ethical obligation to diligently represent him. There are very few reported Whistleblower Act cases which are litigated to verdict; many potential stumbling blocks arise and many were raised in this case. Due to the difficulties of this case in every dimension, it required all of the skills and abilities brought to bear on it. The time I incurred was necessary to advance the case.

6.    Mr. Major was a stranger to me and my firm when we agreed to represent him. Having just been fired, he was unable to contribute to the case in any way, and the firm agreed to contingent representation.

7.    The "reasonable rates" I included in the agreement in 1999 were reasonable for my then-existing credentials and experience. With the passage of time, however, they became dramatically out of touch with firm rates and in particular the rates charged by Mr. Boyd, Mr. Weihe, and me. The increased rates to which I changed two years ago reflect what fee-paying clients routinely pay for services of shareholders of my firm. (Some clients pay more.) The amount of $300 per hour is the rate at which Mr. Boyd, Mr. Weihe and I are willing to work for fee-paying clients, and the amount which such clients are willing to pay. Likewise, the associate rate of $175 and the paralegal rate of $110 are in keeping with rates presently charged to standing firm clients.

I declare under penalty of perjury the foregoing is true and correct.

_____
Valerie Shea



**PRACTICE AREAS:**
Professional Liability
Employment Law
General Civil Litigation

**HONORS:**
"AV" rated by Martindale-Hubbell

**STATE BAR MEMBERSHIPS:**
Florida, 1984
California, 1997

500 East Broward Boulevard, Suite 1000 • Fort Lauderdale, Florida 33394
Telephone 954-527-2800 • Telecopier 954-524-9481 • eshea@ghjc.com

Ms. Shea represents a wide range of corporate clients and individuals in professional liability, employment matters, and commercial litigation.

Ms. Shea attended Wheeling College from 1974 to 1976 and received her Bachelor of Arts degree from Florida Atlantic University, cum laude, in 1977. She received her Juris Doctor degree from Nova Southeastern University, summa cum laude, in 1984. She was first in her class; recipient of ten Amjur Book Awards; Editor-in-Chief of the Nova Law Journal and winner of the F. Lee Bailey National Moot Court Competition.

Ms. Shea is a member of several invitation-only defense organizations, including the Federation of Defense and Corporate Counsel, the International Association of Defense Counsel, and the Association of Defense Trial Attorneys. She is the immediate past President of the Florida Defense Lawyers Association. She serves as the Florida representative to the Board of the Defense Research Institute. She has served in many positions of bar leadership, including as chair of a grievance committee. She has spoken and authored articles on trial practice and employment law matters. She recently became certified by the Florida Bar as a trainer in diversity awareness.

Ms. Shea was born in Merion, Pennsylvania, on September 19, 1955. She is a member of the U.S. District Court, Southern and Middle Districts of Florida (including the Southern District Trial Bar); and the U.S. Court of Appeals, Eleventh and Eighth Circuits.



**PRACTICE AREAS:**
General Civil Litigation
Insurance Litigation
Employment Law

"AV" rated by Martindale-Hubbell

**STATE BAR MEMBERSHIP:**
Florida, 1976

500 East Broward Boulevard, Suite 1000 • Fort Lauderdale, Florida 33394
Telephone 954-527-2800 • Telecopier 954-524-9481 • mboyd@ghj.com

Mr. Boyd has tried over 225 cases to verdict during his 27-year career. Mr. Boyd has been involved in all aspects of trial practice, primarily representing major insurance carriers and self-insured corporations with a variety of institutional defense matters. He also has considerable trial experience in employment discrimination and civil rights litigation, having actually tried these cases to verdict in jurisdictions throughout the State of Florida. Most notably, Mr. Boyd successfully defended the City of Fort Lauderdale and its Commissioners in a voting rights action, which is one of the few cases throughout the United States where the Defendant has prevailed. Mr. Boyd frequently presents continuing legal education in the areas of trial practice and employment law.

Mr. Boyd is admitted to practice before the United States Supreme Court, the Supreme Court of the State of Florida, the United States District Court, Middle and Southern Districts of Florida (including the trial bar for the Southern District), as well as the United States Court of Appeals for the Fifth and Eleventh Circuits. In addition to the Florida Bar, Mr. Boyd is a member of the American Bar Association, the Broward County Bar Association, and the Florida Defense Lawyers association.

Mr. Boyd was born in Alliance, Ohio on December 29, 1950, and was admitted to the Florida Bar in 1976. He received his Bachelor of Arts degree, cum laude, from the University of Miami in 1973 and his Juris Doctor degree from the University of Toledo College of Law in 1976.

# BRUCE A. WEIHE



**PRACTICE AREAS:**
General Commercial Litigation
Creditor's Rights
Business Torts
Land Use and Zoning
Agency Proceedings



"AV" rated by Martindale-
Hubbell

**STATE BAR
MEMBERSHIP:**
Florida, 1971

**500 East Broward Boulevard, Suite 1000 -- Fort Lauderdale, Florida 33394
Telephone: 954-527-2800 -- Telecopier: 954-524-9481 -- bweihe@ghj.com**

Mr. Weihe has a broad commercial and corporate practice, representing clients in the documentation as well as enforcement of corporate agreements and secured transactions under the Uniform Commercial Code.

Mr. Weihe served as Corporate Secretary, Senior Vice President, and in-house Legal Counsel for Barnett Bank of South Florida, N.A. from 1981 - 1986. Admitted to the Bankruptcy Bar for the Bankruptcy Court of the Southern District of Florida, Mr. Weihe is a director of the Broward County Bar Association, for which he has served as Chairman of the Corporate, Business, and Banking Law section, and was appointed in June 2001 to the Florida Bar Professional Ethics Committee. Mr. Weihe has lectured on lender liability, creditors' rights, and UCC matters, and has served the City of Fort Lauderdale as Chairman of its Planning & Zoning Board and as Chairman of its Community Services Board. A member of the Florida Bar, the trial bar of the United States District Court for the Southern District of Florida, and the American Bar Association, Mr. Weihe served for two years as an Honors Attorney with the Federal Deposit Insurance Corporation at its Washington office, and is retained by several financial institutions and corporate clients as special counsel for documentation, litigation, and regulatory matters.

Mr. Weihe was born in Oak Park, Illinois, on January 25, 1946, and was admitted to the Florida Bar in 1971, following graduation from Davidson College (Bachelor of Arts Degree, 1968) and the University of Florida Law School (Juris Doctor Degree, 1971) where he was Executive Editor of the University of Florida Law Review.

EXHIBIT D

## DECLARATION OF HENRY LATIMER

1. I am an attorney licensed to practice law in the state of Florida. I am a shareholder in the law firm of Greenberg Traurig in Fort Lauderdale.

2. Attached to this declaration, as Exhibit 1, is a brief synopsis of my professional experience and my credentials in the area of litigation and, specifically, employment law.

3. I have been requested by Valerie Shea to provide a declaration as to my knowledge of the area market rate for labor and employment lawyers, of skill and experience comparable to her firm's, working on plaintiffs' cases. Ms. Shea has informed me that she and her partners have requested fees in the amount of $300 per hour for partners; $175 for associates; and $110 for paralegals.

4. I am familiar with Ms. Shea's skills, experience and qualifications as a trial lawyer and employment lawyer in the South Florida area. I am likewise familiar with Mr. Boyd and Mr. Weihe from cases and community involvement. I have litigated against Ms. Shea and have professionally associated with her on voluntary bar association projects. I know Ms. Shea and her partners to be highly skilled and ethical attorneys.

5. The rates proposed by Ms. Shea's fees petition are very conservative in light of the market rates routinely charged at present by Fort Lauderdale firms given her experience as a trial lawyer as well as that of attorneys Boyd and Weihe.

6. Accordingly, I am of the opinion that $300 per hour is a very reasonable rate for Ms. Shea, Mr. Boyd and Mr. Weihe. I am further of the opinion that the rate

proposed for paralegal assistants is in the reasonable range of rates charged for paralegals with less that 10 years experience. Rates are higher for paralegals with more than 10 years of experience.

7. I have not been asked to provide an opinion as to the number of hours reasonably expended in the case on which these attorneys are seeking fees. However, in light of the fact that the case is over three years old, generated 266 docket entries and was tried to verdict, the number of hours expended seems to me to reasonably relate to the scope and duration of the case.

I declare under penalty of perjury the foregoing is true and correct.

HENRY LATIMER

11-25-03



## Biographies



GREENBERG
ATTORNEYS AT LAW
TRAURIG



## Henry Latimer

Shareholder
Litigation

latimerh@gtlaw.com
www.gtlaw.com

Greenberg Traurig, P.A.
Fort Lauderdale Office
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, FL 33301
Facsimile: (954) 765-1477
Telephone: (954) 768-8215

Henry Latimer, former Circuit Court Judge for the 17th Judicial Circuit in and for Broward County, Florida now concentrates his practice in labor and employment law and commercial litigation. During his last year on the bench, Henry was rated "most qualified" judge in the Circuit. Prior to joining the firm, he served as partner-in-charge of a prominent national law firm with offices in Ft. Lauderdale, Florida. Since returning to private practice, in addition to trying complex cases, Henry is often called by lawyers and judges to serve as special master in complex litigation matters. He served on the commission that wrote and implemented arbitration and mediation rules and procedures for the State of Florida. Henry's services are in demand by litigants seeking to resolve their differences through arbitration or mediation.

Before attending law school, Henry worked for the U.S. Department of Labor, Wage and Hour Division as a Compliance Officer. In addition to having a very active practice in trying complex commercial cases, he presently serves as special counsel to individuals, municipalities, and corporations litigating civil rights, wrongful discharge, sexual harassment, age discrimination and legal malpractice actions. An accomplished trial attorney, Henry is frequently called to testify as an expert witness in commercial, civil and labor-related litigation matters.

Henry is a Past President of the Broward County Bar Association and holds a long and distinguished record of service in local, state and federal bar associations and local community organizations.

### Areas of Experience

- Labor and employment law
- Complex commercial litigation
- Land use litigation
- Health care litigation
- Professional malpractice
- Alternative Dispute Resolution

- o Mediation
- o Special Master
- o Arbitration

## Professional and Community Involvement

- The Florida Bar
  - o Board of Governors
  - o Former Chairman, Rules of Civil Procedure Committee
  - o Member, Supreme Court's Mediation and Arbitration Rules Committee, established 1987-88
  - o Former Chairman, Committee on Equal Opportunities in the Profession
- Member, American College of Trial Lawyers
- Member, International Association of Defense Counsel
- National Bar Association
  - o Former Chairman, Judicial Counsel, Florida Chapter, 1979-83
  - o Former President, Virgil Hawkins Florida Chapter, 1977-79
- Broward County Bar Association
  - o Former President
  - o Former Executive Board Member
  - o Former Chairman, Medical-Legal Committee
  - o Former Trial Lawyer's Section Executive Board
  - o Vice-Chairman, Continuing Legal Education Committee, 1980-82
- American Arbitration Association
  - o Current Panel Member, Complex Litigation Division; and Labor/Employment
- The Judicate (Arbitration and Mediation)
  - o Current Panel Member
- Charter Member, Founder and Director, Urban League of Broward County
- Member, Kappa Alpha Psi Fraternity
- Florida Supreme Court
  - o Member, Racial & Ethnic Bias Study Commission
  - o Member, Bench-Bar Implementation Commission
  - o Member, Commission on Professionalism
  - o Charter Member, Commission to study, write and implement rules for mediation and arbitration in Florida
- United States Senate
  - o Member, Civil Justice Advisory Group (appointed by the Senate Judiciary Committee)
- Member, University of Miami Board of Trustees

## Awards and Recognition

- Listed, The Best Lawyers in America - Commercial Litigation and Labor/Employment Litigation
- Recipient, Fourth Annual Lynn Futch Professionalism in Practice

Award, June 2002
- Recipient, award in recognition of a "Pioneer" role in the State of Florida, presented by The African-American Judges of Florida, September 2001
- Recipient, Lawyers in Leadership Award, presented by the University of Miami School of Law's Center for Ethics and Public Service, October 2001
- Recipient, Father of the Year Award, South Florida Juvenile Diabetes Foundation, 1999-2000
- Recipient, Margaret Roach Humanitarian Award, Urban League of Ft. Lauderdale, 1999

## Military Background

- United States Marine Corps - Non-Commissioned Officer
  - Service in Paris Island, SC, Camp Lejuene, NC, Mediterranean Countries/Territories of Turkey, Greece, Gibraltar, Crete, Lebanon and North Africa

## Education

- J.D., *cum laude*, University of Miami School of Law
- M.A., with honors, Supervision and Administration, Florida Atlantic University
- B.A., with honors, Florida A&M University

## Admitted to Practice

- Florida
- Massachusetts

## Related Links

- Greenberg Traurig Attorney Henry Latimer Recognized by the African-American Judges of Florida as Judicial Pioneer
  Press Release, October 30, 2001
- Oh, Henry - The in-demand Henry Latimer long ago defeated societal biases that early in his legal career ostracized him 🔗
  *law.com*, May 25, 2001
- Henry Latimer leaves Eckert for Greenberg 🔗
  *law.com*, March 28, 2001
- Litigator Henry Latimer Joins Greenberg Traurig LLP
  Press Release, March 26, 2001

---

The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.

EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 98-0554-Civ-Moreno/Dubé

CARLO V. D'ARAGONA,

    Plaintiff,

vs.

BELLSOUTH COMMUNICATIONS
SYSTEMS, INC., a Georgia corporation,

    Defendant.

_____/

### Plaintiff's Motion for Costs, Including Attorneys' Fees and Litigation Expenses, and Supporting Memorandum of Law

Plaintiff, Carlo D'Aragona, pursuant to 42 U.S.C. § 2000e-5(k), moves for an award of $81,915.01 to $85,925.00 in attorneys' fees (depending on whether the court uses the current-rate method or prejudgment interest to compensate for delay in payment), and $12,888.85 in costs and litigation expenses.[1]  Pursuant to Local Rule 7.1 and 7.3, he submits the following memorandum of law in support of his Motion for Costs, Including Attorneys' Fees and Litigation Expenses.

---

[1]This motion and the supporting paper cover the time and expenses through the first three quarters of 2000.  A supplemental motion covering the time and expenses for the fourth quarter (including the time and expenses for the fees-and-expenses motion) will be submitted within the week.



## Introduction

This is a fees-and-expenses motion in a retaliation action brought pursuant to the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. As the prevailing party, D'Aragona is presumptively entitled to fees. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); Duncan v. Poythress, 777 F.2d 1508 (11th Cir. 1985) (en banc) ("prevailing plaintiffs' attorney(s) [are] presumptively entitled to fees"; Dowdell v. City of Apopka, 698 F.2d 1181, 1189 (11th Cir. 1983), including for litigating the issues of attorney's fees. Johnson v. University College, 706 F.2d 1205, 1207 (11th Cir.), cert. denied, 464 U.S. 994  (1983).

Thus, the issues are:

*One*, what is an appropriate "lodestar"  award of fees based on those factors set forth in Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292 (11th Cir. 1988)(en banc)?

*Two*, how is plaintiff's counsel to be compensated for delay in payment, which circuit precedent requires?

*Three*, for what litigation expenses should he recover?

## The applicable legal standards

The Eleventh Circuit's current standards for measuring attorney's fees are set out in Norman, in which the court surveyed the fee-award jurisprudence of both the Supreme Court and the Eleventh Circuit, 836 F.2d at 1298-1299, to

reiterate that a fee award should be based upon a multiplication of a reasonable hourly rate ("the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation"), id. at 1299, by the number of "reasonable hours" billed, id. at 1301, adjusting the resulting "lodestar" for the result obtained, the quality of representation and delay in payment. Id. at 1302. Although the balancing effect that previously was prescribed by Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974),[2] has been replaced by the "lodestar" method, the 12 Johnson factors[3] still "might be considered in terms of their influence on the lodestar amount." Norman, 836 F.2d at 1299.

─────────────────

[2]   Decisions of the former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit.  Bonner v. City of Pritchard, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc).

[3]   The twelve Johnson factors, as summarized in Dowdell, supra are:

a.   the time and labor required,
b.   the novelty and difficulty of the questions,
c.   the skill requisite to perform the legal service properly,
d.   the preclusion of other employment by the attorney due to the acceptance of the case,
e.   the customary fee,
f.   whether the fee is fixed or contingent,
g.   time limitations imposed by the client or the circumstances,
h.   the amount involved and the results obtained,
i.   the experience, reputation and ability of the attorneys,
j.   the "undesirability" of the case,
k.   the nature and length of the professional relationship with the client, and
l.   awards in similar cases.

698 F.2d at 1187, n. 8.

## 1.    Establishing the reasonable hourly rate

"Common sense dictates that the 'going rate' in the community is in actuality the most critical factor in determining a reasonable fee." Martin v. University of South Alabama, 911 F.2d 604, 610 (11th Cir. 1990).

As stated in Norman:

> [T]he applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. NAACP v. City of Evergreen, 812 F.2d [1332,] 1338 [(11th Cir. 1987)]. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. Blum[ v. Stenson], 461 U.S. [866,] at 896, n. 11, 104 S.Ct. [1541,] at 1547 n. 11. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. See Hensley, 461 U.S. at 439 n. 15, 103 S.Ct. at 1167 n. 15. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence or course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

836 F.2d at 1299.

Central to the determination of a lawyer's worth is an assessment of the lawyer's skill. This criterion is addressed to the trial judge's assessment of the attorney based on his   observation of "the attorney's work product, his preparation, and general ability before the court." Johnson,  488 F.2d at 718. In making this assessment, the judge is to apply his expertise gained from his career as both a lawyer and a judge.  Id.  This criterion asks, initially, whether plaintiff's counsel was competent and experienced to do the job assigned and,

thereby, whether he is deserving of the going commercial rate for lawyers engaged in litigation in federal court.

As it is for a jury to remember testimony presented was, it is for this court to remember the performance of counsel.

> Throughout, and particularly if litigation is begun, the word "skill" incorporates the notions of organization and efficiency. An attorney of great skill organizes his thoughts, his work, and his presentation in a logical and orderly way without lost motion or false starts so that each move builds upon the last to the achievement of the goal. Organization means that discovery devices and motions are thought out and not utilized in a random or erratic way or for the mere purpose of going through established routines. Efficiency means doing well just what ought to be done and doing it in a minimum of time.

> The underpinning for these facts of legal skill is knowledge, knowledge of trial practice and knowledge of the substantive law. A lawyer who has to educate himself generally in either or both of these two areas may ultimately be as effective as a specialist, but he has no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case.

> The final attribute of legal skill is perhaps the one the general public thinks of first — persuasiveness. Some clients prevail only because of the compelling merit of their case and in spite of their attorney's efforts to communicate a position. In other cases, usually close ones, the better advocate may actually sway the outcome on occasion. In the usual case, both the merits and the advocacy control the outcome. The measure of good advocacy is that the client's best positions are advanced clearly, crisply and compellingly.

Norman, 836 F.2d at 1300-1301.

Specialization, and the attendant economies of time that result, is a ground for awarding an hourly rate at the high end of the spectrum. For as the court observed in White v. State of Alabama, Case No. 94-T-94-N, 1966 U.S.

Dist. Lexis 9347 (N.D. Ala. June 20, 1996), a voting rights case in which the court found that the plaintiff's attorneys' "expertise enabled them to prosecute this case very efficiently,"

> [A]ttorneys with less knowledge and experience would have taken many more hours to pursue this litigation. Therefore, Agricola's and Jordan's "efficiency justifies an hourly rate at the high end of the customary range." Gay Lesbian Bisexual Alliance v. Sessions, No. 93-T-1178-N, 843 F. Supp. 1424, (M.D. Ala. June 6, 1996); see also Coleman v. Cannon Oil Company, 911 F. Supp. 510, 515 (M.D. Ala. 1995) ("A lawyer already skilled in the area could demand a higher rate because he or she would be more knowledgeable and could work more efficiently"); Dillard v. City of Elba, 863 F. Supp. 1550, 1553 (M.D. Ala. 1993) (experienced attorneys prosecuted case in fewer hours than inexperienced attorneys would have); Curry v. Contract Fabricators Inc. Profit Sharing Plan, 744 F. Supp. 1061, 1071 (M.D. Ala. 1988) (attorney's "inexperience should be reflected in [lower] ... hourly rate"), aff'd, 891 F.2d 842 (11th Cir. 1990).

Id., at Lexis *14-15.

## 2.    Assessing a reasonable number of hours

In determining a reasonable number of hours to assign to a case, a fee applicant, and the court, should attempt to arrive at the number of hours that a lawyer would "bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis" — and excluding, in an exercise of "sound billing judgment," all other time. Norman, 836 F.2d at 1301.

## 3.    Adjusting the lodestar

Having determined a lodestar by multiplying the reasonable hourly fee by a reasonable number of hours, the district court next may adjust the

lodestar, upward or downward, for degree of success, and for delay in payment. In considering success, as in counting hours: "If the result was excellent, then the court should compensate for all hours reasonably expended. [Citation omitted.]" Norman, 836 F.2d at 1302.

> Delay mandates an upward adjustment.
>
> [S]uch delay obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one. As a result, district courts should take into account inflation and interest, perhaps by adjusting the contingency factor to reflect delay, not just contingency, or perhaps by compensating at current, not historical, rates....We do not prescribe any set method for correcting for delay in payment, but some form of correction must be undertaken.

Johnson, 706 F.2d at 1210-1211. See also Davis v. Locke, 936 F.2d 1208, 1216 (11th Cir. 1991) (affirming enhancement that included delay as a factor); Walters v. City of Atlanta, 803 F.2d 1135, 1151 (11th Cir. 1986) (observing, in remanding for reconsideration of whether fee should be enhanced for excellence-of-result, that the district court had enhanced 10 per cent for delay).

Indeed, the Supreme Court noted in Missouri v. Jenkins, 491 U.S. 274, 282 (1989) that "[i]n setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."

One panel of this court approved a district court's use of counsel's historical rates, to which it then applied the IRS prime rate, producing a result that the court said "represents the time value of money over the period of the litigation." Lattimore v. Oman Const., 868 F.2d 437, 438 n. 2 (11th Cir. 1989), quoting Gaines v. Dougherty County Board of Education, 775 F.2d 1565, 1572 n. 14 (11th Cir.1985). That method has been accepted by other circuits as well, see, e.g., In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 109 F.3d 602 (9th Cir. 1997). Using that formula would be consistent with the calculation of back pay awards under Title VII (as well as under the other federal employment statutes, see, e.g., Kendrick v. Jefferson County Board of Education, 13 F.3d 1510, 1513 (11th Cir. 1994) (applying quarterly-earnings formula to wage losses under 42 U.S.C. § 1983 and observing that "consistency is valuable in itself, making the law more simple, understandable, and predictable").)

### 4.    Treating litigation expenses

Both costs traditionally taxable pursuant to 28 U.S.C. § 1920 and litigation expenses are recoverable by a plaintiff suing under Title VII pursuant to the more liberal approach that the courts have adopted to civil rights cases. Dowdell, supra. Indeed,

> [W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988. As is true in other

applications of section 1988, the standard of reasonableness is to be given a liberal interpretation.

Id., 698 F.2d at 1192 (holding travel, telephone and postage reimbursable, in addition to traditional costs such as filing fees, etc.)  See also Cullens v. Georgia Dept. of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994) (long distance telephone charges and travel are appropriate expenses); Johnson, 706 F.2d at 1209 (computerized research costs may be recoverable).  Thus, although expert witness fees are not generally allowable pursuant to 28 U.S.C. § 1920, see, Gray v. Phillips Petroleum Co., 971 F.2d 591 (10th Cir. 1992) (expert fees not recoverable in action brought pursuant to Age Discrimination in Employment Act because they are not provided for in 28 U.S.C. § 1920), D'Aragona is entitled under Title VII to having the defendant pay for his expert accountant, whose deposition testimony was submitted to the Court because Title VII's attorney-fee provisions were amended by the Civil Rights Act of 1991 to include expert fees. See 42 U.S.C. § 2000e-5(k); Pub.L. 102-166, Title I, § 113(b), Nov. 21, 1991, 105 Stat. 1079.

**Application of The Law to The Facts in The Case at Bar**

**Point 1:**   **D'Aragona won his case against BellSouth**

Plaintiff Carlo D'Aragona prevailed in his jury trial against BellSouth Communications Corp. for violation of his rights under Title VII of the Civil Rights Act of 1964, as amended, obtaining $68,989 in back pay, $203,000 in compensatory damages and reinstatement.  That, without doubt, makes

D'Aragona a "prevailing party, " and thus, presumptively entitled to recover his attorney's fees.

**Point 2:   D'Aragona's lawyers are skilled and worthy of the hourly fees they seek**

D'Aragona's lead counsel is William R. Amlong, Esquire, an AV-rated, board-certified civil trial/business litigation lawyer who devotes the majority of his practice to plaintiffs' employment cases.[4] He is sought after as a lecturer both on substantive employment law issues and on the litigation of employment cases. His current hourly billing rate, effective in July 2000, is $350; for the past several years it has been $300. Working with him on the case (albeit only for an hour) was his partner (and wife) Karen Coolman Amlong, Attorney at Law, who enjoys the same Martindale-Hubbell rating, the same two board certifications and the same prominence on the Continuing Legal Education lecture circuit. His billing rate likewise has been $300 for the past several years.[5]

---

[4]His credentials are set out more fully in the Unsworn Declaration of William R. Amlong Pursuant to 28 U.S.C. § 1746 in Support of Plaintiff's Motion for Costs, Including Attorneys' Fees and Litigation Expenses that is being filed contemporaneously with this motion.

[5]     The reasonableness of the $350 hourly rate sought for the principals of Amlong & Amlong, P.A., is supported by the fee awards made to them by other divisions of this court over the past several years.   A compendium of the Amlong fee awards is appended to the Unsworn Declaration of William R. Amlong Pursuant to 28 U.S.C. § 1746 Supporting Plaintiff's Motion for Attorney's  Fees and Litigation Expenses. Those awards have been in line with other fee awards made in civil rights litigation in the Southern District in recent years. See Mallory v. Harkness, 923 F.Supp. 1546 (S.D. Fla. 1996)

Because the firm concentrates almost exclusively in representing plaintiffs in employment law cases, even the associates assigned to the case brought to it the "skill," both in the substantive law and in trial practice, to justify being paid at what the <u>University of South Alabama</u> court characterized as "the going rate."

The Court can glean what that "going rate" in the Southern District of Florida is from several sources:

**One**, it can look — although not solely — at plaintiff's counsels' credentials and William R. Amlong's under-penalty-of-perjury declarations that $350 an hour is the fee for which he has been  willing to work for fee-paying clients, and the fee at which their fee paying clients are willing to hire him.  The same declaration is evidence that $125 is what plaintiff's counsel's firm used to charge for young-lawyer associates, that $185 to $225-an-hour is what plaintiff's counsel's firm recently has charged fee-paying clients for the services of its experienced  associates, and that $60-to $100-an-hour is what it charges for paralegal personnel and law clerks.

**Two**, it can look at what Neil Chonin, Esquire, another veteran civil rights plaintiff's lawyer, declares is his hourly rate ($350) for handling similar matters to the case at bar. Mr. Chonin's affidavit is appended as Attachment 1.

_____

(allowing $275 hourly rate in 1996; collecting cases).

**Three**, it can look at the $300 per hour rate Hon. Linnea R. Johnson, United States Magistrate Judge, in 1997 recommended (and this division accepted) for both shareholders in the Amlong & Amlong, P.A., firm in the <u>Tuttle</u> case. Judge Johnson stated:

> Based upon the above and foregoing [supporting affidavits] and relying upon the Court's knowledge of prevailing community rates, this Court finds that the rates charged by the Amlong firm and (sic) in line with the rates charged in the South Florida Area by lawyers with comparable skill, experience and reputation for similar services. Accordingly and for the reasons stated incident to compensation for delay the undersigned finds the current $300 hourly rates as opposed to the $250 per hour rate charged when the case first began, the appropriate rates for the firm's principals Mr. and Ms. Amlong, and the remaining hourly rates sought of $125 for all associate time, $100 for all law clerks with J.D. degrees, and $75 for all pre-J.D. law clerks and paralegals appropriate herein.

(Emphasis added.) Magistrate Judge Johnson's Report and Recommendation is appended as Attachment 2. Additionally, the Amlongs each were awarded $300-an-hour in <u>Gupta v. Florida Board of Regents</u>, Case No. 96-6690-Civ-Moore, reversed on other grounds, 212 F.3d 571 (11th Cir. 2000). A copy of the Report and Recommendation of Hon. Stephen T. Brown, United States Magistrate Judge, and a copy of the Order of Hon. K. Michael Moore, United States District Judge, affirming the Report and Recommendation, is appended to this motion as Composite Attachment 3.

**Four**, it can look at what Susan Dolin, Attorney at Law, who has years of experience both as a professor and a practitioner of labor and employment law, in South Florida and elsewhere, opined was the "going rate" for an

experienced employment lawyer.    Ms. Dolin's declaration is appended as Attachment 4.

*Five*, it can look to fee awards that have been made in other federal civil litigation cases in Florida in recent years in the Middle and Southern Districts, and discern that plaintiffs' lawyers' fee request is in line with the amounts awarded to other lawyers of similar experience who practice in federal courts.[6]

*Six*, the court can look to its own long experience.

The Court observed counsel in a three-day trial in this action and saw the quality of his written work product. It has had the opportunity to review the schedules of hours expended in preparation for trial, in trial and in the preparation of these moving papers.

Plaintiff's counsel are  entitled to a $300-an-hour historic fee for the firm's principals, $225 for Isaias Ortiz, $185 an hour for Ms. Daley, $125 for its other associates, and $75-$100 for its paralegal personnel and law clerks, assuming

---

[6]    See, e.g. Mallory, supra at n. 3; Cuban Museum of Arts and Culture, Inc. v. City of Miami, 771 F. Supp. 1190 (S.D. Fla. 1991) (court's own experience confirms that $175 and $275 an hour were reasonable hourly rates in first-amendment case); Nexus Products Co. v. Gentle Concepts, Inc., Case No.    87-1152-Civ-T-25C,    1994 U.S. Dist. LEXIS 12791(M.D. Fla. 1994(trademark infringement) ($95 to $325);    Maltzer v. Provident Life and Accident Insurance Co., 843 F.Supp. 692 (M.D. Fla. 1993) ($300) (insurance dispute); Bodine v. Federal Kemper Life Assurance Co., 138 Bankr. 88 (M.D. Fla. 1992) ($300) (quantum meruit); First Union Brokerage Services, Inc. v. Milos, Case No. 87-6981-Civ-Spellman, 1991 U.S. Dist. Lexis 8541, at *9 (S.D. Fla. 1991) (magistrate judge's finding that partner's rates of $200 to $290 were reasonable, as were associates' rates of $95 to $190, law clerks' rates of $75 and paralegals' rates of $70 to $90).

that the court grants prejudgment interest. Otherwise, plaintiff's counsel should recover $350-an-hour for the firm's principals, $225 for Mr. Ortiz, $200 for Ms. Daley and $150-$200 for other associates to compensate counsel for delay in payment by awarding fees at current, as opposed to historic rates. See Point 4, infra.

**Point 3:    Plaintiffs' lawyers' number of hours is reasonable.**

Plaintiff's counsel has exercised both good litigation planning and "sound billing judgment" in this case. As can be seen from the schedule of hours, plaintiff's counsel did not waste time on formulaic discovery. Plaintiff's lead counsel handed-off as much work as possible to lower-billing members of his staff and relied upon them particularly for the tasks of (a) drafting, reviewing and following-up on discovery, (b) taking and defending depositions, (c) briefing motions, (d) handling most case coordination tasks, such as communicating with opposing counsel, witnesses and the client, and (e) doing much of the trial preparation work. Plaintiff's counsel did not bill for time that was not necessary to advance the case and, generally, conducted this litigation as they would have were they representing a fee-paying client.

**Point 4:    Plaintiff's counsel are entitled to have their fee enhanced for delay in payment**

Because much of the work on this case was done in 1998 and 1999, as is demonstrated by year by year breakdown contained in Mr. Amlong's declaration at 11-12 and at Attachment 6 to that declaration, D'Aragona's

counsel are entitled to have the lodestar enhanced to compensate them for the delay in payment, lest that delay effectively dilute the lodestar.

One approach would be to calculate the fee award at current rates (i.e., at the $350-an-hour rate for shareholders), which results in a lodestar of $85,925.00. Another, and equally as fair a way, however, and one that is consistent with way in which this circuit treats back pay awards, is to apply the IRS prime rate, calculated quarterly and compounded annually, to the fees. That produces a fee award of $81,915.01. An exhibit demonstrating those calculations is appended to Mr. Amlong's declaration as Attachment 12.

**Point 5:    D'Aragona is entitled to recover his litigation expenses**

Consistent with the standard set out in City of Apopka, D'Aragona should be permitted to recover the $12,888.85 in litigation expenses set forth in Mr. Amlong's declaration and detailed at Attachment 7 to that declaration.

That everything should be paid is clear from the expansive standard set out in Dowdell.

### Conclusion

Based upon the arguments presented and the authorities cited, the court should grant plaintiff's motion and award him $81,915.01 to $85,925.00 in attorney's fees and $12,888.85 in costs and litigation expenses.

Respectfully Submitted,

_____

WILLIAM R. AMLONG
Florida Bar No: 470228
AMLONG & AMLONG, P.A.
Attorneys for Plaintiff
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, FL 33301-1154
Telephone: (954) 462-1983
Facsimile:  (954) 523-3192

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by __MAIL__ this ___23rd___ day of October, 2000 to Steve T. Breaux, Esq., BellSouth Telecommunications, Inc., Legal Dept.,  675 West Peachtree Street, Suite 4300, Atlanta, GA 30375-0734; and Valerie  Shea, Esq., Heinrich, Gordon, Hargrove, et al., 500 East Broward Blvd., Suite 1000, Fort Lauderdale, Florida 33394.

_____

WILLIAM R. AMLONG

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

KAREN F. TUTTLE,

     Plaintiff,

Case No. 95-710-Civ-Moreno

vs.

CITY OF NORTH MIAMI BEACH, a
political subdivision of the
State of Florida, and
JOHN BERGACKER,

     Defendant.

Neil Chonin's Unsworn Declaration
Pursuant to 28 U.S.C. § 1746
In Support of Motion for Attorney's
Fees, Costs and Litigation Expenses

_____/

State of Florida

County of Dade

NEIL H. CHONIN deposes and says:

1.    I am a partner in the law firm of Chonin, Sher & Navarrete, P.A., 304 Palermo Avenue, Coral Gables, Florida. I have been a member of the Florida Bar since 1961, a member of the Bar of the United States District Court for the Southern District of Florida since 1962, and an active trial practitioner in Dade County for the past 35 years.

2.    The principal part of my practice is personal injury and civil rights litigation. I have tried numerous cases in the United States District Courts and in the Florida Circuit Courts involving civil rights and employment practices. Those cases have included *Dartland v. Metropolitan Dade County*, S.D. Fla. No. 86-214-Civ-Spellman; *Fowler v. Metro Dade Police Department*, S.D. Fla. No. 85-2330-Civ-Spellman; *Tillman v. Brundage*, S. D. Fla. No. 87-0132-Civ-Ryskamp; *Johnson v. City of Miami*, S. D. Fla. No. 82-02087-Civ-Aronovitz; *St. Claire v. City of Miami*, S.D. Fla. No. 87-12556-Civ-Kehoe; *Holmes v. Georgia-Pacific, Co.*, S. D. Fla. 92-14286-Civ-Davis; *Weiner v. Baker-Cummins*, S.D. Fla. No. 93-0101-Civ-King; and *Garbett v. UNISA America*, S.D. Fla. 93-4090. I also have tried cases in the Middle District, the most recent being *Holmes v. Wal-Mart Stores, Inc.*, M.D.

NHCAFF.WPD
May 8, 1997

Fla. No. 95-137-Civ-FTM-25D, in which a jury in Tampa in September returned a $2 million verdict (subject to remittitur because of the damages caps of Title VII) in a sexual harassment case.

3.    I am familiar with a plaintiff's civil rights practice in South Florida through these cases and through continuing legal education courses that I have taught. I have been a lecturer at the National Institute for Trial Advocacy (NITA) Sponsored Trial Advocacy Training at the Georgetown University Law School for five years. I have been chosen as a lecturer for continuing legal education by the Florida Bar Section on Labor and Employment Law, and for the past two years have been the leader of the Section's week-long Intensive Trial Skills Program. I am the past chair of the Florida Bar Committee on Small Firms and Solo Practitioners and through that position have gained knowledge of the economics of the law practice of small firms and the market rate of reasonable hourly fees charged by lawyers in such a practice.

4.    I am familiar with both William R. Amlong, Esquire, and Karen Coolman Amlong, Attorney at Law, the two principals of Amlong & Amlong, P.A. and the trial counsel for the plaintiff in this action. I am familiar with them from knowing of their general reputation in the legal community, from my membership in the National Employment Lawyers Association (of which Mr. Amlong is the current Florida chapter president and a member of the National Executive Board), from referring cases to them (and their referring cases to me), from having served as a mediator in one case in which Mr. Amlong was plaintiff's counsel, and from having taught alongside them at the Labor & Employment Section's trial skills programs (Mr. Amlong in 1995 and both Mr. and Ms. Amlong in 1996). I also, as a Board Certified Civil Trial Lawyer, am familiar with the rigorous experience,

2

NHC.AFF.WPD
May 4, 1997

education and peer-review requirements for achievement of Board Certification by the Florida Bar, which both Mr. and Ms. Amlong have earned in Civil Trial Law and which Ms. Amlong additionally has earned in Marital and Family Law.

5.    Finally, as someone who routinely litigates employment cases against South Florida's management-defense bar, I am familiar with how vigorous a defense those firms mount. To meet such a defense, a plaintiff need be represented by counsel who are extremely experienced both in the substantive law of employment discrimination and civil rights and in trial practice. The Amlong firm has the requisite expertise to meet such a defense, as was demonstrated by its victory in this case.

6.    I am familiar with the Amlong firm's current hourly fee of $300 for its two principals (and their immediate past hourly rates of $250 and $275), which in my professional opinion is a reasonable rate within South Florida for attorneys of Mr. and Ms. Amlong's skill, reputation and experience. More specifically, it is, to my personal knowledge, similar to the rates billed and paid in federal civil litigation of equal complexity to Age Discrimination in Employment Act litigation. Indeed, it is lower than the $350-an-hour that I currently bill.

I declare under penalty of Perjury that the foregoing is true and correct.

Executed May __3__, 1997 at Coral Gables, Florida.

_Neil H. Chonin_

NEIL H. CHONIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.95-710-CIV-MORENO

KAREN F. TUTTLE,

     Plaintiff,

vs.

CITY OF NORTH MIAMI BEACH,
and JOHN BERGACKER,

     Defendants.

_____/



RECEIVED
SEP 0 4 1997

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Plaintiff's Motion for Attorney's Fees, Costs and Litigation Expenses (D.E.# 191). This matter was referred to the undersigned United States Magistrate Judge by the Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida and is now ripe for judicial review.

### BACKGROUND

Plaintiff, Karen F. Tuttle ("Tuttle"), brought the subject action against Defendants the City of North Miami Beach (the "City") and city employee John Bergacker ("Bergacker") pursuant to, among other claims, 42 U.S.C. §1983 and the Fourteenth Amendment's equal protection clause. Following a four-day trial Plaintiff recovered a jury verdict against Defendant Bergacker for $6,000 ($2,500 compensatory damages and $3,500 in punitive damages) and recovered nothing on

her claims against the City. By the instant Motion Tuttle moves for an award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. §1988 against Defendant Bergacker.

## LEGAL ANALYSIS

### *ATTORNEY'S FEES*

Under 42 U.S.C. §1988 the court, in its discretion, may award the prevailing party in an action under 42 U.S.C. §1983 a reasonable attorney's fee as part of its costs. Generally, plaintiffs are entitled to §1988 fees "unless special circumstances would render such an award unjust." Kentucky v. Graham, 473 U.S. 159, 164 (1985) (quoting S. Rep. No. 1011, 94th Cong. 2d Sess. 4 (1976), reprinted in 1976, U.S. Code Cong. & Admin. News 5908, 5912 ("Senate Report")); see also Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); Duncan v. Povthress, 777 F.2d 1508 (11th Cir. 1985) (en banc) ("prevailing plaintiffs attorney(s) [are] presumptively entitled to fees")' Dowdell v. City of Apopka, 698 F.2d 1181, 1189 (11th Cir. 1983). In proving special circumstances, defendants bear a heavy burden and "must make a 'strong showing' to justify denial." Martin v. Heckler, 773 F.2d 1145, 1150 (11th Cir. 1985). A "[d]efendant's good faith, lack of culpability, or prompt remedial action" are insufficient to warrant "a denial of fees under the special circumstances preclusion." Id. Time spent litigating the issue of attorney's fees also is compensable. Johnson v University College, 706 F.2d 1205, 1207 (11th Cir.), cert. denied, 464 U.S. 994 (1983).

2

A plaintiff is a prevailing party for purposes of 42 U.S.C. § 1988 not only upon obtaining relief by a judgment, but also upon obtaining a monetary settlement or a change in conduct that redresses the plaintiff's grievances. Hewitt v. Helms, 482 U.S. 755, 761 (1987). In the instant case plaintiff obtained a Final Judgment in her favor and against Defendant Bergacker in the total amount of $6,000. Apart from obtaining relief by judgment, plaintiff succeeded in vindicating an important constitutional right and, as a result, has materially altered the legal relationship of the parties. These facts are more than sufficient to constitute plaintiff a prevailing party under §1988. Texas State Teachers Ass'n v. Garland Independent School District, 489 U.S. 782, 791-793 (1989); Hewitt, 482 U.S. 761.

Finding plaintiff a prevailing party and further finding absent the existence of special circumstances which would render such award unjust, this Court concludes a reasonable attorney's fee is warranted. The remaining discussion shall focus on the appropriate amount.

The starting point in any "reasonable fee" determination is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424 (1983); Fogham v. Kennesaw, 820 F.2d 1570, 1578 (11th Cir. 1987). The resulting figure, known as the "Lodestar", may thereafter be enhanced or reduced based on the results obtained or the risk of non-payment. Pennsylvania v. Delaware Valley Citizens Council II, ("Delaware II") 483 U.S. 711, 745 (1987); Pennsylvania v. Delaware Valley Citizens Council I, ("Delaware I") 478

U.S. 546 (1986). Where the objective sought was in fact obtained, the full lodestar amount should be awarded. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988). "If the result was excellent, then the court should compensate for all hours reasonably expended." Id. at 1302 (citing Popham v. Kennesaw, 820 F.2d 1570, 1578 (11th Cir. 1987). Enhancement of the Lodestar should be made only in exceptional cases where need and justification for such enhancement are readily apparent and supported by clear evidence of record. Delaware II, 483 U.S. at 728. See also Norman, 836 F.2d at 1302 (11th Cir. 1988).

In City of Burlington v. Dague, 505 U.S. 557 (1992) the Supreme Court rejected enhancements for calculated lodestar amounts in cases which involve federal fee-shifting statutes, such as Title VII at issue herein. Plaintiff's counsel, the Amlong & Amlong firm, represented Plaintiff in this case on a contingency basis meaning that, if Plaintiff did not prevail, Plaintiff's counsel would receive no compensation. As noted previously, the Supreme Court's decision in Dague has established that a contingency enhancement is not available. Acknowledging this, Plaintiff does not seek a contingency enhancement to the lodestar. Plaintiff's counsel, however, consistent with Dague is entitled to a lodestar calculated with hourly rates expected and realized by attorneys who take cases on a contingent fee basis in the Southern District of Florida. This prevailing market rate is the appropriate hourly rate to be applied in the lodestar calculation for an award of attorney's fees for comparably skilled attorneys performing comparable work in civil

4

rights cases.

Finally, in certain instances, the court may compensate for delay in payment by either basing the award on current rates or by adjusting the fees based on historical rates to reflect its present value. Missouri v. Jenkins, 491 U.S. 274 (1989); Delaware II, 483 U.S. at 116; Lattimore, 868 F.2d at 440. In the instant case, such compensation for delay is warranted. Plaintiffs counsel has been working on this case since February 1994 without receiving payment beyond the initial $5,000 retainer. Under the circumstances herein and pursuant to the case authority set forth above, this Court finds such enhancement for delay warranted. The Court further finds the best way to accomplish this goal is to award Plaintiff attorneys fees for partner work based on the firm's current hourly rate of $300, as opposed to the $250 per hour rate both partners were charging when the case began.

We now move to a determination of the reasonable hourly rate. The burden is on the moving party to establish the prevailing market rate, which is the rate charged in the community by lawyers of reasonably comparable skill, experience and reputation for similar services. Blum v. Stenson, 465 U.S. 886, 895 and 896 n. 11 (1984); NAACP v. City of Evergreen, 812 F.2d 1332, 1338 (11th cir. 1987); Gaines v. Dougherty Co. Ed. of Education, 775 F.2d 1565, 1571 (11th Cir. 1985). "The decision regarding the appropriate hourly rate may be made either by analyzing the affidavits submitted by counsel or, if this documentation is insufficient, by relying upon the court's expertise." Avirgan v. Hull, 705 F.Supp. 1544, 1549 (S.D. Fla. 1989) (J. King) (citing Norman v. Housing Authority of City of Montgomery, 836 F.2d

1292, 1303 (11th Cir. 1988)).  Satisfactory evidence of the market rate requires more than the mere affidavit of the attorney performing the work.  Blum, 465 U.S. at 896 n. 11.  Also insufficient is testimony that a given fee is reasonable; evidence must be of rates actually billed and paid.  Hensley, 461 U.S. at 439 n. 15.  Such evidence may be adduced from charges of lawyers under similar circumstances or by opinion evidence.  Norman, 836 F.2d at 1299.  When analyzing the market rates being attested to, the district court may wish to consider any of the twelve factors enumerated in Johnson v. Georgia Highway Express, Inc. 488 F.2d 714 (5th Cir. 1974).[1/] Delaware Valley I, 478 U.S. at 564-569.  One of those factors, the hourly rate normally charged by the applicant's counsel, has been deemed the logical starting place in any rate determination.  Vaughns v. Board of Education, 598 F.Supp. 1262 (D.Md. 1984), affd, 770 F.2d 1245 (4th Cir. 1985); Zeffiro v. First Pennsylvania Bank, N.A., 574 F.Supp. 443, 447 (E.D.Pa. 1983), affd without opinion, 746 F.2d 1469 (3d Cir. 1984); see also Florida Pawnbrokers v. Fort Lauderdale, 711 F.Supp. 1084, 1086-87 (S.D. Fla. 1989).  Also considered probative

---

[1/] The 12 factors enumerated in Johnson are as follows: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee;  (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  See Johnson, 488 F.2d, at 717-719.  These factors were taken from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106 (1980).

are the rates billed in similar lawsuits and the relative skill of the attorneys involved. Norman, 836 F.2d at 1299.

The hourly rates sought for the attorneys involved herein ranges from $100 to $300.[2] These rates are reasonable and well in line with the rates charged in this community by attorneys with comparable skill, experience and reputation for similar services. In support of the fee request Plaintiff has submitted the unsworn declaration of William R. Amlong, lead counsel for the Plaintiff herein and partner in the firm of Amlong & Amlong. In his Declaration Mr. Amlong states that he has been actively practicing law since 1985 and that approximately 95 percent of his practice is devoted to labor and employment matters, representing virtually exclusively Plaintiffs. Amlong Dec., p.2. He is a member in good standing of the National Employment Lawyers Association as well as the Labor and Employment Law Sections of both the Florida Bar and the American Bar Association. Id. He is also a member of the Association of Trial Lawyers of America and the Academy of Florida Trial Lawyers. Id. In the years since being admitted to the Florida Bar Mr. Amlong has tried to verdict (or decision) 29 cases in United States District Court involving employment discrimination or other civil rights matters. Id. at 3-5. He has additionally litigated in District Court, but has settled prior to trial, a substantially greater number of cases involving employment discrimination and other civil rights

---

[2]$100 per hour for law clerks with J.D. degrees, $125 for associates with the firm and $300 for the two partners time. Law clerks (pre-J.D.) are billed at $75 per hour as are paralegals.

issues. Id. at 5. According to Mr. Amlong his current hourly billing rate is $300, which rate became effective in April 1996. Id. at 9. His immediately prior billing rate, effective February 1995, was $275 per hour. Id. And his billing rate prior to that was $250 per hour, which was effective in June 1991. Id. The Amlong firm bills its associates at rates ranging from $125 to $150 per hour. Id. At 11. However, for purposes of the instant fee motion and because various associates worked on the case at various times, Mr. Amlong is seeking the lowest rate of $125 for all associate time. Id. This Court is familiar with the Amlong law firm and with Mr. Amlong in particular and is aware that both are highly regarded in the community in the areas of labor law and civil rights litigation.

Also filed in support of Plaintiff's fee request is the affidavit of Ms. Susan Dolin, a partner in the law firm of Muchnick, Wasserman, & Dolin. In her affidavit Ms. Dolin states, under oath, that she is familiar with Mr. Amlong's skill, experience and qualification as a labor and employment lawyer in the South Florida area. Dolin Aff. ¶ 10. In her opinion Mr. Amlong is "a highly skilled and ethical practitioner" whose knowledge and experience "is at a premium in this area of the United States". Id. Ms. Dolin has attested that her normal hourly billing rate and the normal hourly billing rate for attorneys of comparable skill is between $250 and $350, depending on the nature of the case. Id. at ¶11. According to Ms. Dolin, "If Mr. Amlong were a partner in [her] firm, given his skills, training and qualifications, he would be billed out at $300.00 per hour for Plaintiffs cases, particularly if they were contingent fee cases."

Id. Thus, it is her opinion that $300 per hour is a very reasonable rate. Id. Lastly, we have the unsworn declaration of Mr. Neil Chonin, a partner in the law firm of Chonin, Sher & Navarrete. In said Declaration Mr. Chonin states that the Amlong firm's current hourly rate of $300 for its two principals, as well as the firms immediate past hourly rates of $250 and $275, "is a reasonable rate within South Florida for attorneys of Mr. and Mrs. Amlong's skill, reputation and experience". Chonin Dec., ¶6. Indeed, the Amlong firm's current hourly rate of $300 for the two principals is lower than the $350 per hour that Mr. Chonin currently bills. Id.

Based upon the above and foregoing and relying upon this Court's knowledge concerning prevailing community rates, this Court finds the rates charged by the Amlong firm reasonable and in line with the rates charged in the South Florida area by lawyers with comparable skill, experience and reputation for similar services. Accordingly and for the reasons previously stated incident to compensation for delay the undersigned finds the current $300 hourly rate as opposed to the $250 per hour rate charged when the case first began, the appropriate rate for the firms principals Mr. and Mrs. Amlong, and the remaining hourly rates sought of $125 for all associate time, $100 for all law clerks with J.D. degrees, and $75 for all pre-J.D. law clerks and paralegals appropriate herein.

The Court must next make a determination as to the reasonableness of the amount of hours sought. In ascertaining the amount of reasonable hours "excessive, redundant, or otherwise unnecessary" hours should be excluded from

9

the amount claimed. Hensley, 461 U.S. at 434. In addition to deducting excessive, redundant and unnecessary hours, the district court must also deduct for time spent on unsuccessful claims. Id. at 435. The fee applicant's failure to prevail on every contention raised in the lawsuit is not a justification for reduction of the fee award. Lattimore v. Oman Construction, 868 F.2d 437, 440 (11th Cir. 1989). Unless the fee applicant obtained only limited success, where the successful and unsuccessful claims involved related legal theories, no fees should be deducted. Hensley, 461 U.S. at 242; Avila v. Coca-Cola Co., 849 F.2d 511, 514 (11th Cir. 1988); Popham v. City of Kennesaw, 820 F.2d 1570, 1579 (11th Cir. 1987). "A plaintiff obtains only limited success when the substantive relief granted is something less than that which he would have been granted had he succeeded on the unsuccessful claim." Avila, 849 F.2d at 514; see also Erkins v. Ervan, 785 F2d 1538, 1545-46 (11th Cir.), cert. denied, 479 U.S. 960 (11th Cir. 1986). In determining whether to exclude hours on claims for which plaintiff did not obtain relief, the "court must consider the relationship of the claims that resulted in judgment with the claims that [did not] and the contribution, if any, made to success by the investigation and prosecution of the entire case." Jones v. Diamond, 636 F.2d 1364, 1382 (5th Cir.), cert. dismissed, 453 U.S. 950 (1981).

It is on this point, Plaintiff's alleged failure to deduct for hours spent on unsuccessful claims, that Defendant takes issue. Specifically, Defendant believes more time should be deducted for the hours spent incident to Plaintiff's unsuccessful

claims against the City and on claims against Defendant Bergacker which were ultimately dismissed. In principal, this Court agrees. While it's true that Plaintiff won on her main claim, namely sexually harassment as against Defendant Bergacker, the fact remains that by losing her claim against the City the substantive relief granted was significantly less than that which Plaintiff would otherwise have obtained. Under Avila, such limited success requires a deduction of those hours spent on unsuccessful claims. 849 F.2d at 514. ("A plaintiff obtains only limited success when the substantive relief granted is something less than that which he would have been granted had he succeeded on the unsuccessful claim.")

The Court does not, however, agree with Defendants assessment of the amount of hours that should be deducted. Attached to Defendant Bergackers Response is a list of those hours Defendant believes should be deducted. Included on that list are all hours incurred incident to pre-suit investigation and to preparation of the Complaint. Contrary to Defendants contention these hours, or at least a portion thereof (minimum of 50%), were directly related to the claims made against Defendant and should not be excluded. Similarly, Defendants position that most of the hours spent at trial and preparing for trial should be attributed to the City is misguided. Also spurious is Defendant's contention that all hours spent researching and preparing Plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss should be deducted. Reviewing the jury verdict in this case this Court can not fairly conclude that as against Defendant Bergacker,

11

Plaintiff obtained only limited success. Plaintiff won her case against Defendant Bergacker. She won $2,500 in compensatory damages, which is what her psychologist testified she needed for future therapy, and $3,500 in punitive damages from a Defendant whose sole defense was that he was of limited financial means. And perhaps even more importantly, as to Defendant Bergacker, Plaintiff successfully managed to vindicate an important constitutional right.

Herein, Plaintiff's counsel has separated the time spent on what it refers to as the discrete claims against the City, namely, the wage claim and the claim regarding harassment after Bergacker left. Also deducted by Plaintiff's counsel were the hours spent seeking a new trial against the City.[3] What Plaintiff's counsel has failed to deduct, however, and what this Court orders he deduct now are those hours spent in settlement negotiations with the City Attorney's office. This Court does not believe these hours can fairly be attributed to Defendant Bergacker. The Court also orders Plaintiff's counsel to reexamine its time sheets and back-out those hours or what it determines to be a fair proportion of those hours spent on the unsuccessful claims against the City. In accordance with the above and foregoing, the parties are hereby directed to immediately confer in an attempt to come to an agreement on the amount of attorney's fees due. If, after twenty (20) days from the

---

[1] In Defendant's attachment to his Response Defendant claims such hours were not deducted from the total sought. However, as made clear in Plaintiff's Reply brief, the hours spent seeking a new trial against the City were not included in Plaintiff's request.

Plaintiff obtained only limited success. Plaintiff won her case against Defendant Bergacker. She won $2,500 in compensatory damages, which is what her psychologist testified she needed for future therapy, and $3,500 in punitive damages from a Defendant whose sole defense was that he was of limited financial means. And perhaps even more importantly, as to Defendant Bergacker, Plaintiff successfully managed to vindicate an important constitutional right.

Herein, Plaintiff's counsel has separated the time spent on what it refers to as the discrete claims against the City, namely, the wage claim and the claim regarding harassment after Bergacker left. Also deducted by Plaintiff's counsel were the hours spent seeking a new trial against the City.[3] What Plaintiff's counsel has failed to deduct, however, and what this Court orders he deduct now are those hours spent in settlement negotiations with the City Attorney's office. This Court does not believe these hours can fairly be attributed to Defendant Bergacker. The Court also orders Plaintiff's counsel to reexamine its time sheets and back-out those hours or what it determines to be a fair proportion of those hours spent on the unsuccessful claims against the City. In accordance with the above and foregoing, the parties are hereby directed to immediately confer in an attempt to come to an agreement on the amount of attorney's fees due. If, after twenty (20) days from the

---

[3] In Defendant's attachment to his Response Defendant claims such hours were not deducted from the total sought. However, as made clear in Plaintiff's Reply brief, the hours spent seeking a new trial against the City were not included in Plaintiff's request.

date hereof the parties are unable to come to an agreement on amount, Plaintiff shall have fifteen (15) days within which to file a renewed request for fees in accordance with this Report and Recommendation. Defendant shall have ten (10) days thereafter in which to file his response in opposition specifying his objections. Plaintiff shall have five (5) days from the receipt of such response in which to file any desired reply.

## COSTS

In awarding costs and expenses to a prevailing civil rights litigant, there are two separate sources of authority. The first, more restrictive source, is Fed. R. Civ. P. 54(d) and 28 U.S.C. §§ 1920 and 1923(a) (1982). Under this traditional authority, recovery is limited to the necessary costs incurred by the prevailing litigant and paid to a third party, such as docket fees, marshal fees, deposition and witness expenses. The range of possible necessary costs is itemized in 28 U.S.C. § 1920 and while District Judges have some discretion, such discretion should be "sparingly exercised with reference to expenses not specifically allowed by statute." Farmer v. Arabian American Oil Co., 379 U.S. 227 (1964).

The second, broader source of authority, is the one relied on by the plaintiff herein. This authority, derived from Section 1988, directs the court to award to the prevailing party all reasonable expenses incurred as part of the costs in civil rights litigation. Dowdell v. City of Apopka, 698 F.2d 1181, 1188 (11th Cir. 1983). ("attorneys' fees and expenses are inseparably intertwined as equally vital

13

components of the costs of litigation.") Id. at 1190. Where Section 1988 governs, "the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply." Id. at 1188-89 (citations omitted). Thus, unlike the costs provision contained in Section 1920, the determination of properly chargeable expenses is not made by reference to any designated checklist of items but, rather, is determined by reference to and in consideration of the purposes of Section 1988 and the nature of the particular case. Id. at 1189.

Generally, "[w]ith the exception of routine office overhead normally absorbed by the practicing attorney," prevailing plaintiffs and their attorneys should be made whole for "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case . . . ." Dowdell, 698 F.2d at 1192; see also remarks of Congressman Drinan, 122 Cong. Rec. 35123 (1976) (noting that plaintiffs and their attorneys should be compensated for all "incidental and necessary expenses incurred in furnishing effective and competent representation"). Accordingly, the same analysis employed to determine reasonable attorney's fees is employed to determine reasonable expenses. Thus, a prevailing civil rights litigant is entitled to an award of reasonable expenses as a matter of course and reductions, if any, should be made only where the expenses sought are unreasonable. Henry v. Webermeier, 738 F.2d 188, 192 (7th Cir. 1984) (citing Hensley v. Eckerhart, 461 U.S. at 429); Dowdell v. City of Apopka, 698 F.2d at 1191 (expenses are "liberally" dispensed as appropriate to the specific litigation and "even

14

relatively large or unusual costs may be taxed when they are reasonably incurred").

By her Motion Plaintiff seeks to recover costs totaling $16,396.28. The breakdown of these costs is as follows:

| | |
|---|---|
| (1) Filing Fee | $120.00 |
| (2) Witness and Service Fees (non-expert) | $1,810.90 |
| (3) Court Reporters (pre-trial depositions) | $4,151.34 |
| (4) Mediation Fee | $148.00 |
| (5) Long Distance | $103.32 |
| (6) Postage and Federal Express | $227.56 |
| (7) Expert Witness Fee | $2,585.00 |
| (8) Mileage and Parking | $355.66 |
| (9) Photocopies | $1,304.19 |
| (10) Fax Charges | $336.00 |
| (11) Visual Aids | $3,496.31 |
| (12) Jury Consultant | $1,758.00 |
| TOTAL | $16,396.28 |

Defendant objects to only some of the costs sought. Defendant takes issue with the costs sought incident to the depositions of three individuals from the CPA firm of Rachlin & Cohen. Notably, two of the three depositions (Messrs. Powers and Chiocca) were noticed by Defendant's own counsel, Mr. William Cagney, III, and in the third deposition (Ms. Carla Pasquale), Defendant Eargacker's counsel's

questions took up 38 of the 148 pages of transcribed testimony.  Pursuant to 28 U.S.C. §1920(2) the prevailing party is entitled to tax as costs "Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case".  Clearly, the above transcripts were necessary to prosecution of Plaintiff's case against Bergacker.  Defendant next takes issue with the costs incurred incident to the depositions of the two officers and the Police Chief who investigated into Defendants alleged sexual harassment of Plaintiff.  Again, there can be no question that these costs were necessarily obtained for use in the case. Also rejected are the objections to taxing as costs the depositions of Michael Roberto, the then-City manager, and Ann Perrotta, a former Assistant City Manager. These depositions were relevant to what, if anything, they knew about Bergacker's conduct.  Accordingly, all of these costs are taxable against Defendant.

Also rejected is Defendant's assertion that postage, photocopying, long distance charges, fax charges and parking charges are not taxable.  Under Dowdell and its progeny these costs are clearly recoverable.  The Court agrees, however, with Defendant's objections as relates to costs incurred incident to expert witness fee, mediation fee, mileage costs, visual aids and retention of a jury consultant. These charges are either part of office overhead or were otherwise not necessarily obtained for use in the case and, thus, not properly taxable.  Accordingly, this Court recommends the following costs be reduced from the amount awarded: $148.00 for mediation fee; $2,585.00 for expert witness fee as regards Constance Avery-Clarke;

$314.16 for mileage; $3,496.31 for visual aids; and, $1,756.00 for retention of a jury consultant.

In accordance with the above and foregoing it is hereby,

RECOMMENDED that Plaintiff's Motion for Attorneys Fees and Costs be GRANTED IN PART AND DENIED IN PART in accordance with the within Report and Recommendation. Accordingly, the parties shall confer in an effort to come to an agreement on the amount of attorney's fees taking into account the pronouncements made herein on that issue and, if unsuccessful, shall follow the timetable set forth herein *supra pp.12-13*. As for costs, if the within Report and Recommendation is adopted, Plaintiff should recover $8,107.81 in costs.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LaConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir.

17

1993).

RESPECTFULLY SUBMITTED, on September 3, 1997, at Miami, Florida.


LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE


CC:  The Honorable Federico A. Moreno
     Counsel of Record

RECEIVED

AUG 2 0 1999

96-6690.rr

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 96-6690 CIV MOORE

SRABANA GUPTA,

    Plaintiff,

vs.

THE FLORIDA BOARD OF REGENTS
and RUPERT RHODD,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

**This matter** is before this Court on Plaintiff's Motion for Costs, Including Attorneys' Fees and Litigation Expenses, filed September 14, 1998. This Court has considered the motion, the response, the reply, the supplemental pleadings, exhibits submitted in support of the motion, and all other pertinent matters in the file.

## BACKGROUND

On August 8, 1997, the jury returned a verdict for the Plaintiff on two counts of her three count complaint, finding that she had been subjected to hostile environment sexual harassment and retaliation by Defendant The Florida Board of Regents ("Regents"), in violation of Title VII of the Civil Rights Act of 1964. The jury found against Plaintiff and in favor of Defendant Rupert Rhodd ("Rhodd") on Plaintiff's claim of violation of 42 U.S.C. §1983, alleging that Rhodd violated Plaintiff's Equal Protection rights by way of sexual harassment. The jury awarded Plaintiff damages in the amount of $95,000, upon which the Court entered judgment, and denied Defendant Regent's Rule 50 Motion.



CALENDARED
RESPONSE DUE
BY _____ DATE _____

## DISCUSSION

Plaintiff requests an award of attorneys fees and litigation expenses incurred in the underlying case, as well as in connection with the preparation of the instant motion. The parties have made a good faith effort to resolve the motion without the Court's intervention, and have agreed on many issues. However, the following issues remain for resolution by the Court.

### I.   Stay

Defendant does not dispute the Plaintiff's entitlement to attorneys fees and costs should the case be affirmed on appeal. However, Defendant argues that the fee and cost determination should be stayed pending the outcome of the appeal. In addition to the obvious possibility that should the judgment on both claims be reversed, Defendant argues that should the judgment on one claim be reversed, the fees would also have to be reduced accordingly.

Plaintiff responds that the Court has denied Defendant's Rule 50 motion, and has thereby expressed confidence in the jury's verdict and the underlying proceedings. Plaintiff further argues that even if the verdict on one of the claims is reversed, the claims cannot be "separated" for purposes of reducing the attorneys fees or costs, in that proof of her retaliation claim included proof of harassment, and proof of the harassment required, under the law existing at the time, that Plaintiff complained to management to no avail, which is in turn relevant to the retaliation claim. This Court does not find Defendant's arguments in favor of staying the determination of the attorneys fees and costs to be persuasive, and recommends that the determination be made at this time.

### II.   Attorneys Fees

The Civil Rights Attorney's Fee Award Act of 1976, codified at 42 U.S.C. § 1988, governs attorneys fee awards in actions brought pursuant to Title VII. Fees are to be awarded to a prevailing party as part of his or her costs a matter of course, absent any special circumstances. Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7 (1992); Dowdell v. City of Apopka, 698 F.2d 1181, 1189 (11th Cir.

2

1983). Time spent litigating the issues of attorney's fees is also compensable. Johnson v. University College, 706 F.2d 1205, 1207 (11th Cir.), cert. denied, 464 U.S. 994 (1983).

Any fees to be awarded must be reasonable and follow the guidelines which the Eleventh Circuit has promulgated. See Norman v. Housing Authority of City of Montgomery, 836 F. 2d 1292 (11th Cir. 1988). A fee award should be based upon a multiplication of a reasonable hourly rate ("the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation) by the number of "reasonable hours" billed, adjusting the resulting "lodestar" for the result obtained, the quality of representation and delay in payment. Id. at 1299-1302; see also Andrews v. U.S., 122 F. 3d 1367 (11th Cir. 1997).

In this case, the parties have come to agreement with respect to the reasonable hourly rates of Plaintiff's attorneys. Specifically, the parties have agreed on an amount of $300.00 per hour for Karen Coolman Amlong, Esq. and William Amlong, Esq. (with the exception of 7.1 hours billed by William Amlong, Esq. prior to March 1997, which should be awarded at $275 per hour), $125.00 per hour for associates, $100.00 per hour for attorney law clerks, and $75.00 per hour for paralegal and non-attorney clerks. However, with respect to the number of hours Plaintiff claims is reasonable, Defendants have three objections.

### A. Hours Charged by Karen Coolman Amlong

Defendant objects to the total amount claimed for work done by Karen Coolman Amlong, in that in William Amlong's Unsworn Declaration, Mr. Amlong claims 210 hours for Ms. Amlong, and only 199 hours were actually billed to the client for work performed by her. In response, Plaintiff states that the difference is due to a mistake in billing, in that 3.0 hours for July 30, 1997 and 8.0 hours for August 1, 1997, which appear on Exhibit 1 ("Time for Which Compensation is Sought, by Timekeeper, Rate, Date, Time and Task") were mistakenly not billed to the client. This Court finds that the number of hours is reasonable, and based on the fact that Defendant has not objected to the rate charged for those

3

hours, this Court finds that fees should be awarded.

### B. Charges for Unsuccessful Claim

Next, Defendant argues that the fees and costs which were incurred in connection with the unsuccessful claim against Defendant Rhodd should be deducted from the total claimed. In Norman, the Court stated that a fee applicant should not be compensated for "time spent on discrete and unsuccessful claims." 836 F.2d at 1301. However "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the Court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Henslev v. Eckerhart, 461 U.S. 424, 435 (1992). "[I]f the unsuccessful and the successful claims 'involve a common core of facts' or are 'based on related legal theories,' the Court must compare the plaintiff's overall relief with the number of hours reasonably expended on the litigation." Popham v. City of Kennesaw, 820 F.2d 1570, 1578 (11th Cir. 1987) (quoting Hensley, 461 U.S. at 435).

In this case, Plaintiff was unsuccessful in her claim against Rhodd, individually, for violation of her equal protection rights under 42 U.S.C. §1983. In order to prove the equal protection claim, Plaintiff was required to prove that Rhodd acted "under color" of the authority of Regents, that Plaintiff was sexually harassed by Rhodd, and that Rhodd intended to sexually harass Plaintiff because she was a female. See Faragher v. City of Boca Raton, 864 F.Supp. 1552, 1565 (S.D. Fla. 1994). Although Plaintiff did not succeed on this claim, she did succeed on her claims for hostile environment and retaliation against Regents, based on the underlying harassing behavior of Rhodd. Plaintiff argues that "[o]ther than perhaps such minimal amounts of time it took to draft the complaint's count against Rhodd or to craft a jury instruction regarding Rhodd, there literally is no work that was done proving the claims upon which plaintiff prevailed that would not still have been done." This Court finds merit in Plaintiff's argument, and therefore finds that the total number of hours should not be reduced on this basis.

## C. Hours charged for fee and cost motion

Defendant objects to the hours charged by William Amlong, Esq. in connection with the preparation of the instant motion for fees and costs and related pleadings. Mr. Amlong states in his unsworn declaration that he spent 29.4 hours in connection with this motion, including preparation of the motion and reply, and "associated papers" and review of the opposing memorandum. It is the prevailing party's burden to justify the fees requested. See e.g. Duckworth v. Whisenant, 97 F. 3d 1393 (11th Cir. 1996); Turner v. Secretary of Air Force, 944 F. 2d 804 (11th Cir. 1991). This Court notes that there is no expert opinion offered as to the reasonableness of the hours charged. The Eleventh Circuit has repeatedly held that the Court, itself, can be an expert on this issue and may properly consider its own knowledge and experience in determining reasonable and proper fees. See e.g. Loranger v. Stierheim, 10 F. 3d 776 (11th Cir. 1994). This Court finds that the reasonable number of hours for which Mr. Amlong should be compensated for preparation of the instant fee and costs motion is 20 hours.

Accordingly, this Court finds that Plaintiff should be awarded attorneys fees in the amount of[1]:

| | | |
|---|---|---|
| William R. Amlong, Esq. | 7.1 hours @ $275 = | $ 1952.50 |
| | 157.1 hours @ $300 = | $47,130.00 |
| Karen Coolman Amlong, Esq. | 210.2 hours @ $300 = | 63,060.00 |
| Associates | 120.5 hours @ $125 = | 15,062.50 |
| Law Clerks (pre-J.D.) | 70.2 hours @ $75 = | 5,265.00 |
| Law Clerks (J.D.) | .6 hours @ $100 = | 60.00 |
| Paralegals | 1.9 hours @ $75 = | 142.50 |
| **Total Lodestar (546.6 hours)** | **567.6 hours** | **$132,672.50** |

---

[1]Plaintiff initially requested an enhancement for delay in payment for a portion of the fees; however, that request was subsequently withdrawn.

5

### III. Expert Fees

Section 1988(c) provides that

> In awarding an attorney's fee under subsection (b) of this section in any action or
> proceeding to enforce a provision of section 1981 or 1981a of this title, the Court,
> in its discretion, may include expert fees as part of the attorney's fee.

Plaintiff requests $1,200.00 for Dr. Theodore J. Bioukos. This Court rejects Defendant's argument that expert fees are not properly charged as litigation expenses, based on the above statute. However, although it appears by a review of the periodic billing statements to the client that Dr. Bioukos testified at trial, there is no invoice which breaks down the fee charged per hour, so as to allow this Court to determine reasonableness. Accordingly, based on the current record, this Court finds that insufficient documentation exists and that the expert fees for Dr. Bioukos should be denied.

Similarly, Plaintiff was allowed to supplement her motion with a claim for expert fees for Debra S. Gorin, M.D., P.A., plaintiff's psychiatrist. Plaintiff had made a claim for these fees in her original motion, then withdrew this claim, based on Plaintiff's counsel's inability to recall whether Dr. Gorin testified and on "information from Dr. Gorin's staff indicating that the staff did not believe that Dr. Gorin testified." However, Plaintiff subsequently reasserted her request, stating that Dr. Gorin recalled testifying at trial, and being paid the sum of $2,012.50 directly from Plaintiff on Plaintiff's Visa card. Plaintiff submitted an Unsworn Affidavit from Dr. Gorin, in which she states that she testified at trial but did not recall the date on which she testified, or the period of her testimony, and which attaches a "receipt" provided by Dr. Gorin.

In its original objection to Dr. Gorin's fee, Defendant pointed out that Plaintiff did not list Dr. Gorin in her Expert Disclosure, but rather, identified Dr. Gorin as a fact witness, and that although Plaintiff listed Dr. Gorin's records as an exhibit at trial, the records were not introduced. This Court finds that Plaintiff has failed to meet her burden of proof concerning the charges by Dr. Gorin, in that not only is there no documentation concerning the hours of testimony or rate charged, but in her

6

affidavit, Dr. Gorin does not even state that she testified as an expert.   Accordingly, the request for expert witness fees for Dr. Gorin should be denied.

### IV.  Litigation Expenses

"Where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply." Dowdell, 698 F.2d at 1189.  The Eleventh Circuit has stated:

> ... with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988.  As is true in other applications of section 1988, the standard of reasonableness is to be given a liberal interpretation.

Id. at 1192.  Plaintiff requests litigation expenses in the following amounts:

| | |
|---|---|
| Autotrak | $   119.40 |
| Computerized legal research | 158.63 |
| Court reporters | 2,372.50 |
| Delivery, Courier and Express Mail | 239.82 |
| Filing Fee | 120.00 |
| Jury consultant | 125.00 |
| Long Distance | 112.61 |
| Mediation | 187.50 |
| Mileage | 192.00 |
| Parking | 64.00 |
| Photocopies (in house) | 2,121.25 |
| | 216.00[2] |

---

[2]Claimed in supplement in connection with this motion.

7

| | |
|---|---|
| Photocopies (not in house) | 252.18 |
| Telecopying charges | 17.00 |
| Postage | 95.92 |
| Process servers | 1,830.00 |
| Trial Graphics | 2,099.49 |
| Witness costs | 2,485.10 |

Defendant objects to several of the above requests. First, Defendant objects to the charge for Autotrak, which Plaintiff states was for "witness location and background investigation through public record data base access." This Court finds that this is a reasonable expense, and that if such a database search were not utilized, the work would be performed by a paralegal and appropriately charged.

With respect to mileage, the total charge represents travel to Miami for calendar call and 9 days of trial. The Court finds that although such charges may not be taxable costs under Fed.R.Civ.P. 54(d) or 28 U.S.C. § 1920, they may fall under the broader category of legal expenses under § 1988. The Court also finds that the mediation charge is appropriate.

With respect to the Trial Graphix charge, this Court finds that although a charge for visual aids might be appropriate, there is no invoice provided which would indicate how many aids the $2,099.49 charge provided, or whether any amount of the total was incurred for other reasons, such as rush service, delivery, etc. in order to allow this Court to determine the reasonableness of the charge. Accordingly, this Court finds that this charge should be denied.

This Court agrees with Defendant that the jury consultant charge is not appropriate. With respect to delivery, courier and express mail, Defendant objects to five of the entries: 2/20/97 ("Delivery (in house) Deliver letter to Miami - $20.00"); 6/5/97 ("Delivery (in house) Pick up Depo Papers - $30.00"); 6/30/97 ("Courier services - $20.00"); 7/16/97 ("Courier services - $60.50"); and

8

7/28/97 ("Express Mail Federal Express 4312952372 - $16.07"). This Court finds that there is inadequate documentation as to those charges, particularly no explanation regarding the $20.00 charged for "in house" delivery, and that this category of charges should be reduced accordingly to $93.25.

Defendant also objects to in-house photocopies. However, Plaintiff has provided a break-down of the number of copies (8,164) and the price charged (.25/copy). This Court finds that charge to be reasonable.

Defendant also objects to process server and witness costs/fees and excessive and unreasonable. Particularly, Defendant objects because Plaintiff did not specify the process server fees and does not identify the names of the witnesses who were served with either deposition or trial subpoenas. Plaintiff responds that the names of the witnesses and fees paid are contained in the periodic statements to the client (included in the exhibits), and that if a witness was served with more than one subpoena it was for deposition and trial. This Court finds the process server and witness fees to be properly supported.[3]

Accordingly, the Court finds that on the current record, a Cost Judgment should be entered in the sum of $10,437.34.

## RECOMMENDATION

Based on the foregoing, this Court respectfully recommends that a Judgment for attorney's fees, expert witness fees and costs is hereby entered against the defendant and in favor of the plaintiffs in the total sum of $143,109.84.

---

[3]With respect to witness fees, this Court rejects Defendant's specific objection to a charge of $959 for the travel expenses for witness Tuan Pham, who flew from Miami to New York to testify at trial. Defendant argues that cheaper tickets are available, and that it should not be penalized for Plaintiff's "last minute preparation." Plaintiff responds that because of the uncertainties of trial, witnesses cannot always avail themselves of preplanned discount tickets. This Court also notes that this ticket was probably fully refundable, whereas the discount tickets are not. If the witness had purchased a non-refundable discount ticket and then the trial date/time was changed and another ticket needed to be purchased, would Defendant argue that a fully refundable ticket should have been purchased?

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this ___ day of August, 1999 at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc:    Honorable K. Michael Moore
       William Amlong, Esq.
       Linda R. Spaulding, Esq.

10

RECEIVED

SEP 1 0 1999

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 96-6690-CIV-MOORE

SRABANA GUPTA,

    Plaintiff,

vs.

THE FLORIDA BOARD OF REGENTS and
RUPERT RHODD,

    Defendant.

_____/

**ORDER ADOPTING MAGISTRATE'S
REPORT AND RECOMMENDATION**

    THIS CAUSE came before the Court upon Plaintiff's Motion for Costs and Attorney's Fees

(DE # 99).

    Plaintiff's Motion was originally referred to United States Magistrate Judge Stephen T.

Brown for a Report and Recommendation. In a Report and Recommendation dated August 17, 1999,

Magistrate Judge Brown recommended that Plaintiff's Motion be granted, and that Plaintiff should

be awarded $132,672.50 in attorney's fees, as well as $10,437.34 in costs, for a total sum of

$143,109.84. However, Magistrate Judge Brown advised against granting expert witness fees.

    UPON CONSIDERATION of the Motion and the pertinent portions of the record, and being

otherwise fully advised in the premises, it is

    ORDERED AND ADJUDGED that Magistrate Judge Brown's Report and Recommendation

be ADOPTED in its entirety. Accordingly, Defendant shall pay to Plaintiff the amount of

$143,109.84 for fees and costs.

CALENDARED _____
RESPONSE DUE _____
BY _____ DATE _____

DONE AND ORDERED in Chambers at Miami, Florida, this ⟋⟋ᵗʰ day of September, 1999.

LET EXECUTION ISSUE.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    William Amlong, Esq.
       Lynda R. Spaulding, Esq.

## AFFIDAVIT OF SUSAN L. DOLIN

STATE OF FLORIDA )
                   ) ss:
COUNTY OF BROWARD )

BEFORE ME, the undersigned authority, on this date personally appeared SUSAN L. DOLIN, who, after first being duly sworn deposes and says:

1.       I am an attorney licensed to practice law in the State of Florida. I am a partner in the Hollywood, Florida law firm of Muchnick, Wasserman, & Dolin.

2.       I have been licensed to practice law in the State of Florida since 1987. In 1978, I was licensed to practice law in the State of Ohio.

3.       I received my B.A. degree in 1975 from Miami University (Ohio), my J.D. cum laude in 1978 from Cleveland State University, and my LL.M.-Labor in 1983 from Georgetown University.

4.       I have been practicing labor and employment law since 1978. I began my career as a trial attorney with the National Labor Relations Board, Division of Enforcement Litigation, Appellate Court Branch in Washington D.C., where I also worked on special and contempt litigation. I also served a three-month detail to NLRB Region 5 in Baltimore, Maryland, in 1982. While I was employed with the NLRB, I attended Georgetown University where I earned by LL.M.-Labor in 1983. I also taught labor law as an adjunct at George Mason University Law Center in Arlington, Virginia.

5.       In 1984, I relocated to Fort Lauderdale, Florida to assume an assistant professorship at Nova University Law Center, where I taught labor law and developed labor law courses for the Law Center. In 1987, I left academia to become a senior associate with the Fort Lauderdale law firm of Conrad, Scherer & James, where I continued to practice labor and employment law and litigation.

In 1992, I left the Conrad firm and became of counsel to the Hollywood law firm of Litman, Muchnick, Wasserman & Hartman, which dissolved in 1992, at which time I became a name partner in the re-formed Muchnick, Wasserman & Dolin.

6.     In the past, I served as co-vice-chair of the Broward County Bar Section on Labor and Employment Law, and currently serve on that Section's Steering Committee. I have spoken at numerous continuing legal education seminars sponsored by the Florida Bar Section on Labor and Employment Law, as well as other sections, dealing with labor and employment matters. I was designated by the Florida Bar in Labor and Employment Law when the designation programs were in effect (there is no certification program in this field). I am currently serving on the Long Range Planning Committee of the Florida Bar Section on Labor and Employment Law, and we are currently working on Bar certification in this field.

7.     During my legal career, I have appeared before every United States Court of Appeals, and have participated in appeals to the United States Supreme Court. In addition to litigating numerous labor and employment cases in the United States District Court for the Southern and Middle Districts of Florida, I have also litigated cases in the District of Maryland, the Northern District of Ohio Bankruptcy Court dealing with labor issues, and before a Special Master appointed by the United States Court of Appeals for the Ninth Circuit, in San Francisco, California. I have also litigated before the State Courts of Florida, as well as administrative law judges and federal and state administrative agencies. I have tried both jury and non-jury cases.

8.     My current practice is restricted to labor and employment litigation, including all facets of employment discrimination, ERISA, Fair Labor Standards Act, National Labor Relations Act, and other facets of labor and employment law, both federal and state, with the exception of workers'

2

compensation. I primarily represent defendants, and my defense practice comprises approximately 60 - 65% of my total practice.

9.    I have been requested by William Amlong, Esq. to provide an affidavit solely as to my knowledge of the area market rate for labor and employment attorneys working on plaintiffs' cases of comparable skill and experience. Mr. Amlong has informed me that he has requested fees in the amount of $300.00 per hour for himself.

10.    I am familiar with both Mr. Amlong's skills, experience, and qualifications as labor and employment lawyers in the South Florida area. I have litigated against Mr. Amlong on cases where I have represented the Defendant. In addition, Mr. Amlong and I serve on the Long Range Planning Committee of the Florida Bar Section on Labor and Employment Law. In addition, Mr. Amlong and I often informally consult with each other on cases and issues in this field. I personally know Mr. Amlong to be a highly skilled and ethical practitioner, and I might add that the number of highly trained and experienced litigators who specialize in the field of labor and employment, particularly on the plaintiffs' side, is at a premium in this area of the United States.

11.    My normal hourly billing rate is between $250.00 and $350.00, depending on the nature of the case. I know that the prevailing market rate for attorneys of comparable skill is between $250.00 and $350.00. If Mr. Amlong were a partner in this firm, given his skills, training, and qualifications, he would be billed out at the rate of $300.00 per hour for plaintiffs' cases, particularly if they were contingent fee cases. I am of the opinion that $300.00 per hour is a very reasonable rate for Mr. Amlong.

12.    I come to this conclusion utilizing the criteria set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). I did not assess the difficulty or novelty of the issues,

but can speak to the skill necessary to litigate such cases. Labor and employment law is a highly sophisticated specialty, with its own substantive and procedural law. It is not routinely taught in law schools and is most often learned by those who become experienced practitioners "on the job," either with an appropriate government agency or under the tutelage of an experienced lawyer in the field. With the advent of the Civil Rights Act of 1991, when "tort-like" damages were added to Title VII and related statutes such as the Americans With Disabilities Act, more non-labor and employment lawyers, such as personal injury lawyers, attempted to take these cases on behalf of plaintiffs, making the defense side much more difficult. However, as these lawyers discovered they were essentially walking in a legal minefield and got out of the field as quickly as they got in, the number of practitioners waned again. The number of truly experienced and well regarded labor and employment practitioners in the South Florida legal community is thus relatively small. I have also taken account of the fact that the Amlong firm took the case on a contingent basis. This should weigh in favor of a higher fee award. Labor and employment cases often take several years to resolve, and plaintiffs' lawyers who work on contingent fees must wait all that time to be paid. Moreover, if the fee is enhanced based on contingency fee, it will encourage skilled and experienced attorneys to represent plaintiffs in these types of cases[1].

15. I have not been asked, and therefore render no opinion, as to the number of hours reasonably expended in the case on which these attorneys are seeking fees. However, I can say that

---

[1] It should be noted that the United States Supreme Court, in *City of Burlington v. Dague*, 505 *U.S. 557 (1992)*, rejected enhancements for calculated lodestar amounts in cases which involve federal fee-shifting statutes, such as Title VII. However, *Dague* did not change the *Johnson* criteria insofar as calculation of the initial lodestar is concerned.

4

I have never known the Amlong firm to "pad" bills or to perform work not reasonably necessary to the prosecution of a case in which they are involved.

_____
SUSAN L. DOLIN

SWORN TO AND SUBSCRIBED before me this  day of ___7th___ May, 1997 by SUSAN L. DOLIN, who is personally known to me and who did take an oath.

_____
Notary Public, State of Florida

My Commission Expires

_____
Acknowledger's Name Stamped,
Typed or Printed

OFFICIAL NOTARY SEAL
JANICE COVIELLO
COMMISSION NUMBER
CC489727
MY COMMISSION EXPIRES
SEPT   30,2000

5